## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

------------------------------------------------------- x

In re:                                          :       Chapter 11

                                                :

GREEN FIELD ENERGY SERVICES, INC., et  :        Case No. 13-12783 (_____)
al.,

                                                :       Joint Administration Requested

                                                :

          Debtors.[1]                           :

------------------------------------------------------- x

### MOTION OF DEBTORS FOR ORDER PURSUANT TO 11 U.S.C. §§ 105(a), 345, 363 AND 364, FED. R. BANKR. P. 6003 AND DEL. BANKR. L.R. 2015-2 (I) AUTHORIZING CONTINUED USE OF EXISTING CASH MANAGEMENT SYSTEM, INCLUDING MAINTENANCE OF EXISTING BANK ACCOUNTS, CHECKS AND BUSINESS FORMS AND (II) AUTHORIZING CONTINUATION OF INTERCOMPANY TRANSACTIONS

The debtors and debtors in possession in the above-captioned cases (collectively,

the "**Debtors**") hereby move (the "**Motion**") for entry of an order, under Sections 105, 345, 363

and 364 of Title 11 of the United States Code (the "**Bankruptcy Code**"), Rule 6003 of the

Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Rule 2015-2 of the Local

Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the

District of Delaware (the "**Local Rules**"), (i) authorizing, but not directing, the Debtors to

continue to maintain and use their existing cash management system, including maintenance of

the Debtors' existing bank accounts, checks and business forms; (ii) granting the Debtors a

waiver of certain bank account and related requirements of the Office of the United States

Trustee for the District of Delaware (the "**United States Trustee**") to the extent that such

requirements are inconsistent with (a) the Debtors' existing practices under the cash management

system or (b) any action taken by the Debtors in accordance with any order granting this Motion

---

[1]       The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax or organizational identification number, are: Green Field Energy Services, Inc. (2539); Hub City Tools, Inc. (2827); and Proppant One, Inc. (6035). The above-captioned Debtors' mailing address is 4023 Ambassador Caffery Parkway, Suite #200, Lafayette, LA 70503.

or any other order entered in the Debtors' Chapter 11 cases; and (iii) authorizing, but not directing, the Debtors to continue certain ordinary course intercompany transactions. In support of the Motion, the Debtors rely upon the *Declaration of Earl J. Blackwell in Support of Chapter 11 Petitions and First Day Motions*, filed with the Court concurrently herewith (the "**Blackwell Declaration**"). In further support of the Motion, the Debtors, by and through their undersigned counsel, respectfully represent:

## JURISDICTION

1.      This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware* dated as of February 29, 2012. This is a core proceeding under 28 U.S.C. § 157(b), and the Court may enter a final order consistent with Article III of the United States Constitution. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. The legal authority for the relief requested herein is Bankruptcy Code Sections 105(a), 345, 363 and 364, Bankruptcy Rule 6003 and Local Rule 2015-2.

## BACKGROUND

2.      On the date hereof (the "**Petition Date**"), the Debtors filed voluntary petitions in this Court commencing cases for relief under chapter 11 of the Bankruptcy Code (the "**Chapter 11 Cases**"). The factual background regarding the Debtors, including their business operations, their capital and debt structures and the events leading to the filing of the Chapter 11 Cases, is set forth in detail in the Blackwell Declaration, which is fully incorporated herein by reference.

3.      The Debtors continue to manage and operate their business as debtors in possession pursuant to Bankruptcy Code Sections 1107 and 1108. No trustee or examiner has been requested in the Chapter 11 Cases and no committees have yet been appointed.

01:14282707.4
HN\1066589.12

## RELIEF REQUESTED

4.    By this Motion, the Debtors seek entry of an order, pursuant to

Bankruptcy Code Sections 105(a), 345, 363 and 364(a) authorizing, but not directing, the

Debtors to continue to maintain and use their existing cash management system, including

maintenance of the Debtors' existing bank accounts, checks and business forms; (b) granting the

Debtors a waiver of certain bank account and related requirements of the United States Trustee

to the extent that such requirements are inconsistent with (i) the Debtors' existing practices under

the cash management system or (ii) any action taken by the Debtors in accordance with any order

granting this Motion or any other order entered in the Chapter 11 Cases; and (c) authorizing, but

not directing, the Debtors to continue certain ordinary course intercompany transactions.  The

Debtors also request that the Court authorize and direct all banks with which the Debtors

maintain accounts to continue to maintain, service and administer such accounts and authorize

third-party payroll and benefits administrators and providers to prepare and issue checks on

behalf of the Debtors.

