IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------ x
In re: : Chapter 11
:
GREEN FIELD ENERGY SERVICES, INC., et : Case No. 13-12783 (_____)
al., :
: Joint Administration Requested
Debtors.[1] :
------------------------------------------------------------ x

## MOTION OF DEBTORS FOR ORDER UNDER
## 11 U.S.C. §§ 105(a), 363(b), 506(a), 507(a)(8), AND 541 AND FED. R. BANKR. P. 6003
## AUTHORIZING PAYMENT OF PREPETITION TAXES AND FEES

The debtors and debtors in possession in the above-captioned cases (collectively, the "**Debtors**") hereby move (the "**Motion**") for entry of an order under Sections 105(a), 363(b), 506(a), 507(a)(8), and 541 of Title 11 of the United States Code (the "**Bankruptcy Code**") and Rule 6003 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), authorizing payment, in the Debtors' sole discretion, of prepetition taxes and fees owing to certain federal, state, and local governmental units. In support of the Motion, the Debtors rely upon and incorporate by reference the *Declaration of Earl J. Blackwell in Support of Chapter 11 Petitions and First Day Motions,* filed with the Court concurrently herewith (the "**Blackwell Declaration**"). In further support of the Motion, the Debtors, by and through their undersigned counsel, respectfully represent:

### JURISDICTION

1. This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court*

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax or organizational identification number, are: Green Field Energy Services, Inc. (2539); Hub City Tools, Inc. (2827); and Proppant One, Inc. (6035). The above-captioned Debtors' mailing address is 4023 Ambassador Caffery Parkway, Suite #200, Lafayette, LA 70503.

01:14282664.3
HN\1066593.9

*for the District of Delaware* dated as of February 29, 2012. This is a core proceeding under 28 U.S.C. § 157(b), and the Court may enter a final order consistent with Article III of the United States Constitution. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are Bankruptcy Code Sections 105(a), 363(b), 506(a), 507(a)(8), and 541. Such relief is warranted under Bankruptcy Rule 6003.

## BACKGROUND

2. On the date hereof (the "**Petition Date**"), the Debtors filed voluntary petitions in this Court commencing cases for relief under Chapter 11 of the Bankruptcy Code (the "**Chapter 11 Cases**"). The factual background regarding the Debtors, including their business operations, their capital and debt structures, and the events leading to the filing of the Chapter 11 Cases, is set forth in detail in the Blackwell Declaration and is fully incorporated herein by reference.

3. The Debtors continue to manage and operate their business as debtors in possession pursuant to Bankruptcy Code Sections 1107 and 1108. No trustee or examiner has been requested in the Chapter 11 Cases, and no committees have yet been appointed.

## RELIEF REQUESTED

4. By this Motion, the Debtors seek entry of an order pursuant to Bankruptcy Code Sections 105(a), 363(b), 506(a), 507(a)(8), and 541 and Bankruptcy Rule 6003, authorizing them to pay, in their sole discretion, but subject to the terms and provisions of any cash collateral and/or postpetition financing agreement made by the Debtors or order entered by the Court, any prepetition tax and fee obligations including, without limitation, sales, use, and excise taxes; income or gross receipts taxes; franchise taxes; net worth taxes; real and personal property taxes; licensing fees, business license, registration, commercial activity or other business, occupation or regulatory taxes or fees; any other types of taxes, fees or charges; and any penalty, interest or

similar charges (collectively, the "**Taxes and Fees**")[2] owing to those federal, state, and local governmental entities listed on Exhibit A attached hereto (the "**Governmental Units**").

5. For the avoidance of doubt, the requested authorization would be completely discretionary, allowing the Debtors, among other things, to elect to pay Taxes and Fees as to which their officers and directors may have personal liability in the event of nonpayment by the Debtors, before other Taxes and Fees; would be without prejudice to the Debtors' rights to contest the amounts of any Taxes and Fees on any grounds they deem appropriate; and would extend to the payment of Taxes and Fees relating to tax audits that have been completed, are in progress or arise from prepetition periods.

6. In addition, the Debtors request that the Court authorize and direct the Debtors' banks to receive, process, honor, and pay all prepetition and postpetition checks and fund transfers on account of the Taxes and Fees that had not been honored and paid as of the Petition Date, and authorize the Debtors' banks and financial institutions to rely on the representations of the Debtors as to which checks and fund transfers should be honored and paid in respect of Taxes and Fees, provided that sufficient funds are on deposit in the applicable accounts to cover such payments.

