# EXHIBIT C

**Proposed Final Order**

01:14282557.3
HN\1066570.10

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

```
------------------------------------------------------ x
In re:                                                 :  Chapter 11
                                                       :
GREEN FIELD ENERGY SERVICES, INC., et                  :  Case No. 13-12783 (_____)
al.,                                                   :
                                                       :  Jointly Administered
              Debtors.¹                                :
------------------------------------------------------ x  Docket Ref. Nos.
```

### FINAL ORDER (I) UNDER 11 U.S.C. §§ 105(a), 363(b), 364, 1107(a) AND 1108 AND FED. R. BANKR. P. 6003 AUTHORIZING PAYMENT OF PREPETITION CLAIMS OF CERTAIN CRITICAL VENDORS AND SERVICE PROVIDERS AND (II) UNDER 11 U.S.C. §§ 105(a), 363(c) AND 503(b)(1)(A) AND FED. R. BANKR. P. 6003 CONFIRMING ADMINISTRATIVE EXPENSE PRIORITY STATUS OF DEBTORS' UNDISPUTED OBLIGATIONS FOR POSTPETITION DELIVERY OF GOODS AND SERVICES

Upon the motion (the "**Motion**")[2] of the Debtors for an order (i) under Bankruptcy Code Sections 105(a), 363(b), 364, 1107(a) and 1108 and Bankruptcy Rule 6003, authorizing, but not directing, the Debtors to pay the prepetition fixed, liquidated and undisputed claims of certain critical vendors and service providers, (ii) under Bankruptcy Code Sections 105, 363(c) and 503(b)(1)(A), confirming the administrative expense priority status and authorizing payment of the Debtors' undisputed obligations for the postpetition delivery of goods and provision of services and (iii) granting certain related relief; and the Court having reviewed the Motion and the Blackwell Declaration; and the Court having determined that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors and other parties

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax or organizational identification number, are: Green Field Energy Services, Inc. (2539); Hub City Tools, Inc. (2827); and Proppant One, Inc. (6035). The above-captioned Debtors' mailing address is 4023 Ambassador Caffery Parkway, Suite #200, Lafayette, LA 70503.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

in interest; and it appearing that proper and adequate notice of the Motion has been given and that no other or further notice is necessary; and it appearing that this Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference from the United States District Court for the District of Delaware dated as of February 29, 2012; and it appearing that this Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and the Court may enter a final order consistent with Article III of the United States Constitution; and it appearing that venue of this proceeding and this Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and upon the record herein; and after due deliberation thereon; and good and sufficient cause appearing therefor, it is hereby

**ORDERED, ADJUDGED, AND DECREED THAT:**

1. The Motion is GRANTED on a final basis as set forth herein.

2. The Debtors are authorized, in their sole discretion, but subject to the terms and provisions hereof, to pay the Critical Vendor Claim of any Critical Vendor if the Debtors have determined that one or more of the criteria in (a) through (h) apply: (a) the vendor or service provider is a sole-source provider; (b) the Debtors receive advantageous pricing or other terms from the vendor or service provider such that a postpetition replacement would result in significantly higher costs; (c) quality requirements, geographic constraints, customizations, or other specifications prevent the Debtors from obtaining the necessary goods or services from alternative sources within a reasonable timeframe; (d) if the vendor is not a sole source provider, the Debtors have insufficient inventory of goods or in-house capabilities to continue operations while a replacement is found and put into place; (e) the vendor or service provider is contractually obligated to continue to provide goods and services but the Debtors cannot afford the time and expense of an enforcement action if the vendor or service provider wrongfully

refuses to perform, and in fact refuses to perform; (f) the vendor or service provider has possession of goods, products, or other deliverables as to which they are able to claim a possessory lien and, thus, to decline to deliver such items to the Debtors without payment; (g) the vendor or service provider is in control of systems or data used in the daily operation of the business and can easily shutdown or refuse access to such systems or data; and (h) the vendors' prepetition claim is entitled to administrative expense status under Bankruptcy Code section 503(b)(9); and (i) the vendor or service provider meeting any of the aforementioned standards in (a) through (h) refuses to, demands pricing or trade terms that constitute an effective refusal to, or is financially unable to, provide goods or services to the Debtors on a postpetition basis if the prepetition balances are not paid.  Payments on account of Critical Vendor Claims shall not exceed $1 million in the aggregate without further order of this Court.

3. The Debtors are authorized, but not directed, to undertake appropriate efforts to cause Critical Vendors to enter into a Trade Agreement with the Debtors substantially similar to that annexed as Exhibit A to the Motion, as a condition of payment of each such Critical Vendor's Critical Vendor Claims.

4. The Debtors are authorized, in their sole discretion, to make payments on account of a Critical Vendor Claim, subject to the other limits set forth herein, even in the absence of a Trade Agreement if the Debtors determine, in their business judgment, that failure to pay such Critical Vendor Claim will result in harm to the Debtors' business operations.

