## Exhibit C

**Bridge Note**

HN\1100136.2

**BRIDGE NOTE**

$15,000,000.00                                                                                          New York, New York
                                                                                                        October [29], 2013

      For value received, on December 11, 2013 (the "Maturity Date"), each of Green Field Energy Services, Inc., a Delaware corporation, as debtor-in-possession ("Green Field"), Hub City Tools, Inc., a Louisiana corporation, as debtor-in-possession ("Hub City"), and Proppant One, Inc., a Delaware corporation, as debtor-in-possession ("Proppant" and together with Green Field and Hub City, each a "Borrower" and collectively, the "Borrowers"), each with an office at 4023 Ambassador Caffery Parkway, Suite #200, Lafayette, Louisiana 70503, jointly and severally promises to pay to the order of GB Credit Partners, LLC (together with its successors and assigns, "GB"), and ICON Capital, LLC (together with its successors and assigns, "ICON"), in their capacities as co-administrative agents (in such capacities, together with their respective successors and assigns, "Co-Administrative Agents" and each a "Co-Administrative Agent"), for the benefit of GB, ICON and certain other financial institutions and other entities selected by the Co-Administrative Agents from time to time (each a "DIP Lender" and collectively, the "DIP Lenders"), at such place as each Co-Administrative Agent may designate from time to time in writing, in lawful money of the United States of America in immediately available funds, the principal sum of Fifteen Million and 00/100 Dollars ($15,000,000.00) or such lesser amount as may then be the aggregate unpaid principal balance of the term loans made by the DIP Lenders to the Borrowers hereunder on the date hereof (collectively, the "Bridge Loan").

      This Bridge Note is the Bridge Note issued pursuant to that certain Interim Order (I) Authorizing Debtors to Obtain Post-Petition Financing Pursuant to 11 U.S.C. §§ 105, 361, 362, 364 and 507(b) and (II) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001(b) and (c) (the "Interim Order") which was entered by the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") on October [29], 2013 in the Chapter 11 bankruptcy cases commenced by the Borrowers in the Bankruptcy Court (the "Chapter 11 Cases") on October 27, 2013 (the "Petition Date") and is entitled to the benefit thereof and the security in the Collateral granted to the Co-Administrative Agents and the DIP Lenders described in the Interim Order. Reference is hereby made to the Interim Order for a statement of certain of the terms and conditions under which the Bridge Loan evidenced hereby is made and is to be repaid and such terms and conditions are incorporated herein by reference and shall be and remain in full force and effect independent of the Interim Order. All capitalized terms used herein but not otherwise defined shall have the meanings given to such terms in the Interim Order or the Uniform Commercial Code, as in effect from time to time in the State of New York (the "UCC"), as applicable.

      To secure the payment and performance of all of the DIP Obligations (as defined in the Interim Order), each Borrower hereby grants to the Co-Administrative Agents, for the benefit of the Co-Administrative Agents and the DIP Lenders, a continuing security interest in, a lien upon, and a right of set off against, and hereby assigns to the Co-Administrative Agents, as security, all of the Collateral (as defined in the Interim Order). This Bridge Note and the security granted pursuant hereto shall be and remain in full force and effect independent of the Interim Order.

      The Borrowers shall pay to the Co-Administrative Agents on the Maturity Date an amount sufficient to repay in full the Borrowers' indebtedness, liabilities and obligations hereunder, including without limitation, all unpaid principal, interest, fees, costs and expenses owing by Borrowers to the Co-Administrative Agents and the DIP Lenders and any other DIP Obligations.

