IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------- x
In re:                                                      :   Chapter 11
                                                            :
GREEN FIELD ENERGY SERVICES, INC., et    :   Case No. 13-12783 (KG)
al.,                                                        :
                                                            :   Joint Administration Requested
                        Debtors.[1]                      :
------------------------------------------------------------- x

## APPLICATION TO RETAIN AND EMPLOY CARL MARKS ADVISORY GROUP LLC AS INVESTMENT BANKER TO GREEN FIELD ENERGY SERVICES INC., *et al.*, *NUNC PRO TUNC* TO PETITION DATE

Green Field Energy Services Inc. and its affiliated debtors as debtors in possession (collectively, "Green Field") hereby submit this application (the "Application") for an order, attached hereto as Exhibit A, authorizing the retention of Carl Marks Advisory Group LLC ("CMAG") as its investment banker, *nunc pro tunc* to the Petition Date. In support of this Application, Green Field submits the Supplemental Declaration of Christopher K. Wu (the "Supplemental Declaration") attached hereto as Exhibit B, and respectfully represents and sets forth as follows:

### BACKGROUND

1.      On the date hereof (the "Petition Date"), Green Field filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases") in the United States Bankruptcy Court for the District of Delaware (the "Court"). The factual background regarding the Green Field, including their business operations, their capital and debt structures and the events leading to the filing of the Chapter 11 Cases, is set forth in detail in the *Declaration of*

---

[1]      The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax or organizational identification number, are: Green Field Energy Services, Inc. (2539); Hub City Tools, Inc. (2827); and Proppant One, Inc. (6035). The above-captioned Debtors' mailing address is 4023 Ambassador Caffery Parkway, Suite #200, Lafayette, LA 70503.

*Earl J. Blackwell in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 2] (the

"Blackwell Declaration").

2.     Green Field continues to operate its business and manage its properties as debtors

in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.   No trustee or

examiner has been appointed in these cases.

## JURISDICTION

3.     This Court has jurisdiction to consider this Application under 28 U.S.C. §§ 157

and 1334 and the *Amended Standing Order of Reference from the United States District Court

for the District of Delaware* dated as of February 29, 2012.   This is a core proceeding under

28 U.S.C. § 157(b), and the Court may enter a final order consistent with Article III of the United

States Constitution.   Venue for these cases and this Application is proper in this district pursuant

to 28 U.S.C. §§ 1408 and 1409.   The predicates for the relief requested herein are Bankruptcy

Code Sections 327(a), 328 and 1107, Bankruptcy Rules 2014(a) and 2016, and Local Rules

2014-1 and 2016-1.

## REQUESTED RELIEF

4.     By this Application, Green Field respectfully requests authorization to retain and

employ CMAG as its investment banker in these Chapter 11 cases, *nunc pro tunc* to the Petition

Date.   Green Field requests the Court approve the retention of CMAG, upon the terms and

conditions contained in that certain Investment Banking Agreement, dated as of October 14,

2013 by and between Green Field  and CMAG (the "Investment Banking Agreement"), a copy of

which is attached hereto as Exhibit C and is incorporated by reference herein.

## SERVICES TO BE RENDERED

5.      Subject to further order of this Court, Green Field seeks to retain and employ

CMAG as its investment banker during the Chapter 11 Cases to provide the following services:

CMAG shall provide investment banking services to Green Field in connection with the Company's exploration of strategic alternatives available to it which could include a prospective financial restructuring, recapitalization, or reorganization of the Company including the possible sale, merger or disposition of its assets in one or more Transactions, whether conducted out-of-court or in-court in connection with a plan of reorganization or plan of liquidation (the "Plan") with any person or entity (each a "Transaction"). In that connection, CMAG shall perform the following activities, as necessary:

