## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------ x

In re:                                                    :    Chapter 11
                                                          :
GREEN FIELD ENERGY SERVICES, INC., et     :    Case No. 13-12783 (KG)
al.,                                                      :
                                                          :    Jointly Administered
                        Debtors.[1]                  :

------------------------------------------------------------ x

### APPLICATION OF THE DEBTORS PURSUANT
### TO 11 U.S.C. §§ 105(a) AND 363(b) TO (I) RETAIN
### ALVAREZ & MARSAL NORTH AMERICA, LLC TO
### PROVIDE THE DEBTORS A CHIEF RESTRUCTURING OFFICER AND
### CERTAIN ADDITIONAL PERSONNEL AND (II) DESIGNATE THOMAS E.
### HILL AS CHIEF RESTRUCTURING OFFICER
### FOR THE DEBTORS *NUNC PRO TUNC* TO THE COMMENCEMENT DATE

The above-captioned debtors and debtors in possession (collectively,

"**Green Field**" or the "**Debtors**") hereby apply to this Court for entry of an order, under

sections 105(a) and 363(b) of title 11 of the United States Code (the "**Bankruptcy**

**Code**"), authorizing the Debtors to (i) retain Alvarez & Marsal North America, LLC

("**A&M**") to provide a Chief Restructuring Officer ("**CRO**") and certain Additional

Personnel (defined below) and (ii) designate Thomas E. Hill to serve as CRO for the

Debtors *nunc pro tunc* to the Petition Date (defined below) (the "**Application**"). In

support of the Application, the Debtors rely upon and incorporates by reference (a) the

*Declaration of Thomas E. Hill in Support of the Application of the Debtors Pursuant to*

*11 U.S.C. § 105(a) and 363(b) for Entry of an Order to (i) Retain Alvarez & Marsal*

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax or organizational identification number, are: Green Field Energy Services, Inc. (2539); Hub City Tools, Inc. (2827); and Proppant One, Inc. (6035). The above-captioned Debtors' mailing address is 4023 Ambassador Caffery Parkway, Suite #200, Lafayette, LA 70503.

*North America, LLC to Provide the Debtors a Chief Restructuring Officer and Certain Additional Personnel and (ii) Designate Thomas E. Hill to Serve as Chief Restructuring Officer for the Debtors nunc pro tunc to the Petition Date* (the "**Hill Declaration**") attached hereto as Exhibit A.  In further support of the Application, the Debtors, by and through their undersigned counsel, respectfully represent:

### JURISDICTION

1.      This Court has jurisdiction to consider this Application under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware* dated as of February 29, 2012.  This is a core proceeding under 28 U.S.C. § 157(b), and the Court may enter a final order consistent with Article III of the United States Constitution.  Venue for these cases and this Application is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.  The predicates for the relief requested herein are Bankruptcy Code Sections 105(a) and 363(b).

### BACKGROUND

2.      On October 27, 2013 (the "Petition Date"), the Debtors filed voluntary petitions in the Court commencing cases for relief under Chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases").  The factual background regarding the Debtors, including their business operations, their capital and debt structures and the events leading to the filing of the Chapter 11 Cases, is set forth in detail in the *Declaration of Earl J. Blackwell, Chief Financial Officer of Green Field Energy*

*Services, Inc., in Support of Chapter 11 Petitions and First Day Pleadings*, [Docket no. 2] (the "**Blackwell Declaration**").

   3.  The Debtors continue to manage and operate their business as debtors in possession pursuant to Bankruptcy Code Sections 1107 and 1108. No trustee or examiner has been requested in the Chapter 11 Cases and no committees have yet been appointed.

<b>RELIEF REQUESTED</b>

   4.  By this Application, pursuant to Bankruptcy Code Sections 105(a) and 363(b), the Debtors request entry of an order (the "**Order**"), substantially in the form of <u>Exhibit B</u> annexed hereto, authorizing, but not directing the Debtors to (i) retain A&M to provide the Debtors with a CRO and certain Additional Personnel and (ii) designate Thomas E. Hill as the Debtors' CRO, *nunc pro tunc* to the Petition Date.

