## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

In re:

GREEN FIELD ENERGY SERVICES, INC., *et al.*,[1]

Debtors.

Chapter 11

Case No. 13-12783 (KG)
(Jointly Administered)

Objection Deadline:  December 31, 2013
Hearing Date:  January 13, 2014 at 11am

Re:  Docket No. 257

### UNITED STATES TRUSTEE'S OBJECTION TO THE MOTION OF THE DEBTORS FOR ENTRY OF AN ORDER APPROVING (I) KEY EMPLOYEE INCENTIVE PLAN AND (II) KEY EMPLOYEE RETENTION PLAN

Roberta A. DeAngelis, the United States Trustee for Region 3 ("United States Trustee"), by and through her undersigned attorney, hereby objects to the relief sough in Green Field Energy Services, Inc.'s (the "Debtors") *Motion for Entry of an Order Approving (I) Key Employee Incentive Plan and (II) Key Employee Retention Plan* (Docket No. 257) (the "Bonus Motion").[2]  In further support of this Objection, the United States Trustee states as follows:

### Preliminary Statement

1.      In the Bonus Motion, the Debtors are requesting that this Court approve an "incentive plan" for the certain of the Debtors' employees, which includes insiders, that will provide bonus payments upon the achievement by the Debtors – through these employees – of certain post-petition sale milestones, as a proper exercise of the Debtors' business judgment. The Debtors' Bonus Plan, however, bears the attributes of an insider retention plan without satisfying the stringent standards of section 503(c)(1) of the Bankruptcy Code (defined below).

---

[1]      The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax or organizational identification number, are: Green Field Energy Services, Inc. (2539); Hub City Tools, Inc. (2827); and Proppant One, Inc. (6035).  The above-captioned Debtors' mailing address is 4023 Ambassador Caffery Parkway, Suite #200, Lafayette, LA 70503.

[2]      The Debtors have filed a motion to seal portions of the Bonus Motion.  The Debtors provided counsel for the United States Trustee with a copy of the unredacted version of the Bonus Motion.

In the alternative, the proposed payments to insiders under the Bonus Program is outside the ordinary course of the Debtors' business and is not justified by the facts and circumstances when each of the post-petition sale milestones are too low to provide a benefit to creditors who have claims against the Debtors' estates.

2.      Although the Debtors have provided counsel for the United States Trustee with some additional information,[3] the United States Trustee objects to the Bonus Motion on the grounds that the Debtors have failed to meet their evidentiary burden of proof to show that the proposed bonus payments comply with section 503(c) of the Bankruptcy Code.

### Jurisdiction

3.      Under (i) 28 U.S.C. § 1334, (ii) applicable order(s) of the United States District Court for the District of Delaware issued pursuant to 28 U.S.C. § 157(a), and (iii) 28 U.S.C. § 157(b)(2), this Court has jurisdiction to hear and determine the Motion and this Objection.

4.      Under 28 U.S.C. § 586, the United States Trustee is generally charged with monitoring the federal bankruptcy system. *See United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.)*, 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that United States Trustee has "public interest standing" under 11 U.S.C. § 307 which goes beyond mere pecuniary interest); *Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the United States Trustee as a "watchdog").

---

[3]      Upon the request of the United States Trustee, the Debtors provided the United States Trustee with information regarding the job descriptions for some of its employees, on a confidential basis (i) the identity and job titles for proposed Bonus Plan participants, (ii) the prepetition incentive, retention, and bonus programs offered by the Debtors prepetition, and (iii) some additional information.

5.      Under section 307 of title 11 of the United States Code (the "Bankruptcy Code"), the United States Trustee has standing to be heard on the Motion and the issues raised in this Objection.

