## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>GREEN FIELD ENERGY SERVICES, INC., et al.,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 13-12783 (KG)<br><br>Jointly Administered<br><br>**Hearing Date: February 4, 2014 at 2:00 p.m. (ET)**<br>**Obj. Deadline: January 14, 2014 at 4:00 p.m. (ET)** |

### DEBTORS' MOTION PURSUANT TO SECTIONS 105 AND 363 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 9019 FOR AN ORDER AUTHORIZING THE DEBTORS TO ENTER INTO AND PERFORM THEIR OBLIGATIONS UNDER A RESTRUCTURING SUPPORT AGREEMENT WITH THE MORENO ENTITIES, TURBINE POWERED TECHNOLOGY, LLC, SWEPI, LP, AND CONSENTING NOTEHOLDERS

The above-captioned debtors and debtors-in-possession (collectively, the "**Debtors**") have spent the last four months negotiating the terms of a plan of reorganization with certain of their key constituents that will, upon its confirmation, maximize value for all of their creditors. The Debtors will seek confirmation of the Chapter 11 Plan[2] in due course and at this juncture the Debtors only move this Court (the "**Motion**") for entry of an order (the "**Order**"), in substantially the form attached hereto as Exhibit A, authorizing the Debtors to enter into and perform their obligations under the Restructuring Support Agreement attached as Exhibit 1 to the Order (the "**RSA**") among the Debtors, Michel B. Moreno ("**Moreno**") and related trusts and other entities under Moreno's control (together with Moreno, the "**Moreno Entities**"), Turbine Powered Technology, LLC ("**TPT**"), SWEPI, LP (successor to Shell Western Exploration and Production, Inc., "**Shell**"), and holders of at least 66.7% of the aggregate principal amount of

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax or organizational identification number, are: Green Field Energy Services, Inc. (2539); Hub City Tools, Inc. (2827); and Proppant One, Inc. (6035).  The above-captioned Debtors' mailing address is 4023 Ambassador Caffery Parkway, Suite #200, Lafayette, LA 70503.

[2]    All capitalized terms that are used herein without being defined shall have the meaning given to such terms in the RSA, as applicable, which are incorporated by reference herein.

those certain 13% Senior Secured Notes Due 2016 issued in the original aggregate principal amount of $250,000,000 (the "**Notes**") under that certain Indenture dated as of November 15, 2011 (as amended, the "**Indenture**") among Debtor Green Field Energy Services, Inc. ("**GFES**") and Wilmington Trust, National Association, as trustee and collateral agent (the "**Indenture Trustee**").  The beneficial holders of the Notes are referred to herein as the "**Noteholders**," the Noteholders signatories to the RSA are referred to herein as the "**Consenting Noteholders**" and the Consenting Noteholders, the Debtors, the Moreno Entities, TPT, and Shell are collectively referred to herein as the "**RSA Parties**").  In support of this Motion, the Debtors respectfully state as follows:

**JURISDICTION**

1.      This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware* dated as of February 29, 2012.  This is a core proceeding under 28 U.S.C. § 157(b), and the Court may enter a final order consistent with Article III of the United States Constitution.  Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory bases for the relief requested herein are Sections 105(a) and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "**Bankruptcy Code**"), and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

**BACKGROUND**

**A.      Status Of The Case**

2.      On October 27, 2013 (the "**Petition Date**"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "**Chapter 11 Cases**").  The Debtors are operating their business and managing their properties as debtors-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.  On October 29, 2013, the Court

entered an order consolidating these Chapter 11 Cases for procedural purposes only [Docket No. 50].

3.    On November 7, 2013, the United States Trustee for Region 3 appointed the Official Committee of Unsecured Creditors pursuant to Section 1102(a)(1) of the Bankruptcy Code (the "**Committee**").

