## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| GREEN FIELD ENERGY SERVICES, INC., et al.,[1] | Case No. 13-12783 (KG) |
| Debtors. | Jointly Administered |
| | **Hearing Date:  March 11, 2014 at 2:00 p.m. (ET)** |
| | **Obj. Deadline:  February 28, 2014 at 4:00 p.m. (ET)** |

### DEBTORS' MOTION FOR AN ORDER EXTENDING THEIR EXCLUSIVE PERIODS TO FILE A CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES THERETO PURSUANT TO SECTION 1121(d) OF THE BANKRUPTCY CODE

The above-captioned debtors and debtors in possession (collectively, the "**Debtors**") hereby move this Court (the "**Motion**"), pursuant to Section 1121(d) of title 11 of the United States Code (the "**Bankruptcy Code**"), Rule 9006 the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Rule 9006-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), for entry of an order, substantially in the form annexed hereto as Exhibit A, extending the Debtors' exclusive periods to file a chapter 11 plan or plans and to solicit acceptances of such plan(s) for approximately one-hundred twenty (120) days[2] through and including June 24, 2014 and August 25, 2014, respectively.  In support of this Motion, the Debtors, by and through their undersigned counsel, respectfully represent:

### JURISDICTION

1.      This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District

---

[1]      The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax or organizational identification number, are: Green Field Energy Services, Inc. (2539); Hub City Tools, Inc. (2827); and Proppant One, Inc. (6035).  The above-captioned Debtors' mailing address is 4023 Ambassador Caffery Parkway, Suite #200, Lafayette, LA 70503.

[2]      A 120-day extension of the exclusive deadline to solicit acceptance of a chapter 11 plan or plans would fall on Saturday, August 23, 2014.  Hence the Debtors request an extension to Monday, August 25, 2014.

Court for the District of Delaware dated as of February 29, 2012.  Venue is proper in this District

pursuant to 28 U.S.C. §§ 1408 and 1409.  Consideration of this Motion is a core proceeding

pursuant to 28 U.S.C. § 157(b) and the Court may enter a final order consistent with Article III

of the United States Constitution.  The statutory and legal predicates for the relief sought herein

are Section 1121(d) of the Bankruptcy Code, together with Bankruptcy Rule 9006(b)(1) and

Local Rule 9006-2.

## BACKGROUND

### A.    Introduction

2.    On October 27, 2013 (the "**Petition Date**"), each of the Debtors filed a

voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "**Chapter 11 Cases**").

The Debtors are operating their business and managing their properties as debtors-in-possession

pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.  On October 29, 2013, the Court

entered an order consolidating these Chapter 11 Cases for procedural purposes only [Docket No.

50].

3.    On November 7, 2013, the United States Trustee for Region 3 appointed

the Official Committee of Unsecured Creditors pursuant to Section 1102(a)(1) of the Bankruptcy

Code (the "**Committee**").  On January 13, 2014, the Court ordered the appointment of an

examiner (the "**Examiner**").

4.    The factual background regarding the Debtors, including their business

operations, their capital and debt structures, and the events leading to the filing of these Chapter

11 Cases, is set forth in detail in the *Declaration of Earl J. Blackwell in Support of Chapter 11*

*Petitions and First Day Motions* [Docket No. 2] (the "**Blackwell Declaration**"), filed on the

Petition Date and fully incorporated herein by reference.

01:15028889.4

**B.      General Progress Administering and Maximizing Value of Debtors' Estates**

5.      Since the Petition Date, the Debtors have made considerable progress in administering these Chapter 11 Cases and ensuring that the value of the Debtors' estates is preserved and maximized for the benefit of all stakeholders.  The following is a non-exclusive summary of the Debtors' activities in the first few months of the Chapter 11 Cases.

