## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| GREEN FIELD ENERGY SERVICES, INC., *et al.*,[1] | Case No. 13-12783 (KG)<br>(Jointly Administered) |
| | Objection Deadline: February 14, 2014<br>Hearing Date: February 19, 2014 at 10:00 am |
| Debtors. | Re: Docket No. 482 |

**UNITED STATES TRUSTEE'S OBJECTION TO THE MOTION OF DEBTORS FOR ORDER (I) UNDER 11 U.S.C. §§ 105(a), 363, 365, 503, 507 AND 1146(a), FED. R. BANKR. P. 2002, 6004, 6006, 9007 and 9014 AND DEL. BANKR. L.R. 2002-1, 6004-1 AND 9006-1 AUTHORIZING AND APPROVING (A) BIDDING PROCEDURES IN CONNECTION WITH THE SALE OF CERTAIN ASSETS OF THE DEBTORS, (B) AGENT BID PROTECTIONS, (C) THE FORM AND MANNER OF NOTICE OF THE SALE HEARING AND (D) RELATED RELIEF; AND (II) UNDER 11 U.S.C. §§ 105(a), 363, 365, 503, 507 AND 1146(a), FED. R. BANKR. P. 2002, 6004, 6006, 9007 AND 9014 AND DEL. BANKR. L.R. 2002-1,6004-1 AND 9006-1 AUTHORIZING (A) THE SALE OF CERTAIN ASSETS OF THE DEBTORS FREE AND CLEAR OF ALL CLAIMS, LIENS, LIABILITIES, RIGHTS, INTERESTS AND ENCUMBRANCES EXCEPT FOR PERMITTED ENCUMBRANCES IN CERTAIN CIRCUMSTANCES; (B) THE DEBTORS TO ENTER INTO AND PERFORM THEIR OBLIGATIONS UNDER THE GBCI AGENCY AGREEMENT OR AN ALTERNATIVE SALE TRANSACTION; (C) THE DEBTORS TO ASSUME AND ASSIGN CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (D) RELATED RELIEF**

Roberta A. DeAngelis, the United States Trustee for Region 3 ("United States Trustee"), by and through her undersigned attorney, hereby responds to the relief sought in Green Field Energy Services, Inc.'s (the "Debtors") Motion for Order (I) Authorizing and Approving (A) Bidding Procedures in Connection with the Sale of Certain Assets of the Debtors, (B) Agent Bid Protections, (C) the Form and Manner of Notice of the Sale Hearing and (D) Related Relief; and (II) Authorizing (A) the Sale of Certain Assets of the Debtors Free and Clear

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax or organizational identification number, are: Green Field Energy Services, Inc. (2539); Hub City Tools, Inc. (2827); and Proppant One, Inc. (6035). The above-captioned Debtors' mailing address is 4023 Ambassador Caffery Parkway, Suite #200, Lafayette, LA 70503.

of All Claims, Liens, Liabilities, Rights, Interests and Encumbrances Except for Permitted Encumbrances in Certain Circumstances; (B) the Debtors to Enter Into and Perform Their Obligations Under the GBCI Agency Agreement or an Alternative Sale Transaction; (C) The Debtors to Assume and Assign Certain Executory Contracts and Unexpired Leases; and (D) Related Relief (Docket No. 482) (the "Bidding Procedures Motion"). In further support of this Objection, the United States Trustee states as follows:

## Jurisdiction

1. Under (i) 28 U.S.C. § 1334, (ii) applicable order(s) of the United States District Court for the District of Delaware issued pursuant to 28 U.S.C. § 157(a), and (iii) 28 U.S.C. § 157(b)(2), this Court has jurisdiction to hear and determine the Motion and this Objection.

2. Under 28 U.S.C. § 586, the United States Trustee is generally charged with monitoring the federal bankruptcy system. *See United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.)*, 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that United States Trustee has "public interest standing" under 11 U.S.C. § 307 which goes beyond mere pecuniary interest); *Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the United States Trustee as a "watchdog").

