IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------- x
In re:                                                          :  Chapter 11
                                                                :
GREEN FIELD ENERGY SERVICES, INC.,                              :  Case No. 13-12783 (KG)
et al.,                                                         :
                                                                :  Jointly Administered
           Debtors.[1]                                          :  Related to: Docket Nos. 482, 513, 517,
                                                                :  520, 521 and 530
---------------------------------------------------------------- x

**RESPONSE OF GORDON BROTHERS COMMERCIAL & INDUSTRIAL LLC
TO UNITED STATES TRUSTEE'S OBJECTION TO MOTION OF DEBTORS FOR
ORDER (I) UNDER 11 U.S.C. §§ 105(a), 363, 365, 503, 507 AND 1146(a), FED. R.
BANKR. P. 2002, 6004, 6006, 9007 and 9014 AND DEL. BANKR. L.R. 2002-1, 6004-1 AND
9006-1 AUTHORIZING AND APPROVING (A) BIDDING PROCEDURES IN
CONNECTION WITH THE SALE OF CERTAIN ASSETS OF THE DEBTORS,
(B) AGENT BID PROTECTIONS, (C) THE FORM AND MANNER OF NOTICE OF
THE SALE HEARING AND (D) RELATED RELIEF; AND (II) UNDER 11 U.S.C.
§§ 105(a), 363, 365, 503, 507 AND 1146(a), FED. R. BANKR. P. 2002, 6004, 6006, 9007
AND 9014 AND DEL. BANKR. L.R. 2002-1, 6004-1 AND 9006-1 AUTHORIZING (A)
THE SALE OF CERTAIN ASSETS OF THE DEBTORS FREE AND CLEAR OF ALL
CLAIMS, LIENS, LIABILITIES, RIGHTS, INTERESTS AND ENCUMBRANCES
EXCEPT FOR PERMITTED ENCUMBRANCES IN CERTAIN CIRCUMSTANCES;
(B) THE DEBTORS TO ENTER INTO AND PERFORM THEIR OBLIGATIONS
UNDER THE GBCI AGENCY AGREEMENT OR AN ALTERNATIVE SALE
TRANSACTION; (C) THE DEBTORS TO ASSUME AND ASSIGN CERTAIN
EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (D) RELATED RELIEF**

Gordon Brothers Commercial & Industrial LLC ("GBCI"), in its capacity as the Stalking Horse Bidder,[2] hereby responds to the *United States Trustee's Objection to The Motion for Order (I) Authorizing and Approving (A) Bidding Procedures in Connection with the Sale of Certain Assets to the Debtors, (B) Agent Bid Protections, (C) the Form and Manner of Notice of*

---

[1]  The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax or organizational identification number, are: Green Field Energy Services, Inc. (2539); Hub City Tools, Inc. (2827); and Proppant One, Inc. (6035). The above-captioned Debtors' mailing address is 4023 Ambassador Caffery Parkway, Suite #200, Lafayette, LA 70503.

[2]  Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to them in the Motion.

*the Sale Hearing and (D) Related Relied; and (II) Authorizing (A) the Sale of Certain Assets of the Debtors Free and Clear of All Claims, Liens, Liabilities, Rights, Interests and Encumbrances Except for Permitted Encumbrances in Certain Circumstances; (B) the Debtors to Enter Into and Perform Their Obligations Under the GBCI Agency Agreement or an Alternative Sale Transaction; (C) the Debtors to Assume and Assign Certain Executory Contracts and Unexpired Leases; and (D) Related Relief* (the "Objection"). In support of this Response, GBCI joins in the response submitted by the Debtors and on its behalf respectfully states as follows:

## I.  Preliminary Statement

1.  The GBCI Agency Agreement is the product of extensive negotiations and hard bargaining by the Debtors after they had concluded a wide-ranging pre-petition marketing effort that turned up only a handful of interested buyers. No qualified buyer stepped up with any credible bid for Debtors' assets better than GBCI's. The GBCI Agency Agreement represents the Debtors' best, and perhaps only, opportunity to realize the highest possible values for its assets, in partnership with one of the most experienced and market-savvy strategic advisors to distressed businesses in this market segment.

2.  The GBCI Agency Agreement itself is a fully integrated document. There are no dispensable terms and the economics of the deal, for each party, depends on all of the provisions being enforced. It cannot be selectively modified, to satisfy multiple ad hoc objections, without compromising its essential purpose. And, in the Debtors' view, the essential economics of this deal are unequivocally favorable to the Debtors and their estates.

