## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
-------------------------------------------------- x
In re:                                             :   Chapter 11
                                                   :
GREEN FIELD ENERGY SERVICES, INC., :                   Case No. 13-12783 (KG)
et al.,                                            :
                                                   :   Jointly Administered
              Debtors.¹                            :
                                                   :   Hearing Date: March 11, 2014 at 2:00 p.m. (ET)
                                                   :   (Proposed)
                                                   :   Obj. Deadline: March 6, 2014 at 4:00 p.m. (ET)
                                                   :   (Proposed)
-------------------------------------------------- x
```

### MOTION OF DEBTORS FOR ORDER (I) APPROVING DISCLOSURE STATEMENT, (II) APPROVING NOTICE AND OBJECTION PROCEDURES FOR THE DISCLOSURE STATEMENT HEARING, (III) DETERMINING DATES, PROCEDURES AND FORMS APPLICABLE TO SOLICITATION PROCESS, (IV) ESTABLISHING VOTE TABULATION PROCEDURES, AND (V) ESTABLISHING OBJECTION DEADLINE AND SCHEDULING HEARING TO CONSIDER CONFIRMATION OF PLAN

The debtors and debtors-in-possession in the above-captioned cases (collectively, the "**Debtors**") hereby move (the "**Motion**") for entry of an order (the "**Order**") pursuant to Sections 105(a), 365, 1123(b)(2), 1125(b), 1126(b) and 1128 of Title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2002, 3017, 3018 and 3020 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 3017-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), (a) approving the Debtors' proposed Disclosure Statement (defined below), (b) approving the notice and objection procedures for the hearing on approval of the Disclosure Statement, (c) approving the dates, procedures and forms applicable to the

---

¹ The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax or organizational identification number, are: Green Field Energy Services, Inc. (2539); Hub City Tools, Inc. (2827); and Proppant One, Inc. (6035). The above-captioned Debtors' mailing address is 4023 Ambassador Caffery Parkway, Suite #200, Lafayette, LA 70503.

solicitation and Plan[2] (defined below) noticing process, (d) approving certain vote tabulation procedures, and (e) establishing the deadline for filing objections to the Plan and scheduling the Confirmation Hearing, all as more particularly described below.  In support of the Motion, the Debtors, by and through their undersigned counsel, respectfully represent:

## JURISDICTION

1.    This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware* dated as of February 29, 2012.  This is a core proceeding under 28 U.S.C. § 157(b), and the Court may enter a final order consistent with Article III of the United States Constitution.  Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are Bankruptcy Code Sections 105, 365, 1123, 1125, 1126 and 1128, Bankruptcy Rules 2002, 3017, 3018 and 3020, and Local Rule 3017-1.

## BACKGROUND

A.    Chapter 11 Cases

2.    On October 27, 2013 (the "**Petition Date**"), the Debtors filed voluntary petitions in this Court commencing cases for relief under Chapter 11 of the Bankruptcy Code (the "**Chapter 11 Cases**").  The factual background regarding the Debtors, including their business operations, their capital and debt structures, and the events leading to the filing of these Chapter 11 Cases, is set forth in detail in the *Declaration of Earl J. Blackwell, Chief Financial Officer of Green Field Energy Services, Inc., in Support of Chapter 11 Petitions and First Day Pleadings* [Docket No. 2] (the "**Blackwell Declaration**"), filed on the Petition Date and fully incorporated herein by reference.

---

[2]    Capitalized terms used herein without definition have the meanings ascribed to such terms in the Plan.

01:14982565.6

HN\1117640.4

3.      The Debtors continue to manage their business as debtors-in-possession pursuant to Bankruptcy Code Sections 1107(a) and 1108.  On October 29, 2013, the Court entered an order consolidating these Chapter 11 Cases for procedural purposes only [Docket No. 50].  On November 7, 2013, the United States Trustee for Region 3 (the "**U.S. Trustee**") appointed the Official Creditors' Committee pursuant to Bankruptcy Code Section 1102(a)(1).  On January 17, 2014, the Court appointed an examiner (the "**Examiner**") pursuant to Bankruptcy Code Section 1104.

B.      Proposed Disclosure Statement and Plan of Liquidation

4.      On February 6, 2014, the Debtors filed a proposed *Disclosure Statement with Respect to the Joint Plan of Liquidation of Green Field Energy Services, Inc., et al.* [Docket No. 479] (the "**Disclosure Statement**") together with a proposed *Joint Plan of Liquidation of Green Field Energy Services, Inc., et al.* [Docket No. 478] (the "**Plan**").  The Debtors have proposed the hearing to consider the adequacy of the Disclosure Statement be held on March 11, 2014, following an objection deadline of March 6, 2014.  Notice of the proposed hearing date and objection deadline was mailed to parties in interest on February 6, 2014, thereby satisfying the notice requirements of Bankruptcy Rule 2002(b) by providing parties in interest with at least twenty-eight (28) days' notice of both the proposed hearing date and the objection deadline. Notwithstanding the provisions of Local Rule 3017-1(a) requiring thirty-five (35) days' notice of a proposed hearing on a disclosure statement, the Debtors are providing 33 days' notice of the hearing, which the Debtors submit is more than sufficient under the circumstances, and the Debtors have filed a motion to shorten with respect to the notice period set forth in Local Rule 3017-1(a).

5.      Following approval of the Disclosure Statement, the Debtors intend to solicit votes on the Plan from holders of Claims and Interests in Classes that are entitled to vote

and to provide notice of the Plan to holders of Claims and Interests in non-voting Classes and to other parties in interest.

C.      Voting and Noticing Rights under Proposed Plan

6.      Voting and noticing rights will flow from the classification of Claims and Interests and the Impaired or Unimpaired treatment of Claims and Interests within each Class as proposed in the Plan.  As set forth in Section 3.02 of the Plan, Administrative Claims, Fee Claims, Priority Tax Claims and DIP Claims are not classified under the Plan.  Other Claims and Interests are classified, and are either Impaired or Unimpaired, as follows:

| Class | Claim Designation | Impairment | Entitled to Vote | Tier |
|-------|-------------------|------------|------------------|------|
| Class 1 | Other Secured Claims | No | No | First |
| Class 2 | Priority Non-Tax Claims | No | No | First |
| Class 3 | Shell Secured Claim | Yes | Yes | First |
| Class 4 | Senior Noteholder Claims | Yes | Yes | Second |
| Class 5 | Shell Other Claim | Yes | Yes | Second |
| Class 6 | General Unsecured Claims | Yes | Yes | Third |
| Class 7 | Subordinated Other Claims | Yes | No | Fourth |
| Class 8 | Subordinated Stock Claims | Yes | No | Sixth |
| Class 9 | GFES Interests | Yes | No | Sixth |
| Class 10 | Subsidiary Interests | Yes | No | N/A |

7.      To implement the treatment of Claims and Interests in accordance with legal priorities, the Plan places each Class of Claims and Interests into one of six tiers according to the seniority of the Claims and Interests.

- First Tier Claims consist of: Administrative Claims, Fee Claims, Priority Tax Claims, DIP Claims, Other Secured Claims, Priority Non-Tax Claims and the Shell Secured Claim, whether Allowed or Disputed.

- Second Tier Claims consist of: Senior Noteholder Claims and the Shell Other Claim, whether Allowed or Disputed.

- Third Tier Claims consist of: General Unsecured Claims, whether Allowed or Disputed.

- Fourth Tier Claims consist of Subordinated Other Claims, whether Allowed or Disputed.

- Fifth Tier Claims consist of: Claims for postpetition interest on account of

Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, Allowed General Unsecured Claims and Allowed Subordinated Other Claims.

- Sixth Tier Claims and Interests consist of: Subordinated Stock Claims and GFES Interests.

