## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
------------------------------------------------------- x
In re:                                                  :   Chapter 11
                                                        :
GREEN FIELD ENERGY SERVICES, INC., et                   :   Case No. 13-12783 (KG)
al.,                                                    :
                                                        :   Jointly Administered
                  Debtors.¹                             :
------------------------------------------------------- x   Ref. Dkt Nos.  482, 513, 520, 521, 530, 537 & 543
```

### ORDER (I) APPROVING BID PROCEDURES IN CONNECTION WITH SALE OF CERTAIN ASSETS OF THE DEBTORS; (II) SCHEDULING HEARING TO CONSIDER SALE OF ASSETS; (III) APPROVING FORM AND MANNER OF NOTICE THEREOF; (IV) APPROVING AGENT BID PROTECTIONS AND (V) GRANTING RELATED RELIEF

Upon consideration of the motion (the "**Motion**")² of the above-captioned debtors

and debtors-in-possession (collectively, the "**Debtors**"), pursuant to sections 105(a), 363, 365,

503 and 507 of Title 11 of the United States Code (the "**Bankruptcy Code**"), as supplemented

by Rules 2002, 6004, 6006 and 9014 of the Federal Rules of Bankruptcy Procedure (the

"**Bankruptcy Rules**"), for entry of orders approving, among other things, the sale of certain

assets of the Debtors (the "**Sale**"), related bidding procedures, and certain protections for

potential purchasers of such assets; and the Court having determined that the relief provided

herein is in the best interest of the Debtors, their estates, their creditors and other parties in

interest; and due and adequate notice of the Motion having been given under the circumstances;

and upon the record of the hearing on the Motion, and the full record of these cases; and after

---

[1]       The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax or organizational identification number, are: Green Field Energy Services, Inc. (2539); Hub City Tools, Inc. (2827); and Proppant One, Inc. (6035).  The above-captioned Debtors' mailing address is 4023 Ambassador Caffery Parkway, Suite #200, Lafayette, LA 70503.

[2]       Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to them in the Motion or the Bidding Procedures.

due deliberation thereon; and good and sufficient cause appearing therefor, it is hereby ORDERED that:

A.     Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when applicable.  See Bankruptcy Rule 7052.

B.     Except as otherwise determined in any other order of this Court, this Court has jurisdiction over the Motion and the transactions contemplated therein pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference from the United States District Court for the District of Delaware dated as of February 29, 2012, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and the Court may enter a final order consistent with Article III of the United States Constitution.  Venue in this district is proper under 28 U.S.C. §§ 1408 and 1409.

C.     Good and sufficient notice of the Motion and the relief sought therein has been given under the circumstances, and except as otherwise set forth in separate orders regarding the proposed assumption and assignment of Contracts (as defined in the Motion), no other or further notice is required except as set forth herein with respect to the Auction and Sale Hearing.  Subject to the immediately preceding sentence, a reasonable opportunity to object or be heard regarding the relief provided herein has been afforded to parties-in-interest.

D.     The notice provided by the Debtors was appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the Auction, the sale of the Assets and the Bidding Procedures to be employed in connection therewith.

E.     The Debtors have articulated good and sufficient business reasons for this Court to approve the Bidding Procedures, including: (a) the scheduling of a bid deadline, auction and sale hearing with respect to the proposed sale of the Assets, (b) approval of the Bid

01:15064175.3

2

HN\1113331.13

Protections (as defined below) and (c) the establishment of procedures to fix the Cure Amounts

(as defined below) to be paid pursuant to section 365 of the Bankruptcy Code in connection with

the assumption, assignment and/or transfer of the Assumed Contracts.