## BASIS FOR RELIEF

**A.    The Debtors' Cash Management System and Bank Accounts**

5.    In the ordinary course of their business, the Debtors maintain a complex

cash management system (the "**Cash Management System**") that includes operating accounts,

accounts used for the administration of specific employee benefits, collateral accounts, accounts

required pursuant to contract, and other accounts.  The Cash Management System is integral to

the operation and administration of the Debtors' business.  In this regard, the Cash Management

System allows the Debtors to efficiently (a) identify the Debtors' cash requirements, (b) transfer

cash as needed to respond to cash requirements, including the cash requirements of the Debtors'

01:14282707.4
HN\1066589.12

payroll and benefits structure,[2] (c) track transfers related to certain contractual obligations, (d)

efficiently monitor and control all of the Debtors' cash receipts and disbursements and (e) to

transfer funds in certain zero-balance accounts into interest-bearing accounts to increase the

interest earned by such accounts. The Debtors believe that the Cash Management System is

similar to those utilized by many other companies of comparable size and complexity to collect,

transfer and disburse funds in a cost-effective and efficient manner.

      6.     The Cash Management System is managed by the financial personnel at

the Debtors' headquarters in Lafayette, Louisiana. The Debtors' administration of the various

bank accounts to effect the collection, disbursement and movement of cash facilitates accurate

cash forecasting and reporting and enables the Debtors to, among other things, monitor the

collection and disbursement of funds, maintain their payroll and benefits structure, and comply

with critical contractual obligations.

      7.     A summary of the Cash Management System is annexed hereto as

Attachment 1. As of the Petition Date, the Debtors maintained approximately five (5) active

bank accounts (collectively, the "**Bank Accounts**") at two (2) financial institutions. A schedule

of the Bank Accounts is annexed hereto as Attachment 2.[3] As reflected in such schedule, all of

the active Bank Accounts are held in the name of Green Field Energy Services, Inc. ("**Green**

**Field**"). The Cash Management System is primarily organized in a way that respects the

Debtors' payroll and benefits structure and operating needs. As further reflected in such

---

[2]      The Debtors' payroll and benefits structure is described in detail in *Motion of Debtors for Order Under 11 U.S.C. §§ 105(a), 363(b), 363(c), 507(a), 541, 1107(a) and 1108 and Fed. R. Bankr. P. 6003 (i) Authorizing Payment of Certain Prepetition Employee Obligations, Including Compensation, Benefits, Expense Reimbursements and Related Obligations, (ii) Confirming Right to Continue Employee Programs on Postpetition Basis, (iii) Authorizing Payment of Withholding and Payroll-Related Taxes, (iv) Authorizing Payment of Prepetition Claims Owing to Administrators of, or Third Party Providers Under, Employee Programs and (v) Directing Banks to Honor Prepetition Checks and Fund Transfers for Authorized Payments*, filed contemporaneously herewith.

[3]      The Debtors believe, and have undertaken reasonable efforts to ensure, that Attachment 2 lists all of the Bank Accounts. In the event that any Bank Account has been inadvertently omitted from Attachment 2, the Debtors request that the relief sought by this Motion be deemed to apply to any such Bank Account.

01:14282707.4
HN\1066589.12

schedule, such accounts are maintained at JP Morgan Chase Bank ("**Chase**") and Regions Bank ("**Regions**").[4]

8.      The majority of the receipts from the operation of the Debtors' business flow into an operating account (account no. ******2183) maintained by Regions (the "**Operating Account**").  The Operating Account also serves as the primary disbursement account for accounts payable, including bi-weekly wires to Automatic Data Processing, Inc. ("**ADP**") for employee payroll.

9.      The Debtors maintain a zero-balance payroll account (account no. ******2248) with Regions (the "**Payroll Account**") which is used to (i) pay ADP's administrative fees, (ii) remit checks as necessary to correct any errors related to accounts payable and (iii) pay certain expenses related to employee benefits.[5]  The Debtors also maintain a disbursement account (account no. ******2388) with Regions (the "**Benefits Account**") for the purpose of paying medical providers for their claims arising from medical expenses incurred by employees under various benefit plans.  The Benefits Account also receives deposits from ADP on account of withholdings related to medical benefits. ADP remits such funds to the Benefits Account, which are then disbursed to the medical service providers in payment of claims.

10.      The Debtors also maintain an account (account no. ******5075) with Chase (the "**Contract Account**") in compliance with that certain Agreement for the Manufacture and Sale of Turbine Powered Generators, dated June 21, 2013, among Turbine Generation Services, LLC ("**TGS**"), Turbine Powered Technology, LLC ("**TPT**") and Green Field (the "**Turbine Agreement**").  TPT designs, manufactures, maintains and provides field support for

---

[4]      Green Field also maintains four (4) inactive accounts with Chase and Regions, and its wholly owned subsidiary, Hub City Tools, Inc., maintains one (1) inactive account with Chase.