7. As set forth below, the Taxes and Fees at issue are appropriate for payment to the extent that they are priority or secured claims that are payable in full or,

---

[2] The Debtors incur various taxes related to their employees and are separately required to withhold certain amounts from each employee's paycheck on account of things such as social security and FICA. Such payroll, withholding and other employee-related tax obligations are separately addressed in the *Motion of Debtors for Order Under 11 U.S.C. §§ 105(a), 363(b), 363(c), 507(a), 541, 1107(a), and 1108 and Fed. R. Bankr. P. 6003 (I) Authorizing Payment of Certain Prepetition Employee Obligations, Including Compensation, Benefits, Expense Reimbursements and Related Obligations, (II) Confirming Right to Continue Employee Programs on Postpetition Basis, (III) Authorizing Payment of Withholding and Payroll-Related Taxes, (IV) Authorizing Payment of Prepetition Claims Owing to Administrators of, or Third Party Providers Under, Employee Programs, (V) Authorizing Payment of Independent Contractor Obligations, and (VI) Directing Banks to Honor Prepetition Checks and Fund Transfers For Authorized Payments* which is contemporaneously filed herewith.

alternatively, under the personal liability theory or the doctrine of necessity. By paying the Taxes and Fees in the ordinary course of business, as and when due, the Debtors will avoid unnecessary disputes with Governmental Units – and expenditures of time and money resulting from such disputes – over myriad issues that are typically raised by such units as they attempt to enforce their rights to collect Taxes and Fees.

## BASIS FOR RELIEF

8. Prior to the Petition Date, the Debtors incurred obligations to federal, state, and local governments. As of the week before the Petition Date, the Debtors owe approximately $3.85 million on account of past-due Taxes and Fees. In addition, certain Taxes and Fees attributable to the prepetition period are not yet due. Certain prepetition Taxes and Fees will not be due until the applicable monthly, quarterly or annual payment dates – in some cases immediately and in others not until next year. The Debtors estimate that Taxes and Fees in the approximate amount of $243,000 will come due during the next 30 days and that approximately $5 million in Taxes and Fees will come due by the end of 2013, inclusive of the prepetition amounts due.

9. The continued payment of the Taxes and Fees on their normal due dates, as well as payment of overdue Taxes and Fees as soon as possible, will ultimately preserve the resources of the Debtors' estates, thereby promoting their prospects for a successful Chapter 11 process. If such obligations are not paid, the Debtors will be required to expend time and incur attorneys' fees and other costs to resolve a multitude of issues related to such obligations, each turning on the particular terms of each Governmental Unit's applicable laws, including whether (a) the obligations are priority, secured or unsecured in nature, (b) they are proratable or fully prepetition or postpetition, and (c) penalties, interest, attorneys' fees, and costs can continue to

accrue on a postpetition basis, and, if so, whether such penalties, interest, attorneys' fees, and costs are priority, secured or unsecured in nature.

10. Nonpayment or delayed payment of Taxes and Fees may also subject the Debtors to efforts by certain Governmental Units, whether or not permissible under the Bankruptcy Code, to revoke the Debtors' licenses and other privileges either on a postpetition or postconfirmation basis. Moreover, certain of the Taxes and Fees may be considered to be obligations as to which the Debtors' officers and directors may be held directly or personally liable in the event of nonpayment. In such events, collection efforts by the Governmental Units would provide obvious distractions to the Debtors and their officers and directors in their efforts to bring the Chapter 11 Cases to an expeditious conclusion.

11. Certain of the Governmental Units have not been paid or have been sent checks and/or fund transfers for Taxes and Fees that may or may not have been presented or cleared as of the Petition Date. Similarly, in other cases, Taxes and Fees have accrued or are accruing, or are subject to audit or review, but have not yet become due and payable and, thus, any checks or fund transfers will be issued on a postpetition basis. Accordingly, the Debtors seek entry of an order authorizing and directing their banks and other financial institutions to receive, process, honor, and pay all prepetition and postpetition checks and fund transfers issued by the Debtors to the Governmental Units in payment of Taxes and Fees that had not been honored and paid as of the Petition Date, and authorizing the Debtors' banks and financial institutions to rely on the representations of the Debtors as to which checks and fund transfers should be honored and paid in respect of Taxes and Fees, provided that sufficient funds are on deposit in the applicable accounts to cover such payments.

## APPLICABLE AUTHORITY

12. To the extent that the Taxes and Fees are priority claims pursuant to Bankruptcy Code Section 507(a)(8), or secured claims pursuant to Bankruptcy Code Section 506(a), their payment should be authorized on the basis that they are required to be paid in full in any event as a condition to satisfying the plan confirmation requirements contained in Bankruptcy Code Section 1129 or in any event that they would be entitled to payment before any prepetition non-priority unsecured claim.