5. If a Critical Vendor under a Trade Agreement refuses to supply goods and/or services to the Debtors on Customary Trade Terms or Minimum Credit Terms (or such other terms as are agreed by the parties) following receipt of payment on its Critical Vendor Claim or otherwise fails to comply with any Trade Agreement entered into between such Critical Vendor

and the Debtors, then the Debtors are hereby authorized to take any and all actions necessary to return the parties to the positions they held immediately prior to entry of this Order with respect to all prepetition claims, including but not limited to: (a) declaring that any Trade Agreement between the Debtors and such Critical Vendor is terminated; (b) declaring that payments made to such Critical Vendor on account of its Critical Vendor Claims shall be deemed to have been made in payment of then-outstanding (or subsequently accruing) postpetition claims of such Critical Vendor without further order of the Court or action by any person or entity; and (c) recovering or seeking disgorgement of any payment made to such Critical Vendor on account of its Critical Vendor Claims to the extent that such payments exceed the postpetition claims of such Critical Vendor, without giving effect to any rights of setoff, claims, provision for payment of reclamation or trust fund claims, or other defense. Nothing herein shall constitute a waiver of the Debtors' rights to seek damages or other appropriate remedies against any breaching Critical Vendor.

6. Notwithstanding the foregoing, the Debtors may, in their sole discretion, reinstate a Trade Agreement if the underlying default under the Trade Agreement is fully cured by the Critical Vendor not later than five (5) business days following the Debtors' notification to the Critical Vendor of such default had occurred; or the Debtors, in their discretion, reach a favorable alternative agreement with the Critical Vendor.

7. The amount of each Critical Vendor's Critical Vendor Claims set forth in connection with a Trade Agreement shall be used only for purposes of determining such Critical Vendor's claim under this Order and shall not be deemed a claim allowed by the Court, and the rights of all interested persons to object to such claim shall be fully preserved until further order

of the Court. Further, signing a Trade Agreement containing a claim amount for purposes of this Order shall not excuse such Critical Vendor from filing a proof of claim in these cases.

8. No claimant who receives payment on account of a Critical Vendor Claim is permitted to file or perfect a Lien on account of such claim, and any such claimant shall take all necessary action to remove any existing Lien relating to such claim, even if the Lien is against property of a non-Debtor. Additionally, no claimant who receives payment on account of a Critical Vendor Claim is permitted to file a claim for reclamation or a claim under Bankruptcy Code Section 503(b)(9), regardless of the statute or other legal authority upon which such claim may be asserted, related in any way to any remaining prepetition amounts allegedly owed to the Critical Vendor by the Debtors.

9. The Debtors' undisputed obligations to the Suppliers under Outstanding Orders arising from (a) shipments of goods delivered to and accepted by the Debtors on and after the Petition Date and (b) provision of services to the Debtors on and after the Petition Date at the Debtors' request are hereby granted administrative expense priority status pursuant to Bankruptcy Code Section 503(b)(1)(A), and the Debtors are authorized to pay such obligations in the ordinary course of business.

10. Nothing in this Order shall authorize the Debtors to pay any amount to the Suppliers for goods received or services performed where title to the underlying goods was transferred to the Debtors prior to the Petition Date.

11. The authority granted by this Order to pay certain claims shall not be construed as: (a) an admission by the Debtors as to the validity of any claim against the Debtor or the existence of any lien against the Debtors' properties; (b) a waiver of the Debtors' rights to dispute any claim or lien on any grounds; (c) a promise by the Debtors to pay any claim; (d) an implication

or admission by the Debtors that any particular claim would constitute a Critical Vendor Claim; (e) an assumption or rejection of any executory contract or unexpired lease pursuant to Bankruptcy Code Section 365; or (f) otherwise affect the Debtors' rights under Bankruptcy Code Section 365 to assume or reject any executory contract with any party subject to this Order.

12. None of the Debtors or their officers, directors, attorneys or agents shall have any liability on account of any decision by the Debtors not to pay a Critical Vendor Claim, and nothing contained in this order shall be deemed to increase, reclassify, elevate to an administrative expense status or otherwise affect the Critical Vendor Claims to the extent they are not paid.

13. Nothing in the Motion or this Order, nor the Debtors' implementation of the relief granted in this Order: shall be deemed to modify or waive any of the Debtors' rights with respect to goods and services requested or received from the Critical Vendors or the Suppliers, including the Debtors' rights to (a) cancel a purchase order (including any Outstanding Order), (b) decline the acceptance of goods and services, (c) return any defective, nonconforming or unacceptable good or (d) contest the amount of any invoice or claims on any grounds.

14. The Debtors' banks and financial institutions shall be and hereby are authorized and directed to receive, process, honor and pay all prepetition and postpetition checks and fund transfers on account of obligations owed to (a) Critical Vendors and (b) Suppliers on account of Outstanding Orders, provided that sufficient funds are on deposit in the applicable accounts to cover such payments. The Debtors' banks and other financial institutions are authorized to rely on the representations of the Debtors as to which checks and fund transfers should be honored and paid pursuant to this Order.

15. Notwithstanding the relief granted herein, no action by any Debtor is permitted to the extent that it would be inconsistent with, or prohibited by, any cash collateral and/or postpetition financing order entered by this Court or any agreements approved thereby.

16. Notwithstanding Bankruptcy Rule 6004(h), this Order shall be effective and enforceable immediately upon entry hereof.

17. Bankruptcy Rule 6003(b) has been satisfied because the relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors.

18. The Debtors are hereby authorized to take such actions and to execute such documents as may be necessary to implement the relief granted by this Order.

19. This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation and/or interpretation of this Order.

Dated: _____, 2013
Wilmington, Delaware

_____
UNITED STATES BANKRUPTCY JUDGE