      The Borrowers promise to pay interest on the unpaid principal balance of the Bridge Loan from time to time outstanding at a rate per annum equal to the 30 day London Interbank Offered Rate ("LIBOR") for the corresponding deposits of U.S. dollars, plus ten percent (10.00%) (the "Interest Rate"), which shall be calculated on the basis of the actual number of days elapsed in a year of 360 days and

-2-

which shall be due and payable on the last day of each one month period (each an "Interest Period"), commencing with the one month period that begins on the date hereof. LIBOR shall be determined by the Co-Administrative Agents at the start of Interest Period and shall be fixed for each Interest Period and shall be adjusted for maximum statutory reserve requirements (if any). Notwithstanding the foregoing, in the event that the Co-Administrative Agents determine that LIBOR is less than one percent (1.00%) for any Interest Period, then the Interest Rate shall be equal to eleven percent (11.00%) per annum for such Interest Period. In addition, at the election of the Co-Administrative Agents, upon the occurrence and during the continuance of an Event of Default (as hereinafter defined), all of the DIP Obligations shall bear interest at a rate per annum of three percent (3.00%) in excess of the Interest Rate (the "Default Rate") and shall be due and payable on demand of the Co-Administrative Agents.

Each of the following shall constitute an event of default under this Bridge Note (each an "Event of Default"):

(a) any Borrower fails to make any payment of principal, interest, professional and other fees or any other amounts payable hereunder, under the Fee Letter or the Interim Order when due;

(b) any Borrower fails to perform or is in default under (i) the financial covenant related to the variance to the Budget set forth in the Interim Order or (ii) any of the other covenants or obligations contained in this Bridge Note, the Fee Letter or in any other written agreement, document, instrument or certificate related hereto or thereto (collectively, the "Loan Documents") or in the Interim Order;

(c) the use, disbursement or transfer of any of the Prepetition Segregated Funds without the prior written consent of the Co-Administrative Agents;

(d) any change of control in the ownership or management of any Borrower shall occur;

(e) any event shall occur that results in the material impairment of any security interest of the Co-Administrative Agents in the Collateral, except as permitted in the Interim Order;

(f) any material provision of this Bridge Note, any other Loan Document or the Interim Order shall for any reason cease to be valid, binding and enforceable with respect to any party hereto or thereto (other than the Co-Administrative Agents and the DIP Lenders) in accordance with its terms, or any such party shall challenge the enforceability hereof or thereof, or shall assert in writing, or take any action or fail to take any action based on the assertion that any provision hereof or thereof has ceased to be or is otherwise not valid, binding or enforceable in accordance with its terms, or any security interest provided for herein, in any other Loan Documents, or in the Interim Order shall cease to be a valid and perfected first priority security interest in any of the Collateral purported to be subject thereto;

(g) any material loss with respect to the Collateral which is not covered by insurance or any material Collateral is not covered by insurance;

(h) any Borrower dissolves or suspends or discontinues doing business (to the extent such Borrower was engaged in business prior to the Petition Date), or if any Borrower is enjoined, restrained or in any way prevented by any order from continuing to conduct all or any material part of its business, other than as permitted in the Interim Order;

(i) the Bankruptcy Court shall enter any order(s) (i) amending, reversing, revoking, supplementing, altering, staying, vacating, rescinding or otherwise modifying the Interim Order

ATL 19386687v3

or any other order with respect to the Chapter 11 Cases affecting in any material respect this Bridge Note or any of the other Loan Documents, (ii) appointing a Chapter 11 trustee or an examiner in the Chapter 11 Cases with enlarged powers relating to the operation of the business of any Borrower pursuant to Section 1104 of the Bankruptcy Code, (iii) dismissing any of the Chapter 11 Cases or converting any of the Chapter 11 Cases to a case under Chapter 7 of the Bankruptcy Code, or (iv) granting relief from the automatic stay for lien or reclamation claims in the aggregate amount in excess of $250,000 on the assets of the Borrowers to permit any foreclosure upon or the reclamation of any of the Collateral;

(j) any order(s) is entered by the Bankruptcy Court approving a motion filed in the Chapter 11 Cases approving any superpriority claims aggregating an amount in excess of $250,000 in the Chapter 11 Cases (other than the Carve Out) which are *pari passu* with or senior to the claims of any of the Co-Administrative Agents or the DIP Lenders against any of the Borrowers unless after giving effect to the transactions contemplated by such motion, all of the DIP Obligations shall be paid in full in cash; or