- Source and/or initiate potential Transactions or other transactions, including, without limitation, any proposals for debtor-in-possession financing;
- Review and analyze the business plans and 13-week cash flow forecasts of the Company;
- Evaluate the Company's liquidity, including financing alternatives;
- Evaluate the Company's debt capacity in relation to projected cash flows and assist in determination of appropriate capital structure;
- Assist Company and its professionals in the review of and implementation of any proposed Transaction or other transaction, in responding thereto and, if directed evaluating potential alternatives for a Transaction;
- Assist and advise the Company in evaluating and analyzing a Transaction, including the value of the securities or debt instruments, if any, that may be issued in any such Transaction;
- Review, analyze and value any proposed third party Transactions or other transactions, including, without limitation, any proposals for debtor-in-possession financing;
- Determine a range of values for the Company and any securities that the Company offers or proposes to offer in connection with a Transaction
- Assist Company in review of risks and benefits of considering a Transaction;
- Advise the Company on Financing alternatives including refinancing existing credit, term and subordinated loans, notes or other debt instruments including, but not limited to, any exit financing related to any Bankruptcy Case (each a "Financing");
- Review and analyze any proposed third party Transactions
- Participate in negotiations with parties in interest, including, current or prospective creditors, holders of equity, or claimants against the Company and/or their respective representatives in connection with a Transaction;
- Advise Company on and attend meetings of the Board of Directors, creditor groups, official constituencies and other interested parties;
- In the event the Company determines to commence Chapter 11 cases, participate in hearings before the Bankruptcy Court and provide relevant testimony with respect to matters defined herein and issues arising in connection with any proposed plan; and

- Perform other such services related to this Engagement as are directed by Green Field and reasonably acceptable to CMAG.

As used herein the term Transaction shall mean any of the following, whether consummated through a court approved sale transaction under Section 363 of the Bankruptcy Code, or similar mechanism, and/or pursuant to one or more Plans: a transaction or series of related transactions whereby, directly or indirectly, control of or a material interest in the securities, assets or business of the Company is acquired by or combined with any person or entity through the sale or exchange of capital stock, debt or assets, a conversion of debt to equity, a lease of assets with or without a purchase option, a merger or consolidation, a tender or exchange offer, a leveraged buy-out, a minority investment, the formation of a joint venture or partnership, or any other business combination or similar transaction.

To the extent that CMAG determines that any services under this Agreement involve an offering of securities, such services will be provided by Carl Marks Securities LLC, its broker dealer affiliate.

## CMAG'S PREPETITION ACTIVITIES

6.      Prior to the Petition Date, CMAG performed various activities for Green Field, including: (a) conducting on-site diligence; (b) assisting Green Field in reviewing and negotiating debtor in possession financing proposals; (c) contacting and negotiating with outside third-party sources of potential debtor-in-possession financing; (d) preparing information packages for potential debtor-in-possession financing sources; (e) assisting Green Field in formulating business plan and case strategy; (f) assisting Green Field on tactics and strategies for negotiating with potential financing sources and stakeholders; (g) rendering financial advice to Green Field and participating in meetings with stakeholders; and (h) assisting Green Field in reviewing the 13-week cash flow budget. Prior to the Petition Date, Green Field paid CMAG a retainer of $100,000 in consideration for its services.

7.      CMAG is familiar with Green Field's businesses, financial affairs, and capital structure. Since the firm's initial engagement on October 14, 2013, the CMAG personnel providing services to Green Field (the "CMAG Professionals") have worked closely with Green

01:14285470.1

4

Field's management and other professionals in assisting with the myriad requirements of these Chapter 11 Cases. Consequently, Green Field believe that CMAG has developed significant relevant experience and expertise regarding Green Field and the unique circumstances of these cases. For these reasons, CMAG is both well qualified and uniquely suited to deal effectively and efficiently with matters that may arise in the context of these cases. Accordingly, Green Field submits that the retention of CMAG on the terms and conditions set forth herein is necessary and appropriate, is in the best interests of its estates, creditors, and all other parties in interest, and should be granted in all respects.