   5.  Thomas E. Hill will serve as the CRO to assist the Debtors with their restructuring efforts and the Chapter 11 Cases, as further described below. A&M will also provide additional employees, including from its professional service provider affiliates (all of which are wholly-owned by its parent company and employees) ("**Additional Personnel**," collectively with the CRO, the "**Engagement Personnel**") as necessary to assist the CRO in the execution of the duties set forth more fully herein. To the extent that the CRO proposes that any Additional Personnel be appointed as an officer of the Debtors, the board of directors of the Debtors (the "**Board**") or the special committee of the Board (the "**Special Committee**") shall consider such request and, if it is deemed to be in the best interest of the Debtors, make or cause to be made such appointment. As of the Petition Date, the Debtors have appointed the following

individuals to serve as officers of the Debtors: (i) Gary Barton as Deputy Chief

Restructuring Officer (the "**Deputy CRO**") and Steven R. Kotarba, Jodi Ehrenhofer and

Diego Torres as Assistant Chief Restructuring Officers ("**Assistant CROs**").

## RETENTION OF A&M

6.      In consideration of the size and complexity of their business, as

well as the exigencies of the circumstances, the Debtors have determined that the services

of experienced restructuring managers will substantially enhance their attempts to

maximize the value of their estates.  The Engagement Personnel are well qualified to act

on the Debtors' behalf given their extensive knowledge and expertise with respect to

chapter 11 proceedings.

7.      The Engagement Personnel specialize in interim management,

turnaround consulting, operational due diligence, creditor advisory services, and financial

and operational restructuring.  A&M's debtor advisory services have included a wide

range of activities targeted at stabilizing and improving a company's financial position,

including developing or validating forecasts and business plans and related assessments

of a business's strategic position; monitoring and managing cash, cash flow, and supplier

relationships; assessing and recommending cost reduction strategies; and designing and

negotiating financial restructuring packages.

8.      Further, A&M has provided similar services and personnel in

recent cases in this District.  See, e.g., In re School Specialty, Inc., Case No. 13-10125

(KJC) (Bankr. D. Del. Feb. 25, 2013); In re Vertis Holdings, Inc., Case No. 12-12821

(CSS) (Bankr. D. Del. Nov. 20, 2012); In re Filene's Basement, LLC, Case No. 11-13511

(KJC) (Bankr. D. Del. Jan. 24, 2012); In re Harry & David Holdings, Inc., Case No. 11-10884 (MFW) (Bankr. D. Del. April 27, 2011).

9.       Thomas E. Hill is a managing director of A&M.  He has worked as a turnaround consultant and financial advisor for more than 25 years.  Mr. Hill has substantial knowledge and experience serving either in senior management positions or as a restructuring advisor in large companies and in assisting troubled companies with stabilizing their financial condition, analyzing their operations and developing an appropriate business plan to accomplish the necessary restructuring of their operations and finances.  Specifically, Mr. Hill has advised and/or served as a senior executive for, among others, Source Link, Inc. and School Specialty, Inc.  Further, Mr. Hill has served in senior management positions and as a restructuring advisor for a number of companies in a variety of industries, including automotive, manufacturing, consumer products, media, and retail.

10.       In addition, A&M and the CRO are intimately familiar with the Debtors' business, financial affairs, and capital structure.  Beginning on September 30, 2013, and continuing through the Petition Date, several professionals of A&M, including Thomas E. Hill, have devoted substantial amounts of time and effort working with members of the Debtors' senior management to, among other things, assist in the development of near-term projections, assist in short-term cash management activities, assist with liquidity management and the sizing of the debtor in possession financing needs, and coordinate the Debtors' efforts to prepare for a chapter 11 filing. Consequently, the Debtors believe that A&M has developed significant relevant

experience and expertise regarding the Debtors, their operations, and the unique circumstances of these Chapter 11 Cases.

11.     For these reasons, A&M is both well qualified and uniquely suited to deal effectively and efficiently with matters that may arise in the context of the Chapter 11 Cases. Accordingly, the Debtors submit that the retention of A&M and the designation of Thomas E. Hill as CRO on the terms and conditions set forth herein is necessary and appropriate, is in the best interests of the Debtors' estates, creditors, and all other parties in interest, and should be granted in all respects.