**Background**

*General*

6.      On October 23, 2013 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

7.      The Debtors provide utility grade power conversion solutions for the renewable energy market, primarily for large-scale commercial and utility-scale solar photovoltaic markets.   *Declaration of Earl J. Blackwell in Support of Chapter 11 Petitions and First Day Motions* (Docket No. 2) (the "Blackwell Declaration"), at ¶ 6.  The Debtors are an independent oilfield services company that provides a wide range of services to oil and natural gas exploration and production companies to help develop and enhance the production of hydrocarbons.  *Id*.  The Debtors' services include, among other things, hydraulic fracturing, as well as cementing, coiled tubing, pressure pumping, acidizing, and other pumping services.  *Id*.

8.      According to the Blackwell Declaration, due to tightening liquidity and a reduction in customer base, prior to the Petition Date the Debtors substantially scaled down their operations in an effort to preserve funds and the value of the Debtors as a going concern.  *Id*. at fn.6.

9.      The Debtors remain in possession of their assets and continue to manage their business as debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

10.     The United States Trustee has appointed an official committee of unsecured creditors.  *See* Docket No. 111.

11.     As of the Petition Date, according to the Debtors' Schedules of Assets and Liabilities and Statements of Financial Affairs (collectively, the "Schedules") the Debtors' have over $335 million in asserted secured liability, and about $102 million in asserted unsecured liability.  *See* Docket Nos. 248-253, 265-266.

12.     On December 13, 2013, the Debtors filed the Notice Of Entry Of Bar Date Order Establishing Deadlines For Filing Proofs Of Claim (Including Section 503(B)(9) Claims) Against The Debtors (Docket No. 254) (the "Original Bar Date Notice").  The Original Bar Date Notice provided that the General Bar Date was established as January 24, 2014, at 4:00 p.m. (prevailing Eastern Time).

***The Bonus Motion***

13.     On December 17, 2013, the Debtors filed the Bonus Motion.  Pursuant to the Bonus Motion, the Debtors are seeking to pay (i) certain insiders (the "Insider Participants"), and (ii) certain non-insiders ("Non-Insider Participants") bonuses based upon the Bonus Plan Sale Parameters (the "Bonus Plan").[4]  *See Bonus Motion.*

14.     On the same date, the Debtors filed their *Motion for Order, Pursuant to Bankruptcy Code Section 107(b), Bankruptcy Rule 9018-1(b), Authorizing Debtors to File Motion of Debtors for Entry of Order Approving (I) Key Employee Incentive Plan and (II) Key Employee Retention Plan Under Seal* (Docket No. 258) (the "Seal Motion").  Until the Court renders a decision on the Seal Motion, the United States Trustee will not specifically reference

4

the information that is the subject of the Seal Motion.    Notwithstanding, the United States

Trustee does not waive her with to object to the relief requested in the Seal Motion.

The Insider Participants

15.    The proposed bonuses to be paid to the Insider Participants are based on

the sale of a certain percentage of the Debtors assets ("Asset Sales"), resulting in gross proceeds

that exceed a certain monetary thresholds (the "Bonus Plan Sale Parameters").    The Bonus Plan

Sale Parameters has varying thresholds of gross sale amounts, which if reached the Insider

Participant would be entitled to receive a bonus payment representing an identified percentage of

each participant's base salary ("Bonus Plan Sale Bonus").

16.    In addition to the Bonus Plan Sale Bonus, under the Bonus Plan, Insider

Participants are entitled to receive a "Stretch Bonus" in the event the Asset Sale results in gross

sale amounts greater than a certain monetary threshold.    According to the Bonus Plan, a

percentage of those gross proceeds will be used to fund an additional bonus pool of Insider

Participants ("Bonus Plan Stretch Bonus").    Each Insider Participant's Bonus Plan Stretch Bonus

will be based on the ratio of each participant's base salary compared to the sum of all Insider

Participants' base salaries.

17.    An additional Insider Participant is entitled to receive a Bonus Plan Sale

Bonus under the Debtors "Secondary KEIP Bonus."

18.    To be entitled to payment under the Bonus Plan, the Insider Participants

must meet the Bonus Plan Sale Parameters, must be employed by the Debtors on the Bonus

Date,[5] and not terminated for cause.[6]

---

[5]    Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Bonus
Motion.