### B.    Relationship with TPT

4.    TPT is a joint venture owned 50% by MTT Properties, LLC and 50% owned by GFES.  TPT licenses certain patent rights, copyrights, trademarks and trade secrets to the Debtors pursuant to that certain Turbine Driven Equipment License Agreement dated September 22, 2011.  Prior to the Petition Date, TPT sold equipment to the Debtors pursuant to that certain Equipment Purchase Agreement dated July 8, 2011 (as amended by that certain Amendment to Equipment Purchase Agreement dated September 22, 2011) and provided maintenance on the Debtors' equipment.

### C.    Relationship with Shell

5.    GFES and Shell entered into a certain Contract for High Pressure Fracturing Services dated as of September 2, 2011 (the "**Shell Contract**"), as amended, the obligations under which are secured by security interests in certain motor vehicles as the result of notations on their certificates of title and equipment and other assets as the result of a UCC-1 filed with the Delaware Secretary of State on October 11, 2013.

6.    As of the date of the RSA, Shell assert that the Debtors are obligated to Shell for an aggregate principal amount of $80,000,000 under the Shell Contract, plus an additional $15,000,000 for liens that have been asserted against Shell's property by the Debtors' vendors.

**D.** **Relationship with Consenting Noteholders**

7.      Prior to the Petition Date, GFES, as issuer, and the Indenture Trustee entered into the Indenture pursuant to which the Notes are secured by liens on substantially all the assets of the Debtors.

8.      As of the date of the RSA, the Noteholders assert that the Debtors are obligated for an aggregate principal amount of at least $255,948,000 and other amounts under the Indenture.

**E.** **Relationship with Moreno Entities**

9.      The Moreno Entities own approximately 90.40767% of the membership interests in MOR DOH Holdings, LLC, which owns 100% of Turbine Generation Services, LLC ("**TGS**").  Moreno owns or controls the majority of the equity of GFES and is the Chief Executive Officer of GFES.

**F.** **Resolution of Litigation**

10.      Each of the RSA Parties has asserted causes of action against some or all of the other RSA Parties.  The Chapter 11 Plan (and not the Order approving this Motion) will contain releases of certain of those causes of action.  The Disclosure Statement will provide further detailed information about such causes of action and the appropriateness of all releases contained in the Chapter 11 Plan.  All such issues may be litigated, if necessary, in connection with the confirmation of the Chapter 11 Plan.

**G.** **DIP Order and Milestones**

11.      On November 26, 2013, this Court entered the *Final Order (i) Authorizing Debtors to Obtain Post-Petition Financing Pursuant to 11 U.S.C. §§ 105, 361, 362, 364 and 507(B), and (ii) Granting Adequate Protection to Certain Prepetition Secured Parties Pursuant to Sections 361, 362, 363 and 364 of the Bankruptcy Code* [Docket No. 191] (the "**Final DIP**

01:14641150.1

HN\1115330.6

4

**Order**").  The Final DIP Order established various milestones, including, among others: (A) execution of the RSA by December 31, 2013 (as extended by agreement of the Debtors and Requisite Noteholders)[3]; (B) a motion filed seeking Court approval of the RSA by December 31, 2013; and (C) Court approval of the RSA by January 31, 2014.

### H.    Negotiation of the RSA

12.    The Debtors' Chief Restructuring Officer, Thomas Hill (the "**CRO**"), the Debtors' counsel and other advisors have worked with the independent special committee of the board of directors of Green Field Energy Services, Inc. (the "**Special Committee**") throughout the formulation and negotiation of the RSA.  Ultimately, on December 30, 2013, the Special Committee authorized the  CRO's execution of the RSA and the filing of this Motion.

13.    The RSA is the culmination of lengthy negotiations between the RSA Parties, including significant negotiations prior to the Petition Date.  As of the date of this Motion, the RSA has been executed by all of the Noteholders in the Ad Hoc Noteholder Group.  They hold approximately 50% of the principal amount of the Notes, short of the required threshold of 66.7% under the terms of the RSA.[4]  Additionally, as described below, the RSA contains certain limited discretionary termination rights.  The Debtors believe that by the date of the hearing on this Motion, the necessary signatures will have been obtained and the discretionary termination rights will have expired.