6.      *First Day and Second Day Motions, and Related Relief.*  On the Petition Date, the Debtors filed motions seeking approval of relief designed to ensure the Debtors had the people, resources and certain other necessities in place to minimize disruption to their business and maximize the value of the Debtors' estates for the ultimate benefit of their creditors. Specifically, the Debtors sought authorization to pay outstanding prepetition compensation, benefits and employee expense reimbursements to employees, as well as continue certain employee benefits programs.  The Debtors also filed several other motions at the outset of these Chapter 11 Cases, including motions: (i) seeking relief from certain administrative requirements of the Bankruptcy Code so the Debtors could continue utilizing their cash management system; (ii) seeking to establish procedures to resolve adequate assurance requests for their utility accounts; (iii) seeking approval to pay certain prepetition taxes; (iv) seeking approval to pay certain claims of critical vendors; (v) seeking approval to continue the Debtors' prepetition insurance programs; and (vi) seeking approval of debtor-in-possession financing.  These motions were each subsequently approved by orders of the Court.

7.      In addition, the Debtors filed applications, which have been approved by the Court, to retain (i) Latham & Watkins LLP, as bankruptcy counsel; (ii) Young Conaway Stargatt & Taylor, LLP, as bankruptcy co-counsel; (iii) Prime Clerk LLC, as claims and noticing agent and administrative advisor; (iv) Carl Marks Advisory Group LLC, as investment banker;

01:15028889.4

and (v) certain ordinary course professionals.  The Debtors also filed, and received Court

approval of, a motion seeking authorization for the Debtors to employ Alvarez & Marsal North

America, LLC to provide certain officers and additional restructuring personnel to the Debtors.

        8.       *Key Employee Retention Program and Key Employee Incentive Program*.

On December 17, 2014, the Debtors filed a motion for an order approving the Debtors' Key

Employee Incentive Plan (the "**KEIP**") for certain senior management employees and the Key

Employee Retention Plan (the "**KERP**") for certain non-insider employees.  Following an

objection from the United States Trustee and extensive negotiations with the other parties in

interest, the Debtors filed an amendment to the KEIP and the KERP on January 8, 2014 [Docket

No. 321], and the Court entered an Order approving the KEIP and the KERP over the objection

of the United States Trustee on January 13, 2014 [Docket No. 374].  As approved by the Court,

the Debtors believe the KEIP and KERP incentivize the Debtors' employees to maximize the

value of the Debtors' assets and combat the negative employee morale that typically results from

the uncertainties and increased burdens of an employer's debtor-in-possession status.

        9.       *Schedules of Assets and Liabilities, Statements of Financial Affairs and*

*Bar Dates*.  On December 13, 2013, the Debtors each filed their schedules of assets and

liabilities (the "**Schedules**") and statements of financial affairs (the "**Statements**").  The Debtors

filed amended Schedules with slight revisions on December 20, 2013.

        10.     By Order dated November 26, 2013 (the "**Bar Date Order**") [Docket No.

185], the Court established January 24, 2014 as the General Bar Date and the 503(b)(9) Claims

Bar Date, (ii) April 25, 2014 as the Governmental Unit Bar Date; and (iii) the date that is thirty

(30) days after the entry of any order authorizing the rejection of an executory contract or

unexpired lease as the Rejection Bar Date (each as defined therein).  In light of a technical issue

01:15028889.4

that occurred in connection with the service of the Bar Date Order, on January 2, 2014, the

Bankruptcy Court entered an order authorizing the Debtors to establish a supplemental bar date

for certain creditors.  Accordingly, the Debtors established January 31, 2014, for those creditors

who did not receive proper notice of the original Bar Date Order.

           11.     *Contract and Lease Rejections.*  By motion dated October 28, 2013 and

supplement dated November 5, 2013, the Debtors sought to reject a number of non-residential

real property leases and related contracts that were unnecessary to the Debtors' operations and

hindered the Debtors' ability to maximize the value of their estates (together, the "**First**

**Omnibus Lease Rejection Motion**") [Docket Nos. 48 and 94].  The First Omnibus Lease

Rejection Motion was approved by Order dated November 25, 2013 [Docket No. 165].

Similarly, on November 19, 2013, the Debtors filed an omnibus motion to reject certain contracts

also deemed unnecessary to the Debtors' operations (the "**First Omnibus Contract Rejection**

**Motion**") [Docket No. 140], which was approved by Orders dated December 6, 2013 and

December 12, 2013 [Docket Nos. 235 and 246].