3. Under section 307 of title 11 of the United States Code (the "Bankruptcy Code"), the United States Trustee has standing to be heard on the Bidding Procedures Motion and the issues raised in this Objection.

## Background

*General*

4.     On October 23, 2013 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

5.     The Debtors provide utility grade power conversion solutions for the renewable energy market, primarily for large-scale commercial and utility-scale solar photovoltaic markets. *Declaration of Earl J. Blackwell in Support of Chapter 11 Petitions and First Day Motions* (Docket No. 2) (the "Blackwell Declaration"), at ¶ 6. The Debtors are an independent oilfield services company that provides a wide range of services to oil and natural gas exploration and production companies to help develop and enhance the production of hydrocarbons. *Id*. The Debtors' services include, among other things, hydraulic fracturing, as well as cementing, coiled tubing, pressure pumping, acidizing, and other pumping services. *Id*.

6.     The Debtors remain in possession of their assets and continue to manage their business as debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

7.     On November 7, 2013, the United States Trustee appointed an official committee of unsecured creditors. *See* Docket No. 111.

*GBCI Agency Agreement*

8.     On February 7, 2014, the Debtors filed the Bidding Procedures Motion, which seeks, among other things, approval of certain bid procedures for the sale of certain of the Debtors' assets (the "Assets") through a bidding and auction process.

9. Pursuant to the Bidding Procedures Motion, and attached Bidding Procedures,[2] the Debtors are also seeking authority to appoint Gordon Brothers Commercial & Industrial, LLC ("GBCI") as the Debtors' Agent to facilitate the sale of the Assets, and approval of the GBCI Agency Agreement. The Debtors further seek to have this Court approve GBCI as the Stalking Horse Bidder, which would entitle GBCI to $1.25 million Break-Up Fee and Expense Reimbursement if it is not determined to be the successful bidder.

10. The GBCI Agency Agreement contemplates the following payments to the Debtors if GBCI is the approved successful bidder:

> (a) a guaranteed payment amount of $50 million, subject to certain adjustments, (the "Guaranteed Sale Amount"); and
>
> (b) a contingent payment amount up to $17.5 million (the "Contingent Sale Amount") if the subsequent sale of the Assets by GBCI realizes proceeds greater than the Guaranteed Sale Amount.

11. The Bid Procedures Motion and the GBCI Agency Agreement seek a Breakup Fee of $1 million and Expense Reimbursement not to exceed $250,000. While the Breakup Fee is within acceptable limits under applicable case law and local custom, it provides for payment to GBCI as the Debtors' agent. The appointment of GBCI as an agent is governed by section 327 of the Bankruptcy Code, and compensation of GBCI as a professional must follow the requirements of section 330 of the Bankruptcy Code. Payment of a breakup fee to a professional retained under section 327 of the Bankruptcy Code is improper and circumvents the procedures for compensation required under section 330 of the Bankruptcy.

*Bidding Procedures Motion*

12. Sections VIII (c) and (d) of the Bidding Procedures provide:

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Restructuring Support Agreement Motion and attached exhibits.

(c) For any bid for the direct purchase of any portion of the Assets, the purchase price for such offer shall not be considered a higher and/or better offer unless such bid or a combination of bids submitted by other Qualified Bidders provides for net consideration to the Debtors' estates of at least $67,500,000 plus $1,450,000;

(d) For any bid that contemplates entering into an agency agreement similar to the GBCI Agency Agreement, the guaranteed amount for such offer must at a minimum exceed $50,000,000, the Guaranteed Amount, plus $1,450,000 and the minimum amount for such offer before the liquidation agent receives any fee or recovery must at a minimum exceed $67,500,000, the Minimum Amount, plus $1,450,000;

13.     Based on the foregoing, a potential bidder that desires to serve in an agent role, similar to the role that GBCI intends to assume, must agree to enter to an agreement similar to the GBCI Agency Agreement and submit an offer that exceeds the Guaranteed Sale Amount plus $1,450,000 (the Break-Up Fee plus the Expense Reimbursement plus the $200,000 overbid amount), and a minimum offer before the liquidation agent receives any fee or recovery must be at a minimum exceed $67.5 million(hereinafter, the "Initial Overbid to Serve as Agent").  *See* Schedule 1 to the Bidding Procedures Motion, § VII (d).