3.  Under the GBCI Agency Agreement, the Debtors will receive a minimum recovery of $67.5 million *before* GBCI sees a single dollar of profit. GBCI has *guaranteed* the first $50 million. No other bidder of any kind has emerged to make any comparable offer. Clearly, GBCI has set the standard for the bidding that will ultimately ensue, and its commitment

to this process may well attract additional competitive bidding to maximize value for the estates, creditors and other parties in interest. More importantly, without GBCI's bid, on the terms it fairly bargained for, the Debtors have no other viable sales prospect at hand. If GBCI should choose to reconsider or withdraw its offer-- which it would be entitled to do if the United States Trustees' objections are accepted -- the Debtors face the near certain prospect that they will be administratively insolvent and their cases will be converted.

4. GBCI remains fully committed to going forward with the Debtors on the terms both parties bargained for. No matter how well intentioned the United States Trustee's objections may be, they can only be taken as a fundamental re-trading of key aspects of the deal.

5. *First*, GBCI is not, as the United States Trustee seems to suggest, a mere "auctioneer" who must abide by the rules governing retained professionals at section 327 of the Bankruptcy Code. There is no basis in law or fact to force an arm's length bidder such as GBCI, which is making a substantial payment commitment to the estate, into this wholly arbitrary categorization.

6. *Second*, each of the bid protection terms bargained for in this agreement is necessary and appropriate. The United States Trustee's objection to the Initial Overbid component of this package misstates the economics of that term and, if allowed, will open the door to a lesser recovery than that guaranteed by GBCI under the GBCI Agency Agreement bid.

7. *Finally*, the United States Trustee's insistence that the GBCI Agency Agreement not be binding on a hypothetical future chapter 7 or 11 trustee runs counter to precedent and introduces an entirely new, and unacceptable, risk profile for GBCI as the opening bidder.

## II. Argument

### A. *GBCI is not a Retained Professional Subject to Section 327 Approval*

8. The United States Trustee argues that the role GBCI plays is somehow akin to an "auctioneer" and that GBCI should be treated as a retained professional subject to the various rules and disclosure obligations of section 327 of the Bankruptcy Code. Objection at ¶ 11. Interestingly, the United States Trustee has already tried this argument, without success, in at least one other recent bankruptcy case before this Court on similar facts. *See In re EWGS Intermediary, LLC*, Case No. 13-12876 (MFW) (Bankr. D. Del. Dec. 5, 2013) (where agent guaranteed that debtors would realize certain percentage of sale proceeds pursuant to the agency agreement, court authorized all amounts payable to agent under agency agreement without the need for any application of the agent or any further order of the court).

9. To call GBCI a mere "agent" of the debtors misses the point. Although called an "agency" agreement, for very specific reasons, the GBCI Agency Agreement does not simply secure the services of an agent to oversee the liquidation of Debtors' assets. In the GBCI Agency Agreement, GBCI is committing to make a guaranteed payment ($50 million) to the Debtors, due and payable regardless of whether a single asset gets sold. Under the circumstances, it is inappropriate to treat CBGI as an ordinary paid professional – the economics are actually the reverse. *See In re Lexington Jewelers' Exchange*, Case No. 08-10042 (WCH), (Bankr. D. Mass. Jan. 2, 2008) (approving agency agreement with liquidators, who guaranteed the debtor a certain value for its assets, without requiring such liquidators to be approved under section 327 of the Bankruptcy Code).[3] Professionals retained under section 327 do not guarantee

---

3   Since approval of the GBCI Agency Agreement is appropriate under Section 363 of the Bankruptcy Code, the break up fee is also appropriate and, in fact, the United States Trustee has already conceded that the break up fee is "within acceptable limits under applicable case law and local custom . . ." Objection at ¶ 11.

recoveries for an estate, nor do they make equity investment commitments in hopes of recovering a profit. Here, GBCI is not asking for a success fee as a retained professional might. Rather, the true nature of the transaction is akin to GBCI buying the Debtors' assets for $67.5 million and agreeing to share the upside when the assets are resold to a subsequent purchaser (similar to an earn-out).