Claims and Interests in lower ranked tiers will not receive any Distributions under the Plan until all Claims in any higher ranked tiers are paid, or reserved for, in full. The Plan contemplates there will be sufficient Available Cash to permit payment in full of First Tier Claims. The Plan also contemplates that Second Tier Claims and Third Tier Claims will be satisfied in part. If, however, Available Cash exceeds expectations and a surplus of Available Cash remains in the Liquidation Trust Distribution Account after all First Tier Claims, Second Tier Claims and Third Tier Claims are paid in full or adequately reserved for, then any surplus Available Cash will be distributed to holders of Fourth Tier Claims in an amount equal to their Pro Rata shares of remaining Available Cash. If all Fourth Tier Claims are paid in full or adequately reserved for and a surplus of Available Cash remains in the Liquidation Trust Distribution Account, then each holder of an Allowed Priority Tax Claim, Allowed Priority Non-Tax Claim, Allowed General Unsecured Claim, and Allowed Subordinated Other Claim shall receive an amount equal to its Pro Rata share of the Unsecured Interest Allocation on account of postpetition interest accrued through the Effective Date at the applicable Postpetition Interest Rate; provided, however, that holders of Subordinated Other Claims shall not be entitled to receive payments of postpetition interest unless and until all other holders of Allowed Fourth Tier Claims receive payment in full on account of all postpetition interest they are owed. Finally, if all Fourth Tier Claims and Fifth Tier Claims are paid in full or adequately reserved for and a surplus of Available Cash still remains in the Liquidation Trust Distribution Account, then each holder of a Sixth Tier Claim or Interest shall receive an amount equal to its allocated share of such remaining Available Cash as shall be determined by the Court upon motion of the Liquidation Trustee.

8.      In the First Tier, Class 1 and Class 2 are Unimpaired and will be paid in full on the later of (i) the Initial Distribution Date for First Tier Claims, or (ii) as soon as is reasonably practicable after the date such Claim becomes an Allowed Claim (subject to certain other conditions and potential alternatives with respect to Class 1, as set forth in the Plan).  Class 3 is Impaired, and the holder of the Shell Secured Claim will receive payment in Cash on the Effective Date.

9.      In the Second Tier, Class 4 is Impaired and, commencing on the Initial Distribution Date for Second Tier Claims, (a) each holder of an Allowed Class 4 Senior Noteholder Claim will be entitled to receive a Pro Rata portion of (i) 70% of the Class A preferred equity of NewCo, (ii) 50% of the Class B preferred equity of NewCo, and (iii) 30% of the common equity of NewCo, and (b) the GFES TPT Interest shall be transferred to NewCo on the Effective Date and (c) the Senior Secured Notes Indenture Trustee shall receive, for the benefit of the Senior Secured Noteholders, distributions of the Senior Noteholder Cash Distribution from the Liquidation Trust until such time as (a) the aggregate value contributed to NewCo by the Debtors and the Liquidation Trustee *plus* (b) the aggregate value distributed to the Senior Secured Notes Indenture Trustee, is equal to the Senior Noteholder Claim Allowed Amount.

10.      Also in the Second Tier, the holder of the Class 5 Shell Other Claim will receive, in full satisfaction, settlement and release of and in exchange for the Shell Other Claim, the release set forth in Section 12.07 of the Plan.  Solely to effectuate the foregoing and the provisions of the Plan, on the Effective Date the Shell Other Claim, and all rights relating thereto, shall be transferred to the Debtors.

11.      In the Third Tier, holders of Class 6 General Unsecured Claims will receive, on the Initial Distribution Date for Third Tier Claims, a Pro Rata share of the interests in

the Litigation Trust.

12.     In the Fourth Tier, holders of Class 7 Subordinated Other Claims will not receive or retain any property under the Plan on account of such Claim, unless there is sufficient Available Cash to permit payment in full of First Tier Claims, Second Tier Claims and Third Tier Claims, in which case each holder of an Allowed Subordinated Other Claim, in full satisfaction, settlement and release of and in exchange for all such Allowed Claims, shall be entitled to receive, commencing on the Initial Distribution Date for Fourth Tier Claims, one or more Distributions of Available Cash in an amount equal to its Pro Rata share of such Available Cash remaining in the Liquidation Trust Distribution Account.

13.     In the Fifth Tier, each holder of an Allowed Priority Tax Claim, Allowed Priority Non-Tax Claim, Allowed General Unsecured Claim, or Allowed Subordinated Other Claim will receive an amount equal to its Pro Rata share of the Unsecured Interest Allocation on account of postpetition interest accrued through the Effective Date at the applicable Postpetition Interest Rate; provided, however, that holders of Subordinated Other Claims shall not be entitled to receive payments of postpetition interest unless and until all other holders of Allowed Fourth Tier Claims receive payment in full on account of all postpetition interest they are owed.

14.     Finally, in the Sixth Tier, holders of Class 8 Subordinated Stock Claims and Class 9 GFES Interests will not receive or retain any property under the Plan on account of such Claims or Interests unless all Fourth and Fifth Tier Claims are paid in full or adequately reserved for and a surplus of Available Cash still remains in the Liquidation Trust Distribution Account, in which case each holder of an Allowed Subordinated Stock Claim and each holder of an Allowed GFES Interest shall be entitled to receive one or more Distributions of Available Cash in an amount equal to its allocated share of such remaining Available Cash as such allocated share shall be determined by the Bankruptcy Court upon motion of the Liquidation

Trustee. Holders of Class 10 Subsidiary Interests will not receive or retain any property under the Plan on account of such Interests.

**RELIEF REQUESTED**

15.    By this Motion, the Debtors request, among other things, that the Court enter the Order (a) approving the Disclosure Statement; (b) approving the notice and objection procedures for the hearing on the approval of the Disclosure Statement, (c) approving the dates, procedures and forms applicable to the solicitation and Plan noticing process, including (i) confirming the authority of the voting agent, establishing a voting record date, and setting a voting deadline, (ii) approving the forms of ballots to be used by Classes 3, 4, 5 and 6, (iii) approving the materials and rules applicable to voting by holders of Claims in Classes 3, 4, 5 and 6, (iv) approving the notice procedures applicable to holders of contingent, unliquidated and disputed Claims, holders of Claims that are not Impaired by the Plan, holders of Claims and Interests in Classes 7 and 8 who are deemed to reject the Plan, and (v) approving the form to be used for electing to reduce Claim amounts under the Plan; (d) approving certain vote tabulation procedures; and (e) establishing the deadline for filing objections to the Plan and scheduling the Confirmation Hearing.

**DESCRIPTION OF RELIEF REQUESTED**

**I.    APPROVAL OF DISCLOSURE STATEMENT**

16.    Bankruptcy Code Section 1125 requires a bankruptcy court to approve a written disclosure statement prior to allowing a debtor to solicit acceptances for a chapter 11 plan. See 11 U.S.C. § 1125(b).  To approve a disclosure statement, a court must find that the disclosure statement contains "adequate information," which is defined as "information of a kind, and in sufficient detail . . . that would enable a hypothetical reasonable investor typical of holders of claims or interests . . . to make an informed judgment about the plan." 11 U.S.C. §

1125(a)(1).  The Debtors believe that the Disclosure Statement contains "adequate information" as that phrase is defined in Bankruptcy Code Section 1125(a)(1).  Accordingly, the Debtors believe that the Disclosure Statement should be approved.

## II.    APPROVAL OF THE DISCLOSURE STATEMENT NOTICE AND DISCLOSURE STATEMENT OBJECTION PROCEDURES

17.    As discussed above, the Debtors have proposed that the hearing to consider, among other things, approval of the Disclosure Statement be held on March 11, 2014 at 2:00 p.m. (Eastern Time) (the "**Disclosure Statement Hearing**").  The deadline to object or respond to approval of the Disclosure Statement is March 6, 2014 at 4:00 a.m. (Eastern Time) (the "**Disclosure Statement Objection Deadline**").