F.    The Debtors have demonstrated a compelling and sound business

justification for authorizing the payment of the Break-Up Fee and the Expense Reimbursement

and establishing the initial minimum overbid increment (collectively, the "**Bid Protections**") to

Gordon Brothers Commercial & Industrial, LLC ("**GBCI**") under the circumstances, including,

without limitation, that:

1.    the Bid Protections are the product of negotiations among the Debtors and GBCI conducted in good faith and at arm's-length, and the GBCI Agency Agreement (including the Bid Protections) is the culmination of a process undertaken by the Debtors and their professionals to negotiate a transaction with a bidder who was prepared to pay the highest or otherwise best purchase price to date for the Assets in order to maximize the value of the Debtors' estates;

2.    the Break-Up Fee and the Expense Reimbursement Amount are an actual and necessary cost and expense of preserving the respective Debtors' estates, within the meaning of Sections 503(b) and 507(a)(2) of the Bankruptcy Code;

3.    the Bid Protections are fair, reasonable and appropriate in light of, among other things, the size and nature of the proposed transaction under the GBCI Agency Agreement and comparable transactions, the substantial efforts that have been and will be expended by GBCI, notwithstanding that the proposed transaction is subject to higher or better offers, and the substantial benefits GBCI has provided to the Debtors, their estates and creditors and all parties in interest herein, including, among other things, by increasing the likelihood that the best possible price for the Assets will be received;

4.    the protections afforded to GBCI by way of the Bid Protections were material inducements for, and express conditions of, GBCI's willingness to enter into, and to continue to be bound by, the GBCI Agency Agreement, and were necessary to ensure that GBCI would continue to pursue the proposed transaction on terms acceptable to the Debtors in their sound business judgment, subject to competitive bidding; and

5.   the assurance of the payment of the Break-Up Fee and/or the Expense Reimbursement Amount, as applicable, (I) has promoted more competitive bidding by inducing GBCI's bid, which otherwise would not have been made, without which competitive bidding would be limited, and which may be the highest and best available offer for the Assets, and has induced GBCI to conduct due diligence with respect to the Debtors' business, assets, operations and liabilities, and propose transaction contemplated by the GBCI Agency Agreement, including, among other things, submission of a bid that will serve as a minimum or floor bid on which all other bidders can rely and (II) increases the likelihood that the final consideration to the Debtors reflects the true value of the Assets.

G.    The Bidding Procedures are reasonably designed to maximize the value to be achieved for the Assets.

H.    The Notice of Auction and Sale Hearing is reasonably calculated to provide all interested parties with timely and proper notice of the proposed Sale, including, without limitation: (i) the date, time and place of the Auction (if one is held); (ii) the Bidding Procedures and the dates and deadlines related thereto; (iii) the objection deadline for the sale motion and the date, time and place of the Sale Hearing; (iv) reasonably specific identification of the Assets; (v) instructions for promptly obtaining a copy of the GBCI Agency Agreement or form asset purchase agreement, as applicable; (vi) representations describing the Sale as being free and clear of liens, claims, interests and other encumbrances, with all such liens, claims, interests and other encumbrances attaching with the same validity and priority to the sale proceeds; and (vii) notice of the possible assumption and assignment of contracts and leases to a Successful Bidder, or Successful Bidders, arising from the Auction, if any, the proposed cure amounts relating thereto and the right, procedures and deadlines for objecting thereto, and no other or further notice of the Sale shall be required.

I.    The entry of this Bidding Procedures Order is in the best interests of the Debtors, their estates, their creditors, and other parties-in-interest.

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.      The Motion is granted as set forth herein.

2.      All Objections to the Motion as it relates to the relief provided herein that have not been withdrawn, waived, expressly reserved or settled are hereby overruled and denied on the merits.

3.      The Bidding Procedures, in substantially the form attached hereto as Schedule 1, are incorporated herein and approved, and shall apply with respect to the sale of the Assets. The Debtors are authorized to take all actions necessary or appropriate to implement the Bidding Procedures. The failure to specifically include or reference any particular provision, section or article of the Bidding Procedures in this Bidding Procedures Order shall not diminish or impair the effectiveness of such procedures, it being the intent of this Court that the Bidding Procedures be authorized and approved in their entirety.

## I.      **Important Dates and Deadlines**[3]

4.      **Bid Deadline**. As further described in the Bidding Procedures, the deadline for submitting bids for the Assets (the "**Bid Deadline**") is March 5, 2014 at 5:00 p.m. (prevailing Eastern Time) or such later date to which the Debtors consent, but in no event later than one day prior to the commencement of the Auction. No bid shall be deemed to be a Qualified Bid (as defined in the Bidding Procedures) unless such bid meets the requirements set forth in the Bidding Procedures. GBCI is deemed a Qualified Bidder and the GBCI Agency Agreement is deemed a Qualified Bid.