[5]      The Payroll Account was also used to make matching payments under the Debtors' 401(k) program, which was discontinued shortly before the filing of the Chapter 11 Cases.

turbine powered generators, and provides those services to TGS. Green Field owns half of TPT

in a joint venture arrangement. The Turbine Agreement is one of several agreements among

Green Field, TPT and TGS that are critical to the Debtors' operations.[6] The Debtors maintain

the Contract Account in compliance with the Turbine Agreement, which requires (i) TGS to wire

payment into the Contract Account, which must remain separate and not be commingled with

Green Field's other accounts, (ii) Green Field to hold the funds in the Contract Account in trust

for the benefit of TPT, and (iii) Green Field to remit the funds to TPT in accordance with the

Turbine Agreement. The Contract Account is used by the Debtors to comply with the Turbine

Agreement (and the related contracts) and to assist with keeping Green Field's books and records

separate and distinct from the books and records of TPT, its partially-owned subsidiary.

11.     Finally, Green Field maintains an account (account no. ******0595) with

Chase (the "**Collateral Account**") containing $125,000. The Collateral Account serves as

collateral for the Debtors' obligations to Chase on account of credit cards used by employees for

travel and other business expenses (the "**Chase Cards**"). As the Debtors' financial condition

deteriorated, the Debtors were obligated to collateralize the credit card obligations by means of

the Collateral Account and to make weekly payments to Chase in order to maintain their credit

limit.

**B.     The Debtors Should Be Authorized to Continue to Use Their Existing Cash
        Management System and Bank Accounts**

12.     The Debtors believe that the Cash Management System is an ordinary

course, customary and essential business practice, and is similar to cash management systems

employed by other similar businesses. The Cash Management System allows the Debtors to

efficiently identify their cash requirements, transfer cash as needed to respond to those

---

[6]     A description of the contractual arrangements between the Debtors, TPT and TGS can be found in
the Blackwell Declaration. The Debtors will continue to honor those contractual obligations in the ordinary course
of business and reserve all rights with respect to such contracts.

01:14282707.4
HN\1066589.12

requirements (including with respect to payroll and benefits), and comply with the requirements of certain critical contracts.

13.    The continued use of the Cash Management System during the pendency of the Chapter 11 Cases is essential to the Debtors' business operations and their goal of maximizing value for the benefit of all parties in interest.  Requiring the Debtors to adopt a new cash management system at this early and critical stage would be expensive, impose needless administrative burdens and cause undue disruption.  Any such disruption would adversely (and perhaps irreparably) affect the Debtors' ability to maximize estate value for the benefit of creditors and other parties in interest.  Moreover, such a disruption would be wholly unnecessary because the Cash Management System provides a valuable and efficient means for the Debtors to address their cash management requirements and, to the best of the Debtors' knowledge, the Bank Accounts are in financially stable institutions that are insured by the Federal Deposit Insurance Corporation ("**FDIC**") (up to an applicable limit per Debtor per institution).  In this regard, it warrants mention that Chase and Regions are approved depositories of the United States Trustee.  Consequently, maintaining the existing Cash Management System without disruption is both essential to the Debtors' ongoing operations and in the best interests of the Debtors, their estates and all interested parties.  Accordingly, the Debtors request that they be allowed to maintain and continue to use the Cash Management System and the Bank Accounts.

14.    As part of the relief requested herein, and to ensure that their transition into Chapter 11 is as smooth as possible, the Debtors seek an order authorizing the Debtors to (a) maintain and continue to use the Bank Accounts, including but not limited to those accounts that are listed on Attachment 2 hereto, in the same manner and with the same account numbers, styles and document forms as are currently employed, (b) deposit funds in and withdraw funds from the Bank Accounts by all usual means, including checks, wire transfers, ACH transfers and

electronic fund transfers or other items presented, issued or drawn on the Bank Accounts, (c) pay

ordinary course bank fees in connection with the Bank Accounts, including prepetition fees, (d)

perform their obligations under the documents and agreements governing the Bank Accounts,

and (e) treat the Bank Accounts for all purposes as accounts of the Debtors in their capacities as

debtors in possession.