13. If the Taxes and Fees are deemed priority claims, Bankruptcy Code Section 1129(a)(9)(C) requires that they be paid no less favorably than through regular installment payments, over a period not exceeding five (5) years after the Petition Date, of a total value as of the effective date of the plan equal to the allowed amount of each such claim. See 11 U.S.C. § 1129(a)(9)(C).

14. If the Taxes and Fees are deemed secured claims that would (but for such secured status) fall under the rubric of Bankruptcy Code Section 507(a)(8), Bankruptcy Code Section 1129(a)(9)(D) requires that they be paid no less favorably than through regular installment payments, over a period not exceeding five (5) years after the Petition Date, of a total value as of the effective date of the plan equal to the allowed amount of each such claim. See 11 U.S.C. § 1129(a)(9)(D) (referring back to 11 U.S.C. § 1129(a)(9)(C)). Otherwise, Bankruptcy Code Section 1129(b)(2)(A) requires that they be satisfied through deferred cash payments totaling at least the allowed amount of each such claim, of a value, as of the effective date of the plan, equal to the value of the collateral securing the claim, with a continuation of the liens against the collateral; or if the collateral is to be sold, that the lien securing the claim attach to the proceeds of sale; or that the holder realize the indubitable equivalent of the claim. See 11 U.S.C. § 1129(b)(2)(A); see also Federal Home Loan Mortgage Corp. v. Bugg (In re Bugg), 172 B.R.

781, 785 (E.D. Pa. 1994) ("The 'fair and equitable' standard requires that a secured claim holder retain its lien and receive deferred cash payments totalling [sic] at least the allowed amount of the claimant's secured claim and a present value equal to the value of its collateral.").

15. Because of the likelihood that the vast majority of the Taxes and Fees constitute either priority claims under Bankruptcy Code Section 507(a)(8) or secured claims under Bankruptcy Code Section 506(a), the Debtors' payment of the Taxes and Fees now, in all likelihood, will affect only the timing of the payments and not the amounts to be received by the Governmental Units. Moreover, by paying legitimate tax claims now, the Debtors will avoid any unnecessary fees, interest or penalties that might otherwise be asserted. Other creditors and parties in interest, therefore, will not be prejudiced if the relief sought herein is granted by this Court.

16. Alternatively, authorization to pay the Taxes and Fees is appropriate under the "doctrine of necessity," which is grounded in Bankruptcy Code Section 105(a). Section 105(a) provides that the Court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). The purpose of this section is to grant bankruptcy courts the authority to take actions necessary to exercise their power under the Bankruptcy Code.

17. The doctrine of necessity is a well-settled doctrine that permits a bankruptcy court to authorize payment of certain prepetition claims prior to the completion of the reorganization process where the payment of such claims is necessary to the reorganization. See In re Just for Feet, Inc., 242 B.R. 821, 826 (D. Del. 1999) (stating that where the debtor "cannot survive" absent payment of certain prepetition claims, the doctrine of necessity should be invoked to permit payment and thereafter approving payment of key inventory suppliers'

prepetition claims when such suppliers could destroy debtor's business by refusing to deliver new inventory on eve of debtor's key sales season)[3]; see also In re Columbia Gas Sys., Inc., 171 B.R. 189, 191-92 (Bankr. D. Del. 1994) (reiterating court's own statement in a prior ruling that "[i]n the Third Circuit the law is clear that to justify payment of one class of pre-petition creditors in advance of a confirmed plan, the debtor must show that payment is essential to the continued operation of the business."); In re Sharon Steel Corp., 159 B.R. 730, 736 (Bankr. W.D. Pa. 1993) ("The Third Circuit has adopted the 'necessity of payment' doctrine."); In re NVR L.P., 147 B.R. 126, 127 (Bankr. E.D. Va. 1992) ("[T]he court can permit pre-plan payment of a pre-petition obligation when essential to the continued operation of the debtor."); In re Eagle-Picher Indus., Inc., 124 B.R. 1021, 1023 (Bankr. S.D. Ohio 1991) ("[T]o justify payment of a pre-petition unsecured creditor, a debtor must show that the payment is necessary to avert a serious threat to the Chapter 11 process.").