(k) any motion shall be filed by the Borrowers in the Chapter 11 Cases (i) seeking to obtain additional financing under Section 364 of the Bankruptcy Code and to use cash collateral of the DIP Lenders under Section 363(c) of the Bankruptcy Code without the consent of the Co-Administrative Agents and the DIP Lenders that does not provide for the indefeasible repayment of the DIP Obligations in cash at the closing of such new financing, (ii) subject to the entry of the Final Order, to recover from any portions of the Collateral any costs or expenses of preserving or disposing of such Collateral under Section 506(c) of the Bankruptcy Code, or (iii) to take any other action or actions adverse to rights and remedies of the Co-Administrative Agents or the DIP Lenders hereunder or under any of the other Loan Documents or the Interim Order.

At any time that an Event of Default shall exist or shall have occurred and be continuing, (a) all of the DIP Obligations shall become immediately due and payable, without demand, notice or legal process of any kind (except as otherwise expressly provided in the Interim Order), and (b) subject to the terms of the Interim Order, the Co-Administrative Agents and the DIP Lenders may exercise any of their rights and remedies against the Borrowers or the Collateral set forth below, in the Interim Order, the UCC, other applicable law, or otherwise, including without limitation taking any of the following actions (all of which rights and remedies may be exercised without notice to or consent by any Borrower, except as such notice or consent is expressly provided for hereunder, or required in the Interim Order or by applicable law):

(i) with or without judicial process or the aid or assistance of others, enter upon any premises on or in which any of the Collateral may be located and take possession of the Collateral or complete processing, manufacturing and repair of all or any portion of the Collateral;

(ii) require any Borrower, at the expense of the Co-Administrative Agents and the DIP Lenders (any such expense to constitute a DIP Obligation), to assemble and make available to Co-Administrative Agents any part or all of the Collateral at any place and time designated by Co-Administrative Agents;

(iii) remove any or all of the Collateral from any premises on or in which the same may be located for the purpose of effecting the sale, foreclosure or other disposition thereof or for any other purpose;

(iv) collect, foreclose, receive, appropriate, setoff or realize upon any and all Collateral;

-3-

(v) transfer any Collateral into the name of a Co-Administrative Agent or that of its nominee;

(vi) sell, lease, transfer, assign, deliver or otherwise dispose of any of the Collateral at public or private sale at such prices or terms as Co-Administrative Agents may deem reasonable, for cash, upon credit or for future delivery, with the Co-Administrative Agents having the right to purchase the whole or any part of the Collateral at any such public sale, all of the foregoing being free from any right or equity of redemption of any Borrower, which right or equity of redemption is hereby expressly waived and released by Borrowers;

(vii) enforce the rights of any Borrower against any account debtor, secondary obligor or other obligor in respect of any accounts, including, without limitation, (A) notify any account debtor, secondary obligor or other obligor in respect thereof that the accounts have been assigned to Co-Administrative Agents and that Co-Administrative Agents have a security interest therein, (B) direct any account debtor, secondary obligor or other obligor to make payment of accounts directly to Co-Administrative Agents, (C) extend the time of payment of, compromise, settle or adjust for cash, credit, return of merchandise or otherwise, and upon any terms or conditions, any accounts or other obligations included in the Collateral and thereby discharge or release the account debtor, secondary obligor or other obligor in respect thereof without affecting any of the DIP Obligations, or (D) demand, collect or enforce payment of any accounts or other related obligations, but without any duty to do so, and Co-Administrative Agents and DIP Lenders shall not be liable for any failure to collect or enforce the payment thereof nor for the negligence of its agents or attorneys with respect thereto;

(viii) file any action or proceeding which Co-Administrative Agents may deem necessary or appropriate to protect and preserve the right, title and interest of the Co-Administrative Agents and the DIP Lenders in the Collateral;

(ix) apply all sums received or collected from or on account of Collateral, including the proceeds of any sales thereof, to the payment of the costs and expenses incurred in preserving and enforcing rights of the Co-Administrative Agents and the DIP Lenders, including but not limited to reasonable attorneys' fees and legal expenses, and DIP Obligations secured hereby in such order and manner as the Co-Administrative Agents in their sole discretion determine; or

(x) exercise any other rights or remedies available to Co-Administrative Agents and the DIP Lenders under the Interim Order, the UCC, applicable law or otherwise.