## QUALIFICATIONS OF PROFESSIONALS

8.      Green Field has selected CMAG as its investment banker because of the firm's diverse experience and extensive knowledge in the field of bankruptcy.

9.      Green Field needs assistance in analyzing financial information, providing strategic advisory services and assisting in negotiations with parties in interest in relation to these Chapter 11 cases. The professionals of CMAG have considerable experience with rendering such services to debtors in possession and other parties in numerous Chapter 11 cases. As such, CMAG is qualified to perform the work required in these Cases.

10.      Based on its experience, CMAG has been retained to provide investment banking and financial advice with the authorization of Bankruptcy Courts in many different cases throughout the United States and CMAG has extensive experience in representing parties in sophisticated Chapter 11 proceedings including: In re Metro Fuel Oil Corp., 12-46913-ESS (Bankr. E.D.N.Y. 2012); In re Northern Berkshire Healthcare, Inc., 11-31114-HJB (Bankr. W.D. Mass. 2011); In re Holley Performance Products Inc., 09–13333-PJW (Bankr. D. Del 2009); In re VeraSun Energy Corporation, 08-12606-BLS (Bankr. D. Del 2008); In re Otter Tail AG

Enterprises LLC, 09-61250-DDO (Bankr. D. Minn. 2009); In re Elite Model Management Corp.,

04-10845 (Bankr. S.D.N.Y. 2004); In re Alexander Gallo Holdings, LLC, 11-14220-ALG

(Bankr. S.D.N.Y. 2011); In re Inkeepers USA Trust, 10-13800-SCC (Bankr. S.D.N.Y. 2010); In

re General Growth Properties Inc., 09-11977-AG (Bankr. D. S.D.N.Y. 2009); In re Sun-Times

Media Group, Inc., 09-11092-CSS (Bankr. D. Del. 2009); In re White Energy, Inc., 09-11601-

CSS (Bankr. D. Del. 2009); In re Linens 'n Things, Inc., No. 08-10832-CSS (Bankr. D. Del.

2008); In re PJ Finance Company, LLC, 11-10688-BLS (Bankr. D. Del. 2011); In re Appleseed's

Intermediate Holdings, LLC, 11-10160-KG (Bankr. D. Del 2011); In re Trans National

Communications International, Inc., 11-19595-WCH (Bankr. D. Mass 2011); and In re Velo

Holdings, Inc., 12-11384-MG (Bankr. S.D.N.Y. 2012).

11.    Accordingly, CMAG is well qualified and has the necessary background and

relevant experience required in order to represent Green Field in these chapter 11 proceedings.

## DISINTERESTEDNESS OF PROFESSIONALS

12.    Based upon the affidavit of Christopher K. Wu filed contemporaneously herewith,

Green Field is satisfied that (i) CMAG represents no interest adverse to Green Field in the

matters upon which it is to be engaged and that its employment is in the best interest of Green

Field, and (ii) CMAG has no connection with the U.S. Trustee or any other person employed in

the office of the U.S. Trustee.

## PROFESSIONAL COMPENSATION

13.    CMAG has advised Green Field that its fees will be commensurate with fees

charged to its other clients and fees charged in cases of this size. CMAG has also advised Green

Field that it intends to make application to the Court for allowance of its fees. The compensation

of CMAG for services rendered on behalf of Green Field shall be fixed by this Court after due

application herein pursuant to the rules of this Court.

01:14285470.1

14.     The fee structure is comparable to those generally charged by investment banking and financial advisory firms of similar stature to CMAG and for comparable engagements, both in and out of court, and reflect a balance of a monthly fee, fixed completion fee and a contingent amount which is tied to the consummation and closing of the transactions contemplated in the Investment Banking Agreement.

15.     CMAG will also seek reimbursement for necessary expenses incurred, which shall include, but not be limited to, travel, photocopying, business meals, delivery service, postage, research, vendor charges and other out-of-pocket expenses incurred in providing professional services.