### SCOPE OF SERVICES

12.     Subject to approval by this Court, the Debtors propose to retain A&M to provide Thomas E. Hill as CRO and to provide the Additional Personnel on the terms and conditions set forth in the engagement letter, dated October 27, 2013, attached hereto as <u>Exhibit C</u> (the "<u>Engagement Letter</u>")[2], except as otherwise explicitly set forth herein or in any order granting this Application.

13.     Among other things, the duties of the Engagement Personnel will include / have included the following:

(a)     An evaluation of the Debtors' current and prospective strategic, financial and operational condition and options to maximize value, satisfy stakeholder claims and or restructure the Debtors through out of court or in-court options;

---

[2]     The summaries of the Engagement Letter (and indemnification agreement attached thereto) contained in this Application are provided for purposes of convenience only. In the event of any inconsistency between the summaries contained herein and the terms and provisions of the Engagement Letter, the terms of the Engagement Letter shall control unless otherwise set forth herein. Capitalized terms used in such summaries but not otherwise defined herein or in the First Day Declaration shall have the meanings set forth in the Engagement Letter.

(b)    providing assistance in analysis and or the development of projections to evaluate, communicate and negotiate options;

(c)    depending upon the option(s) selected by the Debtors, provide assistance relative to the preparation, implementation and execution of the selected option(s) in conjunction with the Debtors' legal counsel;

(d)    assist with the case administration and reporting associated with a Chapter 11 filing, including but not limited to: preparation of schedules and statements, monthly operating reports, claims reconciliation, assumption and rejection analyses;

(e)    report to the Special Committee of the Board; and

(f)    provide other assistance as may be requested by the Special Committee of the Board and as agreed to by A&M.

14.    These services are necessary to enable the Debtors to maximize the value of their estates and successfully complete their restructuring.

15.    In rendering services to the Debtors, the Engagement Personnel will report to the Special Committee of the Board and will make recommendations to and consult with the Debtors' Officers as the Special Committee of the Board directs.

16.    The Debtors believe that Mr. Hill and the Additional Personnel will not duplicate the services that are being provided to the Debtors in the Chapter 11 Cases by any other professionals. A&M will work closely with the other retained professionals to prevent any duplication of efforts in the course of advising the Debtors.

**A&M'S DISINTERESTEDNESS**

17.    To the best of the Debtors' knowledge, information, and belief, other than as set forth in the Hill Declaration, A&M: (i) has no connection with the

Debtors, their creditors, other parties in interest, or the attorneys or accountants of any of the foregoing, or the United States Trustee or any person employed in the Office of the United States Trustee; and (ii) does not hold any interest adverse to the Debtors' estates.

18.     Although the Debtors submit that the retention of A&M is not governed by Bankruptcy Code Section 327, the Debtors attach the Hill Declaration, which discloses, among other things, any relationship that A&M, Thomas Hill, or any individual member of the Additional Personnel has with the Debtors, their significant creditors, or other significant parties in interest known to A&M.  Based upon the Hill Declaration, the Debtors submit that A&M is a "disinterested person" as that term is defined by Bankruptcy Code Section 101(14).

19.     In addition, as set forth in the Hill Declaration, if any new material facts or relationships are discovered or arise, A&M will provide the Court with a supplemental declaration.

## TERMS OF RETENTION

**A.    Compensation**

20.     As of the date hereof, the Debtors agree to compensate A&M for the services of the CRO and Additional Personnel at the following hourly rates:

| | | |
|---|---|---|
| (a) Managing Directors | $675-875 |
| (b) Directors | $475-675 |
| (c) Analysts / Associates | $275-475 |

Such rates and ranges shall be subject to adjustment annually at such time as A&M adjusts its rates generally.

21.    In addition to compensation for professional services rendered by Engagement Personnel, A&M will seek reimbursement for reasonable and necessary expenses incurred in connection with these Chapter 11 Cases, including, but not limited to travel, lodging, computer research, and messenger and telephone charges. In addition, A&M shall be reimbursed for the reasonable fees and expenses of its outside counsel incurred in connection with the preparation and approval of this Application. All fees and expenses due to A&M will be billed on a monthly basis, or more frequently as agreed to between A&M and the Debtors, as further set forth in the Engagement Letter.