19.     The Debtors did not file in the record a list of the job description, reporting relationship, the award amount that each Insider Participant would be entitled to receive under the Bonus Plan, although they provided the list to the United States Trustee on a confidential basis.  It is the United States Trustee's position that the Insider Participants are "insiders" as that term is defined by section 101(31) of the Bankruptcy Code.  "A person holding the title of an officer, including vice president, is presumptively what he or she appears to be—an officer and, thus, an insider."  *In re Foothills Texas, Inc.*, 408 B.R. 573,  585 (Bankr. D. Del. 2009).

The Non-Insider Participants

20.     The proposed bonuses to be paid to Non-Insider Participant are based on the Non-Insider remaining employed by the Debtor.   The retention bonus will be a  percentage of the Non-Insider Participant's base salary ("Non-Insider Retention Bonus").  Pursuant to the Bonus Plan, the Non-Insider Retention Bonus will be paid in two installments.

21.     In addition, the Debtors are seeking approval of a discretionary pool of a sum certain ("Discretionary Bonus Pool") wherein they will have the ability and discretion to determine if other of the Debtors' employees besides the Insider Participants are eligible to receive a bonus to reflect their contribution to the achievement of the Bonus Plan Sale Parameters.

22.     The Debtors did not file in the record a list of the job description, reporting relationships, the award amounts that each Non-Insiders Participants would be entitled to receive under the Bonus Plan, although the Debtors' did provide the United States Trustee with a list of all their employees with titles and base salaries on a confidential.  This list should

---

[6]     If the Insider Participant dies or becomes disabled prior to the Bonus Date and was not terminated by the Debtors, the Insider Participant will be entitled to receive a pro rata portion of the Bonus Plan Sale Bonus.

be filed with appropriate redactions as necessary.  Without further information, the Court cannot make a determination as to whether section 503(c) is applicable to the Non-Insider Participant.

23.    In the Bonus Motion, the Debtors assert that they have worked with their management team and advisors and determined that approval of the Bonus Plan will "(a) provide for the successful wind-down of certain of the Debtors' businesses; (b) maximize value for all creditors of the estate; (c) incentivize essential employees to assist the Debtors to maximize the proceeds from the sale of their assets; and (d) retain (for the KERP) essential personnel through the closing of such sale." *Bonus Motion*, at p. 12.  They argue that the Bonus Motion must be approved as a proper exercise of the Debtors' business judgment.

24.    As discussed below, the United States Trustee submits that the Bonus Plan should not be approved.  The Debtors have not established an evidentiary record to satisfy the stringent requirement of section 503(c)(1) of the Bankruptcy Code necessary to justify the Bonus Plan, or otherwise demonstrate that the Bonus Plan is one with primarily an incentive, versus retentive, purpose that is justified by the facts and circumstances of this case.

## Statutory Framework

25.    A motion to approve the provisions of an employee benefit or bonus program that will become effective during the post-petition period is subject to approval under section 503(c) of the Bankruptcy Code.

26.    Section 503(c) of the Bankruptcy Code, added in 2005 as part of the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA"), was intended to curtail payments of retention incentives or severance to insiders, including bonuses granted to other employees without factual and circumstantial justification.  *See In re Pilgrim's Pride Corp.*, 401 B.R. 229, 234 (Bankr. N.D. Tex. 2009) ("Section 503(c) was enacted to limit a

debtor's ability to favor powerful insiders economically and at estate expenses during a chapter 11 case.") (citing *In re Airways Indus., Inc.*, 354 B.R. 82, 87 n.12 (Bankr. W.D. Pa. 2006) (additional citations omitted); *see also In re Global Home Prods., LLC*, 369 B.R. 778, 783-84 (Bankr. D. Del. 2007) (the amendments were added to "eradicate the notion that executives were entitled to bonuses simply for staying with the Company through the bankruptcy process."); *see also* 4 Collier on Bankruptcy ¶ 503.17 (15th rev. ed. 2007) (The intent of section 503(c) is to "limit the scope of 'key employee retention plans' and other programs providing incentives to management of the debtor as a means of inducing management to remain employed by the debtor.").