---

[3]    Certain of the early milestones contained in the Final DIP Order were extended by agreement with the Requisite Noteholders so that the RSA Parties could continue to negotiate and finalize the RSA and file the instant Motion no later than December 31, 2013 (which the Debtors have done).  In addition, the Debtors have commenced the sale process as contemplated by the RSA.

[4]    In accordance with Section 32 of the RSA, the Debtors have redacted the signature pages of the Consenting Noteholders and have filed, contemporaneously herewith, the *Debtors' Motion to Redact for Public Filing Material Included in their Restructuring Support Agreement with the Moreno Entities, Turbine Powered Technology, LLC, SWEPI, LP, and Consenting Noteholders*.

14.    The Committee was not actively involved in the negotiations of the RSA—largely due to the number of RSA Parties involved, the fact that the negotiations were a continuation of negotiations prior to the Petition Date, and because the Debtors thought it would be most productive to share the RSA with the Committee once it had been finalized by the RSA Parties. The Debtors have provided significant documents and materials to the Committee and will continue to cooperate with the Committee's requests for information and materials prior to the hearing on the Motion and thereafter so that the Committee can meaningfully consider the Chapter 11 Plan.

**I.    Terms of the RSA**

15.    The material terms of the RSA are set forth below[5]:

(A)    <u>Support for the Chapter 11 Plan</u>.

a.    The Debtors agree and covenant that they shall (A) use commercially reasonable efforts to file the Chapter 11 Plan prior to the applicable termination date set forth in Section 6(a) of the RSA, (B) use commercially reasonable efforts to file the Disclosure Statement within the time frame set forth in Section 6(b) of the RSA, (C) upon Bankruptcy Court approval of the Disclosure Statement, use commercially reasonable efforts to solicit acceptance to the Chapter 11 Plan, (D) take all necessary steps to obtain from the Bankruptcy Court an order confirming the Chapter 11 Plan (the "**Confirmation Order**") within the time frame set forth in Section 6(c) of the RSA, which Confirmation Order shall be in form and substance reasonably satisfactory to the Moreno Entities, TPT, Shell and the Consenting Noteholders, (E) take all other commercially reasonably necessary actions to support the Chapter 11 Plan and (F) take no actions inconsistent with the transactions contemplated by the RSA, the Plan Term Sheet and the Chapter 11 Plan or the expeditious confirmation and consummation of the Chapter 11 Plan.

b.    Each of the Consenting Noteholders, Shell, TPT, and each of the Moreno Entities (collectively, the "**Non-Debtor Parties**"), severally and not jointly, agrees and covenants that it shall:

---

[5]    Reference is made to the RSA for a complete description of its terms. To the extent any summaries and/or descriptions of the relationships of the parties and the terms of the RSA contained in the Motion differ in any way from that contained in the RSA, the RSA shall govern.

01:14641150.1

HN\1115330.6

    i. use commercially reasonable efforts (including, with respect to the Consenting Noteholders, directing the Indenture Trustee, as necessary, but only so long any such direction does not require any of the Consenting Noteholders to indemnify the Indenture Trustee) to support the Debtors' efforts to obtain confirmation of, and consummate, the Chapter 11 Plan;

    ii. not directly or indirectly seek, solicit, support, or vote in favor of any sale, proposal, offer or plan of dissolution, winding up, liquidation, reorganization, merger, or restructuring of any of the Debtors other than the Chapter 11 Plan (each, an "**Alternative Plan**");

    iii. not, directly or indirectly, engage in, continue, or otherwise participate in any negotiations regarding any Alternative Plan; and

    iv. with respect to any Non-Debtor Parties that hold Claims, following receipt of solicitation materials approved by the Bankruptcy Court, cast all votes to which it is entitled to accept the Chapter 11 Plan in the Chapter 11 Cases (and will not withdraw or change such votes

(B) Specific Performance. Each RSA Party recognizes and acknowledges that a breach by it of any covenants or agreements contained in the RSA will cause the other Parties to sustain damages for which such Parties would not have an adequate remedy at law for money damages, and therefore each RSA Party agrees that in the event of any such breach, such other Parties shall be entitled to the remedy of specific performance of such covenants and agreements and injunctive and other equitable relief in addition to any other remedy to which such Parties may be entitled, at law or in equity.