           12.     *De Minimis Asset Sales.*  The Debtors' efforts to maximize the value of

their estates have also included a number of *de minimis* asset sales.  On November 5, 2013, the

Debtors filed a motion to approve the private sale of certain real property of the Debtors [Docket

No. 96], which was approved by Order dated November 26, 2013 [Docket No. 200].

Additionally, the Debtors filed a motion to approve *de minimis* asset sale procedures on

November 5, 2013 [Docket No. 95], which was approved by Order dated November 26, 2013

[Docket No. 181].  Since such time, the Debtors have proposed and consummated a number of

*de minimis* asset sales, as noted on the docket of these Chapter 11 Cases [see Docket Nos. 241,

379, 405 and 406].

01:15028889.4

13.      _Settlement of Jereh Dispute._  On December 2, 2013, the Debtors filed the

_Debtors' Motion, Pursuant to Sections 105 and 363 of the Bankruptcy Code and Bankruptcy_

_Rule 9019, for an Order Authorizing the Debtors to Enter into a Settlement Agreement with Yanti_

_Jereh Petroleum Equipment & Technologies Co., Ltd._ (the "**Jereh 9019 Motion**") [Docket No.

215], seeking approval of a settlement agreement negotiated with _Jereh Petroleum Equipment &_

_Technologies Co., Ltd._ ("**Jereh**").  Following an objection from the Committee to the Jereh 9019

Motion and discussions with the Committee and the ad hoc group of holders of 2016 Senior

Secured Notes (the "**Ad Hoc Bondholder Group**"), the Debtors and Jereh revised the proposed

settlement agreement, which was then approved without objection by Order dated January 17,

2014 [Docket No. 412].

14.      _Sale of Debtors' Assets_.  On February 7, 2014, the Debtors filed the

_Motion of Debtors for Order (I) Under 11 U.S.C. §§ 105(A), 363, 365, 503, 507 and 1146(a),_

_Fed. R. Bankr. P. 2002, 6004, 6006, 9007 and 9014 and Del. Bankr. L.R. 2002-1, 6004-1 and_

_9006-1 Authorizing and Approving (A) Bidding Procedures in Connection with the Sale of_

_Certain Assets of the Debtors, (B) Agent Bid Protections, (C) the Form and Manner of Notice of_

_the Sale Hearing and (D) Related Relief; and (II) Under 11 U.S.C. §§ 105(a), 363, 365, 503, 507_

_and 1146(a), Fed. R. Bankr. P. 2002, 6004, 6006, 9007 and 9014 and Del. Bankr. L.R. 2002-1,_

_6004-1 and 9006-1 Authorizing (A) the Sale of Certain Assets of the Debtors Free and Clear of_

_All Claims, Liens, Liabilities, Rights, Interests and Encumbrances Except for Permitted_

_Encumbrances in Certain Circumstances; (B) the Debtors to Enter Into and Perform their_

_Obligations Under the GBCI Agency Agreement or an Alternative Sale Transaction; (C) the_

_Debtors to Assume and Assign Certain Executory Contracts and Unexpired Leases; and (D)_

_Related Relief_ (the "**Bid Procedures and Sale Motion**") seeking, _inter alia_, an order (the "**Bid**

**Procedures Order**") approving proposed bid procedures (the "**Bid Procedures**") attached thereto.  The Debtors also filed a motion asking the Court to schedule an expedited hearing to consider entry of the Bid Procedures Order and approval of the Bid Procedures, which was granted by the Court.  A hearing to consider entry of the Bid Procedures Order is scheduled for February 19, 2014.

      C.      **RSA, Examiner and Plan**

      15.      On December 31, 2013, the Debtors filed the *Debtors' Motion Pursuant to Sections 105 and 363 of the Bankruptcy Code and Bankruptcy Rule 9019 for an Order Authorizing the Debtors to Enter Into and Perform Their Obligations Under a Restructuring Support Agreement with the Moreno Entities, Turbine Powered Technology, LLC, SWEPI, LP, and Consenting Noteholders* (the "**RSA Motion**") [Docket No. 299], which sought approval of a Restructuring Support Agreement (the "**RSA**") entered into by and among the Debtors, the Moreno Entities, Turbine Powered Technology, LLC, SWEPI, LP, and the Consenting Noteholders (each as defined therein, and collectively, the "**RSA Parties**").  The RSA was the product of lengthy negotiations, both prior to and following the Petition Date, between the RSA Parties, and contemplated a sale of substantially all of the Debtors' assets followed by a chapter 11 plan that would have incorporated a number of settlements and compromises between the RSA Parties.