14.     If, however, a potential bidder does not desire to serve in an agent role but instead wants to purchase the Assets and be recognized as a Qualified Bidder, among other things, the bidder must submit a bid amount that includes the following:

    (a) the Guaranteed Sale Amount of $50 million; **plus**

    (b) the Contingent Sale Amount of $17.5 million; **plus**

    (c) the Break-Up of $1 million; **plus**

    (d) the Expense Reimbursement of $250,000; **plus**

    (e) the overbid amount of $200,000.

(hereinafter, the "Initial Overbid for the Assets"). *See* Schedule 1 to the Bidding Procedures Motion, § VII (c).  Based on the terms of the Bidding Procedures, a potential bidder that wants to

purchase the Assets without an agency arrangement must bid the Guaranteed Sale Amount. In addition, the potential bidder must guarantee the Contingent Sale Amount.

15. Pursuant to the Bidding Procedures Motion and GBCI Agency Agreement, the Contingent Sale Amount is not a guaranteed payment to the Debtors, but is conditioned on the results that are achieved from a subsequent sale of the Assets by GBCI. In order for the Debtors' to realize any proceeds in excess of the $50 million, the subsequent sale of the Assets by GBCI must exceed the $50 million (subject to certain adjustments) threshold.

16. In addition, pursuant to the terms of the Bidding Procedures Order, the Debtors seek the entry of an order that would require and direct a subsequently appointed trustee "to operate the business of the Debtors to the fullest extent necessary to permit compliance with the terms of the Bidding Procedures Order and the Pre-Closing Obligations and the Agent and the trustee shall be and hereby are authorized to perform such Pre-Closing Obligation upon the appointment of a trustee without the need for further order of this Court." *See* Exhibit A to the Bidding Procedures Motion, ¶ 7.

17. Based on the foregoing language, a trustee, who would be a fiduciary for the estate of the Debtors, will be relegated discharging his or her duties in compliance of the proposed bidding procedures order without consideration or an opportunity to independently evaluate whether operating the Debtors' business, continuing with the sale process contemplated by the Bidding Procedures Order and Pre-Closing Obligations are in the best interest of the estates, which may be prejudicial to the trustee.

**Objection**

*The Bid Requirements Will "Chill" the Bidding Process*
*And Ensure GBCI is the Successful Bidder*

18. The Bid Requirements that require a potential bidder to bid the Guaranteed Sale Amount plus the Contingent Sale Amount, which will only be paid by GBCI if the subsequent sale of the Assets by GBCI exceed the $50 million threshold amount (subject to certain adjustments), will serve as a "discouragement" to potential bidders, who would only be permitted to transact business on a playing field that is tilted in favor of GBCI.

19. The Initial Overbid for the Assets is $17.5 million (not including the Break-Up Fee, Expense Reimbursement, or $200,000 bid amount) more than the $50 million amount that GBCI has guaranteed to the Debtors. The proposed Initial Overbid for Assets would require a potential bidder to guarantee an amount that is a contingency in GBCI's bid package.

20. The Bidding Procedures Motion does not allege any circumstances or unique factors about the Debtors or their assets which would justify an Initial Overbid of Assets that is more than 30% greater than the Guaranteed Sale Amount contemplated by the GBCI Agency Agreement.

21. Rather than serving as a catalyst or inducement to competitive bidding, the Bidding Procedures may actually chill bidding by giving an excessive advantage to the favored purchaser, GBCI, by requiring the Initial Overbid for Assets in its current form. Accordingly, the Initial Overbid for Assets should be significantly less than the amount requested in the Bidding Procedures Motion.