10. In similar liquidation sales conducted by agents who guarantee a certain threshold of recovery to debtors, courts within this district and other districts routinely approve such arrangements without requiring the retention of such agents as professionals under section 327 of the Bankruptcy Code. *See In re EWGS Intermediary, LLC*, Case No. 13-12876 (MFW) (Bankr. D. Del. Dec. 5, 2013) (approving agency agreement where agent guaranteed certain percentage of sale proceeds without requiring retention of agent under Section 327 of the Bankruptcy Code); *In re Orchard Supply Hardware Stores Corp.*, Case No. 13-11565 (CSS) (Bankr. D. Del. June 28, 2013) (same); *In re Filene's Basement, LLC*, Case No. 11-13511 (KJC) (Bankr. D. Del. Nov. 16, 2011) (same); *In re Drug Fair Group, Inc.*, 09-10897 (BLS) (Bankr. D. Del. April 2, 2009) (same); *In re Mervyn's Holdings, LLC*, Case No. 08-11586 (KG) (Bankr. D. Del. Oct. 30, 2008) (same); *In re Linens Holding Co.*, Case No. 08-10832 (CSS) (Bankr. D. Del. May 30, 2008) (same); *In re Sharper Image Corporation*, Case No. 08-10322 (KG) (Bankr. D. Del. March 14, 2008) (same); *In re Daffy's, Inc.*, Case No. 12-13312 (MG) (Bankr. S.D.N.Y. Aug. 7, 2012) (same); *In re Borders Group, Inc.*, Case No. 11-10614 (Bankr. S.D.N.Y. Feb. 18, 2011) (same); *In re Finlay Enters., Inc.*, Case No. 09-14873 (JMP) (Bankr. S.D.N.Y. Sept. 25, 2009) (same).

11. Accordingly, GBCI respectfully submits that retention of GBCI under section 327 of the Bankruptcy is inappropriate and unnecessary.

B.  *The Initial Overbid for the Assets is a Necessary and Appropriate Component of the Bid Protections Normally Accorded to Bidders in Such Deals*

12. The Bidding Procedures proposed by the Debtors provide that a potential bidder for the purchase of the Assets bid at least $67.5 million plus the Break-Up Fee and Expense Reimbursement plus $200,000. This Initial Overbid for the Assets represents an incremental recovery to the Debtors of just $200,000 over and above the amounts bid by GBCI as the stalking horse.

13. It is a complete mischaracterization for the United States Trustee to portray the Initial Overbid for the Assets as a $17.5 million premium over the $50 million amount that GBCI has guaranteed to the Debtors. The relevant metric of recovery to the Debtors' estates is not the $50 million guaranteed to the Debtors, but rather the $67.5 million that the Debtors will receive before GBCI will receive any profit under the terms of the GBCI Agency Agreement. Put another way, since the Debtors will keep all proceeds of the Sale (after GBCI is reimbursed out of the Sale proceeds for the out-of-pocket payments made by it towards the $50 million Guaranteed Sale Amount) until the threshold amount of $67.5 million has been achieved, the Guaranteed Sale Amount plus the Contingent Sale Amount must be treated as the baseline purchase price if the Assets were sold outright in an Alternative Transaction.

14. The Debtors believe that GBCI will provide the Debtors with at least $67.5 million of proceeds under the GBCI Agency Agreement.

15. Indeed, the Debtors would not agree that any bid that provided less than $67.5 million to the Debtors' estates is a higher or better offer with respect to the Assets and, in fact, such a bid would not be a Qualified Bid under the terms of the Bidding Procedures. Therefore, maintaining the Initial Overbid for the Assets is the only way for a proper Auction to occur. If the Initial Overbid for the Assets is reduced, it may actually result in a "winning" bid

being awarded to a bidder that did not make a higher or better offer than GBCI's stalking horse initial bid.

C. *Failure to Bind a Subsequent Trustee Deprives GBCI of the Benefit of its Bargain*

16. The GBCI Agency Agreement provides that the terms of the GBCI Agency Agreement shall be binding and shall inure to the benefit of the parties, their successors and assigns "including, but not limited to any Chapter 7 or Chapter 11 trustee appointed by the Bankruptcy Court[.]" GBCI Agency Agreement § 2.4(a). This protection is essential to GBCI. GBCI is making a substantial upfront investment for the benefit of the Debtors' estate and it would not be expected to assume the risks it has without the assurance that the risk profile will remain consistent over the life of the deal. Given the economics of this case, the risk of a chapter 7 trustee being appointed is not a theoretical risk, it is a very real risk that has the potential to fundamentally alter the economics of the agreement between GBCI and the Debtors. If the economics are allowed to change – if the contract can be voided or simply re-traded based on the future appointment of a chapter 7 or 11 Trustee -- then GBCI has put itself at the mercy of future events outside its control. It is an illusory contract and GBCI would be well within its rights to withdraw or terminate now rather than go forward on terms it never accepted.