18.    Bankruptcy Rule 3017(a) provides as follows:

> [A]fter a disclosure statement is filed in accordance with Rule 3016(b), the court shall hold a hearing on at least 28 days' notice to the debtor, creditors, equity security holders and other parties in interest as provided in Rule 2002 to consider the disclosure statement and any objections or modifications thereto.  The plan and the disclosure statement shall be mailed with the notice of the hearing only to the debtor, any trustee or committee appointed under the Code, the Securities Exchange Commission, and any party in interest who requests in writing a copy of the statement or plan.

Fed. R. Bankr. P. 3017(a).

19.    Bankruptcy Rules 2002(b) and (d) require notice to all creditors, indenture trustees and equity interest holders of the time set for filing objections to, and the hearing to consider approval of, a disclosure statement.  In accordance with the foregoing, on February 6, 2014, the Debtors served the *Notice of Hearing to Consider Approval of, and Deadline for Objecting to, Debtors' Proposed Disclosure Statement* (the "**Disclosure Statement Notice**"), annexed to this Motion as Exhibit A and incorporated herein by reference, by first class mail on all known creditors and other parties in interest in these Chapter 11 Cases.

20.    The Disclosure Statement Hearing Notice contains, *inter alia*, the procedures for parties to object or respond to the approval of the Disclosure Statement and the other relief sought herein (the "**Disclosure Statement Objection Procedures**").  In particular, the Disclosure Statement Hearing Notice provided that objections and responses, if any, to the approval of the Disclosure Statement or any other relief sought by the Debtors in the Motion must be in writing and must:

(a)    (i) state the name and address of the objector or entity proposing a modification to the Disclosure Statement and the amount of its Claim or nature of its interest in the Debtors' chapter 11 cases; (ii) specify the basis and nature of any objection and set forth the proposed modification to the Disclosure Statement, together with suggested language; be filed with the Clerk's Office, 824 North Market Street, 3rd Floor, Wilmington, Delaware 19801 together with proof of service, on or before the Disclosure Statement Objection Deadline; and

(b)    be served, so as to be actually received on or before the Disclosure Statement Objection Deadline, upon (i) the Office of the U.S. Trustee for the District of Delaware, attn: Tiiara Patton, J. Caleb Boggs Federal Building, 844 North King Street, Suite 2207, Lock Box 35, Wilmington, DE 19801 (ii) Latham & Watkins LLP, attn: Josef Athanas, Caroline Reckler and Matthew Warren, 233 S. Wacker Drive, Suite 5800, Chicago, IL 60606, (iii) Young Conaway Stargatt & Taylor, LLP, attn: Michael Nestor and Kara Hammond Coyle, 1000 North King Street, Wilmington, DE 198901, (iv) Greenburg Traurig, LLP, attn: David Kurzweil, 3333 Piedmont Road, NE, Suite 2500, Atlanta, GA 30305, (v) Brown Rudnick LLP, attn: Robert Stark, Seven Times Square, New York, NY 10036, (vi) Jones Day, attn: Paul D. Leake, Richard H. Engman and Michael J. Cohen, 222 East 41st Street, New York, NY 10017, (vii) Richards, Layton & Finger, P.A., attn: William A. Romanowicz, One Rodney Square, 920 North King Street, Wilmington, DE 19801, (viii) Liskow & Lewis, attn: Michael D. Rubenstein, First City Tower, 1001 Fannin Street, Suite 1800, Houston, TX 77002, (ix) Potter Anderson & Corroon LLP, attn: Laurie Selber Silverstein, 1313 North Market Street, 6th Floor, Wilmington, DE 19801, (x) Cole, Schotz, Meisel, Forman & Leonard, P.A., attn: Norman L. Pernick, 500 Delaware Avenue, Suite 1410, Wilmington, DE 19801, (xi) TPT, attn: Craig Ryan, 298 Louisiana Road, Franklin, LA, 70538, (xii) Katten Muchin Rosenman LLP, attn: Craig A. Barbarosh, 575 Madison Avenue, New York, NY 10022-2585, (xiii) Cousins Chipman & Brown, LLP, attn: Scott Cousins and Ann Kashishian, 1007 North Orange Street, Suite 1110, Wilmington, DE 19801, and (xiv) such other parties as the Bankruptcy Court may order.

21.    Requiring that objections and responses to the Disclosure Statement be

filed and served no later than the Disclosure Statement Objection Deadline will afford the Court, creditors and other parties in interest sufficient time before the Disclosure Statement Hearing to consider objections and responses to the Disclosure Statement, and will afford the Debtors with sufficient time to attempt to resolve or otherwise address the objections and responses before the Disclosure Statement Hearing. Therefore, by this Motion, the Debtors request that the Court find that the Disclosure Statement Notice, as served by the Debtors, and the Disclosure Statement Objection Procedures, as followed by creditors and other parties in interest, complied with Bankruptcy Rules 2002(b) and 3017(a).

## III. APPROVAL OF DATES, PROCEDURES AND FORMS APPLICABLE TO SOLICITATION AND NOTICING PROCESS

### A.    Voting Agent

22.    By order entered November 26, 2013, Prime Clerk, LLC was retained by the Debtors to serve as the administrative advisor in the Chapter 11 Cases. [Docket No. 192] Consistent with that order, the Debtors propose to utilize Prime Clerk LLC as the Debtors' solicitation and plan noticing agent (the "**Voting Agent**") to assist the Debtors in mailing solicitation packages and notices, receiving and tabulating ballots cast on the Plan, and certifying to the Court the results of the balloting.

### B.    Voting Record Date

23.    Bankruptcy Rule 3018(a) provides that, for cause, a court may set a record date, other than the date of entry of the disclosure statement approval order, to determine which holders of Claims against, or Interest in, a debtor may vote to accept or reject a plan of reorganization. The Debtors request that the Court establish March 11, 2014, whether or not the disclosure statement approval order is then entered, as the record date (the "**Voting Record**

**Date**") for determining the holders of Claims and Interests that are entitled to vote and, therefore, receive solicitation packages and/or notices, as more particularly described below.[3]

24.    The Debtors request that, with respect to any transferred Claim, the transferee will be entitled to receive a Solicitation Package and cast a ballot on account of the transferred Claim only if: (a) all actions necessary to effect the transfer of the Claim pursuant to Bankruptcy Rule 3001(e) have been completed by the Voting Record Date; or (b) the transferee files, no later than the Voting Record Date, (i) the documentation required by Bankruptcy Rule 3001(e) to evidence the transfer and (ii) a sworn statement of the transferor supporting the validity of the transfer.  Each transferee shall be treated as a single creditor for purposes of the numerosity requirements in Section 1126(e) of the Bankruptcy Code and other procedures set forth in the Order.

C.    Voting Deadline

25.    Pursuant to Bankruptcy Rule 3017(c), at the time of or before the approval of the disclosure statement, "the court shall fix a time within which the holders of claims and interests may accept or reject the plan."  The Debtors request that the Court establish April 11, 2014, at 4:00 p.m. (Eastern Time), as the deadline by which all ballots must be received by the Voting Agent (the "**Voting Deadline**").  Such date is at least twenty-eight (28) days after the proposed completion of mailing of the solicitation materials.  The Debtors also request that they be permitted to extend the Voting Deadline at any time before or after the Voting Deadline, on behalf of any individual voter or any voting Class, as facts and circumstances may require, without notice.

---

[3]    To be recognized as a holder of a Claim entitled to vote, a transferee must docket its Notice of Transfer pursuant to Bankruptcy Rule 3001 on or before the Voting Record Date.