5.      **Auction**. The Debtors may enter into an agency agreement or sell the Assets if such transaction is proposed by any Qualified Bid(s), by conducting an Auction in

---

[3] A complete list of all sale related deadlines is attached hereto as Schedule 6.

accordance with the Bidding Procedures.  If Qualified Bids are timely received by the Debtors in

accordance with the Bidding Procedures, the Auction shall take place on March 7, 2014 at 10:00

a.m. (prevailing Central Time) at the offices of Latham & Watkins, LLP, co-counsel to the

Debtors, at 811 Main Street, Suite 3700, Houston, TX 77002.  If, however, no other Qualified

Bid is received by the Bid Deadline, then the Auction will not be held, GBCI will be the

Successful Bidder and the Debtors shall promptly seek Bankruptcy Court approval of the GBCI

Agency Agreement.  Each Qualified Bidder participating at the Auction will be required to

confirm that it has not engaged in any collusion with respect to the bidding or the Sale.

      6.     **Sale Hearing**.  The Sale Hearing shall be held before this Court on

March 11, 2014 at 2:00 p.m. (prevailing Eastern Time) before the Honorable Judge Kevin Gross,

Chief United States Bankruptcy Judge for the Bankruptcy Court for the District of Delaware, at

824 North Market Street, 5th Floor, Wilmington, Delaware 19801.  At the Sale Hearing, the

Debtors will seek the entry of an order of this Court approving and authorizing the Debtors to

enter it to the GBCI Agency Agreement or consummate an alternative transaction with another

Successful Bidder(s) (an "**Alternative Transaction**"), as applicable.  **Please take notice that:**

the Sale Hearing (or any portion thereof) may be adjourned by this Court or the Debtors from

time to time without further notice other than by announcement in open court, on this Court's

calendar or through the filing of a notice or other document on this Court's docket.

      7.     Any obligations of the Debtors set forth in the GBCI Agency Agreement

that are intended to be performed prior to the Sale Hearing and/or entry of the Approval Order

pursuant to the GBCI Agency Agreement (the "**Pre-Closing Obligations**") are authorized as set

forth herein and are fully enforceable as of the date of entry of this Order.  The Pre-Closing

Obligations shall survive entry of any order which may be entered confirming or consummating

any plan of reorganization of the Debtors, or which may be entered converting Debtors' cases from chapter 11 to chapter 7, and the Pre-Closing Obligations, as well as the rights and interests granted pursuant to this Bidding Procedures Order shall continue in this or any superseding case and shall be binding upon Debtors, the Agent and their respective successors and permitted assigns, including any trustee or other fiduciary hereafter appointed as a legal representative of the Debtors under chapter 7 or 11 of the Bankruptcy Code.  Any trustee appointed in these cases shall be and hereby is authorized and directed to comply with the terms of this Bidding Procedures Order and the Pre-Closing Obligations and the Agent and the trustee shall be and hereby are authorized to perform such Pre-Closing Obligations upon the appointment of a trustee without the need for further order of this Court.