15.     If the relief requested herein is granted, the Debtors will implement

appropriate mechanisms to ensure that no payments will be made on any debts incurred by them

prior to the Petition Date, other than those authorized by this Court.  To prevent the possible

inadvertent payment of prepetition claims, except those otherwise authorized by the Court, the

Debtors will work closely with the banks at which the Bank Accounts are maintained (the

"**Banks**") to ensure appropriate procedures are in place to prevent checks issued prepetition from

being honored absent this Court's approval.  However, the Debtors request that no Bank that

implements such handling procedures and then honors a prepetition check or other item drawn

on any account that is the subject of this Motion (a) at the direction of the Debtors to honor such

prepetition check or item, (b) in a good faith belief that the Court has authorized such prepetition

check or item to be honored, or (c) as a result of a good faith error made despite implementation

of reasonable item handling procedures, be deemed to be liable to the Debtors or to their estates

on account of such prepetition check or other item being honored postpetition.  The Debtors

believe that such flexibility accorded the Banks is necessary to induce the Banks to continue

providing cash management services to the Debtors.

16.     Additionally, for banks at which the Debtors hold accounts that are party

to a Uniform Depository agreement with the United States Trustee, the Debtors will (a) contact

each bank, (b) provide the Debtors' employer identification numbers, and (c) identify each of

their accounts held at such banks as being held by a debtor in possession in a bankruptcy case.

For banks at which the Debtors hold accounts that are not party to a Uniform Depository

agreement with the United States Trustee, the Debtors will use their good-faith efforts to cause

the bank to execute a Uniform Depository agreement in a form prescribed by the Office of the

United States Trustee.

       17.     In the interest of maintaining the continued and efficient operation of the

Cash Management System during the pendency of these Chapter 11 Cases, the Debtors request

that all Banks be authorized and directed to continue to administer, service and maintain the

Bank Accounts as such accounts were administered, serviced and maintained prepetition,

without interruption and in the ordinary course (including making deductions for bank fees), and

to honor any and all checks, wires, ACH transfers, electronic fund transfers or other items

presented, issued or drawn on the Bank Accounts on account of a claim arising on or after the

Petition Date.

       18.     The Debtors further request that they be authorized to implement such

reasonable changes to the Cash Management System as the Debtors may deem necessary or

appropriate, including, without limitation, closing any of the Bank Accounts or opening any

additional Bank Accounts following the Petition Date (the "**New Accounts**"), wherever the

Debtors deem that such accounts are needed or appropriate, and whether or not the banks in

which the accounts are opened are designated depositories in the District of Delaware.

Notwithstanding the foregoing, any New Account that the Debtors open will be (a) at one of the

existing Banks or with a bank that is organized under the laws of the United States of America or

any state therein, and that is insured by the FDIC or the Federal Savings and Loan Insurance

Corporation and (b) designated a "Debtor in Possession" account by the relevant bank. The

Debtors request that the relief sought by this Motion extend to any New Accounts and that any

order approving this Motion provide that the New Accounts are deemed to be Bank Accounts

Case 13-12783-KG    Doc 5    Filed 10/27/13    Page 10 of 21

and are similarly subject to the rights, obligations and relief granted in the order.  The Debtors

will provide the United States Trustee with written notice of any New Accounts that are opened.

In furtherance of the foregoing, the Debtors also request that the relevant banks be authorized to

honor the Debtors' requests to open or close (as the case may be) such Bank Account(s) or New

Account(s).

**C.    The Debtors Should Be Granted Authority to Continue to Use Existing Checks and Business Forms**

19.    Local Rule 2015-2(a) provides:

> Where the debtor uses pre-printed checks, upon motion of the debtor, the Court
> may, without notice and a hearing, permit the debtor to use its existing checks
> without the designation "Debtor-in-Possession" and use its existing bank accounts.
> However, once the debtor's existing checks have been used, the debtor shall,
> when reordering checks, require the designation "Debtor-in-Possession" and the
> corresponding bankruptcy number on all such checks.

Del. Bankr. L.R. 2015-2(a).

20.    To minimize expenses to their estates, the Debtors seek authorization to

continue using all checks substantially in the forms existing immediately prior to the Petition

Date, without reference to the Debtors' status as debtors in possession; provided, however, that

in the event the Debtors generate new checks during the pendency of these cases other than from

their existing stock of checks, such checks will include a legend referring to the Debtors as

"Debtors in Possession."  The Debtors also seek authority to use all correspondence and other

business forms (including, without limitation, letterhead, purchase orders and invoices) without

reference to the Debtors' status as debtors in possession.[7]

---

[7]    Although the operating guidelines that have been established for debtors in possession by the
United States Trustee would require the Debtors to obtain and use new checks bearing the "Debtor in Possession"
designation, the Debtors do not believe that they impose any limitation on the Debtors' other correspondence and
business forms.  Nevertheless, out of an abundance of caution, the Debtors seek explicit authority to continue using
their existing correspondence and business forms without reference to the Debtors' status as debtors in possession.