18.     This Court may also authorize the Debtors to pay Taxes and Fees under Bankruptcy Code Section 363(b), which provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Courts have indicated that the use of property of the estate outside of the ordinary course of business is proper where the debtor in possession has articulated "some business justification, other than the mere appeasement of major creditors." In re Ionosphere

---

[3] The Court's power to utilize the doctrine of necessity in chapter 11 cases derives from the Court's inherent equity powers and its statutory authority to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). The United States Supreme Court first articulated the doctrine of necessity over a century ago, in Miltenberger v. Logansport Ry. Co., 106 U.S. 286 (1882), in affirming the authorization by the lower court of the use of receivership funds to pay pre-receivership debts owed to employees, vendors and suppliers, among others, when such payments were necessary to preserve the receivership property and the integrity of the business in receivership. See id. at 309-14. The modern application of the doctrine of necessity is largely unchanged from the Court's reasoning in Miltenberger. See In re Lehigh & New Eng. Ry. Co., 657 F.2d 570, 581-82 (3d Cir. 1981) ("[I]n order to justify payment under the 'necessity of payment' rule, a real and immediate threat must exist that failure to pay will place the continued operation of the [debtor] in serious jeopardy.").

Clubs, Inc., 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989); see also Institutional Creditors of Cont'l Airlines, Inc. v. Cont'l Airlines, Inc. (In re Cont'l Airlines, Inc.), 780 F.2d 1223, 1226 (5th Cir. 1986) (holding that Bankruptcy Code Section 363(b) requires that "there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business"); Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1071 (2d Cir. 1983) ("[A] judge determining a § 363(b) application [must] expressly find . . . a good business reason to grant such an application."); Dai-Ichi Kangyo Bank, Ltd.v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.), 242 B.R. 147 (D. Del. 1999) ("In determining whether to authorize the use, sale or lease of property of the estate under [Section 363], courts require the debtor to show that a sound business purposes justified such actions.").

19. The relief requested herein easily satisfies the foregoing standards. Failure to pay the Taxes and Fees to the Governmental Units in full and on time, thereby risking the cessation of normal relations between the Governmental Units and the Debtors, will make these estates worse off than they will be having paid the Taxes and Fees. It is in the best interest of the Debtors' estates that the Taxes and Fees be paid on time so as to avoid administrative difficulties. Failure to timely pay, or a precautionary withholding by the Debtors of payment of, the Taxes and Fees may cause the Governmental Units to take precipitous action, including a marked increase in state audits, a flurry of lien filings and significant administrative maneuvering at the expense of the Debtors' time and resources. Prompt and regular payment of the Taxes and Fees will avoid this unnecessary governmental action.

20. Certain of the Taxes and Fees may constitute so-called "trust fund" taxes, which are required to be collected from third parties and held in trust for payment to the

Governmental Units. Such taxes are not considered property of the estates under Bankruptcy Code Section 541(d). See Begier v. IRS, 496 U.S. 53, 63-67 (1990) (trust fund taxes are not property of estate); see also City of Farrell v. Sharon Steel Corp., 41 F.3d 92, 96 (3d Cir. 1994) (withheld taxes were subject to a trust); Official Comm. Of Unsecured Creditors of the Columbia Gas transmission Corp. v. Columbia Gas. Sys. Inc. (In re Columbia Gas Sys. Inc.), 997 F.2d 1039, 1061-62 (3d Cir. 1993) (refunds required to be collected by federal law created trust fund that was not property of the debtor's estate); Shank v. Wash. State Dep't of Revenue, Excise Tax Div. (In re Shank), 792 F.2d 829, 830 (9th Cir. 1986) (sales tax required by state law to be collected by sellers from their customers is "trust fund" tax); DeChiaro v. N.Y. State Tax Comm'n, 760 F.2d 432, 433-34 (2d Cir. 1985) (same); In re Al Copeland Enters., Inc., 133 B.R. 837, 841-42 (Bankr. W.D. Tex. 1991) (debtor obligated to pay Texas sales taxes plus interest because such taxes were "trust fund" taxes), aff'd, 991 F.2d 233 (5th Cir. 1993). The Debtors, therefore, arguably have no equitable interest in the Taxes and Fees that are trust fund taxes and are obligated to pay over the collected amounts.

21. Additionally, under the laws of many states, officers and directors may be held directly or personally liable for the nonpayment of certain types of taxes. It is in the best interest of the Debtors' estates and consistent with the reorganization policy of the Bankruptcy Code to eliminate the possibility that officers and directors will become subject to time-consuming and potentially damaging distractions.

22. The Chapter 11 Cases are uniquely complicated due to the nature of the Debtors' business, and the Debtors' focus should be on addressing their operational and financial issues in a manner that will maximize recoveries. In this context, the payment of the Taxes and Fees is insignificant and will have no meaningful effect on the recoveries of creditors in the

Chapter 11 Cases, particularly in view of the priority or secured status of a significant portion of such obligations. Moreover, the payment amount will likely be offset in no small part by the amount of postpetition resources that the Debtors will conserve by obviating the need to spend time and money to address disputes with Governmental Units that are unnecessary and wasteful of the resources of the Debtors and this Court.