All rights, remedies and powers granted to Co-Administrative Agents and the DIP Lenders hereunder, under any of the other Loan Documents, the Interim Order, the UCC or other applicable law, are cumulative, not exclusive and enforceable, in the discretion of Co-Administrative Agents, alternatively, successively, or concurrently on any one or more occasions, and shall include, without limitation, the right to apply to a court of equity for an injunction to restrain a breach or threatened breach by any Borrower of this Agreement or any of the other Financing Agreements.

Borrowers shall pay to the Co-Administrative Agents without demand any deficiency after any Collateral has been disposed of and the proceeds thereof have been applied to the DIP Obligations, and Co-Administrative Agents shall account to the Borrowers for any surplus remaining thereafter and shall pay such surplus to the Borrowers.

If notice of disposition of Collateral is required by law, ten (10) days prior notice by Co-Administrative Agents to Borrowers designating the time and place of any public sale or the time after which any private sale or other intended disposition of Collateral is to be made, shall be deemed to be reasonable notice thereof and, subject to applicable law, Borrowers waive any other notice. To the extent

-4-

that applicable law imposes duties on Co-Administrative Agents or any DIP Lender to exercise remedies in a commercially reasonable manner (which duties cannot be waived under such law), each Borrower acknowledges and agrees that it is not commercially unreasonable for Co-Administrative Agents or any DIP Lender (a) to fail to incur expenses reasonably deemed significant by Co-Administrative Agents or any DIP Lender to prepare Collateral for disposition or otherwise to complete raw material or work in process into finished goods or other finished products for disposition, (b) to fail to obtain third party consents for access to Collateral to be disposed of, or to obtain or, if not required by other law, to fail to obtain consents of any Governmental Authority or other third party for the collection or disposition of Collateral to be collected or disposed of, (c) to fail to exercise collection remedies against account debtors, secondary obligors or other persons obligated on Collateral or to remove liens or encumbrances on or any adverse claims against Collateral, (d) to exercise collection remedies against account debtors and other persons obligated on Collateral directly or through the use of collection agencies and other collection specialists, (e) to advertise dispositions of Collateral through publications or media of general circulation, whether or not the Collateral is of a specialized nature, (f) to contact other persons, whether or not in the same business as any Borrower, for expressions of interest in acquiring all or any portion of the Collateral, (g) to hire one or more professional auctioneers to assist in the disposition of Collateral, whether or not the collateral is of a specialized nature, (h) to dispose of Collateral by utilizing Internet sites that provide for the auction of assets of the types included in the Collateral or that have the reasonable capability of doing so, or that match buyers and sellers of assets, (i) to dispose of assets in wholesale rather than retail markets, (j) to disclaim disposition warranties, (k) to purchase insurance or credit enhancements to insure Co-Administrative Agents or DIP Lenders against risks of loss, collection or disposition of Collateral or to provide to Co-Administrative Agents or DIP Lenders a guaranteed return from the collection or disposition of Collateral, or (l) to the extent deemed appropriate by Co-Administrative Agents, to obtain the services of other brokers, investment bankers, consultants and other professionals to assist Co-Administrative Agents in the collection or disposition of any of the Collateral. Each Borrower acknowledges that the purpose of this Section is to provide non-exhaustive indications of what actions or omissions by Co-Administrative Agents or any DIP Lender would not be commercially unreasonable in the exercise by Co-Administrative Agents or any DIP Lender of remedies against the Collateral and that other actions or omissions by Co-Administrative Agents or any DIP Lender shall not be deemed commercially unreasonable solely on account of not being indicated in this Section. Without limitation of the foregoing, nothing contained in this Section shall be construed to grant any rights to any Borrower or to impose any duties on Co-Administrative Agents or DIP Lenders that would not have been granted or imposed by this Bridge Note or by applicable law in the absence of this Section.