16.     It is not general practice of investment banking and financial advisory firms, including CMAG, to keep detailed time records similar to those customarily kept by attorneys and required by Local Rule 2016-2(d).   Because CMAG does not ordinarily maintain contemporaneous time records in one-tenth hour (.10) increments or provide or conform to a schedule of hourly rates for its professionals, CMAG should be excused from compliance with any Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals pursuant to Section 331 of the Bankruptcy Code (an "Interim Compensation Order") with respect to CMAG's professional fees only.   CMAG should only be required to maintain time records in one-hour (1.0) increments setting forth, in summary format, a description of the services rendered by each professional and the amount of time spent on each date by each such individual rendering services on behalf of Green Field.

17.     CMAG intends to apply to the Court for the allowance of compensation for professional services rendered and reimbursement of expenses incurred in accordance with applicable provisions of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the

Local Rules and the terms of any administrative order(s) establishing procedures for interim compensation and reimbursement of expenses for professionals entered in these cases.

## INDEMNIFICATION PROVISIONS

18.    The Investment Banking Agreement provides that as a condition of its employment, the Court will have entered an order providing CMAG with an indemnity as detailed in the Investment Banking Agreement (the "Indemnity").

19.    The Indemnity includes qualifications and limits on the indemnifications and limitation on liability provisions that are customary in Chapter 11 cases.  Accordingly, Green Field and CMAG believe the Indemnity is customary and reasonable for engagements of this type and should be approved.

## BASIS FOR RELIEF

20.    Green Field seeks approval of the Investment Banking Agreement pursuant to Section 328(a) of the Bankruptcy Code, which provides, in relevant part, that debtors, "with the court's approval, may employ or authorize the employment of a professional person under Section 327 on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis . . . ." 11 U.S.C. § 328(a).  Accordingly, Section 328(a) of the Bankruptcy Code permits the compensation of professionals, including investment bankers, on more flexible terms that reflect the nature of their services and market conditions.  As the United States Court of Appeals for the Fifth Circuit recognized in Donaldson Lufkin & Jenrette Sec. Corp. v. Nat'l Gypsum (In re Nat'l Gypsum Co.):

> Prior to 1978 the most able professionals were often unwilling to work for bankruptcy estates where their compensation would be subject to the uncertainties of what a judge thought the work was worth after it had been done.  That uncertainty continues under the present section 330 of the Bankruptcy Code, which provides that the court award to professional

consultants "reasonable compensation" based on relevant factors of time and comparable costs, etc.  Under present section 328 the professional may avoid that uncertainty by obtaining court approval of compensation agreed to with the trustee (or debtor or committee).

123 F.3d 861, 862 (5th Cir. 1997) (internal citations and emphasis omitted).

21.    Furthermore, under the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, certain modifications were made to Section 328(a) of the Bankruptcy Code, which now provides as follows:

> The trustee, or a committee appointed under section 1102 of this title, with the court's approval, may employ or authorize the employment of a professional person under section 327 or 1103 of this title, as the case may be, on any reasonable terms and conditions of employment, *including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis*.

11 U.S.C. § 328(a) (emphasis added).  Section 328(a) of the Bankruptcy Code, as amended, now makes clear that debtors may retain, subject to bankruptcy court approval, a professional on a fee basis such as the fee structure proposed in the Investment Banking Agreement.

22.    CMAG intends to file interim and final fee applications for the allowance of compensation for services rendered and reimbursement of expenses incurred in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any applicable orders of this Court.

23.    Green Field believes that the fee structure reflects appropriately the nature and scope of services to be provided by CMAG, CMAG's substantial experience with respect to investment banking services, and the fee structures typically utilized by CMAG and other leading investment bankers.  Moreover, the fee structure reflects a balance between a fixed monthly fee and a contingency amount which is tied to the consummation and closing of the transactions and services contemplated by Green Field and CMAG in the Investment Banking Agreement.