22.    In addition to the hourly and monthly compensation, provided that A&M and/or the Engagement Personnel are still providing services to the Debtors or as may be otherwise provided for pursuant to Section 5(c), A&M will be entitled to incentive compensation in the amount not to exceed $500,000 (the "**Completion Fee**"), which shall be payable upon the consummation of a Restructuring as is more fully defined in the Engagement Letter; provided, however, that in any application for compensation submitted by A&M to the bankruptcy court whereby A&M seeks approval and payment of the Completion Fee, A&M shall ask the Debtors for, and include a statement within such application regarding whether the Debtors believe a payment of the Completion Fee is or is not appropriate given the timeframe and outcome of the Engagement. Notwithstanding the foregoing, no Completion Fee shall be payable in the event that either the CRO or any Additional Personnel has been terminated for cause.

**B.    Indemnification**

23.    As a material part of the consideration for which the Engagement Personnel have agreed to provide the services described herein, pursuant to the

Engagement Letter (including the indemnification agreement attached to and made a part of the Engagement Letter (the "**Indemnification Agreement**"), the Debtors have agreed to (a) indemnify the Engagement Personnel acting as officers to the same extent as the most favorable indemnification it extends to their officers and directors and to cover such Engagement Personnel under the Debtors' director and officer liability policy and (b) indemnify and hold harmless A&M, its affiliates and their respective shareholders, members, managers, employees, agents, representatives, and subcontractors (collectively, the "**Indemnified Parties**") under certain circumstances.[3] The rights to indemnification shall survive the termination of the Chapter 11 Cases or any cases into which they may be converted.

24.     The Debtors believe the indemnity provisions are a reasonable term and condition of A&M's engagement and were, along with all terms of the Engagement Letter, negotiated by the Debtors and A&M at arm's-length and in good faith. A&M and the Debtors believe that the indemnity provisions are comparable to those indemnification provisions generally obtained by crisis management firms of similar stature to A&M and for comparable engagements, both in and out of court. The Debtors respectfully submit that the indemnification provisions contained in the

---

[3]     The Indemnification Agreement generally provides that the Debtors will indemnify and hold harmless A&M and the other Indemnified Parties (as defined in the Indemnification Agreement) from and against any losses, claims, damages, liabilities, penalties, obligations, and expenses, including the costs for counsel and others in investigating, preparing, or defending any action or claim caused by, relating to, based upon, or arising out of the Indemnified Party's acceptance of or the performance or nonperformance of their obligations under the Engagement Letter.  Notwithstanding, the terms of the Indemnification Agreement, the Debtors and A&M have agreed, subject to this Court's approval of this Application, that in no event shall an Indemnified Person be indemnified or receive contribution or other payment under the Indemnification Agreement if the Debtors, their estates, or the statutory committee of unsecured creditors appointed in the Chapter 11 Cases assert a claim against an Indemnified Person and this Court determines by final order that such claim arose out of the bad-faith, self-dealing, breach of fiduciary duty, if any, gross negligence, or willful misconduct on the part of that or any other Indemnified Person.

Indemnification Agreement, viewed in conjunction with the other terms of A&M's

proposed retention, are reasonable and in the best interests of the Debtors, their estates

and creditors in light of the fact that the Debtors requires A&M's services to successfully

restructure.

## FEES AND REPORTING

25.    If this Court approves the relief requested herein, A&M will be

retained to provide the Debtors with the Engagement Personnel and Thomas E. Hill will

be designated as the Debtors' CRO pursuant to section 363 of the Bankruptcy Code.

Because A&M is not being employed as a professional under section 327 of the Code,

A&M will not be required to submit fee applications pursuant to sections 330 and 331 of

the Bankruptcy Code. Instead, A&M will file with this Court, and provide notice to the

United States Trustee and all official committees (together with the U.S. Trustee, the

"**Notice Parties**"), reports of compensation paid and expenses reimbursed on at least a

quarterly basis. Such compensation and expenses shall be subject to Court review in the

event that an objection is filed.