      27.    Section 503(c)(1) prohibits any transfer made to, or an obligation incurred for the benefit of, *an insider* of the debtor for the purpose of *inducing such person to remain with the debtor's business*, absent a finding by the court based on evidence in the record that –

> (A)    the transfer or obligation is essential to retention of the person because the individual has a bona fide job offer from another business at the same or greater rate of compensation;
>
> (B)    the services provided by the person are essential to the survival of the business; and
>
> (C)    either—
>
>> (i)    the amount of the transfer made to, or obligation incurred for the benefit of, the person is not greater than an amount equal to 10 times the amount of the mean transfer or obligation of a similar kind given to nonmanagement employees for any purpose during the calendar year in which the transfer is made or the obligation is incurred; or
>>
>> (ii)    if no such similar transfers were made to, or obligations were incurred for the benefit of, such nonmanagement employees during such calendar year, the amount of the transfer or obligation is not greater than an amount equal to 25 percent of the amount of any similar transfer or obligation made to or incurred for the benefit of such insider for any purpose during the calendar year before the year in which such transfer is made or obligation is incurred;

11 U.S.C. § 503(c)(1) (emphasis added).

8

28.     Section 101(31) of the Bankruptcy Code defines an "insider" of a corporation as an "officer," a "director", or a "person in control."

29.     "A transfer to an insider to induce the insider to remain with the debtor's business must satisfy the requirements under subdivisions (A), (B), and (C) of section 503(c)(1) of the Bankruptcy Code to be subject to this subdivision's exception." *In re Mesa*, No. 10-10018, 2010 WL 3810899, at *2 (Bankr. S.D.N.Y. Sept. 24, 2012) (citing *4 Collier Bankruptcy* ¶ 503.17 (15th ed. Rev. 2007); *In re Dana Corp.*, 358 B.R. 567, 575 (Bankr. S.D.N.Y. 2007) ("*Dana II*") (summarizing the requirement under section 503(c)(1) of the Bankruptcy Code)). "Attempts to characterize what are essentially prohibited retention program as 'incentive' programs in order to bypass the requirements of section 503(c)(1) are looked upon with disfavor, as the courts consider the circumstances under which particular proposals are made, along with the structure of the compensation packages, when determining whether compensation programs are subject to section 503(c)(1)". *Id.*

30.     Section 503(c)(1) "applies to those employee retention provisions that are essentially 'pay to stay' key employee retention programs." *Dana II*, 358 B.R. at 571.

31.     In addition, section 503(c)(3) of the Bankruptcy Code prohibits "other transfers or obligations that are outside the ordinary course of business and not justified by the facts and circumstances of the case, including transfers made to, or obligations incurred for the benefit of, officers, managers or consultants hired after the date of the filing of the petition." 11 U.S.C. § 503(c)(3).

32.     The BAPCPA reform suggests that in order for a debtor to avoid running afoul of section 503(c)(1)'s restriction on retention pay, the debtor must demonstrate that its bonus plan is tied to significant hurdles which are difficult to achieve. *See Dana I*, 358 B.R. at

582 (court found that benchmarks for the debtors' long-term incentive plan "are difficult targets to reach and are clearly no 'lay-ups'"); *In re Nobex Corp.*, No. 05-20050, 2006 WL 4063024 (Bankr. D. Del. Jan. 19, 2006) (plan that provided payments exclusively upon improvements to "stalking horse" bid did not violate 11 U.S.C. § 503(c)(1)).

33.    Consideration of a motion to establish an employee incentive program is based upon the totality of the circumstances and the court "should consider all salient factors pertaining to the proceeding and accordingly act to further the diverse interest of the debtor, creditors and equity holders alike." *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 9D. Del. 1999).