(C) Fees and Expenses. The Debtors shall pay the reasonable accrued and ongoing prepetition and postpetition fees and expenses of Jones Day, Tudor, Pickering, Holt & Co., and Richards, Layton and Finger LLP, in their capacity as professionals retained by the Ad Hoc Noteholder Group (as defined in Final DIP Order), within 15 days of receipt of invoices therefor, subject to (a) the Debtors and the Ad Hoc Noteholder Group agreeing to a monthly budget for such fees and expenses and the DIP Lenders (as defined in the Final DIP Order) agreeing to amend the Budget (as defined in the Final DIP Order) to include such fees and expenses, and (b) compliance with paragraph 26 of the Final DIP Order. The Debtors shall also pay, upon the effective date of the Chapter 11 Plan, the reasonable fees and expenses of (i) attorneys and a financial advisor for the Moreno Entities, (ii) attorneys for the Indenture Trustee, (iii) attorneys for the proposed agent retained by certain Noteholders in connection with a postpetition financing proposal negotiated with the Debtors (the "**Proposed Agent**") and (iv) Liskow & Lewis, FTI Consulting, Inc., and Potter Anderson & Corroon LLP as professionals retained by Shell, subject to the Debtors and each of the Moreno Entities, the Indenture Trustee, the Proposed Agent and Shell agreeing to an aggregate budget for such respective fees and expenses.

(D)    <u>Fiduciary Obligations</u>.  Notwithstanding anything to the contrary contained in the RSA (i) nothing in the RSA requires the Debtors or their respective boards of directors to breach any fiduciary obligations they have under applicable law; and (ii) the Debtors may terminate the RSA without incurring liability to any Party as a result of such termination in the event the independent director on the special committees of the Debtors' Boards of Directors reasonably determines, consistent with his fiduciary obligations and in consultation with the Debtors' legal advisors, (a) that the conditions to effectiveness of the Chapter 11 Plan cannot be satisfied or (b) if an unsolicited offer of an Alternative Plan or other alternative to the Chapter 11 Plan is received, that failure to negotiate such unsolicited offer would violate his fiduciary duties.

(E)    <u>Termination</u>.  The RSA may be terminated by the Parties set forth below on the occurrence of the following events, by delivering written notice of the occurrence of such event in accordance with Section 14 of the RSA to the other Parties:

    a.    Shell or the Requisite Noteholders, if the Debtors shall not have filed the Chapter 11 Plan, the Disclosure Statement, and a motion, in form and substance reasonably acceptable to each of the foregoing Parties, seeking approval of the Disclosure Statement by February 7, 2014;

    b.    Shell or the Requisite Noteholders, if the entry of an order by the Bankruptcy Court approving the Disclosure Statement in form and substance reasonably acceptable to each of the foregoing Parties, shall not have occurred by March 10, 2014;

    c.    Shell, any of the Moreno Entities, TPT or the Requisite Noteholders, if the entry of the Confirmation Order and the effective date of the Chapter 11 Plan shall not have occurred by April 30, 2014; <u>provided</u>, <u>that</u>, if such events have not occurred on or before June 30, 2014, then any Consenting Noteholder may withdraw from and no longer be bound by this Agreement by providing notice of such withdrawal in accordance with Section 14 below;