      16.      The Committee and others objected to the RSA Motion [see Docket Nos. 435, 436 and 439].  Subsequently, the Debtors determined to discontinue seeking approval of the RSA Motion and the RSA was terminated because it was determined that the cash proceeds generated from the sale of the Debtors' assets would likely not be sufficient to effectuate the RSA.  However, using the RSA as a framework, the Debtors, RSA Parties and others, including

the Committee, have entered into negotiations regarding a potential settlement to be incorporated into a chapter 11 plan following the sale of the Debtors' assets.

17.    On February 6, 2014, the Debtors filed the *Joint Plan of Liquidation of Green Field Energy Services, Inc., et al.* (as may be amended, modified or supplement, the "**Plan**") [Docket No. 478] and the *Disclosure Statement with Respect to the Joint Plan of Liquidation of Green Field Energy Services, Inc., et al.* (as may be amended, modified or supplement, the "**Disclosure Statement**") [Docket No. 479].  Within the next week, the Debtors will file a motion to, *inter alia*, approve the Disclosure Statement and set a hearing with respect to confirmation of the Plan.  The Debtors expect that all constituencies other than the Committee will support the Plan.

18.    The Committee has received significant documentary discovery and taken multiple depositions in connection with the RSA and the Examiner's evaluation of the settlement originally contained in the RSA and a modified form of such settlement now contained in the Plan.  In advance of the March 4, 2014 deadline by which the Examiner must issue his final report, the Examiner is conducting a meeting with the Committee and the RSA Parties in New York on February 17, 2014 in an effort to mediate the unresolved issues surrounding the Plan. The Debtors hope that the Examiner's efforts are successful and that the Debtors can proceed with a fully consensual plan.  Regardless of whether modifications are made to the Plan, the Debtors believe that the Plan is confirmable in its current form.

## RELIEF REQUESTED

19.    By this Motion, the Debtors respectfully request, pursuant to Section 1121(d) of the Bankruptcy Code, that: (a) the period in which the Debtors have the exclusive right to file a chapter 11 plan (the "**Exclusive Filing Period**") be extended through and including

01:15028889.4

8

June 24, 2014; and (b) the period in which the Debtors have the exclusive right to solicit acceptances of such a plan (the "**Exclusive Solicitation Period**" and, together with the Exclusive Filing Period, the "**Exclusive Periods**") be extended through and including August 25, 2014.[3] The Debtors also request that such extensions be without prejudice to their rights to request further extensions or to seek other appropriate relief related hereto.

20.    This is the Debtors' first request for an extension of these deadlines, and is only sought out of an abundance of caution as the Debtors have already filed the Plan and hope and believe they will be able to confirm the Plan prior to the expiration of the Exclusive Solicitation Period.  Extending the Exclusive Periods will permit the Debtors to work towards and concentrate on obtaining confirmation of the Plan without any unwarranted interference from any party attempting to derail the Debtors' efforts.  Further, in the event the Plan is not confirmed for any reason, the requested extension of the Exclusive Periods will provide the Debtors with time to reassess and pursue all alternative options with respect to these Chapter 11 Cases, as they are the party best positioned to take such action.

## BASIS FOR RELIEF

A.    **Section 1121(d) of the Bankruptcy Code Permits the Court to Extend the Exclusive Periods for "Cause"**

21.    The Exclusive Periods under Section 1121(b) of the Bankruptcy Code are intended to afford the Debtors the opportunity to propose a chapter 11 plan and to solicit acceptances of such plan without the deterioration and disruption to the Debtors' operations that might be caused by the filing of competing plans by non-Debtor parties.  In circumstances where, as here, the initial Exclusive Periods prove to be an insufficient time frame to file, solicit

---

[3]    Pursuant to Local Rule 9006-2, the Debtors' Exclusive Periods "shall automatically be extended until the Court acts on the motion, without the necessity for the entry of a bridge order."  Del. Bankr. LR 9006-2.