*The Proposed Language in the Bidding*
*Procedures Order May Be Prejudicial*
*to a Subsequently Appointed Trustee*

22. Paragraph 8 of the proposed Bidding Procedures Order requires and directs a trustee "to operate the business of the Debtors to the fullest extent necessary to permit compliance with the terms of the Bidding Procedures Order and the Pre-Closing Obligations and the Agent and the trustee shall be and hereby are authorized to perform such Pre-Closing Obligation upon the appointment of a trustee without the need for further order of this Court." *See* Exhibit A to the Bidding Procedures Motion, ¶ 7.

23. This paragraph imposes restrictions, requirements, and responsibilities on a trustee that may be prejudicial to any trustee appointed in these cases in carrying out his or her fiduciary and statutory duties in administering the estates of the Debtors. For example, section 721 of the Bankruptcy Code provides "[t]he court may authorize the trustee to operate the business for the debtor for a limited period, if such operation is in the best interest of the estate and consistent with orderly liquidation of the estate." This provision contemplates an independent analysis by a chapter 7 trustee regarding whether operation of a debtor's business is "in the best interest of the estate and consistent with orderly liquidation of the estate." However, if the Court were to approve the language in paragraph 8, the trustee would be prohibited from performing an independent analysis and would be required to continue with the sale transaction, which may be in contravention of the trustee's statutory and fiduciary obligations.

24. Therefore, the United States Trustee request that this language be removed from the proposed Bidding Procedures Order.

*GBCI is a Professional and Must be Retained Pursuant*
*to section 327 of the Bankruptcy Code and*
*Compensated Pursuant to section 330*

25. Section 327(a) of the Bankruptcy Code permits the retention of professional persons, including auctioneers, "...that do not hold or represent an interest adverse to the estate...and that are disinterested persons." GBCI as agent must satisfy the requirements of section 327(a) and the corresponding rules to be retained.

26. In the present case, the Debtors seek the services of GBCI to facilitate the liquidation of a substantial portion of the Debtors assets, contemplating GBCI serving as the Debtors' the agent for the sale of the Assets. GBCI will be responsible for all aspects of the sale of the Assets.

27. To qualify as an agent GBCI must: (1) submit a section 327(a) application; (2) submit a declaration of disinterest pursuant to Federal Rule of Bankruptcy Procedure 2014; (3) actually be disinterested; (4) disclose its fees; and (5) have its fees subject to court approval. As a professional, GBCI must follow the compensation procedures of section 330 of the Bankruptcy Code.

## Conclusion

28. For reasons set forth in detail above, the United States Trustee respectfully request that this Court sustain this Objection.[3]

29. The United States Trustee leaves the Debtors to their burden of proof, and reserves any and all rights, remedies and obligations to, *inter alia*, complement, supplement, augment, alter and/or modify this Objection, file an appropriate motion and/or conduct any and

---

[3] The United States Trustee has issues with respect to other aspects of the relief sought in the Bidding Procedures Motion, which have been conveyed to counsel for the Debtors. The parties believe those issues are consensually resolved, but to the extent they cannot be, the United States Trustee reserves her right to raise them at the bidding procedures hearing on February 19, 2014.

all discovery as may be deemed necessary or as may be required and to assert such other grounds as may become apparent upon further factual discovery.

    **WHEREFORE,** for the foregoing reasons, the United States Trustee respectfully requests that this Court sustain this Objection.

Dated: February 14, 2014       Respectfully submitted,
   Wilmington, Delaware

                **ROBERTA A. DeANGELIS**
                **UNITED STATES TRUSTEE**

                By: */s/ Tiiara N. A. Patton* .
                   Tiiara N. A. Patton
                   Trial Attorney
                   United States Department of Justice
                   Office of the United States Trustee
                   J. Caleb Boggs Federal Building
                   844 King Street, Suite 2207, Lockbox 35
                   Wilmington, DE 19801
                   (302) 573-6491
                   (302) 573-6497 (Fax)