17. Courts in this district and elsewhere have routinely approved language similar to which the United States Trustee objects. *See In re Ritz Camera & Image, LLC*, Case No. 12-11868 (KG) (Bankr. D. Del. July 30, 2012); *In re Roomstore Inc.*, Case No. 11-37790 (DOT) (Bankr. E.D. Va. Jan. 5, 2012) ("[a]ny trustee appointed in these cases shall be and hereby is authorized to operate the business of the Debtor to the fullest extent necessary to permit compliance with the terms of this Order and the Agency Agreement"); *In re Gottschalks Inc.*, Case No. 09-10157 (KJC) (Bankr. D. Del. April 9, 2009) ("the provisions of this Order and the Agency Agreement and any actions taken pursuant hereto shall survive the entry of any order . . .

converting the Debtor's case from chapter 11 to chapter 7 . . . and the terms and provisions of the Agency Agreement . . . shall be binding upon . . . any trustee or other fiduciary hereafter appointed as a legal representative of the Debtor under chapter 7 or chapter 11 of the Bankruptcy Code); *In re Sportsman's Warehouse Inc.*, Case No. 09-10990 (CSS) (Bankr. D. Del. July 13, 2009) ("[a]ny trustee appointed in these cases shall be and is hereby authorized and directed to operate the business of the Debtors to the fullest extent necessary to permit compliance with the terms of this Order and the Store Closing Engagement"); *In re Borders Group, Inc.*, Case No. 11-10614 (MG) (Feb. 18, 2011) ("[a]ny trustee appointed in these cases shall be and is hereby authorized and directed to operate the business of the Debtors to the fullest extent necessary to permit compliance with the terms of this Order and the Agency Agreement, and Agent and the trustee shall be and hereby are authorized to perform under the Agency Agreement upon the appointment of the trustee without the need for further order of this Court."); *In re Daffy's Inc.*, No. 12-13312 (MG) (Bankr. S.D.N.Y. Aug. 7, 2012) ("[a]ny trustee appointed in these cases shall be and hereby is authorized to operate the business of the Debtor to the fullest extent necessary to permit compliance with the terms of this Order and the Agency Agreement, and the Agent and the trustee shall be and hereby are authorized to perform under the Agency Agreement upon the appointment of the trustee without the need for further order of this Court."); *In re Filene's Basement, LLC*, Case No. 11-13511 (KJC) (Bankr. D. Del. Nov. 16, 2011) ("[a]ny trustee appointed in these cases shall be and hereby is authorized to operate the business of the Debtors to the fullest extent necessary to permit compliance with the terms of this Order and the Agency Agreement, and the Agent and the trustee shall be and hereby are authorized to perform under the Agency Agreement upon the appointment of the trustee without the need for further order of this Court."); *In re Finlay Enters., Inc.*, Case No. 09-14873 (JMP) (Bankr. S.D.N.Y. Sept. 25, 2009) ("[a]ny trustee appointed in these cases shall be and hereby is

authorized to operate the business of the Debtors to the fullest extent necessary to permit compliance with the terms of this Order and the Agency Agreement and the Existing Agreements, and Gordon Brothers and the trustee shall be and hereby are authorized to perform under the Agency Agreement and Existing Agreements upon the appointment of a trustee without the need for further order of this Court."); *In re Sharper Image Corp.*, Case No. 08-10322 (KG) (Bankr. D. Del. March 14, 2008) ("ORDERED that this Order and the Liquidation Agreement shall be binding on any subsequent chapter 11 or chapter 7 trustee who may be appointed in this case or any succeeding chapter 7 case").

18. Moreover, this Court has already provided similar protection in this case. The final order approving the Debtors' post-petition financing clearly states that the relief granted will be binding on a chapter 7 trustee. Such a provision is appropriate where funds are being advanced to Debtors; the GBCI Agency Agreement is indistinguishable in this regard.

19. In order to provide GBCI with the benefit of its bargain, the order approving the Bidding Procedures and any order approving the terms of the GBCI Agency Agreement must unequivocally provide that the orders and the GBCI Agency Agreement be binding on any subsequently appointed fiduciary of the Debtors, including, but not limited to, a chapter 7 or chapter 11 trustee.

\*    \*    \*

WHEREFORE, for the reasons set forth above, GBCI joins in the response submitted by the Debtors and respectfully requests that this Court (a) deny the relief sought in the Objection and (b) grant GBCI such other relief as this Court deems is just and proper. GBCI reserves the right to supplement this Response to the extent that the Trustee supplements the Objection or raises additional or different arguments at the hearing on the Objection.

Dated: February 18, 2014

**SAUL EWING LLP**

By: _____

Mark Minuti (No. 2659)
222 Delaware Avenue, Suite 1200
P.O. Box 1266
Wilmington, DE 19899
Telephone: (302) 421-6840
Facsimile: (302) 421-5873
Email: mminuti@saul.com

-and-

**CURTIS, MALLET-PREVOST,
COLT & MOSLE LLP**
Steven J. Reisman, Esquire
Turner P. Smith, Esquire
Evan S. Borenstein, Esquire
101 Park Avenue
New York, NY 10178-0061
Telephone.: (212) 696-6000
Facsimile: (212) 697-1559
Email: sreisman@curtis.com
         tsmith@curtis.com
         eborenstein@curtis.com

*Counsel to Gordon Brothers Commercial & Industrial, LLC*