D.     Ballots

      26.     Bankruptcy Rule 3017(d) provides that ballots for accepting or rejecting a plan should conform substantially to Official Form No. 14.  The forms of ballots attached hereto as Exhibit B-1, B-2 and B-3 for holders of Claims in Classes 3, 5 and 6, respectively, are derived from Official Form No. 14, but include certain modifications necessary to meet the particular circumstances of these Chapter 11 Cases.  The forms of beneficial owner and master ballots attached as Exhibit C-1 and C-2 for holders of Senior Noteholder Claims in Class 4 reflect developments in the law and practice with respect to voting by holders of certain types of debt securities.  The Debtors request that the Court approve the attached forms of ballots for use with respect to the solicitation of votes on the Plan.[4]

E.     Solicitation Letter

      27.     The Debtors intend to transmit to holders of Claims entitled to vote on the Plan a solicitation letter from their management that encourages such holders to vote in favor of the Plan, in the form attached hereto as Exhibit D (the "**Debtors' Solicitation Letter**").

      28.     The Debtors would propose to include the final, executed form of the Debtors' Solicitation Letter in the solicitation materials that will be transmitted by the Debtors.

F.     Solicitation of Votes in Classes 3, 4, 5 and 6

      29.     Bankruptcy Rule 3017(d) specifies the materials to be distributed to holders of allowed Claims and Interests upon approval of a disclosure statement.  Unless otherwise ordered, such materials include the plan or a court-approved summary of the plan, the

---

[4]     The ballots for Class 6 are preprinted to include the amount carried in the Claims database maintained by the Voting Agent as the Claim amount to be counted for voting purposes.  The Claim amount is derived from a proof of claim or from the schedules of liabilities (or any amendments thereto) if no proof of claim was filed.  If, as of the Voting Record Date, a proof of claim alleges a Claim that is partially fixed in amount and partially contingent or unliquidated, only the fixed amount is used as the Claim amount for voting purposes.  If, as of the Voting Record Date, a proof of claim is subject to a pending objection that seeks to disallow the alleged Claim only in part, the remaining amount that is not subject to objection is used as the Claim amount for voting purposes.  In either case, if a claimant desires to vote in a higher amount, the ballot instructs the claimant to file a motion for temporary allowance pursuant to Bankruptcy Rule 3018(a).

court-approved disclosure statement, notice of the voting deadline, and any other information as the court may direct.

30.    In accordance with Bankruptcy Rule 3017(d), the Debtors propose to cause the Voting Agent to commence transmitting by first class mail,[5] by March 14, 2014 (the "**Solicitation Commencement Date**"), to each of the holders, as of the Voting Record Date, of Claims in Classes 3, 4, 5 and 6 who are entitled to vote on the Plan a solicitation package containing:

(a)    the Debtors' Solicitation Letter;

(b)    the notice of the Confirmation Hearing and objection deadline, in paper form;

(c)    a CD containing the order approving the Disclosure Statement, the Disclosure Statement and all exhibits thereto, including the Plan;[6]

(d)    an appropriate ballot, in paper form;

(e)    a pre-addressed, pre-paid return envelope; and

(f)    such other information as the Court may direct or approve

(collectively, the "**Solicitation Package**").

31.    The Debtors propose that the following holders of Claims classified within Classes 3, 4, 5 and 6 be permitted to vote on the Plan and thus to receive the Solicitation Package:

(a)    record and beneficial holders (if applicable), as of the Voting Record Date, of the Shell Secured Claim in Class 3, the Senior Noteholder Claims in Class 4, and the Shell Other Claim in Class 5, subject to the special procedures outlined in paragraphs 47-55 hereof; and

(b)    holders, as of the Voting Record Date, of General Unsecured Claims in Class 6 and:

---

[5]    With respect to parties outside the United States, the Solicitation Packages will be transmitted as follows: (a) for those parties who are entitled to vote on the Plan, by Federal Express or other similar service, as appropriate, in the Debtors' sole and absolute discretion, and (b) for those parties who are not entitled to vote on the Plan, by expedited mail or other similar service, as appropriate, in the Debtors' sole and absolute discretion.

[6]    The appendices to the Disclosure Statement are as follows:  Plan (Appendix A), Organizational Chart (Appendix B), Liquidation Analysis (Appendix C) and Examiner Report (Appendix D).

(i)    who have filed proofs of claim in the amounts asserted in such proofs of claim; provided that such proofs of claim (w) have not been disallowed by an order of the Court entered on or before the Voting Record Date, (x) are not the subject of an objection to the entirety of the Claim pending as of the Voting Record Date (with voting permitted only with respect to the amount thereof that is not subject to objection), (y) are not listed on a notice of satisfaction filed by the Voting Record Date (with voting permitted only with respect with the amount thereof that is not satisfied) or (z) do not allege Claims that are wholly contingent or wholly unliquidated (with voting permitted only with respect to the amount thereof that is fixed and not contingent); or

(ii)    who have not filed timely proofs of claim but whose Claims are scheduled in the Debtors' schedules of liabilities (or any amendments thereto) and are not designated therein as contingent, unliquidated or disputed or listed therein as zero, unknown or undetermined in amount, in the amounts set forth in the schedules of liabilities (or any amendments thereto); provided that such scheduled Claims have not been paid and are not listed on a notice of satisfaction filed by the Voting Record Date.

32.    To avoid duplication and reduce expenses, the Debtors propose that voting creditors who have filed duplicate or amended proofs of claims with respect to a single Claim against one or more Debtors will be entitled to receive only one Solicitation Package and one ballot for voting such Claims, and voting creditors who have filed multiple proofs of claim asserting different Claims will receive a Solicitation Package for each such proof of claim.

G.    Treatment of Contingent, Unliquidated or Disputed Claims in Classes 3, 4, 5 and 6

33.    Pursuant to Bankruptcy Code Section 1126(a), only holders of allowed Claims or Interests are entitled to vote to accept or reject a plan.  Pursuant to Bankruptcy Rule 3018(a), a court may, after notice and hearing, temporarily allow a Claim or Interest for voting purposes.

34.    Accordingly, the Debtors propose that any holder of the Shell Secured Claim in Class 3, a Senior Noteholder Claim in Class 4, the Shell Other Claim in Class 5, or a General Unsecured Claim in Class 6, whose Claim is (a) asserted as wholly unliquidated or wholly contingent in a timely proof of claim, (b) scheduled in the Debtors' schedules of liabilities (or any amendments thereto) and are designated therein as contingent, unliquidated or

disputed, (c) asserted in a proof of claim as to which an objection to the entirety of the Claim is pending as of the Voting Record Date, or (d) asserted in a proof of claim as to which a Notice of Disputed Claim Status is received as set forth below (collectively, the "**Disputed Claimants**") not be permitted to vote on the Plan except as provided herein.[7]

35.    The Debtors propose to distribute, on or before the Solicitation Commencement Date, to each of the Disputed Claimants, a package that includes the following:

(a)    a notice in substantially the form attached hereto as Exhibit E (the "**Notice of Disputed Claim Status**"), in paper form;

(c)    a CD containing the the order approving the Disclosure Statement, Disclosure Statement and all exhibits, including the Plan; and

(d)    such other information as the Court may direct or approve

(collectively, the "**Disputed Claimant Package**").

36.    The Notice of Disputed Claim Status will inform the Disputed Claimants that their Claims have been designated as contingent, unliquidated or disputed. The Notice of Disputed Claim Status also informs such claimants that absent having filed a motion seeking to be allowed to vote on the Plan pursuant to Bankruptcy Rule 3018(a) (a "**Rule 3018 Motion**"), in the manner and by the deadline described below, they are precluded from submitting a vote with respect to their contingent, unliquidated or disputed Claim. Such claimants will be instructed in the notice to contact the Voting Agent to receive a ballot for any such Claim if a Rule 3018(a) Motion is timely filed.