8.    **Sale Objection Deadline**.  The deadline to object to the relief requested in the Motion, including entry of the proposed Approval Order (the "**Sale Objection Deadline**") is March 4, 2014 at 4:00 p.m. (prevailing Eastern Time).  Objections, if any, <u>must</u>:  (a) be in writing; (b) conform to the applicable provisions of the Bankruptcy Rules and the Local Rules; (c) state with particularity the legal and factual basis for the objection and the specific grounds therefor; and (d) be filed with this Court and served so *actually* *received* no later than the Sale Objection Deadline on the following parties (the "**Notice Parties**"):  (i) the Debtors, 4023 Ambassador Caffery Parkway, Suite 200, Lafayette, LA 70503, thill@alvarezandmarsal.com, rick.fontova@gfes.com and earl.blackwell@gfes.com (Attn: Thomas Hill, Rick Fontova and Earl Blackwell); (ii) co-counsel to the Debtors, (a) Latham & Watkins LLP, 233 South Wacker Drive, Suite 5800, Chicago, IL  60606, facsimile:  (312) 993-9767, josef.athanas@lw.com, caroline.reckler@lw.com  and matthew.warren@lw.com (Attn:  Josef S. Athanas, Caroline Reckler and Matthew Warren) and (b) Young Conaway Stargatt and Taylor, LLP, Rodney

Square, 1000 North King Street, Wilmington, DE 19801, facsimile: (302) 571-1253,

mnestor@ycst.com and kcoyle@ycst.com  (Attn:  Michael R. Nestor and Kara H. Coyle); (iii)

investment banker to the Debtors, Carl Marks Advisory Group, LLC ("**Carl Marks**"), 900 Third

Avenue, New York, NY 10022, facsimile: 212-980-2631, cwu@carlmarks.com (Attn:

Christopher K. Wu); (iv) counsel to the DIP Lenders, Greenberg Traurig, LLP, 3333 Piedmont

Road, Suite 2500, Atlanta, GA 30305, facsimile: (678) 553-2681, kurzweild@gtlaw.com  (Attn:

David B. Kurzweil); (v) co-counsel to the Committee, (a) Brown Rudnick LLP, Seven Times

Square, New York, NY 10036, facsimile: (212) 209-4801, rstark@brownrudnick.com (Attn:

Robert J. Stark) and (b) Womble Carlyle Sandridge & Rice, LLP, 222 Delaware Avenue, Suite

1501, Wilmington, DE 19801, facsimile: (302) 661-7728, skortanek@wcsr.com (Attn:  Steven

K. Kortanek); (vi) co-counsel to the Noteholders, (a) Jones Day, 222 East 41st Street, New York,

NY 10017, facsimile: (212) 755-7306, pdleake@jonesday.com, rengman@jonesday.com and

mcohen@jonesday.com (Attn: Paul Leake, Richard H. Engman and Michael Cohen) and (b)

Richards, Layton & Finger, P.A., One Rodney Square, 920 North King Street, Wilmington, DE

19801, facsimile: (302) 498-7878, romanowicz@rlf.com (Attn: William A. Romanowicz); (vii)

co-counsel to Shell, (a) Liskow & Lewis, First City Tower, 1001 Fannin Street, Suite 1800,

Houston, Texas 77002, facsimile: (713) 651-2952, mdrubenstein@liskow.com (Attn: Michael D.

Rubenstein) and (b) Potter Anderson & Corroon LLP, 1313 North Market Street, 6th Floor,

Wilmington, DE  19801, facsimile: (302) 658-1192, lsilverstein@potteranderson.com (Attn:

Laurie Selber Silverstein); (viii) counsel to Wilmington Trust, National Association

("**Wilmington Trust**"), as trustee and collateral agent under that certain Indenture, dated as of

November 15, 2011, by and among Wilmington Trust, Green Field Energy Services, Inc. and

Hub City Tools, Inc. as guarantor, Katten Muchin Rosenman, 575 Madison Avenue, New York,

8

NY 10022-2585, facsimile: (212) 894-5512, karen.dine@kattenlaw.com (Attn: Karen B. Dine);

(ix) counsel to GBCI, Curtis, Mallet-Prevost, Colt & Mosle LLP, 101 Park Avenue, New York,

NY 10178, facsimile: (212) 697-1559, sreisman@curtis.com (Attn: Steven J. Reisman); (x)

Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207,

Lockbox 35, Wilmington, DE 19801, facsimile: (302) 573-6497, tiiara.patton@usdoj.gov (Attn:

Tiiara N. A. Patton); and (xi) the United States Attorney of Delaware, 1007 Orange St. Ste 700,

PO Box 2046, Wilmington, DE 19899-2046, facsimile: (302) 573-6220,

usade.ecfbankruptcy.usdoj.gov  (Attn: Charles Oberly c/o Ellen Slights).

9.       The Debtors (A)(i) have caused to be sent by first-class mail postage

prepaid or by facsimile or by email, if such contact details are available, the notice substantially

in the form attached hereto as Schedule 2 (the "**Notice of Auction and Sale Hearing**"),[4] and (ii)

on or before three (3) days after entry of this Bidding Procedures Order, will cause the Bidding

Procedures Order to be sent by first-class mail postage prepaid, to the following: (a) the U.S.