01:14282707.4
HN\1066589.12

21.     Most parties doing business with the Debtors undoubtedly will be aware of the Debtors' status as debtors in possession as a result of the publicity of these cases, the press releases issued by the Debtors and additional press coverage.  Moreover, the Debtors will provide notice of the commencement of the Chapter 11 Cases to creditors and other parties-in-interest.

22.     Changing the Debtors' existing checks, correspondence and other business forms would be expensive, unnecessary and burdensome to the Debtors' estates.  Further, such changes would be disruptive to the Debtors' business operations and would not confer any benefit upon those dealing with the Debtors.  For these reasons, the Debtors request that they be authorized to use their existing check stock, all correspondence and other business forms without being required to place the label "Debtors in Possession" on any of the foregoing.

**D.      The Debtors Should Be Granted a Waiver of Certain Requirements of the United States Trustee**

23.     The Debtors further request, pursuant to Bankruptcy Code Sections 105(a) and 363, that this Court grant a waiver of certain bank account and related requirements of the United States Trustee to the extent that such requirements are inconsistent with (a) the Debtors' existing practices under the Cash Management System or (b) any action taken by the Debtors in accordance with any order granting this Motion or any other order entered in the Chapter 11 Cases.  The United States Trustee has established certain operating guidelines for debtors in possession in order to supervise the administration of chapter 11 cases.  These requirements (the "**UST Requirements**") require chapter 11 debtors to, among other things: (i) close all existing bank accounts and open new debtor in possession bank accounts; (ii) establish one debtor in possession account for all estate monies required for the payment of taxes, including payroll taxes; (iii) maintain a separate debtor in possession account for cash collateral; and (iv) obtain checks for all debtor in possession accounts that bear the designation "Debtor-In-Possession,"

the bankruptcy case number and the type of account. These requirements are designed to draw a clear line of demarcation between prepetition and postpetition transactions and operations and prevent the inadvertent postpetition payment of prepetition claims. As set forth above, the Debtors submit that (x) they are able to work with their current Banks to ensure that this goal of separation between the prepetition and postpetition periods is observed and (y) enforcing certain of these UST Requirements would disrupt the Debtors' operations and impose a financial burden on the Debtors' estates.

24.     To begin, as noted previously, it will be onerous for the Debtors to meet the requirement of closing all existing bank accounts and opening new debtor in possession bank accounts. Indeed, not only would the Debtors be unnecessarily inconvenienced, but so would their customers (the majority of whom wire remittances and checks directly to the Operating Account).

25.     Further, requiring the Debtors to abide by the UST Requirement to establish specific debtor in possession accounts for tax payments (including payroll taxes) and to deposit to such specific tax accounts sufficient funds to pay any tax liability (when incurred) associated with the Debtors' payroll and other tax obligations would be unnecessarily burdensome. The Debtors believe that they can pay their tax obligations most efficiently from the existing disbursement and checking accounts maintained at Regions in accordance with their existing practices, that the United States Trustee can adequately monitor the flow of funds into and out of such accounts, and that the creation of new debtor in possession accounts designated solely for tax obligations would be unnecessary and inefficient.

26.     Additionally, requiring the Debtors to abide by the UST Requirement to establish specific debtor in possession accounts for cash collateral will be unnecessary. As set forth in the *Motion of the Debtors for Entry of (A) Interim Order (I) Authorizing Debtors to*

01:14282707.4
HN\1066589.12

*Obtain Post-Petition Financing Pursuant to 11 U.S.C. §§ 105, 361, 362, 364 and 507(b), and (II) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001(b) and (c), and (B) a Final Order Approving and Authorizing the Foregoing Substantive Relief* that was filed contemporaneously herewith (the "**DIP Financing Motion**"), the Debtors have provided significant safeguards (negotiated in good faith with parties in interest) to ensure that those who have interests in the Debtors' cash collateral are adequately protected and such persons have been provided with notice of the proposed use of such cash collateral.

27.    Finally, for the reasons noted above, compliance with the UST Requirement that requires a debtor to obtain checks for all debtor in possession accounts which bear the designation "Debtor In Possession," the bankruptcy case number and the type of account is unnecessarily burdensome in these Chapter 11 Cases.

**E.    The Debtors Should Be Authorized to Maintain and Continue Ordinary Course Intercompany Transactions**

28.    As described above, pursuant to the Turbine Agreement and related agreements, funds from TGS are moved through the Contract Account to Green Field's non-debtor subsidiary, TPT. At any given time, there may be intercompany claims owing by Green Field to TPT on account of funds in the Contract Account that Green Field is holding in trust for TPT. As of the week before the Petition Date, Green Field held no funds in the Contract Account in trust for payment to TPT pursuant to the terms of the Turbine Agreement.