23. The relief requested in this Motion is similar to relief granted by numerous courts, including this court in other chapter 11 cases in this district. See, e.g., In re A123 Sys., Inc., Case No. 12-12859 (KJC) (Bankr. D. Del. Oct. 18, 2012); In re Vertis Holdings, Inc., Case No. 12-12821 (CSS) (Bankr. D. Del. Oct. 12, 2012); In re WP Steel Venture LLC, Case No. 12-11661 (KJC) (Bankr. D. Del. June 1, 2012); In re Traffic Control and Safety Corp., Case No. 12-11287 (KJC) (Bankr. D. Del. Apr. 23, 2012); In re AES E. Energy, Case No. 11-14138 (KJC) (Bankr. D. Del. Jan. 30, 2012); In re Graceway Pharm., LLC, Case No. 11-13036 (PJW) (Bankr. D. Del. Sept. 30, 2011); In re Dallas Stars, L.P., Case No. 11-12935 (PJW) (Bankr. D. Del. Sept. 19, 2011); In re NewPage Corp., Case No. 11-12804 (KG) (Bankr. D. Del. Sept. 8, 2011); In re Jackson Hewitt Tax Service, Inc., Case No. 11-11587 (MFW) (Bankr. D. Del. June 8, 2011); In re Indianapolis Downs, LLC, Case No. 11-11046 (BLS) (Bankr. D. Del. Apr. 8, 2011). The Debtors submit that the present circumstances warrant similar relief in the Chapter 11 Cases.

## WAIVER OF BANKRUPTCY RULES

24. Pursuant to Bankruptcy Rule 6003, the Court may grant relief regarding a motion to pay all or part of a prepetition claim within twenty-one (21) days after the Petition Date if the relief is necessary to avoid immediate and irreparable harm. See Fed. R. Bankr. P. 6003. Based on the foregoing, the Debtors submit that they have satisfied the requirements of

Bankruptcy Rule 6003 to support immediate payment of prepetition obligations related to the Taxes and Fees.

25. To the extent that any aspect of the relief sought herein constitutes a use of property under Bankruptcy Code Section 363(b), the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the fourteen (14) day stay under Bankruptcy Rule 6004(h). As described above, the relief that the Debtors seek in this Motion is immediately necessary in order for the Debtors to be able to continue to operate their business and preserve the value of their estates. The Debtors respectfully request that the Court waive the notice requirements imposed by Bankruptcy Rule 6004(a) and the fourteen (14) day stay imposed by Bankruptcy Rule 6004(h), as the exigent nature of the relief sought herein justifies immediate relief.

## NOTICE

26. Notice of this Motion will be given to: (a) the United States Trustee for the District of Delaware; (b) counsel to the Debtors' postpetition secured lender; (c) counsel to Shell Western Exploration and Production, Inc., the Debtors' prepetition lender; (d) counsel to the Indenture Trustee under the 2016 Senior Secured Notes (as defined in the Blackwell Declaration); (e) the Securities and Exchange Commission; (f) counsel to the Environmental Protection Agency; (g) the Governmental Units; (h) counsel to the ad hoc group of holders of 2016 Senior Secured Notes; (i) the parties included on the Debtors' consolidated list of thirty (30) largest unsecured creditors; (j) the United States Attorney General for the District of Delaware; and (k) the Attorneys General for the states in which the Debtors conduct business (collectively, the "**Initial Notice Parties**"). The Debtors submit that, under the circumstances, no other or further notice is required.

27.     A copy of the Motion is available on the Court's website: www.deb.uscourts.gov. Additional copies of the Motion are available for free on the website of the Debtors' proposed claims and noticing agent, Prime Clerk LLC, at http://cases.primeclerk.com/gfes, or can be requested by calling (855) 410-7359 from within the United States or +1 (646) 795-6960 if calling from outside the United States.

WHEREFORE, the Debtors respectfully request that the Court enter the proposed order, substantially in the form attached hereto as <u>Exhibit B</u>, granting the relief requested in the Motion and such other and further relief as may be just and proper

Dated: October 27, 2013
Wilmington, Delaware

Respectfully Submitted,

_____
Michael R. Nestor (No. 3526)
Kara Hammond Coyle (No. 4410)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

-and-

Josef S. Athanas
Caroline A. Reckler
Sarah E. Barr
Matthew L. Warren
LATHAM & WATKINS LLP
Suite 5800
233 South Wacker Drive
Chicago, IL 60606
Telephone: (312) 876-7700
Facsimile: (312) 993-9767

Proposed Counsel for Debtors and Debtors in Possession