All payments hereunder shall be in lawful money of the United States in immediately available funds, without counterclaim or setoff and free and clear of, and without any deduction or withholding for, any taxes or other payments. All payments shall be applied first to the payment of accrued interest, and the balance on account of outstanding principal; provided, however, that after an Event of Default (as hereinafter defined), all payments will be applied to the DIP Obligations as the Co-Administrative Agents determine in their sole discretion. If any payment of principal or interest becomes due on a day on which the parties hereto are required or permitted by law to remain closed, such payment shall be made on the next succeeding day on which such parties are open, and such extensions shall be included in computing interest in connection with such payment.

Each Borrower agrees to indemnify and defend each Co-Administrative Agent, each DIP Lender and their respective affiliates, partners, directors, officers, agents and advisors (each an "Indemnitee") and hold them harmless from and against, and shall pay on demand, all losses, claims, damages, liabilities, costs and expenses (including disbursements, settlement costs and other charges and reasonable attorneys fees and legal expenses of counsel) relating to the Bridge Loan or any transactions related hereto and the Borrowers' use of the proceeds of the Bridge Loan; provided that such indemnity shall not, as to any Indemnitee, be available to the extent that such losses, claims, damages, liabilities, costs or expenses are

-5-

determined by a final and non-appealable order or judgment by the Bankruptcy Court or another court of competent jurisdiction to have resulted from the gross negligence or willful misconduct of such Indemnitee or as a result of such Indemnitee's material breach in bad faith. This indemnification shall survive the repayment of the DIP Obligations and continue for the benefit of all such Indemnitees.

The Borrowers shall pay on demand all expenses of the Co-Administrative Agents and the DIP Lenders in connection with the administration, default, collection, waiver or amendment of the Bridge Loan or other financing provided by the Co-Administrative Agents and the DIP Lenders to the Borrowers, or in connection with the exercise, preservation or enforcement by any of the Co-Administrative Agents or DIP Lenders of any of their respective rights, remedies or options hereunder or under any of the other Loan Documents, including, without limitation, reasonable fees of outside legal counsel, accounting, consulting, brokerage or other similar professional fees or expenses, and any fees or expenses associated with travel or other costs relating to any appraisals or examinations conducted in connection with the Bridge Loan or any financing provided by the Co-Administrative Agents and the DIP Lenders to the Borrowers, and the amount of all such expenses shall, until paid, bear interest at the Interest Rate (including the Default Rate).

In addition, regardless of whether the Final Order is entered in the Chapter 11 Cases but subject to the entry of the Interim Order, the Borrowers shall reimburse the Co-Administrative Agents (and all DIP Lenders in the case of enforcement costs and documentary taxes) for all reasonable out-of-pocket costs and expenses in connection with the syndication, negotiation, execution, delivery and administration of this Bridge Note and any other Loan Documents related hereto and any amendment or waiver with respect hereto or thereto (including, without limitation, legal expenses and reasonable fees of counsel thereto, appraisal fees, environmental assessments, expenses related to Patriot Act compliance, filing and search charges, recording taxes, and field examination charges and expenses (including a charge at the then standard rate of the Co-Administrative Agents per person per day for the examiners of the Co-Administrative Agents in the field and in the office, plus travel, hotel and all other out-of-pocket expenses)) whether or not the Term Loan Facility is closed.

Borrowers agree that from time to time, at Borrowers' expense, they will promptly execute and deliver all further instruments and documents, and take all further action, that may be necessary or desirable, or that Co-Administrative Agents may reasonably request, to enable Co-Administrative Agents and DIP Lenders to exercise and enforce their respective rights and remedies hereunder.

This Bridge Note, the other Loan Documents and the Interim Order are intended by the parties as the final, complete and exclusive statement of the transactions evidenced hereby and thereby. All prior or contemporaneous promises, agreements and understandings, whether oral or written, are deemed to be superseded hereby and thereby, and no party is relying on any promise, agreement or understanding not set forth herein or therein. No modification or waiver of any provision of this Bridge Note shall be effective unless such modification or waiver shall be in writing and signed by a duly authorized officer of the Co-Administrative Agents, and the same shall then be effective only for the period and on the conditions and for the specific instances specified in such writing. No failure or delay by any of the Co-Administrative Agents or DIP Lenders in exercising any of their rights, powers or privileges hereunder shall operate as a waiver thereof; nor shall any single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any rights, power or privilege.