24.     The hours worked, the results achieved and the ultimate benefit to Green Filed of the work performed by CMAG in connection with this engagement may vary, and Green Field has taken this into account in setting the above fees.

25.     Green Field also acknowledges and agrees that the fee structure has been agreed upon by the parties in anticipation that a substantial commitment of professional time and effort has been and will continue to be required of the CMAG Professionals, and in light of the fact that such commitment may foreclose other opportunities for CMAG and that the actual time and commitment required of CMAG and its professionals to perform the required services may vary substantially from week to week or month to month.

26.     Similar fixed and contingency fee arrangements in other large Chapter 11 cases have been routinely approved and implemented by courts in this district. See, e.g., In re Newpage Corp., No. 11-12804(KG) (Bankr. D. Del. Nov. 3, 2011) (order authorizing retention of Lazard Freres & Co. LLC on similar terms); In re Graceway Pharms. LLC, No. 11-13036 (PJW) (Bankr. D. Del. Oct. 17, 2011) (order authorizing retention of Lazard Freres & Co. LLC on similar terms); In re NEC Holdings Corp., No. 10-11890 (PJW) (Bankr. D. Del. July 14, 2010) (order authorizing retention of William Blair and Company, LLC on similar terms); In re Regent Commc'ns, Inc., No. 10-10623 (KG) (Bankr. D. Del. Mar. 22, 2010) (order authorizing retention of Oppenheimer & Co. Inc. on similar terms); In re Accuride Corp., No. 09-13449 (BLS) (Bankr. D. Del. Nov. 2, 2009) (order authorizing retention of Perella Weinberg Partners LP on similar terms); In re Eddie Bauer Holdings, Inc., No. 09-12099 (MFW) (Bankr. D. Del. July 8, 2009) (order authorizing retention of Peter J. Solomon Company on similar terms); In re Tropicana Entm't, LLC, No. 08-10856 (KJC) (Bankr. D. Del. May 30, 2008) (order authorizing retention of Lazard Freres & Co. LLC. on similar terms); In re Leiner Health Prods., Inc., No.

08-10446 (KJC) (Bankr. D. Del. Apr. 8, 2008) (order authorizing retention of Houlihan Lokey

Howard & Zukin Capital, Inc. on similar terms); In re FLYi, Inc., No. 05-20011 (MFW) (Bankr.

D. Del. Jan. 17, 2006) (order authorizing retention of Miller Buckfire & Co., LLC on

substantially the same terms); In re Foamex Int'l, Inc., No. 05-12685 (PJW) (Bankr. D. Del. Oct.

17, 2005) (order authorizing retention of Miller Buckfire & Co., LLC on substantially the same

terms); In re Oakwood Homes Corp., No. 02-13396 (PJW) (Bankr. D. Del. July 21, 2003) (order

authorizing retention of Miller Buckfire & Co., LLC on similar terms); In re Kaiser Aluminum

Corp., No. 02-10429 (JKF) (Bankr. D. Del. Mar. 19, 2002) (authorizing retention of Lazard

Freres & Co. LLC and subjecting compensation to same standard of review); In re Trans World

Airlines, Inc., No. 01-0056 (PJW) (Bankr. D. Del. Jan. 26, 2001) (authorizing retention of

Rothschild, Inc., as financial advisors for debtors, under Sections 327(a) and 328(a) of the

Bankruptcy Code); In re Covad Commc'ns Group, Inc., No. 01-10167 (BF) (Bankr. D. Del. Nov.

21, 2001) (authorizing retention of Houlihan Lokey Howard & Zukin Capital with compensation

subject to standard of review set forth in Section 328(a)); In re Harnischfeger Indus., No. 99-

02171 (PJW) (Bankr. D. Del. Feb. 8, 2000) (authorizing retention of The Blackstone Group L.P.

as investment bankers to the debtors).

27.   Likewise, similar indemnification arrangements have been approved and

implemented in other large Chapter 11 cases by courts in this district. See, e.g., In re Graceway

Pharms. LLC, No. 11-13036 (PJW) (Bankr. D. Del. Oct. 17, 2011); In re NEC Holdings Corp.,

No. 10-11890 (PJW) (Bankr. D. Del. July 14, 2010); In re Regent Commc'ns, Inc., No. 10-10623

(KG) (Bankr. D. Del. Mar. 22, 2010); In re Eddie Bauer Holdings, Inc., No. 09-12099 (MFW)

(Bankr. D. Del. July 8, 2009); In re Tropicana Entm't, LLC, No. 08-10856 (KJC) (Bankr. D. Del.

May 30, 2008); In re Leiner Health Prods., Inc., No. 08-10446 (KJC) (Bankr. D. Del. Apr. 4,

2008); In re New Century TRS Holdings, Inc., No. 07-10416 (KJC) (Bankr. D. Del. Apr. 26, 2007); In re FLYi, Inc., No. 05-20011 (MFW) (Bankr. D. Del. Jan. 17, 2006); In re Foamex Intl, Inc., No. 05-12685 (NW) (Bankr. D. Del. Oct. 17, 2005); In re Oakwood Homes Corp., No. 02-13396 (PJW) (Bankr. D. Del. July 21, 2003); In re United Artists Theatre Co., No. 00-3514 (SLR) (Bankr. D. Del. Dec. 1, 2000).

28.    In light of the foregoing, and given the numerous issues that CMAG may be required to address in the performance of its services hereunder, CMAG's commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market prices for CMAG's services for engagements of this nature, Green Field believes that the terms and conditions of the Investment Banking Agreement are fair, reasonable, and market-based under the standards set forth in Section 328(a) of the Bankruptcy Code.

29.    Denying the relief requested herein would deprive Green Field of the assistance of a highly qualified investment banker and disadvantage Green Field and all parties in interest. Green Field would be forced to engage a new investment banking firm lacking the same understanding of Green Field's businesses and restructuring initiatives. Accordingly, Green Field respectfully submits that the services provided by CMAG are critical to the success of the Chapter 11 Cases and request that this Court approve the Investment Banking Agreement.

## NOTICE

30.    Notice of this Application will be given to: (a) the United States Trustee for the District of Delaware, (b) counsel to Green Field's postpetition secured lender, (c) counsel to Shell Western Exploration and Production, Inc., Green Field's prepetition lender, (d) counsel to the Indenture Trustee under Green Field's prepetition 2016 Senior Secured Notes (as defined in the Blackwell Declaration); (e) the Securities and Exchange Commission; (f) counsel to the

01:14285470.1

Environmental Protection Agency; (g) counsel to the ad hoc group of holders of 13% Senior Secured Notes Due 2016; and (h) the parties included on Green Field's consolidated list of thirty (30) largest unsecured creditors (collectively, the "Initial Notice Parties"). Green Field submits that, under the circumstances, no other or further notice is required.

31.    A copy of the Application is available on the Court's website: www.deb.uscourts.gov. Additional copies of the Application are available for free on the website of Green Field's proposed claims and noticing agent, Prime Clerk LLC, at http://cases.primeclerk.com/gfes, or can be requested by calling (855) 410-7359 from within the United States or +1 (646) 795-6960 if calling from outside the United States.

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto, authorizing and approving the retention of Carl Marks Advisory Group LLC, as Investment Banker to the Debtors in these Chapter 11 Cases, *nunc pro tunc* to the Petition Date.

Dated: October 28, 2013
Wilmington, Delaware

Respectfully Submitted,

*Earl J. Blackwell*
Earl J. Blackwell
Chief Financial Officer
GREEN FIELD ENERGY SERVICES, INC.
on behalf of itself and the affiliated debtors
in possession

SIGNATURE PAGE TO APPLICATION OF DEBTORS FOR ORDER AUTHORIZING THE EMPLOYMENT
AND RETENTION OF CARL MARKS ADVISORY GROUP LLC