26.    In addition A&M will file with this Court and provide the Notice

Parties a report on staffing (the "**Staffing Report**") by the 20th of each month for the

previous month, which report would include the names and tasks filled by all

Engagement Personnel involved in this matter.  The Staffing Report (and A&M's staffing

for this matter) would be subject to review by this Court in the event so requested by any

of the Notice Parties.

27.    A&M received $250,000 as a retainer in connection with preparing

for and conducting the filing of the Chapter 11 Cases, as described in the Engagement

Letter. In the 90 days prior to the Petition Date, A&M received retainers and payments totaling $470,452.00 in the aggregate for services performed for the Debtors. A&M has applied these funds to amounts due for services rendered and expenses incurred prior to the Petition Date.

28.    A precise disclosure of the amounts or credits held, if any, as of the Petition Date will be provided in A&M's first report filed regarding compensation earned and expenses incurred. The unapplied residual retainer, which is estimated to total approximately $153,000, will not be segregated by A&M in a separate account, and will be held until the end of the Chapter 11 Cases and applied to A&M's finally approved fees in the cases, unless an alternate arrangement is agreed to by the Debtors.

29.    Given the numerous issues which the Engagement Personnel may be required to address in the performance of their services, A&M's commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market prices for such services for engagements of this nature in an out-of-court context, as well as in chapter 11, the Debtors submit that the fee arrangements set forth in the Engagement Letter are reasonable.

## DISPUTE RESOLUTION PROCEDURES

30.    The Debtors and A&M have agreed, subject to the Court's approval of this Application, that notwithstanding the Engagement Letter: (a) any controversy or claim with respect to, in connection with, arising out of, or in any way related to this Application or the services provided by the Engagement Personnel to the Debtors as outlined in this Application, including any matter involving a successor in interest or agent of any of the Debtors or of A&M, shall be brought in this Court or the

United States District Court for the District of Delaware (the "**District Court**") (if the reference is withdrawn); (b) A&M, the Debtors, and any and all successors and assigns thereof, consent to the jurisdiction and venue of such court as the sole and exclusive forum (unless such courts do not have or retain jurisdiction over such claims or controversies) for the resolution of such claims, causes of actions, or lawsuits; (c) A&M and the Debtors, and any and all successors and assigns thereof, waive trial by jury, such waiver being informed and freely made; (d) if this Court, or the District Court (if the reference is withdrawn), does not have or retain jurisdiction over the foregoing claims and controversies, A&M and the Debtors, and any and all successors and assigns thereof, will submit first to non-binding mediation; and, if mediation is not successful, then to binding arbitration, in accordance with the dispute resolution procedures (as set forth in Exhibit D attached hereto); and (e) judgment on any arbitration award may be entered in any court having proper jurisdiction.

31.    By this Application, the Debtors seek approval of this agreement by this Court.  Further, A&M and the Debtors have agreed not to raise or assert any defense based upon jurisdiction, venue, abstention, or otherwise to the jurisdiction and venue of this Court or a District Court (if the reference is withdrawn) to hear or determine any controversy or claims with respect to, in connection with, arising out of, or in any way related to this Application or the services provided hereunder.

## APPLICABLE AUTHORITY

32.    The Debtors seek approval of the employment of A&M pursuant to section 363 of the Bankruptcy Code, *nunc pro tunc* to the Petition Date. Section 363(b)(1) of the Bankruptcy Code provides in relevant part that "[t]he trustee, after notice

and a hearing, may use, sell, or lease, other than in the ordinary course of business,

property of the estate." 11 U.S.C. § 363(b)(1). Further, pursuant to section 105(a) of the

Bankruptcy Code, the "court may issue any order, process, or judgment that is necessary

or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

33.    Under applicable case law, in this and other circuits, if a debtor's

proposed use of its assets pursuant to section 363(b) of the Bankruptcy Code represents a

reasonable business judgment on the part of the debtor, such use should be approved.

See, e.g., Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d

1063, 1070 (2d Cir. 1983) ("The rule we adopt requires that a judge determining a

§363(b) application expressly find from the evidence presented before him at the hearing

a good business reason to grant such an application."); Comm. of Asbestos-Related

Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.), 60 B.R. 612, 616 (Bankr.

S.D.N.Y. 1986) ("Where the debtor articulates a reasonable basis for its business

decisions (as distinct from a decision made arbitrarily or capriciously), courts will

generally not entertain objections to the debtor's conduct.").

34.    The retention of A&M and its professionals is a sound exercise of

the Debtors' business judgment. Thomas E. Hill has extensive experience as a senior

officer and as an advisor for many troubled companies. The Debtors believe that the

Engagement Personnel will provide services that benefit the Debtors' estates and

creditors. In light of the foregoing, the Debtors believe that the retention of A&M is

appropriate and in the best interests of the Debtors and their estates and creditors.

35.    The retention of interim corporate officers and other temporary

employees, therefore, is proper under section 363 of the Bankruptcy Code. This Court has

authorized retention of officers utilizing this provision of the Bankruptcy Code on numerous occasions. See, e.g., In re School Specialty, Inc., Case No. 13-10125 (KJC) (Bankr. D. Del. Feb. 25, 2013); In re Vertis Holdings, Inc., Case No. 12-12821 (CSS) (Bankr. D. Del. Nov. 20, 2012); In re Filene's Basement, LLC, Case No. 11-13511 (KJC) (Bankr. D. Del. Jan. 24, 2012); In re Harry & David Holdings, Inc., Case No. 11-10884 (MFW) (Bankr. D. Del. April 27, 2011); In re Trico Marine Services, Inc., Case No. 10-12653 (BLS) (Bankr. D. Del. Oct, 6, 2010); In re Orleans Homebuilders Inc., Case No. 10-10684 (PJW) (Bankr. D. Del. Apr. 6, 2010); In re Hines Horticulture, Inc., Case No. 08-11922 (KJC) (Bankr. D. Del. Oct. 1, 2008); In re Powermate Holding Corp., Case No. 08-10498 (Bankr. D. Del. Apr. 15, 2008); In re Medicor Ltd., Case No. 07-10877 (Bankr. D. Del. Aug. 24, 2007).

36.    Based upon the foregoing, the Debtors submit that the retention of A&M, and the designation of Thomas E. Hill as CRO on the terms set forth herein and in the Engagement Letter, is essential, appropriate, and in the best interest of the Debtors' estates, creditors, and other parties in interest and should be granted in the Chapter 11 Cases.

## NOTICE

37.    Notice of this Application will be given to: (a) the United States Trustee for the District of Delaware; (b) counsel to the Debtors' postpetition secured lender; (c) counsel to Shell Western Exploration and Production, Inc., the Debtors' prepetition lender, (d) counsel to the Indenture Trustee under the Debtors' prepetition 2016 Senior Secured Notes (as defined in the Blackwell Declaration); (e) the Securities and Exchange Commission; (f) counsel to the Environmental Protection Agency; (g)

counsel to the ad hoc group of holders of 2016 Senior Secured Notes; (h) the parties

included on the Debtors' consolidated list of thirty (30) largest unsecured creditors; (i)

the United States Attorney for the District of Delaware; and (j) the Attorneys General for

the states in which the Debtors conduct business (collectively, the "**Initial Notice**

**Parties**").  The Debtors submit that, under the circumstances, no other or further notice is

required.

        38.     A copy of the Application is available on the Court's website:

www.deb.uscourts.gov.  Additional copies of the Application are available for free on the

website of the Debtors' proposed claims and noticing agent, Prime Clerk LLC, at

http://cases.primeclerk.com/gfes, or can be requested by calling (855) 410-7359 from

within the United States or +1 (646) 795-6960 if calling from outside the United States.

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto, authorizing and approving the retention of Alvarez & Marsal North America, LLC, as Chief Restructing Officer to the Debtors in these Chapter 11 Cases, *nunc pro tunc* to the Petition Date.

Dated: October 28, 2013
Wilmington, Delaware

Respectfully Submitted,

*Earl J Blackwell*
Earl J. Blackwell
Chief Financial Officer
GREEN FIELD ENERGY SERVICES, INC.
on behalf of itself and the affiliated debtors in possession

SIGNATURE PAGE TO APPLICATION OF DEBTORS FOR ORDER AUTHORIZING THE EMPLOYMENT
AND RETENTION OF ALVAREZ & MARSAL NORTH AMERICA, LLC