## Objection

A.    *The Debtors' Bonus Plan is a Retention Plan Subject to Section 503(c)(1) That Should Not Be Approved*

34.    The law is clear that the burden is on the Debtors to either show that the proposed Bonus Plan complies with the requirements of section 503(c)(1) or that they are not disguised retention plans. *See In re Mesa*, 2010 WL 3810899, at *3; *In re Dana Corp.*, 351 B.R. 96, 100 (Bankr. S.D.N.Y. 2006) ("*Dana I*"); *Global Home Products*, 369 B.R. at 783-85.

35.    The Bonus Motion fails to contain information sufficient to demonstrate that the Bonus Plan Sale Parameters are "difficult targets to reach," rather than being "lay-ups." *Dana Corp.*, 358 B.R. at 582.    Therefore, the Debtors have failed to satisfy their evidentiary burden and the Bonus Motion should be denied.

36.    Despite the label of the Bonus Plan, the Bonus Plan is structured to entice the Debtors' insiders to stay with the companies and do their jobs through the conclusion of the restructuring process, rather than entice the insiders to perform at a high level to achieve significant benchmarks – without the attendant proof of section 503(c)(1).

37.    Only ["by] presenting an executive compensation package that *properly incentivizes* [management] to produce an increase the value of the estate" can a debtor establish that section 503(c)(1) does *not* apply." *Dana II*, 358 B.R. at 584 (emphasis added).

38.    As set forth in the Bonus Plan, the Insider Participants will earn a percentage of their base salary upon the sale of a certain percentage of the Debtors assets resulting in gross proceeds that exceed a certain monetary thresholds. *Bonus Motion* at pp. 7-8. According to the Debtors, these objectives were put in plan to incentivize the Insider Participants to (i) provide for a successful wind-down of the Debtors' businesses; and (ii) maximize value for all creditors of the estates. *Bonus Motion* at p. 12.

39.    The record demonstrates that the Debtors, as of the petition date, have over $335 million of asserted secured liability and about $102 million of asserted unsecured liability.  In addition, the Debtors' have administrative liability as it relates to the post-petition debtor in possession financing.  The record further demonstrates that the Bonus Plan Sale Parameters, as proposed, are insufficient to satisfy the Debtors' secured liability or the Debtors' unsecured liability.  It is difficult to ascertain, therefore, how the payment proposed to the Insider Participants upon achievement of the Bonus Plan Sale Parameters are necessary to incentivize the insiders to achieve the Debtors' goals to (i) provide for a successful wind-down of the Debtors' businesses; and (ii) maximize value for all creditors of the estates..

40.    While theoretically, an order approving a sale will not enter unless the sale price is higher than the value of the secured creditors' claims without the consent of the secured creditors consent of those creditors, there is virtually no incentive in the Bonus Plan Sale Parameters as structured for the Insider Participants to work so diligently as to ensure the sale price is not only high enough to satisfy section 363(f) of the Bankruptcy Code but to ensure that

11

the sale process leads to a maximization of the going concern value for the benefit of all constituents.

41.    Without the use of additional financial criteria that demonstrate a real "relationship between compensation paid and incentivized performance." *In re Borders Grp. Inc.*, 453 B.R. 459, 474 (Bankr. S.D.N.Y. 2011), the Bonus Plan appear more akin to a "pay to stay" bonus plan offering payment of additional compensation to the Debtors' insider employees whether deserving or not and subject to approval under section 503(c)(1).  *See Dana II*, 358 B.R. at 571.

B.    *In the Alternative, The Debtors' Bonus Plan Is Not Justified by the Facts and Circumstances And Cannot Meet the Business Judgment Standard*

42.    If the Court is convinced that the Bonus Plan is not an insider retention plan subject to section 503(c)(1), the Bonus Plan must comply with the provisions of the section 503(c)(3).  Section 503(c)(3) limits payment to a debtor's employees outside the ordinary course of business  unless such payments are justified by the "facts and circumstances" of the case. Courts have held that this test creates a standard akin to the business judgment standard of section 363.  *See Borders Grp.*, 453 B.R. at 473-74; *In re Mesa Air Grp.*, 2010 WL 3810899, at *3.

43.    In *Dana II*, Judge Lifland listed several factors that courts consider when determining if the structure of a compensation proposal and the process for its development meet the business judgment test:

(a) Is there a reasonable relationship between the plan proposed and the results to be obtained, i.e., will the key employee stay for as long as it takes for the debtor to reorganize or market its assets, or, in the case of a performance incentive, *is the plan calculated to achieve the desired performance?*

12

(b) Is the cost of the plan reasonable in the context of the debtor's assets, liabilities and earning potential?

(c) Is the scope of the plan fair and reasonable; does it apply to all employees; does it discriminate unfairly?

(d) Is the plan or proposal consistent with industry standards?

(e) What were the due diligence efforts of the debtor in investigating the need for a plan; in analyzing which key employees need to be incentivized; what is available; what is generally applicable in a particular industry?

(f) Did the debtor receive independent counsel in performing due diligence and in creating and authorizing the incentive compensation?

358 B.R. at 576-77 (emphasis in original); s*ee also Global Home*, 369 B.R. at 786 (evaluating an incentive plan under the business judgment standard of section 363 by applying the factors listed above); *but see In re Pilgrim's Pride Corp.*, 401 B.R. 229, 236-37 (Bankr. N.D. Tex. 2009) (standard for approval under section 503(c)(3) is higher than the business judgment test; if payments to employees outside the ordinary course were only subject to the business judgment test, then the language of section 503(c)(3) would ostensibly be rendered meaningless).

44.    Based on the information available to the United States Trustee, and the fact that the Bonus Plan Sale Parameters are insufficient to maximize the going concern value of the Debtors' assets for the benefit of all constituents, it would not be a proper exercise of the Debtors' business judgment to expend such a significant amount of cash on the Debtors' insiders.

## <u>Conclusion</u>

45.    As set forth above, the Debtors have not provided the Court with sufficient facts and analysis to determine whether the proposed Bonus Plan is appropriate under section 503(c) of the Bankruptcy Code.  To pass the statutory muster of section 530(c) the benchmarks for the payment of bonuses must be "difficult targets to reach."  Here, the Debtors have not set

forth <u>any</u> parameters that would induce a "stretch" of performance by the eligible participants. Instead, the bonuses are merely tied to the sale of the businesses without any economic metrics would benefit a significant pool of the Debtors' creditors.  To suggest, as the Debtors have, that the proposed bonuses pass statutory scrutiny because they motivate participants to help the Debtors achieve certain important business objectives, implies that without them, the eligible participants will not exercise their prepetition contractual and fiduciary duties.

46.     In addition, the Debtors have failed to demonstrate that the Bonus Plan is justified by the facts and circumstances of these cases.  Therefore, the Motion should be denied.

47.     The United States Trustee reserves any and all rights, remedies and obligations to, *inter alia*, complement, supplement, augment, alter and/or modify this Objection, file an appropriate motion and/or conduct any and all discovery as may be deemed necessary or as may be required and to assert such other grounds as may become apparent upon further factual discovery.

**WHEREFORE,** the United States Trustee requests that this Court deny the Bonus Motion, and/or grant such other relief as this Court deems appropriate, fair and just.

Dated: December 31, 2013                          Respectfully submitted,
      Wilmington, Delaware

                                        **ROBERTA A. DeANGELIS**
                                        **UNITED STATES TRUSTEE**

                                        By: */s/  Tiiara N. A. Patton*                          .
                                              Tiiara N. A. Patton
                                              Trial Attorney
                                                United States Department of Justice
                                                Office of the United States Trustee
                                                J. Caleb Boggs Federal Building
                                                844 King Street, Suite 2207, Lockbox 35
                                              Wilmington, DE 19801
                                              (302) 573-6491
                                              (302) 573-6497 (Fax)

14