    d.    Shell, any of the Moreno Entities, TPT or the Requisite Noteholders, if the Chapter 11 Plan or any exhibits or supplements thereto do not conform in all material respects to the Plan Term Sheet with respect to the treatment of its Claims and its rights;

    e.    Shell, the Requisite Noteholders or TPT if the Bankruptcy Court enters an order invalidating, disallowing or limiting in any material respect, such RSA Party's Claims;

    f.    Shell, any of the Moreno Entities, TPT or the Requisite Noteholders, if an order converting the Chapter 11 Case of any of the Debtors to a case under chapter 7 of the Bankruptcy Code is entered by the Bankruptcy Court without the prior consent of such RSA Party, provided that it shall not constitute a Termination Event if the Requisite Noteholders, Shell, the Moreno Entities or TPT

unreasonably withhold their consent to an order converting the Chapter 11 Case of one of the subsidiaries of GFES;

g.  Shell, any of the Moreno Entities, TPT or the Requisite Noteholders, if the Bankruptcy Court enters an order terminating or modifying the Debtors' exclusive right to file a chapter 11 plan pursuant to section 1121 of the Bankruptcy Code without the prior written consent of such RSA Party;

h.  Shell, any of the Moreno Entities, TPT or the Requisite Noteholders, if any of the Debtors shall materially breach its obligations under the RSA or file or publicly announce its intention not to pursue the Restructuring or to file a chapter 11 plan other than the Chapter 11 Plan;

i.  Shell, any of the Moreno Entities, TPT or the Requisite Noteholders, if the Bankruptcy Court enters an order under section 1106(b) of the Bankruptcy Code appointing an examiner with enlarged powers (powers beyond the ability to investigate and report as set forth in section 1106(a)(3) and (4) of the Bankruptcy Code), or the entry of an order by the Bankruptcy Court appointing a trustee under section 1104 of the Bankruptcy Code;

j.  Shell, any of the Moreno Entities, TPT or the Requisite Noteholders, if the Bankruptcy Court enters an order dismissing one or more of the Debtors' Chapter 11 Cases without the prior consent of such RSA Party;

k.  The Requisite Noteholders or Shell, if the stalking horse bid set forth in the motion to sell substantially all of the assets of the Debtors pursuant to Section 363 of the Bankruptcy Code (the "**Sale**") and establish certain bidding procedures relating thereto (the "**Sale Motion**") would not result in the Debtors' receipt at closing of certain minimum dollar amount thresholds;

l.  Shell, any of the Moreno Entities, TPT or the Requisite Noteholders, if any other Party materially breaches this Agreement and such breach has not been cured within 5 days after notice thereof;

m.  Shell or the Requisite Noteholders, if the Debtors fail to satisfy any of the other Milestones set forth in the Plan Term Sheet;

n.  Shell, any of the Moreno Entities, TPT or the Requisite Noteholders, if any court of competent jurisdiction or other competent governmental or regulatory authority shall have issued an order making illegal or otherwise restricting, preventing or prohibiting the Restructuring in a manner that cannot reasonably be remedied by the Debtors or any other RSA Party;

o.  Shell, any of the Moreno Entities or the Requisite Noteholders, if the Chapter 11 Plan is amended or modified, or if the Debtors file a pleading seeking to amend or

modify the Chapter 11 Plan, Disclosure Statement, any of the Plan Related Documents, or any documents related to the foregoing, including motions, notices, exhibits, appendices, and orders, in a manner not reasonably acceptable to Requisite Noteholders;

p.   Shell, any of the Moreno Entities or the Requisite Noteholders, if the Debtors file any motion or pleading with the Bankruptcy Court that is not consistent in any material respect with the RSA, Plan Term Sheet or the Chapter 11 Plan and such motion or pleading has not been withdrawn prior to three (3) business days of the Debtors receiving notice that such motion or pleading is inconsistent with the RSA, the Chapter 11 Plan, or Plan Term Sheet; or

q.   Shell, in its sole discretion, may terminate the RSA on or prior to January 10, 2014, by providing notice in accordance with Section 14 of the RSA stating that Shell will not release the Moreno Guaranty; or

r.   The Requisite Noteholders, in their sole discretion, may terminate this Agreement on or prior to January 10, 2014, by providing notice in accordance with Section 14 below stating that they are not satisfied with the results of their TGS related diligence;

*provided, however,* that no Consenting Noteholder, Shell, TPT, or Moreno Entity may seek to terminate the RSA based upon a material breach or a failure of a condition in the RSA arising out of its own actions or omission.

16.   The Debtors believe that the Chapter 11 Plan maximizes value for all of the Debtors' creditors, including unsecured creditors.  Nonetheless, Section 10 of the RSA contains a "fiduciary out" that will permit the Debtors, if appropriate, to terminate the RSA without penalty and pursue an alternative plan that maximizes value of the Debtors' estates.

### RELIEF REQUESTED

17.   By this Motion, the Debtors seek entry of an order authorizing the Debtors to (i) enter into the RSA pursuant to Sections 105(a) and 363(b) of the Bankruptcy Code and, to the extent applicable, Bankruptcy Rule 9019(a), and (ii) perform their obligations thereunder, including the payment of fees and expenses contemplated therein.  The Debtors are not asking the Court to approve any aspect of the Chapter 11 Plan contemplated by the RSA at the hearing on this Motion.  To the extent that any party raises factual or legal issues as to whether the

Chapter 11 Plan contemplated by the RSA can or should be confirmed, the consideration of such issues is premature and should be litigated, if necessary, in connection with the confirmation of the Chapter 11 Plan and not in connection with the approval of this Motion.

## BASIS FOR RELIEF REQUESTED

**A.      The RSA is in the Best Interests of the Debtors and Their Estates and Accordingly Should be Approved under Sections 363 and 105 of the Bankruptcy Code.**

18.      The Debtors seek authority under Section 363 of the Bankruptcy Code to execute and perform their obligations under the RSA.  The Debtors submit that the terms of the RSA have a sound business purpose and represent the exercise of their sound business judgment and, accordingly, any actions required to effectuate the terms of the RSA should be authorized and approved pursuant to Section 363(b).  See In re Lionel Corp., 722 F. 2d 1063, 1071 (2d Cir. 1983) ("The rule we adopt requires that a judge determining a 363(b) application expressly find from the evidence presented before him a good business reason to grant the application."); In re Delaware Hudson Ry. Co., 124 B.R. 169, 179 (Bankr. D. Del. 1991).

19.      Authorizing the Debtors to enter into and effectuate the terms of the RSA is well within the equitable powers of this Court.  See 11 U.S.C. § 105(1) ("The court may issue any order, process, or judgment that is necessary to carry out the provisions of [the Bankruptcy Code]."); see also Chinichian v. Campolongo (In re Chinichian), 784 F.2d 1440, 1443 (9th Cir. 1986) ("Section 105 sets out the power of the bankruptcy court to fashion orders as necessary pursuant to the purposes of the Bankruptcy Code."); In re Cooper Props. Liquidating Trust, Inc., 61 B.R. 531, 537 (Bankr. W.D. Tenn. 1986) (noting that bankruptcy court is "one of equity and as such it has a duty to protect whatever equities a debtor may have in property for the benefit of its creditors as long as that protection is implemented in a manner consistent with the bankruptcy laws.").

01:14641150.1

HN\1115330.6

20.     Moreover, entry into the RSA is appropriate under applicable Delaware law.  In In re Indianapolis Downs, LLC, this Court upheld a restructuring support agreement between debtors and certain of the debtors' principal secured creditors which memorialized an agreement on the principal terms of the debtors' restructuring process and plan postpetition but prior to the approval of a disclosure statement by the Court.  486 B.R. 286 (Bankr. D. Del. 2013). Specifically, that restructuring support agreement provided for (1) specific terms of the plan of reorganization to be proposed, (2) a time frame for the debtors to pursue the plan, (3) a prohibition on the parties to the restructuring support agreement from proposing or supporting a competing plan and (4) the requirement that the parties vote for the plan and a remedy of specific performance if such parties failed to vote for the plan. See id at 292.  The Court found the restructuring support agreement appropriate, as "the filing of a Chapter 11 petition is an invitation to negotiate" and "courts must be chary of construing those disclosure and solicitation provisions [of the Bankruptcy Code] in a way that chills or hamstrings the negotiation process that is at the heart of Chapter 11." Id at 297.  Thus, a restructuring support agreement should be upheld when "a deal is negotiated in good faith between a debtor and sophisticated parties, and that arrangement is memorialized [by] a written commitment and promptly disclosed[.]" Id.

21.     As noted, this Motion does not seek approval of any plan but instead only seeks to permit the Debtors to enter into the RSA and perform their obligations thereunder.  As described above, the RSA does nothing more than create an agreement among the RSA Parties to support the Chapter 11 Plan described in the Plan Term Sheet, and for the payment of certain professional fees of the RSA Parties—most of which only upon consummation of the Chapter 11 Plan and entirely subject to the agreement of the Debtors on a budget for such professional fees. Further, as set forth in the Final DIP Order, any amounts paid to the professionals retained by the

Ad Hoc Noteholder Group for professional fees throughout the Chapter 11 Cases may be subject to recharacterization as principal repayments on account of obligations under the Indenture if the Notes are undersecured.

22.    Similar to the restructuring agreement in <u>In re Indianapolis Downs, LLC</u>, the RSA and underlying Plan Term Sheet provide (1) specific terms of the Chapter 11 Plan to be proposed, (2) a time frame for the Debtors to pursue the Chapter 11 Plan, (3) a prohibition on the RSA Parties from proposing or supporting a competing plan, and (4) the requirement that the RSA Parties vote for the Chapter 11 Plan and a remedy of specific performance if the RSA Parties failed to vote for the Chapter 11 Plan.  The RSA Parties are sophisticated and negotiated in good faith for their own self-interests in order to maximize their recoveries.  Therefore, the RSA is appropriate under Delaware law.

23.    Both this Motion and approval of the RSA itself are required by the Final DIP Order entered by this Court.  The RSA also incorporates the remaining Final DIP Order milestones and adds a few additional milestones.  The Debtors believe, given their limited liquidity, as well as the interests of all of their creditors in an expeditious process, that the milestones set forth in the RSA  are reasonable and appropriate under the circumstances of these Chapter 11 Cases.

24.    Taking all of the above into consideration, the RSA should be approved by this Court.

**B.    The RSA is Fair, Reasonable, and in the Best Interests of the Debtors' Estates, Satisfying the Requirements of Bankruptcy Rule 9019**

25.    To the extent Bankruptcy Rule 9019(a) is applicable, the RSA satisfies the requirements of Bankruptcy Rule 9019(a).  Bankruptcy Rule 9019(a) provides, in relevant part, that "[o]n motion by the trustee and after notice and a hearing, the court may approve a

compromise or settlement." Fed. R. Bankr. P 9019(a). Compromises and settlements are "a normal part of the process of reorganization." Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968) (quoting Case v. Los Angeles Lumber Prods. Co., 308 U.S. 106, 130 (1939)). The settlement of time-consuming and burdensome litigation, especially in the bankruptcy context, is encouraged and "generally favored in bankruptcy." In re World Health Alternatives, Inc., 344 B.R. 291, 296 (Bankr. D. Del. 2006); see also In re Penn Central Transportation Co., 596 F.2d 1102 (3d Cir. 1979).

26.     "[T]he decision whether to approve a compromise under Bankruptcy Rule 9019 is committed to the sound discretion of the Court, which must determine if the compromise is fair, reasonable, and in the interest of the estate." In re Louise's, Inc., 211 B.R. 798, 801 (D. Del. 1997) (declining to approve settlement found to be sub rosa plan). Courts should not, however, substitute their judgment for that of the debtor, but instead canvas the issues to see whether the settlement falls below the lowest point in the range of reasonableness. See In re Neshaminy Office Building Associates, 62 B.R. 798, 803 (E.D. Pa. 1986); In re W.T. Grant and Co., 699 F.2d 599, 608 (2d Cir. 1983); see also In re World Health Alternatives, Inc., 344 B.R. at 296 ("The court does not have to be convinced that the settlement is the best possible compromise. Rather, the court must conclude that the settlement is within the reasonable range of litigation possibilities.") (internal citations and quotations omitted).

27.     Entry into the RSA provides a course for a confirmable plan and for the success of these Chapter 11 Cases. The RSA maximizes recoveries for all of the Debtors' creditors. Without the RSA, given the Debtors limited liquidity, the Debtors would be forced to immediately file a plan without the support of any of their constituents or convert these Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code and leave it to an unfunded liquidating

trustee or chapter 7 trustee to litigate to conclusion, settle, or perhaps abandon for lack of funds, the many estate causes of action being resolved by the Chapter 11 Plan contemplated by the RSA.  As a result, the RSA is in the best interests of the Debtors and their estates.  Accordingly, it should be approved under Bankruptcy Rule 9019 to the extent applicable.

## NOTICE

28.     Notice of this Motion will be given to: (a) the United States Trustee for the District of Delaware; (b) counsel to the Debtors' postpetition secured lender; (c) counsel to Shell; (d) counsel to the Indenture Trustee; (e) the Securities and Exchange Commission; (f) counsel to the Environmental Protection Agency; (g) counsel to the Noteholders; (h) counsel to the Committee; (i) the United States Attorney General for the District of Delaware; (j) the Attorneys General for the states in which the Debtors conduct business; (k) TPT; (l) counsel to the Moreno Entities and (m) all parties requesting notice pursuant to Bankruptcy Rule 2002 (collectively, the "**Notice Parties**").  The Debtors submit that, under the circumstances, no other or further notice is required.

29.     A copy of the Motion is available on the Court's website: www.deb.uscourts.gov. Additional copies of the Motion are available for free on the website of the Debtors' claims and noticing agent, Prime Clerk LLC, at http://cases.primeclerk.com/gfes, or can be requested by calling (855) 410-7359 from within the United States or +1 (646) 795-6960 if calling from outside the United States.

WHEREFORE, the Debtors respectfully request that this Court enter the Order, substantially in the form attached hereto as Exhibit A, (i) authorizing the Debtors to enter into the RSA, (ii) authorizing the Debtors to effectuate the terms, conditions, and provisions of the RSA embodied therein, and (iii) granting such other and further relief as the Court deems appropriate.

Dated:  December 31, 2013                 Respectfully Submitted,
Wilmington, Delaware

                                          /s/ Kara Hammond Coyle
                                          Michael R. Nestor (No. 3526)
                                          Kara Hammond Coyle (No. 4410)
                                          YOUNG CONAWAY STARGATT & TAYLOR, LLP
                                          Rodney Square
                                          1000 North King Street
                                          Wilmington, Delaware 19801
                                          Telephone: (302) 571-6600
                                          Facsimile: (302) 571-1253

                                                  -and-

                                          Josef S. Athanas
                                          Caroline A. Reckler
                                          Sarah E. Barr
                                          Matthew L. Warren
                                          LATHAM & WATKINS LLP
                                          Suite 5800
                                          233 South Wacker Drive
                                          Chicago, IL 60606
                                          Telephone:  (312) 876-7700
                                          Facsimile:   (312) 993-9767

                                          ATTORNEYS FOR DEBTORS AND DEBTORS-IN-
                                          POSSESSION

01:14641150.1

HN\1115330.6