01:15028889.4

acceptances of, and confirm a meaningful chapter 11 plan, Section 1121(d) of the Bankruptcy

Code allows the Court to extend the Debtors' Exclusive Periods for "cause." Specifically,

Section 1121(d) of the Bankruptcy Code provides:

> (1)  Subject to paragraph (2), on request of a party in interest
> made within the respective periods specified in
> subsections (b) and (c) of this section and after notice and a
> hearing, the court may for cause reduce or increase the 120-
> day period or the 180-day period referred to in this section.
>
> (2)  (A)  The 120-day period specified in paragraph (1) may
> not be extended beyond a date that is 18 months after the
> date of the order for relief under this chapter.
>
>     (B)  The 180-day period specified in paragraph (1) may
> not be extended beyond a date that is 20 months after the
> date of the order for relief under this chapter.

11 U.S.C. § 1121(d).

22.    It is well established that the decision to extend the Exclusive Periods is

left to the sound discretion of the Bankruptcy Court and should be based upon the facts and

circumstances of a particular case.[4]  See 203 N. LaSalle Street P'ship v. Bank of America, N.A.,

1999 U.S. Dist. LEXIS 19425, *12 (N.D. Ill. 1999); First American Bank of New York v.

Southwest Gloves and Safety Equip., Inc., 64 B.R. 963, 965 (D. Del. 1986); In re Mid-State

Raceway, Inc., 323 B.R. 63, 68 (Bankr. N.D.N.Y. 2005); In re Reetz, 61 B.R. 412, 414 (Bankr.

W.D. Wis. 1986).  Although the Bankruptcy Code does not define "cause" for the purpose of an

extension of the Exclusive Periods, courts have looked to the legislative history of Section

1121(d) of the Bankruptcy Code for guidance.  See In re Gibson & Cushman Dredging Corp.,

101 B.R. 405, 409 (E.D.N.Y. 1989); In re Amko Plastics, Inc., 197 B.R. 74, 77 (Bankr. S.D.

---

[4]    Although the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("**BAPCPA**") amended
Section 1121(d) by prohibiting extensions of the Exclusive Filing Period and Exclusive Solicitation Period
beyond 18 and 20 months, respectively, of the Petition Date, there was no revision to the standards for obtaining
interim extensions.  Accordingly, pre-BAPCPA case law continues to apply and should be examined in the
context of the instant cases.

Ohio 1996).  Indeed, courts have found that Congress did not intend that the 120- and 180-day

periods be a hard and fast rule.  See Amko Plastics, 197 B.R. at 77 (noting that Congress

intended courts to have flexibility in dealing with extensions of exclusivity); Gaines v. Perkins

(In re Perkins), 71 B.R. 294, 297 (W.D. Tenn. 1987) ("The hallmark of … [Section 1121(d)] is

flexibility").  Rather, Congress intended that the Exclusive Periods be of an adequate length,

given the circumstances, for a debtor to formulate, negotiate and draft a viable chapter 11 plan,

which by definition means one supported by some or all of a debtor's key constituents, without

the disruption that would occur with the filing of competing plans.  See Geriatrics Nursing Home

v. First Fidelity Bank, N.A., 187 B.R. 128, 133 (D.N.J. 1995).  Indeed, Congress recognized that

often a 120-day exclusivity period will not afford a debtor sufficient time to formulate and

negotiate a plan:

> The court is given the power, though, to increase . . . the 120-day
> period depending on the circumstances of the case.  [T]he bill
> allows the flexibility for individual cases that is not available
> today.  For example, if an unusually large company were to seek
> reorganization under chapter 11, the Court would probably need to
> extend the time in order to allow the debtor to reach an agreement.

H.R. Rep. No. 95-595, 95th Cong. 1st Sess. 232 (1977) (footnotes omitted).

23.     When determining whether cause exists for an extension of the Exclusive

Periods, courts have relied on a variety of factors, each of which may provide sufficient grounds

for extending the periods.  Factors considered by the courts in making such a determination have

included: (a) the size and complexity of the case; (b) the necessity of sufficient time to negotiate

and prepare adequate information; (c) the existence of good faith progress toward confirmation

of a plan; (d) whether the debtor is paying its debts as they come due; (e) whether the debtor has

demonstrated reasonable prospects for filing a viable plan; (f) whether the debtor has made

progress in negotiating with creditors; (g) the length of time the case has been pending; (h)

whether the debtor is seeking the extension to pressure creditors; and (i) whether unresolved

contingencies exist.  See, e.g., Continental Casualty Co. v. Burns & Roe Enters., Inc., 2005 U.S.

Dist. LEXIS 26247, at *11-12 (D.N.J. 2005); In re Gibson & Cushman Dredging Corp., 101 B.R.

405, 409-10 (E.D.N.Y. 1989); In re R.G. Pharmacy, Inc., 374 B.R. 484, 487 (Bankr. D. Conn.

2007); In re Adelphia Communs. Corp., 352 B.R. 578, 587 (Bankr. S.D.N.Y. 2006); In re Central

Jersey Airport Servs., LLC, 282 B.R. 176, 184 (Bankr. D.N.J. 2002).  The application of these

factors to the facts and circumstances of these Chapter 11 Cases demonstrates that the requested

extensions sought herein are both appropriate and necessary.

> **B.**     **Cause Exists for an Extension of the Debtors' Exclusive Periods**

24.     <u>The Size and Complexity of These Cases</u>.  As the Court can see from the

proceedings before it to date, these Chapter 11 Cases are large, and, without question, complex.

These Chapter 11 Cases present a number of differently situated creditor constituencies, all of

whom the Debtors need to work with in order to be able to maximize value for all.  Moreover, a

number of the Debtors' efforts to maximize value to date, such as the Jereh 9019 Motion and the

RSA Motion, have met with resistance that has resulted in the expenditure of considerable effort

and other resources by the Debtors in litigation, including extensive discovery obligations.

Nevertheless, as detailed above, during the initial 120 days of these Chapter 11 Cases the

Debtors have made substantial progress toward their goal of maximizing the value of their

estates, with the culmination of these efforts to date being the filing of the Plan and Disclosure

Statement.  In light of the complexity of these Chapter 11 Cases, however, the extensions

requested hereby are necessary to ensure the Debtors have sufficient time to finish garnering the

necessary support of their key stakeholders and obtain confirmation and consummation of the

Plan.

01:15028889.4

25.    <u>Good Faith Progress Made in These Cases</u>.  These Chapter 11 Cases have been pending for less than four months.  Despite the short pendency of these Chapter 11 Cases, however, the Debtors have made substantial progress toward confirmation of the Plan and do not seek the extension of the Exclusive Periods as a means to exert pressure on stakeholders.  As detailed above, in the first four months of these Chapter 11 Cases the Debtors have not only taken numerous actions that have had the effect of preserving and maximizing the value of the Debtors' assets and complying with the Debtors' administrative duties as debtors in possession, but have also proposed first the RSA, and then the Plan.

26.    Taken together, these acts provide ample evidence of the good faith and significant progress the Debtors have made in these Chapter 11 Cases.  In light of the significant activities already conducted and those still under way, it is without question that the Debtors have made substantial, good-faith progress in these Chapter 11 Cases.

27.    <u>The Debtors are Paying Their Debts as They Come Due</u>.  Under the relevant facts and circumstances, the requested extension of the Exclusive Periods will not prejudice the legitimate interests of creditors, as the Debtors continue to make timely payment on their undisputed postpetition obligations.

28.    <u>The Debtors have Demonstrated a Reasonable Prospect for a Viable Plan</u>. The Debtors submit that this factor is more than satisfied through the filing of the Plan and Disclosure Statement.  As discussed above, the Debtors believe the Plan will be confirmed and become effective prior to the ending of the Exclusive Solicitation Period; the Debtors simply seek a further extension of the Exclusive Periods in the unlikely event this does not occur.

29.    <u>Termination of the Debtors' Exclusive Periods Would Adversely Impact These Cases</u>.  Termination of the Exclusive Periods would adversely impact the progress of these

Chapter 11 Cases.  The Debtors have proposed a viable Plan.  Not extending, and thus terminating, exclusivity would permit any party in interest to propose a plan for each of the Debtors on a piecemeal basis.  This would foster a chaotic environment with no central focus, and threaten the Debtors' efforts to maximize the value of these estates for the benefit of the Debtors' creditors.  Moreover, the Exclusive Periods should be extended for a duration sufficient to ensure that, if confirmation of the Plan should be denied for any reason, the Debtors will have sufficient time thereafter to time to reassess and pursue all alternative options with respect to these Chapter 11 Cases, as they are the party best positioned to take such action, prior to the expiration of the Exclusive Periods.  Given that the Debtors have just recently filed the Disclosure Statement and Plan, the anticipated date of a hearing to confirm the Plan, and the infancy of these Chapter 11 Cases, the Debtors submit that a 120-day extension of the Exclusive Periods is reasonable and appropriate.

30.    Based upon the foregoing, the Debtors respectfully submit that cause exists in these bankruptcy proceedings to extend the Exclusive Periods pursuant to Section 1121(d) of the Bankruptcy Code.

## CERTIFICATION OF CONFERENCE WITH COMMITTEE

31.    Pursuant to the Court's *Order Shortening Time and Scheduling an Expedited Hearing on January 13, 2014 on the Committee's (I) Motion to Set a Status Conference Regarding the Debtors' Rule 9019 Motion, (II) Examiner Motion (III) Standing Motion Regarding Shell and (IV) Motion to Seal dated January 8, 2014* [Docket No. 320], the undersigned counsel certifies that the Debtors have conferred with counsel to the Committee regarding this Motion prior to its filing.

01:15028889.4

## <u>NOTICE</u>

32.     Notice of this Motion will be given to: (a) the United States Trustee for the District of Delaware; (b) counsel to the Debtors' postpetition secured lender; (c) counsel to Shell Western Exploration and Production, Inc., the Debtors' prepetition lender; (d) counsel to the Indenture Trustee under the 2016 Senior Secured Notes (as defined in the Blackwell Declaration); (e) the Securities and Exchange Commission; (f) counsel to the Environmental Protection Agency; (g) counsel to the ad hoc group of holders of 2016 Senior Secured Notes; (h) counsel to the Committee; (i) the United States Attorney General for the District of Delaware; (j) the Attorneys General for the states in which the Debtors conduct business; and (k) all parties requesting notice pursuant to Bankruptcy Rule 2002 (collectively, the "**<u>Notice Parties</u>**").  The Debtors submit that, under the circumstances, no other or further notice is required.

33.     A copy of the Motion is available on the Court's website: www.deb.uscourts.gov.  Additional copies of the Motion are available for free on the website of the Debtors' claims and noticing agent, Prime Clerk LLC, at http://cases.primeclerk.com/gfes, or can be requested by calling (855) 410-7359 from within the United States or +1 (646) 795-6960 if calling from outside the United States.

01:15028889.4

WHEREFORE, the Debtors respectfully request that the Court enter an order substantially in the form attached hereto: (a) granting the relief requested herein; and (b) granting to the Debtors such other and further relief as the Court may deem just and proper.

Dated:  February 14, 2014          Respectfully Submitted,
Wilmington, Delaware

   */s/ Kara Hammond Coyle*
Michael R. Nestor (No. 3526)
Kara Hammond Coyle (No. 4410)
Justin H. Rucki (No. 5304)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

-and-

Josef S. Athanas
Caroline A. Reckler
Sarah E. Barr
Matthew L. Warren
LATHAM & WATKINS LLP
Suite 5800
233 South Wacker Drive
Chicago, IL 60606
Telephone:  (312) 876-7700
Facsimile:   (312) 993-9767

ATTORNEYS FOR DEBTORS AND DEBTORS-IN-POSSESSION

01:15028889.4