37.    The Debtors request that the Court fix the later of (a) March 28, 2014 at 4:00 p.m. (Eastern Time) and (b) five (5) business days after an objection to a claimant's proof of claim is filed by the Debtors as the deadline for such claimant to file a Rule 3018 Motion with the Court and served upon the Debtors' counsel and the Voting Agent (the "**Rule 3018 Motion**

---

[7]    As provided above, any holder of a Claim that is partly contingent or unliquidated will receive a Solicitation Package and be permitted to vote the amount of the Claim that is fixed, and not contingent, subject to the holder's right to ask the Court to temporarily allow a Claim in a higher amount for voting purposes.

**Deadline**").[8]  Any party timely filing and serving a Rule 3018 Motion will be provided a ballot and be permitted to cast a provisional vote to accept or reject the Plan.  If and to the extent that the Debtors and such party are unable to resolve the issues raised by the Rule 3018 Motion prior to the Voting Deadline, then the Debtors will request that the Court determine at or before the Confirmation Hearing whether the provisional ballot should be counted as a vote on the Plan.  Such a procedure will help ensure an efficient tabulation of ballots to be completed accurately by the Confirmation Hearing.

38.    Nothing in these procedures is intended to affect the Debtors' right to object to any proof of claim after the Voting Record Date.  With respect to any such objection filed after the Voting Record Date, the Debtors reserve the right to request, on notice, that any vote cast by the holder of the subject Claim not be counted in determining whether the requirements of Bankruptcy Code Section 1126(c) have been met.  In the absence of any such request, the holder of the subject Claim will be entitled to vote in accordance with its rights as of the Voting Record Date.

H.    Notice of Non-Voting Status

39.    Under the Plan, Administrative Claims, Fee Claims, Priority Tax Claims and DIP Claims are unclassified, non-voting Claims that are entitled to be treated in accordance with Bankruptcy Code Section 1129(a)(9).  Other Secured Claims in Class 1 and Priority Non-Tax Claims in Class 2 are proposed to be Unimpaired, as defined in Bankruptcy Code Section 1124, and pursuant to Bankruptcy Code Section 1126(f) the holders of such Claims are not entitled to vote on the Plan.

40.    Bankruptcy Rule 3017(d) permits a bankruptcy court to order that the disclosure statement and plan need not be mailed to any Unimpaired Class and to approve

---

[8]    As set forth above, the Debtors request that the Voting Deadline be set for April 11, 2014.

instead the mailing of a "notice that the class is designated in the plan as unimpaired and notice of the name and address from whom the plan or summary of the plan and disclosure statement may be obtained upon request and at the plan proponent's expense, [and] notice of the time fixed for filing objections to and the hearing on confirmation."

41.    Accordingly, the Debtors propose to cause the Voting Agent to mail to holders of Administrative Claims, Fee Claims, Priority Tax Claims, DIP Claims, Other Secured Claims in Class 1, and Priority Non-Tax Claims in Class 2 (collectively, the "**Unimpaired Holders**") a notice in substantially the form attached hereto as Exhibit F (the "**Notice of Non-Voting Status**"), in lieu of a Solicitation Package. The Notice of Non-Voting Status summarizes the treatment provisions of the Plan as applicable to the Classes of Claims held by the Unimpaired Holders. In addition, the Notice of Non-Voting Status provides (a) notice of the filing of the Plan, (b) notice of the approval of the Disclosure Statement, (c) instructions regarding the various ways to obtain and/or view copies of the Disclosure Statement and Plan and other documents, including how to obtain electronic copies of such documents, (d) information regarding the Confirmation Hearing and (e) directions for filing objections to the confirmation of the Plan. The Notice of Non-Voting Status will be sent on or before the Solicitation Commencement Date to Unimpaired Holders as of the Voting Record Date.

42.    The Debtors believe that mailing the Notice of Non-Voting Status as described above satisfies the requirements of Bankruptcy Rule 3017(d) with respect to the Unimpaired Holders. Therefore, the Debtors request that the Court direct that the Disclosure Statement and Plan need not be mailed to Unimpaired Holders.

I.    Notice of Deemed Rejecting Status

43.    Under the Plan, holders of Subordinated Other Claims in Class 7, Subordinated Stock Claims in Class 8, GFES Interests in Class 9 and Subsidiary Interests in

Class 10 (the "**Deemed Rejecting Holders**") will not receive a distribution from or retain any Claim against or Interest in the Debtors.

44.     Accordingly, such Deemed Rejecting Holders are deemed to have rejected the Plan, pursuant to Bankruptcy Code Section 1126(g).  Thus, solicitation of votes on the Plan from such holders is unnecessary.  As set forth in the Plan and Disclosure Statement, the Debtors intend to seek confirmation of the Plan with respect to such Class of Interests pursuant to Bankruptcy Code Section 1129(b).

45.     The Debtors propose to provide, on or before the Solicitation Commencement Date, to the Deemed Rejecting Holders, a notice of their non-voting and deemed rejecting status (the "**Notice of Deemed Rejecting Status**") in substantially the form attached hereto as <u>Exhibit G</u>.  The Notice of Deemed Rejecting Status summarizes the treatment provisions of the Plan that apply to the Class of Claims or Interests held by the Deemed Rejecting Holders.  In addition, like the Notice of Non-Voting Status, the Notice of Deemed Rejecting Status provides (a) notice of the filing of the Plan, (b) notice of the approval of the Disclosure Statement, (c) instructions regarding the various ways to obtain and/or view copies of the Disclosure Statement and Plan and other documents, including how to obtain electronic copies of such documents, (d) information regarding the Confirmation Hearing and (e) directions for filing objections to the confirmation of the Plan.

46.     The Debtors request that the Court waive the requirements of Bankruptcy Rule 3017(d) as they may apply to Deemed Rejecting Holders and authorize the Debtors to provide for the mailing of the Notice of Deemed Rejecting Status to such holders in lieu of transmitting a Solicitation Package to each such holder.

J.     <u>Special Procedures for Holders of Senior Noteholder Claims</u>

47.     Bankruptcy Rule 3017(e) provides that "the court shall consider [at the

disclosure statement hearing] the procedures for transmitting the documents and information required by [Rule 3017(d)] to beneficial holders of stock, bonds, debentures, notes and other securities, determine the adequacy of the procedures, and enter any orders the court deems appropriate." Fed. R. Bankr. P. 3017(e).

48.     The Debtors' debt securities consist of the Senior Secured Notes, which are classified in Class 4 as Senior Noteholder Claims. The Class of Senior Noteholder Claims is entitled to receive the Solicitation Packages as provided for above.

49.     To the extent there are any directly registered beneficial owners of Senior Noteholder Claims, the Debtors propose that the Senior Secured Notes Indenture Trustee be required to provide the Voting Agent with the names, addresses and principal amounts of such directly registered Senior Secured Noteholders as of the Voting Record Date (the "**Directly Registered Owners**") in electronic format no later than two (2) days after the Voting Record Date, unless otherwise agreed to by the Debtors and the Voting Agent.[9] The Debtors propose to cause the Voting Agent to mail Solicitation Packages to each Directly Registered Owner by no later than the Solicitation Commencement Date.

50.     In addition, with respect to beneficial owners (the "**Beneficial Owners**") that hold their Senior Noteholder Claims through a broker, bank, dealer, agent or other nominee (collectively, the "**Nominees**"), the Debtors propose to cause the Voting Agent to transmit sufficient copies of the Solicitation Packages to the Nominees for distribution to the Beneficial Owners of the Senior Noteholder Claims.

51.     The Debtors request that the Court order the Nominees (or their agents) to distribute Solicitation Packages to the Beneficial Owners within five (5) business days after receipt of the Solicitation Packages from the Voting Agent and in a manner customary in the

---

[9]     The Voting Agent will serve notice of this Motion on the Senior Secured Notes Indenture Trustee to notify them of this requirement in advance of the Voting Record Date.

securities industry so as to maximize the likelihood that Beneficial Owners will receive the materials and be given the opportunity to exercise their rights in a timely fashion.

52.     The Debtors request that the Court authorize two options for Nominees (or their agents) to obtain the votes of the holders of the Senior Noteholders Claims.

53.     Under the first option, the Nominees (or their agents) will transmit the Solicitation Packages to Beneficial Owners of Secured Noteholders Claims along with a ballot for the Beneficial Owners (the "**Beneficial Owner Ballot**") substantially in the form proposed in Exhibit C-1, and a pre-paid return envelope provided by, and addressed to, the requisite Nominees (or their agents). The Nominees (or their agents) will then summarize the individual votes reflected on the Beneficial Owner Ballots on a master ballot (the "**Master Ballot**") to be provided to them by the Debtors[10] in substantially the form included in Exhibit C-2. The Nominees (or their agents) will then return the Master Ballot to the Voting Agent by the Voting Deadline.

54.     As an alternative, the Nominees may pre-validate the Beneficial Owner Ballots (a "**Pre-Validated Ballot**") by signing that ballot and indicating on the ballot the Beneficial Owner for the Senior Secured Notes, the principal amount held by such Beneficial Owner, and the appropriate account numbers through which the Beneficial Owner's holdings are derived. The Beneficial Owner would then forward the Solicitation Package, including the Pre-Validated Ballot, in a return envelope addressed to the Voting Agent for voting by the Beneficial Owner. The Beneficial Owner would be responsible for returning the Pre-Validated Ballot to the Voting Agent by the Voting Deadline.

55.     This procedure adequately recognizes the complex structure of the securities industry, enables the Debtors to transmit voting materials and notices to the record

---

[10]     In accordance with customary public security solicitation procedures, the Master Ballots will be distributed to Nominees approximately seven calendar days after the initial distribution of the Solicitation Packages to the Nominees

holders and beneficial owners of the public securities, and affords such persons with a fair and reasonable opportunity to exercise their rights. The Debtors request that the Court authorize them to reimburse such entities for their reasonable, actual and necessary out-of-pocket expenses incurred in performing the tasks described above upon written request by such entities (subject to the Court's retention of jurisdiction to resolve any disputes over any request for such reimbursement).

K.    When No Notice or Transmittal Necessary

56.    The Debtors propose that no Solicitation Packages or other notices need be transmitted to (a) holders of Claims listed on the schedules of liabilities (or any amendments thereto) that have already been paid in full during these Chapter 11 Cases or that are authorized to be paid in full in the ordinary course of business pursuant to orders previously entered by this Court, (b) any holder of a Claim listed on a notice of satisfaction by the Voting Record Date unless the holder thereof has filed an objection thereto by the applicable objection deadline and such objection has been sustained by this Court, (c) any person to whom the Debtors mailed a notice of the commencement of the case and first meeting of creditors or a notice of the bar date for filing proofs of claim if either of such notices was returned marked "undeliverable" or "moved - no forwarding address" or for a similar reason, unless the Debtors or their agents have been informed in writing by such person of, or have otherwise ascertained, that person's new address or (d) any holder of a Claim that was disallowed in full by order of the Court.

L.    Informational Mailing of Proposed Solicitation Packages

57.    Through service of this Motion and the exhibits hereto, all forms of ballots and notices proposed herein will be mailed for informational purposes to the U.S. Trustee and other parties that have requested or that are required to receive notice pursuant to Bankruptcy Rule 2002.

M.    Summary of Voting/Noticing Rights

58.    Pursuant to the procedures outlined above, if approved by the Court, the following categories of Claims against and Interests in the Debtors will have the rights and be entitled to receive the solicitation or notice materials specified below:

| Claims/Interests[11] | Rights | Materials |
|---|---|---|
| Administrative Claims | Notice | Notice of Non-Voting Status |
| Fee Claims | Notice | Notice of Non-Voting Status |
| Priority Tax Claims | Notice | Notice of Non-Voting Status |
| DIP Claims | Notice | Notice of Non-Voting Status |
| Class 1 – Other Secured Claims | Notice | Notice of Non-Voting Status |
| Class 2 – Priority Non-Tax Claims | Notice | Notice of Non-Voting Status |
| Class 3 – Shell Secured Claim | Voting | Solicitation Package and/or Disputed Claimants Package, as applicable |
| Class 4 – Senior Noteholder Claims | Voting | Solicitation Package and/or Disputed Claimants Package, as applicable |
| Class 5 – Shell Other Claim | Voting | Solicitation Package and/or Disputed Claimants Package, as applicable |
| Class 6 – General Unsecured Claim | Voting | Solicitation Package and/or Disputed Claimants Package, as applicable |
| Class 7 – Subordinated Other Claims | Notice | Notice of Deemed Rejecting Status |
| Class 8 – Subordinated Stock Claims | Notice | Notice of Deemed Rejecting Status |
| Class 9 – GFES Interests | Notice | Notice of Deemed Rejecting Status |
| Class 10 – Subsidiary Interests | Notice | Notice of Deemed Rejecting Status |

---

[11]    To the extent that any party files a timely proof of claim and did not otherwise receive the Confirmation Hearing Notice, the Debtors will cause the Confirmation Hearing Notice to be served on such party within five (5) days of the filing of the proof of claim.

01:14982565.6

HN\1117640.4

### III.   APPROVAL OF VOTE TABULATION PROCEDURES

59.   To avoid uncertainty, to provide guidance to the Debtors and the Voting Agent, and to avoid the potential for inconsistent results, the Debtors request that the Court, pursuant to Bankruptcy Code Section 105(a), establish the guidelines set forth below for tabulating the votes to accept or reject the Plan.

60.   <u>Votes Counted</u>.  Subject to paragraphs 61-69 below, the Debtors propose that any ballot that is timely received, that contains sufficient information to permit the identification of the claimant and that is cast as an acceptance or rejection of the Plan will be counted and will be deemed to be cast as an acceptance or rejection, as the case may be, of the Plan.  Ballots cast in amounts in excess of their allowed amount will only be counted to the extent of the creditors' allowed Claim, and any duplicate ballot will only be counted once.  In the event that no votes to accept or reject the Plan are received with respect to a particular Class, such Class shall be deemed to have voted to accept the Plan.

61.   <u>Votes Not Counted</u>.   The Debtors further propose that the following ballots not be counted or considered for any purpose in determining whether the Plan has been accepted or rejected:

(a)   any ballot received after the Voting Deadline unless the Debtors (in their sole discretion) have granted an extension of the Voting Deadline with respect to such ballot;

(b)   any ballot that is illegible or contains insufficient information to permit the identification of the claimant;

(c)   any ballot cast by or on behalf of a person or entity that does not hold a Claim in a Class as of the Voting Record Date that is entitled to vote to accept or reject the Plan;

(d)   any ballot cast by a Disputed Claimant who has not filed a Rule 3018(a) Motion by the Rule 3018(a) Motion Deadline, or who has timely filed a Rule 3018(a) Motion that is not granted by the Court;

(e)   any ballot that does not indicate an acceptance or a rejection or that indicates both

an acceptance and a rejection;

(f)    any ballot sent to this Court, the Debtors, the Debtors' agents, advisors or representatives (other than the Voting Agent);

(g)    any ballot that partially accepts and partially rejects the Plan (excluding Master Ballots);

(h)    any unsigned ballot or any ballot that has a non-original signature;

(i)    any Ballot that does not contain an amount denominated in U.S. currency; and

(j)    any ballot not cast in accordance with the procedures approved in the Disclosure Statement Order.

62.    <u>Changing Votes</u>.  Notwithstanding Bankruptcy Rule 3018(a), whenever two or more ballots are cast voting the same Claim prior to the Voting Deadline, the last properly completed ballot received prior to the Voting Deadline will be deemed to reflect the voter's intent and thus to supersede any prior received ballots, without prejudice to the Debtors' right to object to the validity of the second ballot on any basis permitted by law, including under Bankruptcy Rule 3018(a), and, if the objection is sustained, to count the first ballot for all purposes.  This procedure of counting the last-received ballot will spare the Court and the Debtors the time and expense of responding to motions brought pursuant to Bankruptcy Rule 3018(a) attempting to show cause for changing votes.

63.    <u>No Vote Splitting; Effect</u>.  The Debtors propose that the Court clarify that Claim or Interest splitting on a single ballot is not permitted and order that creditors who vote must vote the entire Claim or Interest amount represented on their ballot to either accept or reject the Plan.

64.    <u>Withdrawal of Ballots</u>.  The Debtors propose to permit any claimant who has delivered a valid ballot for the acceptance or rejection of the Plan to withdraw such acceptance or rejection by delivering a written notice of withdrawal to the Voting Agent at any time prior to the Voting Deadline or, with the written consent of the Debtors, after the Voting

Deadline. A notice of withdrawal, to be valid, should (a) contain the description of the Claim to which it relates and the amount of such Claim, (b) be signed by the withdrawing party in the same manner as the ballot being withdrawn, (c) contain a certification that the withdrawing party owns the Claim and possesses the right to withdraw the vote sought to be withdrawn and (d) be received by the Voting Agent prior to the Voting Deadline or after the Voting Deadline with the Debtors' written consent.

65.    <u>No Voting by Facsimile or E-Mail</u>. The Debtors propose that the Court require that original executed ballots be returned to the Voting Agent and that the Voting Agent be directed to reject any ballot that is sent via facsimile or electronic mail transmission, <u>provided, however,</u> that a Master Ballot that is sent via e-mail and timely received by the Voting Agent will be accepted by the Voting Agent.

66.    <u>Aggregated Voting</u>.    For purposes of the numerosity requirement of Bankruptcy Code Section 1126(c), separate Claims held by a single creditor,[12] including transferees of Claims, in a particular Class will be aggregated as if such creditor held one Claim against the applicable Debtor in such Class, and the votes related to such Claims will be treated as a single vote to accept or reject the Plan.

67.    <u>Paid Claims</u>. In the event any Claim has been paid prior to the Voting Deadline, based upon information provided by the Debtors as to Claim payments and whether or not listed on a notice of satisfaction, then such Claim shall not be entitled to vote to the extent of the payment, provided that any excluded Claim shall be noted in the Vote Declaration.[13]

68.    <u>Counting Ballots of Holders of Senior Noteholders Claims</u>. The Debtors propose the following procedures for tabulating votes cast with respect to the Senior Secured

---

[12]       Creditor names that are not identical, as determined by the Voting Agent in consultation with the Debtors, will not be considered to be a single creditor.

[13]       As noted above, the Debtors seek authorization to exclude from solicitation and noticing any paid Claims listed on the Debtors' schedules of liabilities prior to the Voting Record Date.

Notes by the holders of Senior Noteholder Claims in Class 4. These procedures are designed to enable the Voting Agent to tabulate votes from such holders and to enable the Court to verify the results of that vote by requiring the collection and retention of data and documents regarding the vote.

(a)    The Debtors propose that Nominees electing to use the Master Ballot voting process be required to retain, for inspection by the Court, the ballots cast by Beneficial Owners for at least one (1) year following the Voting Deadline. Nominees using Pre-Validated Ballots should keep a list of the Beneficial Owners sent Pre-Validated Ballots for at least one (1) year following the Voting Deadline.

(b)    To avoid double counting, the Debtors propose that (a) votes cast by Senior Secured Noteholders through a Nominee (or its agent) and transmitted by means of a Master Ballot or Pre-Validated Ballot, be applied against the applicable positions held by such Nominee as of the Voting Record Date with respect to such Senior Secured Notes (as evidenced by record and depository listings) (a "**Record Date Position**"), and (b) votes submitted by a Nominee (or its agent) on a Master Ballot or Pre-Validated Ballot not be counted in excess of the Record Date Position held by such Nominee.

(c)    To the extent that conflicting votes or overvotes are submitted on a Master Ballot or Pre-Validated Ballot, the Debtors propose that the Voting Agent shall use reasonable efforts to resolve the conflict or overvote in order to ensure that as many of the votes as possible are accurately tabulated.

(d)    To the extent that overvotes on a Master Ballot or Pre-Validated Ballot are not reconcilable prior to the preparation of the declaration of vote results filed with this Court (the "Vote Declaration"), the Debtors propose that the Voting Agent count votes in respect of such Master Ballot or Pre-Validated Ballot in the same proportion as the votes to accept and reject the Plan submitted on the Master Ballots or Pre-Validated Ballots that contained the overvote, but only to the extent of the applicable Nominee's Record Date Position in the Senior Secured Notes.

(e)    Nominees generally are voting on behalf of the Beneficial Owners for whom they hold securities, and the Master Ballots that they fill out merely reflect the voting instructions given by those Beneficial Owners. Thus, Nominees (or agents thereof) should be authorized to complete multiple Master Ballots, and the votes reflected by such multiple Master Ballots should be counted, except to the extent that they are duplicative of other Master Ballots. For the same reasons as set forth above for allowing subsequently received ballots to supersede previously received ballots, the Court should order that, if two or more Master Ballots submitted are inconsistent in whole or in part, the last properly completed Master Ballot received prior to the Voting Deadline will, to the extent of such inconsistency, supersede and revoke any prior received Master Ballot, subject to the Debtors' right to object to the validity of the second Master Ballot on any basis permitted by law, including under Bankruptcy Rule 3018(a), and, if such objection is

sustained, the first Master Ballot will then be counted.

(f)     To avoid inconsistent treatment, and to provide guidance to the Debtors and the Voting Agent, the Court should order that each Beneficial Owner of a Senior Secured Note is deemed to have voted the full principal amount of its Claim relating to such Senior Secured Note, notwithstanding anything to the contrary on any ballot, although the Voting Agent may be asked to adjust the principal amount voted to account for any interest or accretion factor.

69.     The Debtors propose that none of the Debtors, the Voting Agent or any other Person or Entity will be under any duty to provide notification of defects or irregularities with respect to delivered ballots, nor will any of them incur any liability for failure to provide such notification. The Voting Agent may either disregard, with no further notice, defective Ballots, or it may attempt to have defective Ballots cured. In addition, the Debtors, subject to contrary order of the Court, may waive any defects or irregularities as to any particular Ballot at any time, either before or after the Voting Deadline in their sole discretion; *provided, however*, any such waiver shall be documented in the Vote Declaration, which Vote Declaration shall be filed with the Court by no later than two (2) business days after the Voting Deadline.

## IV.    ESTABLISHMENT AND NOTICING OF PLAN CONFIRMATION HEARING AND OBJECTION DEADLINE

70.     Bankruptcy Rule 2002(b) requires at least twenty-eight (28) days' notice by mail to all creditors of the time fixed for filing objections to and the hearing to consider confirmation of a chapter 11 plan. Similarly, Bankruptcy Rule 2002(d) requires notice by mail to equity security holders, unless the court orders otherwise. Bankruptcy Rule 2002(l) allows the court to order notice by publication if it finds that notice by mail is impracticable or that publication notice is desirable.

71.     In view of Bankruptcy Rule 2002(b), the Debtors request that the Court schedule the Confirmation Hearing for April 16, 2014, which date is approximately thirty-three (33) days after the Solicitation Commencement Date. The Debtors also request that the Court

establish the deadline for filing objections to the Plan (the "**Plan Objection Deadline**") as April 11, 2014, which is twenty-eight (28) days after the Solicitation Commencement Date, and five (5) days before the Confirmation Hearing.

72.    On or before the Solicitation Commencement Date and except as otherwise provided in this Motion, the Debtors propose to mail or cause to be mailed to all of their known creditors and equity security holders as of the Voting Record Date, and all other entities required to be served under Bankruptcy Rules 2002 and 3017, notice of, *inter alia*, the Confirmation Hearing in substantially the same form attached hereto as Exhibit H (the "**Confirmation Hearing Notice**"), which the Debtors hereby request that the Court approve.[14] The Confirmation Hearing Notice provides (a) notice of the filing of the Plan, (b) notice of the approval of the Disclosure Statement, (c) information regarding the Confirmation Hearing, (d) disclosures concerning releases and injunctions provided for under the Plan and (e) directions for filing objections to the confirmation of the Plan by the Plan Objection Deadline.  As set forth above, the Confirmation Hearing Notice will be included in the Solicitation Packages mailed to holders of voting Claims in Classes 3, 4, 5 and 6 and to each person or entity that has requested or that is required to receive notice pursuant to Bankruptcy Rule 2002, and will be posted on Prime Clerk LLC's website available via http://cases.primeclerk.com/gfes/.  The substance of the information contained in the Confirmation Hearing Notice is also included in the Notice of Non-Voting Status, the Notice of Deemed Rejecting Status, and the Notice of Disputed Claim Status.

73.    The Confirmation Hearing Notice shall set forth the procedures for parties to object to the confirmation of the Plan.  In particular, the Confirmation Hearing Notice shall provide that objections to the confirmation of the Plan must be in writing and must:

---

[14]    To ensure that all parties receive timely notice, the Confirmation Hearing Notice will be sent (a) to parties in the United States, by first class mail, (b) to parties outside the United States who are entitled to vote on the Plan, by Federal Express or other similar service, as appropriate, in the Debtors' sole and absolute discretion, and (c) to parties outside the United States who are not entitled to vote on the Plan, by expedited mail or other similar service, as appropriate, in the Debtors' sole and absolute discretion.

01:14982565.6

HN\1117640.4

(a)     (i) state the name and address of the objecting party and the nature of the Claim or Interest of such party, (ii) state with particularity the basis and nature of any objection to or proposed modification of the Plan; and (iii) be filed with the Clerk's Office, 824 North Market Street, 3rd Floor, Wilmington, Delaware 19801 together with proof of service, on or before the Plan Objection Deadline; and

(b)     be served, so as to be actually received on or before the Plan Objection Deadline, upon (i) the Office of the U.S. Trustee for the District of Delaware, attn: Tiiara Patton, J. Caleb Boggs Federal Building, 844 North King Street, Suite 2207, Lock Box 35, Wilmington, DE 19801 (ii) Latham & Watkins LLP, attn: Josef Athanas, Caroline Reckler and Matthew Warren, 233 S. Wacker Drive, Suite 5800, Chicago, IL 60606, (iii) Young Conaway Stargatt & Taylor, LLP, attn: Michael Nestor and Kara Hammond Coyle, 1000 North King Street, Wilmington, DE 19801, (iv) Greenburg Traurig, LLP, attn: David Kurzweil, 3333 Piedmont Road, NE, Suite 2500, Atlanta, GA 30305, (v) Brown Rudnick LLP, attn: Robert Stark, Seven Times Square, New York, New York 10036, (vi) Jones Day, attn: Paul D. Leake, Richard H. Engman and Michael J. Cohen, 222 East 41st Street, New York, NY 10017, (vii) Richards, Layton & Finger, P.A., attn: William A. Romanowicz, One Rodney Square, 920 North King Street, Wilmington, DE 19801, (viii) Liskow & Lewis, attn: Michael D. Rubenstein, First City Tower, 1001 Fannin Street, Suite 1800, Houston, TX 77002, (ix) Potter Anderson & Corroon LLP, attn: Laurie Selber Silverstein, 1313 North Market Street, 6th Floor, Wilmington, DE 19801, (x) Cole, Schotz, Meisel, Forman & Leonard, P.A., attn: Norman L. Pernick, 500 Delaware Avenue, Suite 1410, Wilmington, DE 19801, (xi) TPT, attn: Craig Ryan, 298 Louisiana Road, Franklin, LA, 70538, (xii) Katten Muchin Rosenman LLP, attn: Craig A. Barbarosh, 575 Madison Avenue, New York, NY 10022-2585, (xiii) Cousins Chipman & Brown, LLP, attn: Scott Cousins and Ann Kashishian, 1007 North Orange Street, Suite 1110, Wilmington, DE 19801, and (xiv) such other parties as the Bankruptcy Court may order.

74.     In addition, on or about the Solicitation Commencement Date, the Debtors propose to publish a short-form notice of the Plan Objection Deadline and the Confirmation Hearing (the "**Publication Notice**"), substantially in the form attached hereto as Exhibit I, in the Wall Street Journal (global edition) and the Lafayette Advertiser.

75.     The Debtors believe that service of the Confirmation Hearing Notice and placement of the Publication Notice as described above will provide sufficient notice to all parties in interest, including unknown creditors, of the Plan Objection Deadline and the Confirmation Hearing.

## NOTICE

76.     Notice of this Motion will be given to: (a) the U.S. Trustee; (b) counsel to the DIP Lenders; (c) counsel to Shell; (d) counsel to the Senior Secured Notes Indenture Trustee; (e) the Securities and Exchange Commission; (f) counsel to the Environmental Protection Agency; (g) counsel to the Senior Secured Noteholders; (h) counsel to the ad hoc group of Senior Secured Noteholders; (i) counsel to the Official Creditors' Committee; (j) the United States Attorney General for the District of Delaware; (k) the Attorneys General for the states in which the Debtors conduct business; (l) counsel to the Moreno Entities; (m) counsel to TPT; (n) the Examiner; and (o) all parties requesting notice pursuant to Bankruptcy Rule 2002. The Debtors will also serve the Disclosure Statement Notice on all known creditors as set forth herein. The Debtors submit that, under the circumstances, no other or further notice is required.

**WHEREFORE**, the Debtors respectfully request that this Court (a) enter the Order substantially in the form attached hereto as <u>Exhibit J</u> (i) approving the Disclosure Statement, (ii) approving the dates, procedures and forms applicable to the solicitation of votes on and noticing with respect to the Plan, (iii) approving certain vote tabulation procedures, and (iv) establishing the deadline for filing objections to the Plan and scheduling the hearing to consider confirmation of the Plan, all as more particularly described above and (b) grant such other and further relief as is just and proper.

Dated:  February 18, 2014
Wilmington, Delaware

Respectfully Submitted,


_/s/ Kara Hammond Coyle_
Michael R. Nestor (No. 3526)
Kara Hammond Coyle (No. 4410)
Justin H. Rucki (No. 5304)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

-and-

Josef S. Athanas
Caroline A. Reckler
Sarah E. Barr
Matthew L. Warren
LATHAM & WATKINS LLP
Suite 5800
233 South Wacker Drive
Chicago, IL 60606
Telephone:  (312) 876-7700
Facsimile:   (312) 993-9767

ATTORNEYS FOR DEBTORS AND DEBTORS-IN-POSSESSION