Trustee; (b) counsel for the Committee; (c) counsel to the Noteholders; (d) counsel to

Wilmington Trust; (e) counsel to Shell; (f) counsel to the DIP Lenders; (g) all taxing authorities

having jurisdiction over any of the Assets, including the Internal Revenue Service; (h) all parties

that have requested or that are required to receive notice pursuant to Bankruptcy Rule 2002; (i)

all persons known or reasonably believed to have asserted an interest in any of the Assets; (j) the

non-Debtor parties to the Contracts; (k)  the Attorneys General in the State(s) where the Assets

are located; and (l) all state and local environmental agencies in any jurisdiction where the Seller

owns or has owned or used real property; and (B) on or before one (1) Business Day after entry

---

[4]       The Notice of Auction and Sale Hearing will direct parties to contact Carl Marks, investment banker for the Debtors, for more information and will provide that any party in interest that wishes to obtain a copy of any related document (including the GBCI Agency Agreement), subject to any necessary confidentiality agreement, may make a request in writing as specified in the Notice of Auction and Sale Hearing.

of this Bidding Procedures Order, will cause the Bidding Procedures Order to be sent by first-class mail postage prepaid to each party that has asserted title to, or a security interest in, any of the Assets.  On or prior to three (3) Business Days after the Motion was filed, the Debtors served the Motion on all parties asserting title to, or a security interest in, any of the Assets.  In addition to the foregoing, (i) electronic notification of this Motion, the Bidding Procedures Order and the Notice of Auction and Sale Hearing also will be posted on:  (a) the Court's website, www.deb.uscourts.gov; and (b) the case website maintained by the Debtors' claims and noticing agent, Prime Clerk. at http://cases.primeclerk.com/gfes, or can be requested by calling (855) 410-7359 from within the United States or +1 (646) 795-6960 if calling from outside the United States; and (ii)(a) the Debtors have served the Notice of Auction and Sale Hearing on all known creditors of the Debtors; and (b) the Debtors have published the Notice of Auction and Sale Hearing once in one national publication.  **The failure to timely file an objection by the Sale Objection Deadline or the Cure Amount/Assignment Objection Deadline, as applicable, or in accordance with this Bidding Procedures Order, may forever bar the assertion of any objection to the Motion, entry of the Approval Order and/or consummation of the Sale, and shall be deemed to constitute any such party's consent to entry of the Approval Order and consummation of the Sale and all transactions related thereto.**  Notwithstanding the Sale Objection Deadline, any party may submit an objection at the Sale Hearing to the Successful Bidder's bid on the grounds that adequate assurance of future performance under any executory contract or lease has not been provided by the Successful Bidder.  Notwithstanding the Sale Objection Deadline, the United States Trustee may submit an objection at the Sale Hearing if the Successful Bidder's bid is materially different from GBCI's bid, and such material difference adversely impacts such party, at any time prior to the Sale Hearing.

01:15064175.3

HN\1113331.13

Case 13-12783-KG    Doc 561    Filed 02/19/14    Page 11 of 16

10.    The Debtors have served by first class mail or hand delivery, a notice of potential assumption, assignment and/or transfer of the executory contracts and leases to which any Debtor is a party (the "**Contracts**"), substantially in the form attached hereto as <u>Schedule 3</u> (the "**Notice of Potential Assumption and Assignment**"), on all non-debtor parties to the Contracts. The Notice of Potential Assumption and Assignment included the calculation of the cure amounts that the Debtors believe must be paid to cure all defaults outstanding under the Contracts as of such date (the "**Cure Amounts**").

11.    Unless the non-debtor party to an Assumed Contract files an objection (the "**Cure Amount/Assignment Objection**") to (a) its scheduled Cure Amount, and/or (b) the proposed assumption, assignment and/or transfer of such Contract (including the transfer of any related rights or benefits thereunder) to any Successful Bidder(s), as applicable by 4:00 p.m. (prevailing Eastern Time) on March 4, 2014 and serves a copy of the Cure Amount/Assignment Objection on the Notice Parties; then such non-debtor party will (i) be forever barred from objecting to the Cure Amount and from asserting any additional cure or other amounts with respect to such Contract in the event it is assumed and/or assigned by the Debtors and the Debtors shall be entitled to rely solely upon the Cure Amount, and (ii) be deemed to have consented to the assumption, assignment and/or transfer of such Contract (including the transfer of any related rights and benefits thereunder) either to the Successful Bidder(s) or any other assignee of the relevant Assumed Contract and shall be forever barred and estopped from asserting or claiming against the Debtors, any Successful Bidder(s) or any other assignee of the relevant Contract that any additional amounts are due or defaults exist, or conditions to assumption, assignment, and/or transfer must be satisfied under such Contract, or that any related right or benefit under such Contract cannot or will not be available to any Successful Bidder(s)

11

HN\1113331.13

or any other assignee of the relevant Contract.  A Cure Amount/Assignment Objection with

respect to any Notice of Potential Assumption and Assignment of Agreements shall be heard at

the Sale Hearing.  With respect to any party who has timely filed a Cure Amount/Assignment

Objection in accordance with this Order, nothing in this Order and/or the Notice of Potential

Assumption and Assignment of Agreements shall (i) operate to waive or impair any rights,

claims or defenses of any and all non-debtor counterparties to any Contract, or (ii) shall be

deemed to be a determination, finding or adjudication that any Contract, or any rights or benefits

thereunder, are or may be assumed, assigned, transferred, delegated or otherwise made available

for the benefit of any entity, pursuant to section 365 of the Bankruptcy Code or otherwise,

without the consent of the non-debtor counterparty to such Contract.

12.     If an objection challenges a Cure Amount, the objection must set forth the

prepetition cure amount being claimed by the objecting party (the "**Claimed Cure Amount**")

with appropriate documentation in support thereof.  Upon receipt of an objection to a Cure

Amount, the Debtors may, in their sole discretion, hold an amount equal to the Claimed Cure

Amount in reserve pending further order of the Court or agreement between the Debtors and the

objecting party.  If the Debtors hold the Claimed Cure Amount in reserve, the Debtors may

assume and assign the Assumed Contract that is the subject of an objection relating to that

Assumed Contract's Cure Amount without further delay, unless such Cure Amount/Assignment

Objection claims that the applicable Assumed Contract may not be assumed or assigned for

reasons other than or in addition to the adequacy or inadequacy of the Cure Amount.

13.     Within one (1) day after the conclusion of the Auction, the Debtors will

file a notice (a) identifying the Successful Bidder(s) and (b) providing adequate assurance

materials demonstrating the ability of the Successful Bidder(s) to perform under the Assumed Contracts.

14.    No later than one day following the conclusion of the Auction (the "**Assumption Notice Deadline**"), the Debtors shall (i) serve a notice, substantially in the form attached hereto as Schedule 4, identifying the Successful Bidder(s) and stating which Contracts will be assumed and assigned (the "**Assumed Contracts**") to the Successful Bidder(s) as of the closing of any transaction (the "**Notice of Assumption**"); and (ii) serve by first class mail or hand delivery a notice, substantially in the form attached hereto as Schedule 5, identifying the Contracts that will be rejected by the Debtors on all non-debtor parties to such Contracts (the "**Notice of Rejection**").  Such Contracts shall be rejected ten (10) days from the date of service of such Notice of Rejection.

15.    The Notice of Auction and Sale Hearing, the Notice of Potential Assumption and Assignment, Notice of Assumption and the Notice or Rejection to be issued in connection with the proposed sale of the Assets, substantially in the forms annexed hereto as Schedule 2, Schedule 3, Schedule 4, and Schedule 5 respectively, and the manner in which such notices have been or will be served, are approved.

16.    Any person or entity that has filed financing statements, mortgages, construction or mechanic's liens, *lis pendens* or other documents or agreement evidencing Liens on or interests in the Assets, other than Ford Motor Credit Company LLC ("**Ford Credit**") shall (i) deliver to the Debtors, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, or releases of any Encumbrances which the person or entity has with respect to the Assets, each such person or entity is hereby directed to deliver all such statements, instruments and releases and (ii) otherwise reasonably cooperate with

the Debtors to transfer the Assets free and clear of any Encumbrances, including, without limitation, assisting the Debtors to (a) obtain replacement title in an expeditious manner or (b) take such others steps such that the Debtors can transfer the titled assets, including, without limitation, providing a release of lien letter.  In addition, any third party who holds title to any of the Assets shall promptly take such other steps reasonably requested by the Debtors to facilitate the timely sale of the titled Assets.

17.     The Sale Hearing may be adjourned, from time to time, without further notice to creditors or other parties-in-interest other than by announcement of said adjournment before this Court or on this Court's calendar on the date scheduled for said hearing.

18.     Except as otherwise provided in the GBCI Agency Agreement, the Bidding Procedures or this Bidding Procedures Order, the Debtors reserve the right as they may reasonably determine to be in the best interests of their estates, to:  (a) determine which bidders are Qualified Bidders; (b) determine which bids are Qualified Bids; (c) determine which Qualified Bid is the highest or best proposal and which is the next highest or best proposal; (d) reject any bid that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bidding Procedures or the requirements of the Bankruptcy Code, or (iii) contrary to the best interests of the Debtors and their estates; (c) remove some of the Assets from the Auction; (d) waive terms and conditions set forth herein with respect to all potential bidders; (e) impose additional terms and conditions with respect to all potential bidders; (f) extend the deadlines set forth herein; (g) adjourn or cancel the Auction and/or Sale Hearing in open court without further notice; and (h) modify the Bidding Procedures as the Debtors (after consultation with the Committee, the Noteholders and Shell) may determine to be in the best interest of their estates or to withdraw the Motion at any time with or without prejudice.

19.    **Credit Bidding**.  Only holders of allowed valid secured claims are permitted to submit a credit bid at the Auction.  Furthermore, any credit bid must provide for (x) the payment in cash at closing, and/or the assumption of, the unpaid administrative expense claims of the Debtors incurred from the Petition Date through and including the date on which the closing of the sale occurs, including, but not limited to GBCI's Break-Up Fee and Expense Reimbursement, (y) the payment in cash at the closing of the amount required to be paid by the Debtors, if any, on account of cure amounts that the Debtors believe must be paid to cure all defaults under the leases and contracts proposed to be assumed and assigned to the party that submitted the credit bid and (z) the payment in cash at closing of all claims that are senior to the claims of the party that submitted the credit bid.  Notwithstanding anything to the contrary in this Order or the Bidding Procedures, the Debtors' rights to contest the propriety of any credit bid pursuant to sections 363(k) and 105 of the Bankruptcy Code are expressly reserved.

20.    The Bid Protections described in the Motion are hereby approved.  The Debtors are authorized to pay any and all amounts owing to GBCI in accordance with the terms of the GBCI Agency Agreement, including the Break-Up Fee and the Expense Reimbursement, without further order of this Court.  The Break-Up Fee and Expense Reimbursement shall be paid directly to GBCI by wire transfer from the Successful Bidder solely out of the first proceeds of an Alternative Transaction; provided, however, that with respect to the Expense Reimbursement GBCI must first provide documentation for such actual expenses.  The Debtors' obligation to pay the Break-Up Fee and Expense Reimbursement to GBCI shall constitute an administrative expense claim in accordance with Sections 105(a) and 503 of the Bankruptcy Code, junior only to the superpriority claims of the lenders under the DIP Facility.

21.    No person or entity other than GBCI shall, pursuant to the Bidding Procedures or otherwise, be entitled to any expense reimbursement, break-up fees, "topping," termination or other similar fee or payment in connection with the sale of the Assets pursuant to the terms of this Order.

22.    The stays provided for in Bankruptcy Rules 6004(h) and 6006(d) are waived and Bidding Procedures Order shall be effective immediately upon its entry.

23.    GBCI is a party in interest and shall have the ability to appear and be heard on all issues related to or otherwise connected to the GBCI Agency Agreement and Bidding Procedures.

24.    The rights of Ford Credit to object to the Sale and its rights to assert the validity, priority, extent and value of its lien(s), the collateral securing its lien(s), and the effect of any cross-collateralization agreement relating thereto, and the rights of the Debtors and other parties in interest to oppose any of the same, are fully reserved and preserved pending the Sale Hearing.

25.    This Court shall retain jurisdiction over any matters related to or arising from the implementation of this Order, including, but not limited to, any matter, claim or dispute arising from or relating to the Break-Up Fee, the GBCI Asset Purchase Agreement, the Bidding Procedures and the implementation of this Bidding Procedures Order.

Dated: February 19, 2014

KEVIN GROSS
CHIEF UNITED STATES BANKRUPTCY JUDGE