29.    With respect to this intercompany transaction (the "**Intercompany Transactions**"), the Debtors maintain records of all fund transfers and can ascertain, trace and account for the Intercompany Transactions. At the same time, however, if the Intercompany Transactions were to be discontinued, the Cash Management System and the related administrative controls would be disrupted to the Debtors' detriment.

01:14282707.4
HN\1066589.12

## APPLICABLE AUTHORITY

A.    **The Bankruptcy Code Permits the Debtors to Continue Using the Cash Management System and the Bank Accounts**

30.    Bankruptcy Code Section 363(c)(1) authorizes a debtor in possession to "use property of the estate in the ordinary course of business without notice or a hearing." 11 U.S.C. § 363(c)(1).  The authority granted by Bankruptcy Code Section 363(c)(1) extends to a debtor in possession's continued use of its customary cash management system and, thus, supports the relief requested.  See, e.g., Charter Co. v. Prudential Ins. Co. Am. (In re Charter Co.), 778 F.2d 617, 621 (11th Cir. 1985) (indicating that an order authorizing the debtor to employ a cash management system that was "usual and customary in the past" was "entirely consistent" with Section 363(c)(1)).  Moreover, Bankruptcy Code Section 364(a) authorizes a debtor in possession to obtain unsecured credit and incur unsecured debt in the ordinary course of business without notice and a hearing.  See 11 U.S.C. § 364(a).  This provision further supports the relief requested and provides the Debtors with the ability, to the extent necessary, to obtain unsecured credit and incur unsecured debt in the ordinary operation of the Cash Management System.

31.    Bankruptcy Code Section 105(a) also authorizes this Court to permit the Debtors to continue using their existing Cash Management System and the Bank Accounts. Section 105(a) vests in this Court the power to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  The continuation of the Cash Management System, including the continued use of the Bank Accounts, is essential to the Debtors' restructuring efforts and the efficient administration of these Chapter 11 Cases.  Indeed, one court, in another context, has recognized that a centralized cash management system "allows efficient utilization of cash resources and recognizes the impracticalities of maintaining separate cash accounts for the many different purposes that require cash."  In re Columbia Gas Sys., Inc.,

136 B.R. 930, 934 (Bankr. D. Del. 1992), aff'd in part and rev'd in part, 997 F.2d 1039 (3d Cir.

1993), cert. denied sub nom. Official Comm. of Unsecured Creditors v. Columbia Gas

Transmission Corp., 510 U.S. 1110 (1994).  The relief requested is, therefore, appropriate under

Bankruptcy Code Section 105(a).

       32.     Indeed, bankruptcy courts routinely permit chapter 11 Debtors to continue

using their existing cash management system, generally treating requests for such relief as a

relatively "simple matter."  In re Baldwin-United Corp., 79 B.R. 321, 327 (Bankr. S.D. Ohio

1987); see also In re Columbia, 136 B.R. at 934 (recognizing that an integrated cash management

system "allows efficient utilization of cash resources and recognizes the impracticalities of

maintaining separate cash accounts for the many different purposes that require cash").

       33.     Additionally, numerous courts including this Court have authorized

Debtors to continue their existing cash management systems in other large chapter 11 cases.  See,

e.g., In re A123 Sys., Inc., Case No. 12-12859 (KJC) (Bankr. D. Del. Dec. 11, 2012); In re

Graceway Pharms., LLC, Case No. 11-13036 (PJW) (Bankr. D. Del. Sept. 30, 2011); In re

Appleseed's Intermediate Holdings LLC, Case No. 11-10160 (KG) (Bankr. D. Del. Jan. 20,

2011); In re Freedom Commc'ns Holdings, Inc., Case No. 09-13046 (BLS) (Bankr. D. Del.

Sept. 2, 2009).

**B.**     **This Court Should Waive the UST Requirements to Permit the Debtors to Continue
the Cash Management System**

       34.     The continuation of the Cash Management System, as requested in this

Motion, is consistent with the Debtors' authority to use property of the estate in the ordinary

course of business pursuant to Bankruptcy Code Section 363(c)(1).  Accordingly, this Court

should grant the Debtors a waiver of the UST Requirements to the extent that such requirements

conflict with the Debtors' existing practices under the Cash Management System or any action

taken by the Debtors in accordance with any order granting this Motion or any other order entered in the Chapter 11 Cases.

35.     Moreover, compelling the Debtors to alter their current cash management practices and to modify the Cash Management System to comply with the UST Requirements would risk severe disruption to the Debtors' business and jeopardize the Debtors' ability to maximize value for all parties in interest. Cf. In re Gaylord Container Corp., 1993 WL 188671, at *3, 13 (E.D. La. 1993) (adopting the bankruptcy court's findings of fact and conclusions of law, which included a finding that the banking requirements of the Office of the United States Trustee for the District of Louisiana "represent a substantial burden on any debtor and, in this case, resulted in the incurrence of extraordinary unquantifiable costs by the debtor associated with the confusion engendered by the implementation of new policies and procedures to comply with such rules, and due to the substantial restrictions that such rules placed on the debtor's treasury functions"). This factor alone justifies the relief that the Debtors are seeking. See 11 U.S.C. § 105(a) ("The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.").

C.    **The Bankruptcy Code Permits the Debtors to Continue Engaging in the Intercompany Transactions**

36.     As noted above, the Debtors routinely engaged in the Intercompany Transactions prior to the Petition Date. Thus, court approval of these transactions is not required pursuant to Bankruptcy Code Section 363(c)(1). Nevertheless, out of an abundance of caution, the Debtors seek court approval of the relief requested herein, in the event this Court finds that the Intercompany Transactions are outside the ordinary course of business.

37.     Bankruptcy Code Section 363(b)(1) authorizes a debtor in possession to use property of the estate other than in the ordinary course of business after notice and a hearing. Courts have held that there must be some articulated business justification for using, selling or

16

01:14282707.4
HN\1066589.12

leasing property out of the ordinary course of business before the bankruptcy judge may order

such disposition under Section 363(b).  See, e.g., Dai-Ichi Kangyo Bank, Ltd. v. Montgomery

Ward Holding Corp. (In re Montgomery Ward Holding Corp.), 242 B.R. 147, 153 (D. Del. 1999)

("In determining whether to authorize the use, sale or lease of property of the estate . . . , courts

require the debtor to show that a sound business purpose justifies such actions").  In the event an

order permitting them to continue engaging in the Intercompany Transactions is necessary, the

Debtors believe that their business judgment to continue the Intercompany Transactions is sound

because, among other reasons discussed herein, the Intercompany Transactions facilitate the

satisfaction of the Debtors' obligations and are integral to the Debtors' daily operations.  Thus,

the Debtors submit that continuation of the Intercompany Transactions is in the best interests of

the Debtors' estates and their creditors.

38.      Courts frequently have authorized Debtors to continue their prepetition

intercompany practices after commencement of chapter 11 cases.  See, e.g., In re A123 Sys., Inc.,

Case No. 12-12859 (KJC) (Bankr. D. Del. Dec. 11, 2012); In re Appleseed's Intermediate

Holdings LLC, Case No. 11-10160 (KG) (Bankr. D. Del. Jan. 20, 2011); In re Freedom

Commc'ns Holdings, Inc., Case No. 09-13046 (BLS) (Bankr. D. Del. Sept. 2, 2009); In re

Tribune Co., Case No. 08-13141 (KJC) (Bankr. D. Del. Apr. 30, 2009); In re Sportsman's

Warehouse, Inc., Case No. 09-10990 (CSS) (Bankr. D. Del. Mar. 23, 2009); In re Circuit City

Stores, Inc., Case No. 08-35653 (KRH) (Bankr. E.D. Va. Nov. 10, 2008); In re VeraSun Energy

Corp., Case No. 08-12606 (BLS) (Bankr. D. Del. Nov. 3, 2008).

**D.      Bankruptcy Rule 6003 Has Been Satisfied and Bankruptcy Rule 6004 Should Be Waived**

39.      Certain isolated aspects of the relief requested herein may, if granted, be

subject to Bankruptcy Rule 6003.  Pursuant to Bankruptcy Rule 6003, a court may grant such

relief if it is necessary to avoid immediate and irreparable harm.  The Debtors submit that facts

set forth herein demonstrate that the relief requested is necessary to avoid immediate and

irreparable harm to the Debtors and, thus, Bankruptcy Rule 6003 has been satisfied.

      40.      Additionally, to the extent that any aspect of the relief sought herein

constitutes a use of property under Bankruptcy Code Section 363(b), the Debtors seek a waiver

of the fourteen-day stay under Bankruptcy Rule 6004(h).  As described above, the relief that the

Debtors seek in this Motion is immediately necessary in order for the Debtors to be able to

continue to operate their business and preserve the value of their estates.  The Debtors thus

submit that the requested waiver of the fourteen-day stay imposed by Bankruptcy Rule 6004(h)

is appropriate.

## NOTICE

      41.      Notice of this Motion will be given to: (a) the United States Trustee for the

District of Delaware; (b) counsel to the Debtors' postpetition secured lender; (c) counsel to Shell

Western Exploration and Production, Inc., the Debtors' prepetition lender; (d) counsel to the

Indenture Trustee under the 2016 Senior Secured Notes (as defined in the Blackwell Declaration);

(e) the Securities and Exchange Commission; (f) counsel to the Environmental Protection

Agency; (g) the banking institutions at which the Bank Accounts are held; (h) counsel to the ad

hoc group of holders of 2016 Senior Secured Notes; (i) the parties included on the Debtors'

consolidated list of thirty (30) largest unsecured creditors; (j) the United States Attorney General

for the District of Delaware; and (k) the Attorneys General for the states in which the Debtors

conduct business (collectively, the "**Initial Notice Parties**").  The Debtors submit that, under the

circumstances, no other or further notice is required.

      42.      A copy of the Motion is available on the Court's website:

www.deb.uscourts.gov.  Additional copies of the Motion are available for free on the website of

the Debtors' proposed claims and noticing agent, Prime Clerk LLC, at

http://cases.primeclerk.com/gfes, or can be requested by calling (855) 410-7359 from within the

United States or +1 (646) 795-6960 if calling from outside the United States.

     **WHEREFORE**, the Debtors respectfully request that the Court enter an order,

substantially in the form attached hereto as <u>Exhibit A</u>, granting the relief requested in the Motion

and such other and further relief as may be just and proper.

Dated:  October 27, 2013
Wilmington, Delaware

     Respectfully Submitted,

     Michael R. Nestor (No. 3526)
Kara Hammond Coyle (No. 4410)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

     -and-

     Josef S. Athanas
Caroline A. Reckler
Sarah E. Barr
Matthew L. Warren
LATHAM & WATKINS LLP
Suite 5800
233 South Wacker Drive
Chicago, IL 60606
Telephone:  (312) 876-7700
Facsimile:   (312) 993-9767

     Proposed Counsel for Debtors and Debtors in Possession

01:14282707.4
HN\1066589.12

## ATTACHMENT 1

### Summary of Cash Management System

**Green Field Active Accounts**



| **Operating Account** |
| Account No. ******2183 |
| Regions |

| **Payroll Account** | **Benefits Account** |
| Account No. ******2248 | Account No. ******2388 |
| Regions | Regions |
| Zero-balance | |



| Turbine Powered Technology, LLC ("TPT") |

| Turbine Generation Services, LLC ("TGS") |

| **Contract Account** |
| Account No. ******5075 |
| Chase |

| **Collateral Account** |
| Account No. ******0595 |
| Chase |

| **Green Field Inactive Accounts** |
| • Chase Account No. ******9226 |
| • Chase Account No. ******9234 |
| • Chase Account No. ******2221 |
| • Regions Account No. ******2236 |
| |
| **Hub City Tools, Inc. Inactive Account** |
| Chase Account No. ******3609 |

## **ATTACHMENT 2**

### **Schedule of Bank Accounts**

| Financial Institution | Address | Account Number(s) | Account Holder | Account Type |
|---|---|---|---|---|
| **Active Accounts** | | | | |
| Regions Bank | 400 Poydras St., Ste 2200 New Orleans, LA 70130 | *****2183 | Green Field Energy Services, Inc. | Operating Account |
| Regions Bank | 400 Poydras St., Ste 2200 New Orleans, LA 70130 | *****2248 | Green Field Energy Services, Inc. | Payroll Account |
| Regions Bank | 400 Poydras St., Ste 2200 New Orleans, LA 70130 | *****2388 | Green Field Energy Services, Inc. | Benefits Account |
| JPMorgan Chase Bank | 600 Jefferson St, 3rd Floor Lafayette, LA 70501 | *****5075 | Green Field Energy Services, Inc. | Contract Account |
| JPMorgan Chase Bank | 600 Jefferson St, 3rd Floor Lafayette, LA 70501 | *****0595 | Green Field Energy Services, Inc. | Collateral Account |
| **Inactive Accounts** | | | | |
| JPMorgan Chase Bank | 600 Jefferson St, 3rd Floor Lafayette, LA 70501 | *****9226 | Green Field Energy Services, Inc. | Operating |
| JPMorgan Chase Bank | 600 Jefferson St, 3rd Floor Lafayette, LA 70501 | *****9234 | Green Field Energy Services, Inc. | Payroll |
| Regions Bank | 400 Poydras St., Ste 2200 New Orleans, LA 70130 | *****2221 | Green Field Energy Services, Inc. | Customer Deposit |
| Regions Bank | 400 Poydras St., Ste 2200 New Orleans, LA 70130 | *****2236 | Green Field Energy Services, Inc. | Capital Expenditures |
| JPMorgan Chase Bank | 600 Jefferson St, 3rd Floor Lafayette, LA 70501 | *****3609 | Hub City Tools, Inc. | Operating |