Except as otherwise expressly provided in the Interim Order, the Borrowers hereby waive presentment, demand for payment, notice of protest, notice of dishonor and any and all other notices or demands, except as otherwise expressly provided for herein or in the Interim Order. Borrowers waive any right of subrogation until all of the DIP Obligations secured hereby have been paid in full. In the event Co-Administrative Agents institute an action to recover any Collateral or seek recovery of any Collateral

-6-

by way of prejudgment remedy, each Borrower waives the posting of any bond which might otherwise be required.

This Bridge Note shall be construed in accordance with and governed by the laws of the State of New York (excluding the laws applicable to conflicts or choice of law).

The Borrowers acknowledge and agree that any legal action or proceedings arising out of or in connection with this Bridge Note may be brought in the Bankruptcy Court, the courts of the State of New York or the courts of the United States of America located in the State of New York, and the Borrowers hereby irrevocably submit to the non-exclusive jurisdiction of each such court.

EACH BORROWER (AND, BY ACCEPTANCE OF THIS BRIDGE NOTE, EACH CO-ADMINISTRATIVE AGENT AND DIP LENDER) MUTUALLY HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVES THE RIGHT TO A TRIAL BY JURY IN RESPECT OF ANY CLAIM BASED HEREON, ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS BRIDGE NOTE OR ANY OTHER LOAN DOCUMENTS CONTEMPLATED TO BE EXECUTED IN CONNECTION HEREWITH OR ANY COURSE OF CONDUCT, COURSE OF DEALINGS, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF ANY PARTY, INCLUDING, WITHOUT LIMITATION, ANY COURSE OF CONDUCT, COURSE OF DEALINGS, STATEMENTS OR ACTIONS OF CO-ADMINISTRATIVE AGENTS AND THE DIP LENDERS RELATING TO THE ADMINISTRATION OF THE BRIDGE LOAN OR ENFORCEMENT OF THIS BRIDGE NOTE OR SUCH OTHER LOAN DOCUMENTS, AND AGREE THAT THEY WILL NOT SEEK TO CONSOLIDATE ANY SUCH ACTION WITH ANY OTHER ACTION IN WHICH A JURY TRIAL CANNOT BE OR HAS NOT BEEN WAIVED. EXCEPT AS PROHIBITED BY LAW, EACH BORROWER HEREBY WAIVES ANY RIGHT IT MAY HAVE TO CLAIM OR RECOVER IN ANY LITIGATION ANY SPECIAL, EXEMPLARY, PUNITIVE OR CONSEQUENTIAL DAMAGES OR ANY DAMAGES OTHER THAN, OR IN ADDITION TO, ACTUAL DAMAGES. EACH BORROWER CERTIFIES THAT NO REPRESENTATIVE, AGENT OR ATTORNEY OF ANY CO-ADMINISTRATIVE AGENT OR DIP LENDER HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH CO-ADMINISTRATIVE AGENT OR DIP LENDER WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER. THE FOREGOING WAIVERS CONSTITUTE A MATERIAL INDUCEMENT FOR THE CO-ADMINISTRATIVE AGENTS AND THE DIP LENDERS TO ACCEPT THIS BRIDGE NOTE AND MAKE THE BRIDGE LOAN.

[Remainder of Page Intentionally Left Blank]

ATL 19386687v3

-8-

IN WITNESS WHEREOF, the Borrowers have caused this Bridge Note to be duly executed by their duly authorized officers and to be effective as of the date and year first above written.

        GREEN FIELD ENERGY SERVICES, INC.,
        as debtor-in-possession

        By: _____
        Name:
        Title:

        HUB CITY TOOLS, INC.,
        as debtor-in-possession

        By: _____
        Name:
        Title:

        PROPPANT ONE, INC.,
        as debtor-in-possession

        By: _____
        Name:
        Title: