**EXHIBIT A**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
-------------------------------------------------------- x
In re:                                       :   Chapter 11
                                             :
GREEN FIELD ENERGY SERVICES, INC., et :   Case No. 13-12783 (KG)
al.,                                         :
                                             :   Jointly Administered
                 Debtors.¹                   :
                                             x
--------------------------------------------------------
```

## FIRST AMENDED JOINT PLAN OF LIQUIDATION OF
## GREEN FIELD ENERGY SERVICES, INC., ET AL.


**LATHAM & WATKINS LLP**          **YOUNG CONAWAY STARGATT**
Josef S. Athanas                  **& TAYLOR, LLP**
Caroline A. Reckler               Michael R. Nestor
Sarah E. Barr                     Kara Hammond Coyle
Matthew L. Warren                 1000 North King Street
Suite 5800                        Wilmington, Delaware 19801
233 South Wacker Drive            (302) 571-6600
Chicago, IL  60606
(312) 876-7700

Counsel for Debtors               Counsel for Debtors


Dated: ~~February~~March 6,
2014

---

[1]     The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax or organizational identification number, are: Green Field Energy Services, Inc. (2539); Hub City Tools, Inc. (2827); and Proppant One, Inc. (6035).  The above-captioned Debtors' mailing address is 4023 Ambassador Caffery Parkway, Suite #200, Lafayette, LA 70503.

# TABLE OF CONTENTS

**Page**

**Article I DEFINITIONS; RULES OF INTERPRETATION;  AND COMPUTATION OF TIME**.................2

    Section 1.01    Definitions................................................................................................2

    Section 1.02    Rules of Interpretation..........................................................~~18~~16

    Section 1.03    Computation of Time............................................................~~19~~16

**Article II SUBSTANTIVE CONSOLIDATION** ...................................................~~19~~16

    Section 2.01    Deemed Consolidation and Effect Thereof .........................~~19~~16

    Section 2.02    Plan as Motion for Approval of Deemed Consolidation .........~~20~~17

**Article III CLASSIFICATION OF CLAIMS AND INTERESTS** ...........................~~20~~17

    Section 3.01    General Rules of Classification ...........................................~~20~~17

    Section 3.02    Unclassified Claims .............................................................~~20~~17

    Section 3.03    Classified Claims and Interests ..........................................~~20~~18

**Article IV TREATMENT OF UNCLASSIFIED CLAIMS** ...................................~~21~~18

    Section 4.01    Administrative Claims .........................................................~~21~~18

        (a)    Administrative Claims Bar Date and 503(b)(9) Claims Bar Date .........~~21~~18

        (b)    Treatment .............................................................~~21~~18

    Section 4.02    Fee Claims...........................................................................~~21~~19

        (a)    Fee Claims Bar Date.............................................~~21~~19

        (b)    Procedure..............................................................~~21~~19

        (c)    Treatment .............................................................~~22~~20

    Section 4.03    Priority Tax Claims.............................................................~~22~~20

        (a)    Governmental Unit Bar Date ................................~~22~~20

        (b)    Treatment .............................................................~~23~~20

    Section 4.04    DIP Claims ..........................................................................~~23~~20

**Article V TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS**...................~~23~~20

    Section 5.01    Class 1:  Other Secured Claims ...........................................~~23~~20

        (a)    Classification........................................................~~23~~20

        (b)    Treatment .............................................................~~23~~21

        (c)    Certain Conditions to Receipt of Aforementioned Treatment...............~~23~~21

    Section 5.02    Class 2:  Priority Non-Tax Claims ......................................~~24~~22

        (a)    Classification........................................................~~24~~22

        (b)    Treatment .............................................................~~24~~22

    Section 5.03    Class 3:  Shell Secured Claim .............................................~~24~~22

        (a)    Classification........................................................~~25~~22

        (b)    Treatment .............................................................~~25~~22

    Section 5.04    Class 4:  Senior Noteholder Claims .....................................~~25~~22

        (a)    Classification........................................................~~25~~22

        (b)    Treatment .............................................................~~25~~22

    Section 5.05    Class 5:  Shell Other Claim .................................................~~25~~23

        (a)    Classification........................................................~~25~~23

        (b)    Treatment .............................................................~~25~~23

Section 5.06    Class 6:  General Unsecured Claims ........................................................ ~~25~~23
    (a)    Classification ........................................................ ~~25~~23
    (b)    Treatment ........................................................ ~~25~~23

Section 5.07    Class 7:  Subordinated Other Claims ........................................................ ~~26~~23
    (a)    Classification ........................................................ ~~26~~23
    (b)    Treatment ........................................................ ~~26~~23

Section 5.08    Class 8:  Subordinated Stock Claims ........................................................ ~~26~~23
    (a)    Classification ........................................................ ~~26~~23
    (b)    Treatment ........................................................ ~~26~~23

Section 5.09    Class 9:  GFES Interests ........................................................ ~~26~~24
    (a)    Classification ........................................................ ~~26~~24
    (b)    Treatment ........................................................ ~~26~~24

Section 5.10    Class 10:  Subsidiary Interests ........................................................ ~~26~~24
    (a)    Classification ........................................................ ~~26~~24
    (b)    Treatment ........................................................ ~~26~~24

Section 5.11    Supplemental Treatment in Event of Surplus in Available Cash ........................................................ ~~26~~24
    (a)    Fourth Tier Claims ........................................................ ~~27~~24
    (b)    Fifth Tier Claims ........................................................ ~~27~~24
    (c)    Sixth Tier Claims/Interests ........................................................ ~~27~~25

Section 5.12    Insurance ........................................................ ~~28~~25

Section 5.13    Special Provision Governing Unimpaired Claims. ........................................................ ~~28~~25

Section 5.14    ~~Transfer of GFES TPT Interest and~~ TPT Settlement ........................................................ ~~28~~25

**Article VI ACCEPTANCE OR REJECTION OF THE PLAN** ........................................................ ~~28~~25

Section 6.01    Impaired Classes of Claims and Interests Entitled to Vote ........................................................ ~~28~~25

Section 6.02    Acceptance by an Impaired Voting Class ........................................................ ~~28~~25

Section 6.03    Deemed Acceptances by Classes ........................................................ ~~28~~25

Section 6.04    Deemed Rejections by Classes ........................................................ ~~28~~26

Section 6.05    Confirmation Pursuant to Bankruptcy Code Section 1129(b) ........................................................ ~~29~~26

**Article VII MEANS FOR IMPLEMENTATION** ........................................................ ~~29~~26

Section 7.01    Comprehensive Settlement of Claims and Controversies. ........................................................ ~~29~~26

~~Section 7.02~~    ~~Creation of and Contributions to NewCo.~~ ........................................................ ~~29~~

Section ~~7.03~~7.02    The Liquidation Trust ........................................................ ~~30~~26
    (a)    Appointment of the Liquidation Trustee ........................................................ ~~30~~26
    (b)    Creation of Liquidation Trust ........................................................ ~~30~~26
    (c)    Beneficiaries of Liquidation Trust ........................................................ ~~30~~27
    (d)    Vesting and Transfer of Assets to the Liquidation Trust ........................................................ ~~30~~27
    (e)    Certain Powers and Duties of Liquidation Trust and Liquidation Trustee ........................................................ ~~30~~27
    (f)    Federal Income Tax Treatment of the Liquidation Trust for the Liquidation Trust Assets; Tax Reporting and Tax Payment Obligations ........................................................ ~~31~~28
    (g)    Term of Liquidation Trust ........................................................ ~~33~~29
    (h)    The Liquidation Trust Oversight Committee ........................................................ ~~33~~30

~~Section 7.04~~    ~~The Litigation Trust~~ ........................................................ ~~34~~
    ~~(a)~~    ~~Appointment of the Litigation Trustee~~ ........................................................ ~~34~~
    ~~(b)~~    ~~Creation of Litigation Trust~~ ........................................................ ~~34~~
    ~~(c)~~    ~~Beneficiaries of Litigation Trust~~ ........................................................ ~~34~~
    ~~(d)~~    ~~Vesting and Transfer of Assets to the Litigation Trust~~ ........................................................ ~~34~~

01:15124892.1

HN\~~1114473.11~~1114473.17

(e)  Certain Powers and Duties of Litigation Trust and Litigation Trustee ...............34

(f)  Federal Income Tax Treatment of the Litigation Trust for the Litigation Trust Assets; Tax Reporting and Tax Payment Obligations ..........................................35

(g)  Term of Litigation Trust ................................................................................................37

(h)  The Litigation Trust Oversight Committee ....................................................................37

Section 7.057.03  Investigations Aiding Administration of the Estates .................................................3730

Section 7.067.04  Prosecution and Resolution of Causes of Action ....................................................3730

(a)  The Liquidation Trust's Exclusive Authority to Pursue, Settle, or Abandon Estate Causes of Action, ........................................................................................3730

(b)  Settlement of Estate Causes of Action ..........................................................................3831

(c)  The Litigation Trust's Exclusive Authority to Pursue, Settle, or Abandon Avoidance Actions ........................................................................................................38

(d)  Settlement of Avoidance Actions ..................................................................................38

Section 7.077.05  Cancellation of Documents ..............................................................................................3831

Section 7.087.06  Termination of Official Creditors' Committee.................................................................3931

Section 7.097.07  Filing of Monthly and Quarterly Reports and Payment of Statutory Fees ...........................3931

Section 7.107.08  Termination of Boards and Officers.................................................................................3932

Section 7.117.09  Dissolution of Hub City and Proppant One .....................................................................3932

Section 7.127.10  Closing of Certain of the Debtors' Chapter 11 Cases .......................................................4032

Section 7.137.11  Corporate Authorization ..................................................................................................4033

Section 7.147.12  Effectuating Documents and Further Transactions ...........................................................4033

**Article VIII EXECUTORY CONTRACTS AND LEASES**................................................................4133

Section 8.01  Rejection of Contracts and Leases ........................................................................4133

Section 8.02  Bar Date For Rejection Damages ...........................................................................4133

Section 8.03  Continuing Obligations of Certain Third Parties to the Debtors ...........................4134

Section 8.04  Treatment of Certain Insurance Policies ................................................................4134

**Article IX DISPUTED, CONTINGENT AND  UNLIQUIDATED CLAIMS AND INTERESTS** .................4234

Section 9.01  Objections to Claims and Interests.........................................................................4234

Section 9.02  Estimation of Claims or Interests ...........................................................................4335

Section 9.03  Amendments to Claims or Interests ........................................................................4336

Section 9.04  Authority To Settle Disputed Claims or Interests ..................................................4436

Section 9.05  No Recourse .............................................................................................................4436

**Article X PROVISIONS GOVERNING DISTRIBUTIONS** ..........................................................4436

Section 10.01  Delivery of Distributions Generally .......................................................................4436

Section 10.02  Distributions Through the Senior Secured Notes Indenture Trustee......................4537

Section 10.03  Provisions Concerning Disputed Claims Reserve ..................................................4537

(a)  Establishment of Disputed Claims Reserve....................................................................4537

(b)  Amounts to Be Reserved .................................................................................................4537

(c)  Distributions....................................................................................................................4637

(d)  Termination of Disputed Claims Reserve .......................................................................4638

Section 10.04  Transmittal of Distributions and Notices ...............................................................4638

Section 10.05    Setoffs ...................................................................................................... 46 38

Section 10.06    Withholding and Reporting Requirements ............................................... 47 38

Section 10.07    Postpetition Interest on Claims ............................................................... 47 39

Section 10.08    Undeliverable Distributions ..................................................................... 47 39

Section 10.09    Allocation of Plan Distributions between Principal and Interest............. 47 39

Section 10.10    Disputed Identity of Holder ..................................................................... 47 39

Section 10.11    Transfers of Claims and Interest/Distribution Record Date .................... 47 39

Section 10.12    Method of Cash Distributions .................................................................. 48 39

Section 10.13    De Minimis Distributions ........................................................................ 48 40

Section 10.14    Treatment of Unclaimed Property; Remaining Available Cash .............. 48 40

Section 10.15    No Distribution in Excess of Allowed Amount of Claim ........................ 48 40

**Article XI CONDITIONS PRECEDENT** .......................................................................... 49 40

Section 11.01    Conditions to Confirmation ..................................................................... 49 40

Section 11.02    Conditions to the Effective Date .............................................................. 49 41

Section 11.03    Waiver of Certain Conditions .................................................................. 50 41

Section 11.04    Effect of Nonoccurrence of the Conditions to the Effective Date........... 50 41

**Article XII EFFECTS OF CONFIRMATION** .................................................................... 50 42

Section 12.01    Retention of Causes of Action/Reservation of Rights ............................. 50 42

Section 12.02    Third Party Causes of Action ................................................................... 51 42

Section 12.03    Compromise of Controversies .................................................................. 51 42

Section 12.04    Preservation of Insurance ......................................................................... 51 42

Section 12.05    Term of Injunctions or Stays .................................................................... 51 42

Section 12.06    Exculpation .............................................................................................. 51 43

Section 12.07    Releases by Debtors ................................................................................. 53 44

~~Section 12.08~~    ~~Releases by Holders of Claims~~ ............................................................ 53

Section 12.~~09~~12.08        Injunction ............................................................................... 53 44

**Article XIII RETENTION OF JURISDICTION** ................................................................. 54 45

Section 13.01    Retention of Exclusive Jurisdiction by the Bankruptcy Court ................ 54 45

Section 13.02    Retention of Non-Exclusive Jurisdiction by the Bankruptcy Court ........ 56 47

Section 13.03    Failure of Bankruptcy Court to Exercise Jurisdiction ............................. 56 47

**Article XIV MISCELLANEOUS PROVISIONS** ................................................................ 56 47

Section 14.01    Amendments ............................................................................................ 56 47
                 (a)      Pre-Confirmation Amendments ................................................... 56 47
                 (b)      Postconfirmation/Preconsummation Amendment Not Requiring Resolicitation .... 56 47
                 (c)      Postconfirmation/Preconsummation Amendment Requiring Resolicitation .......... 57 47

Section 14.02    Severability .............................................................................................. 57 47

Section 14.03    Successors and Assigns ............................................................................ 57 48

01:15124892.1

HN\~~114473.11~~114473.17

Section 14.04    Exemption from Certain Transfer Taxes ................................................................ 5748

Section 14.05    Governing Law ................................................................................................. 5748

Section 14.06    Confirmation Order and Plan Control ................................................................ 5848

Section 14.07    Withdrawal of Plan ........................................................................................... 5848

Section 14.08    Payment Dates .................................................................................................. 5849

Section 14.09    Notices .............................................................................................................. 5849

**Article XV CONFIRMATION REQUEST** ........................................................................ 6151

**EXHIBITS**

EXHIBIT A              ~~NEWCO RELATED DOCUMENTS~~**SETTLEMENT AND RELEASE AGREEMENT**

**~~EXHIBIT B~~**              **~~PLAN DOCUMENTS~~**

EXHIBIT ~~C~~**B**              LIQUIDATION TRUST AGREEMENT

**~~EXHIBIT D~~**              **~~LITIGATION TRUST AGREEMENT~~**

01:15124892.1

HN\~~1114473.11~~1114473.17

## PLAN INTRODUCTION AND SUMMARY

Green Field Energy Services, Inc. and subsidiaries Hub City Tools, Inc. and Proppant One, Inc. (collectively, the "Debtors") propose this **First Amended** Joint Plan of Liquidation of Green Field Energy Services, Inc., et al., (as it may be amended, modified or supplemented from time to time, together with all exhibits annexed hereto or referenced herein, the "Plan") for the resolution and satisfaction of all Claims against and Interests in the Debtors.  The Debtors are the proponents of this Plan within the meaning of Section 1129 of the Bankruptcy Code.   All capitalized terms not defined in this introduction have the meanings ascribed to them in Article I of this Plan.  Reference is made to the Disclosure Statement for a discussion of the Debtors' history, businesses, resolution of material disputes, significant asset sales, financial projections for the liquidation and distribution of the Debtors' remaining assets and a summary and analysis of the Plan and certain related matters.  All parties entitled to vote on the Plan should review the Disclosure Statement and the terms of the Plan before voting to accept or reject the Plan.  In addition, there may be other agreements and documents that may be filed as part of the Plan.  No solicitation materials, other than the Disclosure Statement and related materials transmitted herewith and approved by the Bankruptcy Court, have been authorized by the Bankruptcy Court for use in soliciting acceptances or rejections of the Plan.

~~The Plan centers around (a) the contribution of (i) the MOR/TGS Interests by the Moreno Entities to NewCo and (ii) the Debtors' equity interests in TPT by the Debtors to NewCo, in exchange for (b)(i) the distribution of interests in NewCo to the Noteholders and the Moreno Entities and (ii) the releases by Debtors set forth in Section 12.06 of this Plan and the releases by Holders of Claims set forth in Section 12.07 of this Plan.  The Plan provides for the liquidation of Assets of the Estates, including the investigation and prosecution of (a) Estate Causes of Action (which exclude Avoidance Actions) by a Liquidation Trust to be formed pursuant to the Plan and a Liquidation Trust Agreement and (b) Avoidance Actions by a Litigation Trust to be formed pursuant to the Plan and a Litigation Trust Agreement.  The Liquidation Trust is to be managed by a Liquidation Trustee as well as by a Liquidation Trust Oversight Committee.  The Liquidation Trust shall be responsible for making Distributions to holders of Claims, other than Class 6 General Unsecured Claims, and, if applicable, Interests, as well as performing all other administrative tasks necessary for ultimate resolution of the Chapter 11 Cases, pursuant to the terms of the Plan and the Liquidation Trust Agreement.  The Litigation Trust is to be managed by a Litigation Trustee as well as by a Litigation Trust Oversight Committee. The Litigation Trust shall be responsible for making Distributions to holders of Class 6 General Unsecured Claims.~~  Subject to certain restrictions and requirements set forth in Section 1127 of the Bankruptcy Code and Federal Bankruptcy Rule 3019, the Debtors expressly reserve the right, after consultation with the other parties to the proposed settlement upon which the Plan is based, to alter, amend, modify, revoke, or withdraw this Plan prior to its substantial consummation.

01:15124892.1

- 1 -

HN\~~1114473.11~~1114473.17

## Article I~~ARTICLE I~~

## DEFINITIONS; RULES OF INTERPRETATION;
## AND COMPUTATION OF TIME

Section 1.01 **Definitions**.  Capitalized terms used herein and set forth in alphabetical order below, shall have the following meanings:

"**503(b)(9) Claim**" means an Administrative Claim that arises pursuant to Bankruptcy Code Section 503(b)(9).

"**503(b)(9) Claims Bar Date**" means **(a)** 5:00 p.m. (Eastern) on January 24, 2014, the date established pursuant to the Order Establishing ~~Deadlines~~**Bar Dates** for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof ~~dated November 26, 2013~~ [Docket No. 185] **or (b) 4:00 p.m. (Eastern) January 31, 2014, the date established pursuant to the Supplemental Order Establishing Bar Dates for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof [Docket No. 301], as applicable,** as the last day for submitting requests for payment with respect to 503(b)(9) Claims.

"**Ad Hoc Noteholders**" means the Senior Secured Noteholders that were signatories to the Restructuring Support Agreement.

"**Administrative Claim**" means an obligation of the Debtors under Bankruptcy Code Section 503(b) entitled to priority in payment under Bankruptcy Code Section 507(a), including but not limited to:  (a) a 503(b)(9) Claim; (b) the actual and necessary costs and expenses incurred after the Petition Date for preserving the Estates and/or operating the Debtors' businesses; (c) cure costs associated with the assumption or assumption and assignment of executory contracts and unexpired leases pursuant to Bankruptcy Code Section 365 (other than to the extent assumed by a third party under an asset purchase agreement and sale approved by the Bankruptcy Court); and (d) all Statutory Fees.  As used herein, the term "Administrative Claim" shall exclude Fee Claims.

"**Administrative Claims Bar Date**" means the first Business Day that is at least thirty (30) days after the Effective Date or such other date ordered by the Bankruptcy Court.  For the avoidance of doubt, a 503(b)(9) Claim is subject to the 503(b)(9) Claims Bar Date and is not subject to the Administrative Claims Bar Date.

"**Affiliate**" shall have the meaning set forth in Section 101(2) of the Bankruptcy Code.

"**Allowed**" means (i) when used with respect to an Administrative Claim, all or any portion of an Administrative Claim (A) that has been allowed by a Final Order or adjudicated in favor of the holder by estimation or liquidation by a Final Order, or (B) for which a Request for Payment in a liquidated amount has been filed by the applicable Bar Date and as to which either (x) no objection to the allowance thereof has been filed by the applicable Claims/Interest Objection Deadline, or (y) any objection to its allowance has been settled or withdrawn, or has been denied by a Final Order; (ii) when used with respect to any Claim, a Claim that is not

- 2 -

otherwise a Disputed Claim; or (iii) when used with respect to an Interest, an Interest held in the name, kind and amount set forth on the records retained by the applicable Debtor.

"**Asset Purchase** ~~Agreement~~**Agreements**" means**, collectively, (a)** the Agency Agreement by and between the Debtors and Gordon Brothers Commercial & Industrial, LLC or such other agreement to sell substantially all of the Debtors' Assets **and (b) any other agreements by the Debtors to sell any of the Debtors' Assets**.

"**Assets**" means (a) all assets and properties of every kind, nature, character and description (whether real, personal, or mixed, whether tangible and intangible, including contract rights, wherever situated and by whomever possessed), including the goodwill related thereto, operated, owned or leased by the Debtors as of the Effective Date and that constitute property of the Estates within the purview of Bankruptcy Code Section 541, including, without limitation, any and all Claims, Estate Causes of Action, Avoidance Actions and rights of the Debtors under federal, state, or foreign law, letters of credit issued for the benefit of the Debtors and the monies deposited to secure the performance of any contract or lease by the Debtors or any Affiliate thereof; and (b) the proceeds, products, rents and profits of any of the foregoing.  For the avoidance of doubt, Assets include the rights of the Debtors under the Asset Purchase ~~Agreement~~**Agreements** and the Sale Order.

"**Available Cash**" means any Cash received by the Liquidation Trust **on or** after the Effective Date and thereafter held by the Liquidation Trust and available from time to time for Liquidation Trust Operating Expenses and/or for Distributions.

"**Avoidance Actions**" means any claims, rights, defenses, or other Causes of Action arising under Chapter 5 of the Bankruptcy Code, including, without limitation, under Bankruptcy Code Sections 502, 510, 541, 542, 543, 544, 545, 547, 548, 549, 550, 551 or 553, or under similar or related state or federal statutes and common law, including state fraudulent transfer laws, whether or not prosecution of such actions has commenced as of the Confirmation Date or the Effective Date, and whether or not standing to bring such claims is held by any representative of the Estates, any party-in-interest, or any other Entity or Person.  For the avoidance of doubt, the term Avoidance Actions does not include (i) any Cause of Action or Avoidance Action transferred pursuant to the Asset Purchase ~~Agreement~~**Agreements** or that the Debtors have covenanted not to pursue under the terms of the Asset Purchase ~~Agreement~~**Agreements** or (ii) any claim, obligation, suit, judgment, damage, demand, debt, right, cause of action, act, omission or liability that is (x) released, waived, discharged or exculpated pursuant to Sections 12.06**, or** 12.07 ~~or 12.08~~ of the Plan, or (y) otherwise resolved by the Plan or Final Order of the Bankruptcy Court**.**

"**Bankruptcy Code**" means Title 11 of the United States Code, 11 U.S.C. §§ 101 - 1130, and as such title has been, or may be, amended from time to time, to the extent that any such amendment is applicable to the Chapter 11 Cases.

"**Bankruptcy Court**" means the United States Bankruptcy Court for the District of Delaware, or such other court having jurisdiction over these Chapter 11 Cases or any proceeding within, or appeal of an order entered in, the Chapter 11 Cases.

01:15124892.1

- 3 -

"**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure, and as such rules have been, or may be, amended from time to time, to the extent that any such amendment is applicable to the Chapter 11 Cases.

"**Bar Date**" means, as applicable, (a) the Administrative Claims Bar Date, (b) the 503(b)(9) Claims Bar Date, (c) the General Bar Date, (d) any Rejection Bar Date, and/or (e) the Governmental Unit Bar Date.

"**Business Day**" means any day, other than a Saturday, Sunday or a "legal holiday" (as such term is defined by Bankruptcy Rule 9006(a)).

"**Cash**" means money that is legal tender of the United States of America or the indubitable equivalent thereof.

"**Causes of Action**" means any and all claims, rights, demands, actions, suits, obligations, liabilities, defenses, offsets, setoffs, recoupments, actions in law or equity or otherwise, causes of action, choses in action, suits, damages, rights to legal or equitable remedies, judgments, third-party claims, counterclaims and cross-claims against any Entity or Person, in each case whether known or unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, foreseen or ~~unforseen~~unforeseen, direct or indirect, choate or inchoate, existing or hereafter arising, in contract, in tort, in law or in equity, or pursuant to any other theory of law, whether asserted or assertable directly or derivatively in law or equity or otherwise by way of claim, counterclaim, cross-claim, third party action, action for indemnity or contribution or otherwise, whether arising under the Bankruptcy Code or federal, state, common, or other law, based in whole or in part upon any act or omission or other event occurring prior to the Petition Date or during the course of the Chapter 11 Cases, including through the Effective Date.

**"Cash Collateral Order" means any order entered by the Bankruptcy Court authorizing the Debtors to use Cash that is subject to the Liens of the Senior Secured Noteholders, the Senior Secured Notes Indenture Trustee or Shell.**

"**Chapter 11 Cases**" means the jointly administered Chapter 11 cases of the Debtors pending before the Bankruptcy Court and bearing case number 13-12783 (KG).

"**Claim**" has the meaning ascribed to such term in Bankruptcy Code Section 101(5). As used herein, the term may include an Administrative Claim and a Fee Claim.

"**Claims Agent**" means Prime Clerk LLC.

"**Claims/Interest Objection Deadline**" means the last day for filing objections to Claims and Interests as provided in Article IX of the Plan.

"**Class**" means a category of holders of Claims or Interests, as described in Article III of this Plan.

~~"**Creditor Releasee" means (i) the officers, directors, shareholders, members and/or enrollees, employees, representatives, advisors, attorneys, financial advisors, investment**~~

- 4 -

bankers, or agents of the Debtors (including their estates and beneficiaries), in each case as of the Petition Date or that have become officers and/or directors thereafter; (ii) the members of the Official Creditors' Committee, solely with respect to each member's conduct in furtherance of its, his, or her duties as a member of the Official Creditors' Committee, and not with respect to the actions of such members as individual creditors, and its agents, attorneys and other professionals acting in conjunction with the Chapter 11 Cases, and the Official Creditors' Committee's agents, attorneys and other professionals; (iii) the Liquidation Trustee; (iv) the Litigation Trustee; (v) the Senior Secured Notes Indenture Trustee; (vi) the Senior Secured Noteholders in their capacity as such; (vii) Shell and its officers, directors, shareholders, members and/or enrollees, employees, representatives, advisors, attorneys, financial advisors, investment bankers, or agents, other than with respect to any cause of action of any Person against Shell relating to amounts unpaid by the Debtors to such Person prior to the Petition Date; (viii) each of the Moreno Entities; (ix) the Moreno Affiliated Entities; (x) TPT and its officers, directors, shareholders, members and/or enrollees, employees, representatives, advisors, attorneys, financial advisors, investment bankers, or agents; (xi) TGS and its officers, directors, shareholders, members and/or enrollees, employees, representatives, advisors, attorneys, financial advisors, investment bankers, or agents; (xii) McIntyre Properties, LLC and its officers, directors, shareholders, members and/or enrollees, employees, representatives, advisors, attorneys, financial advisors, investment bankers, or agents; (xiii) Marine Turbine Technologies, LLC and its officers, directors, shareholders, members and/or enrollees, employees, representatives, advisors, attorneys, financial advisors, investment bankers, or agents; and (xiv) NewCo and its officers, directors, shareholders, members and/or enrollees, employees, representatives, advisors, attorneys, financial advisors, investment bankers, or agents.

"**Confirmation**" means confirmation of the Plan pursuant to Bankruptcy Code Section 1129.

"**Confirmation Date**" means the date upon which the Confirmation Order is entered on the docket maintained by the Bankruptcy Court pursuant to Bankruptcy Rule 5003.

"**Confirmation Hearing**" means the hearing before the Bankruptcy Court at which the Plan is confirmed.

"**Confirmation Order**" means the order of the Bankruptcy Court confirming the Plan pursuant to Bankruptcy Code Section 1129.

"**Debtor(s)**" means, in singular form, any of GFES, Hub City, or Proppant One, and, in plural form, all of GFES, Hub City, and Proppant One.

"**Debtor Releasee**" means (i) the officers, directors, shareholders, members and/or enrollees, employees, representatives, advisors, attorneys, financial advisors, investment bankers, or agents of the Debtors (including their estates and beneficiaries), in each case as of the Petition Date or that have become officers and/or directors thereafter and (ii) the members of the Official Creditors' Committee (solely with respect to each member's conduct in furtherance of its, his, or her duties as a member of the Official Creditors' Committee and not

01:15124892.1

HN\1114473.111114473.17

with respect to the actions of such members as individual creditors), the Liquidation Trustee, the ~~Litigation Trustee, McIntyre Properties, LLC, the Moreno Entities, the Moreno Affiliated Entities, NewCo, the~~ Ad Hoc Noteholders, the Senior Secured Notes Indenture Trustee, ~~Shell, TGS,~~ TPT, ~~Marine Turbine Technologies, LLC,~~ Shell and each of their respective officers, directors, shareholders, members and/or enrollees, employees, representatives, advisors, attorneys, financial advisors, investment bankers, or agents.

"**DGCL**" means the General Corporation Law of the State of Delaware.

"**Deficiency Claim**" means with respect to any Claim secured by a Lien in any property of any Debtor having a value of less than the amount of such Claim (after taking into account other Liens of higher priority in such property), the portion of such Claim equal to the difference between (a) the allowed amount of the Claim and (b) the allowed amount of the secured portion of such Claim (which allowed secured amount may be set pursuant to this Plan).

"**DIP Agents**" means GB Credit Partners, LLC and ICON Agent, LLC in their capacity as co-administrative agents under the DIP Credit Agreement.

"**DIP Claims**" means all Claims of the DIP Agents or the DIP Lenders under or relating to the DIP Credit Agreement, the DIP Facility or the DIP Order.

"**DIP Credit Agreement**" means that certain Debtor-In-Possession Term Loan and Security Agreement, dated as of November 26, 2013, as amended, between GFES, Hub City and Proppant One, as borrowers, the DIP Agents and the DIP Lenders.

"**DIP Facility**" means the debtor-in-possession term loan credit facility provided by the DIP Lender under the DIP Credit Agreement.

"**DIP Lenders**" means certain Affiliates and subsidiaries of the DIP Agents and certain other financial institutions and other entities party to the DIP Credit Agreement as "Lenders" from time to time.

"**DIP Order**" means the orders entered by the Bankruptcy Court in connection with the DIP Facility.

"**DIP Loan Documents**" means, collectively, the DIP Credit Agreement, the Prepetition Credit Agreement, and the other "Loan Documents" as defined in the DIP Credit Agreement.

"**Disbursing Agents**" means ~~(a) with respect to Distributions to be made on the Effective Date (the Initial Distribution Date for First Tier Claims),~~ either the Debtors or the Liquidation Trustee, or in either case any person(s) retained by the Debtors or the Liquidation Trustee to ~~make such Distributions, (b) with respect to all other Distributions, other than Distributions to holders of Class 6 General Unsecured Claims, the Liquidation Trustee or any person retained by the Liquidation Trustee or any person(s) to effectuate the Distributions contemplated under the Plan, and (c) with respect to Distributions to holders of Class 6 General Unsecured Claims, the Litigation Trustee or any person retained by the~~

- 6 -

~~Litigation Trustee or any person(s) to~~ effectuate the Distributions contemplated under the Plan.

"**Disclosure Statement**" means the written disclosure statement that relates to the Plan, including all exhibits, appendices, schedules and annexes attached thereto, as it may be altered, amended, supplemented or modified from time to time, and that is prepared, approved and distributed in accordance with Bankruptcy Code Section 1125 and Bankruptcy Rule 3018.

"**Disputed**" means (a) with respect to any Claim, other than a Claim that has been Allowed pursuant to the Plan or a Final Order, a Claim (i) as to which no Request for Payment or Proof of Claim has been filed by the applicable Bar Date and which is listed in the Schedules as unliquidated, contingent, or disputed; (ii) as to which a Request for Payment or Proof of Claim has been filed by the applicable Bar Date and as to which an objection or request for estimation has been filed by the applicable Claims/Interest Objection Deadline, or which is otherwise disputed in accordance with applicable law, which objection, request for estimation, or dispute has not been withdrawn or determined by a Final Order; (iii) as to which a Request for Payment or Proof of Claim was required to be filed by the Bar Date, but as to which a Request for Payment or Proof of Claim was not timely or properly filed; (iv) that is disputed in accordance with the provisions of the Plan; or (v) if not otherwise Allowed, as to which the applicable Claims/Interest Objection Deadline has not expired; and (b) with respect to any Interest, an Interest held in name, kind, or amount different from the name, kind and amount set forth on the records retained by the applicable Debtor.

"**Disputed Claims Reserve(s)**" shall have the meaning ascribed to such term in Section 10.03 of the Plan.

"**Distribution**" means any payment of Cash to be made under the Plan to holders of Allowed Claims or, if applicable, Allowed Interests.

"**Distribution Address**" means: (a) the address indicated on any applicable Proof of Claim or Request for Payment properly filed by an Entity or Person, or its/his authorized agent, prior to the applicable Bar Date; (b) if no Proof of Claim or other Request for Payment has been filed, the address set forth in the Schedules; (c) to the extent a Claim has been transferred, the address in the notice filed with the Bankruptcy Court in accordance with Bankruptcy Rule 3001(e) on or before the Effective Date and in accordance with Section 10.11 of the Plan; (d) as to the Claims of the Senior Secured Noteholders, the addresses maintained by the Senior Secured Notes Indenture Trustee; or (e) in the event of Distributions to holders of GFES Interests, the addresses maintained on the records retained by GFES; provided, however, that any Entity or Person may, after the Effective Date, select an alternative Distribution Address by filing a notice with the Bankruptcy Court (with a copy served on the Liquidation Trustee and the Claims Agent) identifying such alternative Distribution Address.

"**Distribution Date(s)**" means the date or dates on which a Distribution is required to be made under the Plan.

"**Effective Date**" means: (a) if no stay of the Confirmation Order is in effect, the first Business Day after the date on which all of the conditions set forth in Section 11.02 of the Plan

01:15124892.1

HN\ ~~1114473.11~~1114473.17

have been satisfied or waived in accordance with that Section, or such later date as may be reasonably agreed to by the Debtors and the Requisite Settlement Parties; or (b) if a stay of the Confirmation Order is in effect, on the first Business Day (or such later day as may be reasonably agreed to by the Debtors and the Requisite Settlement Parties) after the later of: (i) the date such stay is vacated; and (ii) the date each condition set forth in the Plan has been satisfied or waived as set forth in the Plan.

"**Entity**" has the meaning ascribed to such term in Bankruptcy Code Section 101(15).

~~"**Equipment and Vehicles**" means all of the Debtors' equipment, tool, trucks, blenders, sanders, pumps, "**Frac Spreads**" (i.e. spreads of equipment required to perform hydraulic fracturing), and motor vehicles.~~

"**Equitable Right to Payment**" means any right to payment arising from a right to an equitable remedy for breach of performance, as provided for in Bankruptcy Code Section 502(c)(2).

"**Estate(s)**" means, in the singular, the Chapter 11 estate of each Debtor created by Bankruptcy Code Section 541 and, in the plural, the jointly administered Chapter 11 estates of all three Debtors.

"**Estate Causes of Action**" means all Causes of Action that belong to the Estates ~~other than Avoidance Actions~~, including, but not limited to: (a) all actions described in the Disclosure Statement, the Schedules and the Plan; and (b) any counterclaims or rights of setoff against any creditor. For the avoidance of doubt, the term Estate Causes of Action does not include (i) any ~~Avoidance Actions, (ii) any~~ Cause of Action or Avoidance Action transferred pursuant to the Asset Purchase ~~Agreement~~**Agreements** or that the Debtors have covenanted not to pursue under the terms of the Asset Purchase ~~Agreement~~**Agreements** or (iii~~ii~~) any claim, obligation, suit, judgment, damage, demand, debt, right, cause of action, act, omission or liability that is (x) released, waived, discharged or exculpated pursuant to Sections 12.06, **or** 12.07 ~~or 12.08~~ of the Plan, or (y) otherwise resolved by the Plan or Final Order of the Bankruptcy Court.

"**Estimation Order**" means a Final Order, which may be the Confirmation Order, estimating for voting, distribution or any other proper purposes under the Bankruptcy Code the aggregate (and if applicable, individual) amount of any Claims, whether classified or unclassified under this Plan.

"**Face Amount**" means the liquidated amount of any Claim as listed on a timely filed Proof of Claim or the Schedules if no Proof of Claim has been timely filed, excluding any unliquidated fees, penalties, charges or other similar amounts.

"**Fee Claim**" means a Claim: (a) of a Professional person retained by order of the Bankruptcy Court for compensation and/or reimbursement of expenses pursuant to Bankruptcy Code Sections 327, 328, 330, or 331 (other than ordinary course professionals of the Debtors); and (b) of any professional or other party-in-interest seeking compensation or reimbursement of expenses in connection with the Chapter 11 Cases pursuant to Bankruptcy Code Section 503(b).

01:15124892.1

HN\~~1114473.11~~1114473.17

"**Fee Claims Bar Date**" means 5:00 p.m. (Eastern) on the date that is the first Business Day after the date that is thirty (30) days after the Effective Date unless extended by order of the Bankruptcy Court.

"**Final Fee Applications**" means all final applications seeking payment of Fee Claims.

"**Final Order**" means an order or judgment of the Bankruptcy Court (or other court with jurisdiction), as entered on the docket of the Bankruptcy Court (or other court with jurisdiction), that has not been reversed, stayed, modified or amended, and as to which: (a) the time to appeal or seek review has expired and no timely filed appeal or petition for review, rehearing, remand or certiorari is pending; or (b) any appeal taken or petition for review, rehearing, remand or certiorari filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought; provided, however, that the possibility that a motion under Bankruptcy Code Section 502(j), Bankruptcy Rules 9023 and 9024, or any other rules or law governing procedure in cases before the Bankruptcy Court, may be filed with respect to such order shall not cause such order not to be a Final Order.

"**First Tier Claims**" mean Administrative Claims, Fee Claims, Priority Tax Claims, Priority Non-Tax Claims, DIP Claims, the Shell Secured Claim and Other Secured Claims, whether Allowed or Disputed.

"**Fifth Tier Claims**" means postpetition interest as provided for under the Plan on account of Priority Tax Claims, Priority Non-Tax Claims, General Unsecured Claims, and Subordinated Other Claims.

"**Fourth Tier Claims**" means Subordinated Other Claims, whether Allowed or Disputed.

"**General Bar Date**" means **(a)** 5:00 p.m. (Eastern) on January 24, ~~2013~~**2014**, the date established pursuant to the Order Establishing ~~Deadlines~~**Bar Dates** for Filing Proofs of Claim and Approving **the** Form and Manner of Notice Thereof ~~dated November 26, 2012~~ [Docket No. ~~440]~~**[185] or (b) 4:00 p.m. (Eastern) January 31, 2014, the date established pursuant to the Supplemental Order Establishing Bar Dates for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof [Docket No. 301], as applicable,** as the last day for filing Proofs of Claim in the Chapter 11 Cases for Claims arising prior to the Petition Date, except for Administrative Claims (including 503(b)(9) Claims), Fee Claims and Claims asserted by Governmental Units.

"**General Unsecured Claim**" means a Claim that is not an Administrative Claim, a Fee Claim, a Priority Tax Claim, an Other Secured Claim, a Priority Non-Tax Claim, a Shell Secured Claim, a Noteholder Claim, a Shell Other Claim, a Subordinated Other Claim, or a Subordinated Stock Claim, whether Allowed or Disputed. Any Deficiency Claim of the Senior Secured Notes Indenture Trustee or any Senior Secured Noteholder ~~is deemed waived and~~**, including the Senior Noteholder Remaining Unsecured Claim,** is not a General Unsecured Claim.

"**GFES**" means Green Field Energy Services, Inc., a Delaware corporation and a Chapter 11 Debtor.

- 9 -

"**GFES Interest**" means any equity security, within the meaning of Bankruptcy Code Section 101(16), issued by GFES and outstanding prior to the Effective Date, including, without limitation, any preferred stock, common stock, stock unit, stock options or other right to purchase the stock of GFES, together with any warrants, conversion rights, rights of first refusal, subscriptions, commitments, agreements, or other rights to acquire or receive any stock or other equity ownership interests in GFES prior to the Effective Date including, for the avoidance of doubt, all outstanding warrants held by existing warrant holders pursuant to that certain Warrant Agreement, dated as of November 15, 2011, by and between GFES, Wilmington Trust,  National Association, as warrant agent, and other parties signatory thereto.

"**GFES TPT Interest**" means the equity interests of TPT owned by GFES.

"**Governmental Unit**" has the meaning ascribed to such term in Bankruptcy Code Section 101(27).

"**Governmental Unit Bar Date**" means ~~5:00~~4:00 p.m. (Eastern) on April ~~15~~25, ~~2013~~2014, the date set by the Bankruptcy Court as the last day for Governmental Units to file Proofs of Claim in the Chapter 11 Cases for Claims arising prior to the Petition Date.

"**Hub City**" means Hub City Tools, Inc., a Louisiana Corporation and a Chapter 11 Debtor.

"**Impaired**" has the meaning ascribed to such term in Bankruptcy Code Section 1124.

"**Initial Distribution Date**" means the first date on which a Class of Claims or Interests is entitled to be paid under the Plan, including (a) in the case of First Tier Claims, on the Effective Date or as soon as is reasonably practicable thereafter, for Claims Allowed as of such date, (b) in the case of Second Tier Claims, as soon as is practicable after the payment of, or establishment of adequate reserves for, taking into account all future proceeds reasonably anticipated to be received from the sale of Assets, all First Tier Claims, (c) in the case of Third Tier Claims, as soon as is reasonably practicable after the payment of, or establishment of adequate reserves for, taking into account all future proceeds reasonably anticipated to be received from the sale of Assets, the First Tier Claims, (d) in the case of Fourth Tier Claims, as soon as is reasonably practicable after the payment of, or establishment of adequate reserves for, all First Tier Claims, Second Tier Claims and Third Tier Claims, (e) in the case of Fifth Tier Claims, as soon as is reasonably practicable after the payment of, or establishment of adequate reserves for, all First Tier Claims, Second Tier Claims, Third Tier Claims and Fourth Tier Claims, and (f) in the case of Sixth Tier Claims/Interests, as soon as is reasonably practicable after the payment of, or establishment of adequate reserves for, all First Tier Claims, Second Tier Claims, Third Tier Claims, Fourth Tier Claims and Fifth Tier Claims.  For the avoidance of doubt, the Initial Distribution Date for Third Tier Claims may occur prior to the payment of, or establishment of adequate reserves for, Second Tier Claims.

~~"**Initial Liquidation Trust Funding**" means (a)  all proceeds of Shared Collateral *plus* (b) all proceeds of Non-Shared Collateral.~~

~~"**Initial Litigation Trust Funding**" means:~~

01:15124892.1

HN\~~1114473.11~~1114473.17

(a) from the Liquidation Trust, $1,000,000; plus

(b) from the Liquidation Trust, the amount, if any, by which the proceeds of Shared Collateral transferred to the Liquidation Trust exceeds (I) 57% of all Fee Claims and Administrative Claims other than 503(b)(9) Claims plus (II) 100% of all 503(b)(9) Claims plus (III) 57% of all DIP Claims plus (IV) 100% of all Priority Tax Claims and all Priority Non-Tax Claims plus (IV) $1,000,000.

"**Intercreditor Agreement**" means that certain Amended and Restated Intercreditor Agreement dated October 24, 2012, as amended, by and among the Senior Secured Notes Indenture Trustee, Shell and the Debtors.

"**Interest**" means the legal, equitable, contractual, or other rights of any Person (a) with respect to any GFES Interests, (b) with respect to any Subsidiary Interests, or (c) to acquire or receive either of the foregoing.

"**Interim Distribution Date**" means any date after the Initial Distribution Date on which a Distribution of Available Cash is made to holders of Allowed Claims and/or Interests in accordance with this Plan.

"**IRS**" means the Internal Revenue Service.

"**Lien**" shall have the meaning ascribed to such term in Bankruptcy Code Section 101(37).

"**Liquidation Trust**" means the trust established pursuant to Section 7.03 of the Plan and in accordance with the Liquidation Trust Agreement.

"**Liquidation Trust Agreement**" means that certain trust agreement, as may be amended, that establishes and governs the Liquidation Trust, in the form attached hereto as Exhibit ~~C~~B, and filed as part of the Plan Supplement, the contents of which are incorporated herein by reference.

"**Liquidation Trust Assets**" means ~~the Initial Liquidation Trust Funding and all other~~all Assets of the Debtors~~, except for (a) the Initial Litigation Trust Funding and (b) Avoidance Actions and the proceeds relating thereto,~~ *plus* any and all net income earned on the foregoing.

"**Liquidation Trust Beneficiaries**" means the holders of Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Fee Claims, Allowed Non-Priority Tax Claims, Allowed DIP Claims and Allowed Claims and, if applicable, Allowed Interests, in Class 1, Class 2, Class 3, Class 4, Class 5 and Class 6, and to the extent provided in Section 5.11 of the Plan, Class 7, Class 8 and Class 9 entitled to Distributions.

"**Liquidation Trust Distribution Account**" means an account to be established by the Liquidation Trustee on the Effective Date to hold the amount of Available Cash, less Liquidation Trust Operating Expenses as incurred and as reserved for in the Liquidation Trust Operational Reserve, to be utilized for Distribution on account of Allowed Claims, other than Allowed

01:15124892.1

General Unsecured Claims, and, if applicable, Allowed Interests, in accordance with the Plan, less any amounts set aside in the Disputed Claims Reserve; provided, however, that any surplus amounts in the Liquidation Trust Operational Reserve and any Disputed Claims Reserve shall be returned to the Liquidation Trust Distribution Account.

"**Liquidation Trust Operating Expenses**" means the overhead and other operational expenses of the Liquidation Trust including, but not limited to, the reasonable professional costs related to the prosecution of Estate Causes of Action, objecting to Disputed Claims or Disputed Interests, administration, liquidation and wind down of the Estates, making Distributions, and reasonable compensation for the Liquidation Trustee.

"**Liquidation Trust Operational Reserve**" means the reserve established by the Liquidation Trust to hold the amount of Cash deemed necessary to satisfy its anticipated future Liquidation Trust Operating Expenses.

"**Liquidation Trust Oversight Committee**" has the meaning ascribed to such term in Section 7.03(h) of the Plan.

"**Liquidation Trustee**" means the Person appointed and serving from time to time as Liquidation Trustee under the Liquidation Trust Agreement, acting in his capacity as such on behalf of the Liquidation Trust.

~~"**Litigation Trust**" means the trust established pursuant to Section 7.04 of the Plan and in accordance with the Litigation Trust Agreement.~~

~~"**Litigation Trust Agreement**" means that certain trust agreement, as may be amended, that establishes and governs the Litigation Trust, in the form attached hereto as **Exhibit D,** and filed as part of the Plan Supplement, the contents of which are incorporated herein by reference.~~

~~"**Litigation Trust Assets**" means the Initial Litigation Trust Funding and the Avoidance Actions assigned, transferred and conveyed to the Litigation Trust, *plus* any and all net income earned on the foregoing.~~

~~"**Litigation Trust Beneficiaries**" means holders of Allowed Claims in Class 6 entitled to Distributions.~~

~~"**Litigation Trust Distribution Account**" means an account to be established by the Litigation Trustee on the Effective Date to hold the amount of Cash, less Litigation Trust Operating Expenses as incurred and as reserved for in the Litigation Trust Operational Reserve, to be utilized for Distribution on account of Allowed General Unsecured Claims in accordance with the Plan, less any amounts set aside in the Disputed Claims Reserve; provided, however, that any surplus amounts in the Litigation Trust Operational Reserve and any Disputed Claims Reserve shall be remitted to the Liquidation Trust Distribution Account.~~

01:15124892.1

HN\~~1114473.11~~1114473.17

"**Litigation Trust Operating Expenses**" means the overhead and other operational expenses of the Litigation Trust including, but not limited to, the reasonable professional costs related to the prosecution of Avoidance Actions, making Distributions, and reasonable compensation for the Litigation Trustee.

"**Litigation Trust Operational Reserve**" means the reserve established by the Litigation Trust to hold the amount of Cash deemed necessary to satisfy its anticipated future Litigation Trust Operating Expenses.

"**Litigation Trust Oversight Committee**" has the meaning ascribed to such term in Section 7.03(h) of the Plan.

"**Litigation Trustee**" means the Person appointed and serving from time to time as Litigation Trustee under the Litigation Trust Agreement, acting in his capacity as such on behalf of the Litigation Trust.

"**Local Rules**" means the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware.

"**Main Case**" shall have the meaning ascribed to such term in Section 7.11 of the Plan.

"**MOR**" means MOR DOH Holdings, L.L.C., a Delaware limited liability company organized and operated under that certain Amended and Restated Limited Liability Company Agreement dated June 21, 2013, as amended, the sole asset of which is all of the membership interests in TGS.

"**MOR/TGS Interests**" means 90.40767% of the equity of MOR.

"**Moreno Affiliated Entities**" means Tiffany C. Moreno, Moreno Properties, LLC, Dynamic Industries, Inc., Casafin II, LLC, Aerodynamic, LLC, Elle Investments, LLC, Alliance Consulting Group, LLC, Frac Rentals, LLC, Moody, Moreno and Rucks, LLC, MOR, TCM 2011 DOH GRAT, MBM 2011 MGH GRAT, TCM 2011 MGH GRAT, MBM 2011 DOH GRAT, Riverstone and Rucks, Dynamic Group Holdings, LLC, Shale Support Services, LLC, Dynamic Energy Services International, LLC, MOR 2013 Holdings, LLC and MOR MGH Holdings, LLC, and their respective officers, directors, shareholders, members and/or enrollees, employees, representatives, advisors, attorneys, financial advisors, investment bankers, or agents.

"**Moreno Entities**" means Michel B. Moreno, TCM 2011 DOH GRAT and MBM 2011 DOH GRAT (trusts under the control of Michel B. Moreno).

"**NewCo**" means a newly formed entity capitalized with (i) the MOR/TGS Interests and (ii) the GFES TPT Interest. On the Effective Date, the capital stock of NewCo shall consist of (i) Class A preferred equity, which shall have a $300 million liquidation preference and not be entitled to any dividends, (ii) Class B preferred equity, which shall have a $300 million liquidation preference after payment in full in cash of the Class A preferred equity and not be entitled to any dividends, and (iii) common equity.

01:15124892.1

HN\1114473.111114473.17

"**NewCo Contribution**" means the contribution of the MOR/TGS Interests to NewCo.

"**NewCo Related Agreements**" means the (i) Corporate Charter/Articles of Incorporation; (ii) Bylaws/Operating Agreement, (iii) Agreement Regarding TGS/GE Litigation Proceeds, (iv) Amendment to MOR Operating Agreement, (v) Amendment to TPT Operating Agreement, (vi) MTT Consent to Admission of NewCo as Full Member of TPT, (vii) Powermeister Consent to Admission of NewCo as member of MOR, (viii) any necessary third party consents to transfer of MOR/TGS Interests to NewCo, and (ix) Contribution Agreement for MOR/TGS Interests to NewCo, each of which is annexed hereto as **Exhibit A** and filed as part of the Plan Supplement.

"**Non-Shared Collateral**" means all Assets other than the Shared Collateral and the Avoidance Actions, including 100% of the Pre-Petition Noteholder Cash Collateral.

"**Official Creditors' Committee**" means the Official Committee of Unsecured Creditors appointed in these Chapter 11 Cases, as such committee may be reconfigured from time to time until the Effective Date.

"**Other Secured Claims**" means a Secured Claim arising prior to the Petition Date against any of the Debtors, other than a Senior Noteholder Claim, the Shell Secured Claim or any Secured Claim satisfied pursuant to the Sale Order or any other order of the Bankruptcy Court.

"**Person**" has the meaning ascribed to such term in Bankruptcy Code Section 101(41).

"**Petition Date**" means October 27, 2013.

"**Plan**" means this Joint Plan of Liquidation, dated as of the date set forth on the first page hereof, together with any amendments or modifications hereto as the Debtors may file hereafter in accordance with the terms of the Plan.

"**Plan Documents**" means (i) the Settlement and Release Agreement, a copy of which is annexed hereto as Exhibit **B**A, **and** (ii) the Liquidation Trust Agreement, a copy of which is annexed hereto as Exhibit **C, and (iii) the Litigation Trust Agreement, a copy of which is annexed hereto as Exhibit D**, each of which will be filed as part of the Plan Supplement**B**.

"**Plan Supplement**" means the supplemental appendix to this Plan, to be filed as soon after the filing of the Plan as reasonably practicable but in no event later than seven (7) days prior to the deadline to vote to accept or reject the Plan, which will contain, among other things, substantially final draft forms (subject to further changes) or signed copies, as the case may be, of the Plan Documents **and the NewCo Related Agreements**.

"**Postpetition Interest Rate**" means one of the following interest rates:  (a) as to a Claim that is <u>not</u> based upon an agreement that provides for interest, the rate of 3% per annum, or (b) as to a Claim that is based upon an agreement that provides for interest either (i) the non-default interest rate provided for in such agreement, or (ii) if no such rate is provided, then the rate of 3% per annum.

"**Pre-Petition Noteholder Cash Collateral**" means all cash in the Debtors' bank accounts as of the Petition Date, and all proceeds of any of the Debtors' pre-petition accounts received on or after the Petition Date, deposited and held in a segregated bank account pursuant to the DIP Order.

"**Priority Non-Tax Claim**" means a Claim or a portion of a Claim for which priority is asserted under Bankruptcy Code Sections 507(a)(3), (4), (5), (6) or (7).

"**Priority Tax Claim**" means a Claim or a portion of a Claim for which priority is asserted under Bankruptcy Code Section 507(a)(8).

"**Professional**" means a Person employed in the Debtors' Chapter 11 Cases pursuant to a Final Order in accordance with Sections 327 and 1103 of the Bankruptcy Code and to be compensated for services rendered prior to the Effective Date, pursuant to Sections 327, 328, 329, 330, 331 and 363 of the Bankruptcy Code.

"**Proof of Claim**" means a proof of claim filed with the Bankruptcy Court or any court-approved claims agent in connection with the Chapter 11 Cases.

"**Proppant One**" means Proppant One, Inc. a Delaware corporation and a Chapter 11 Debtor.

"**Ratable, Ratably or Pro Rata**" means the proportion that the Allowed Claim in a particular Class bears to the aggregate amount of (a) Allowed Claims in such Class of the date of determination, plus (b) Disputed Claims (in their aggregate Face Amounts if liquidated and such other amounts as may be determined by the ~~Litigation Trustee with respect to General Unsecured Claims or the by~~ Liquidation Trustee with respect to any other Claims if unliquidated) in such Class as of the date of determination.

"**Rejection Bar Date**" means the date that is twenty-five (25) days after entry of any order authorizing the rejection of an executory contract or unexpired lease.

"**Request for Payment**" means a request for payment of an Administrative Claim filed with the Bankruptcy Court, or with the Claims Agent in the case of any 503(b)(9) Claim, in connection with the Chapter 11 Cases.

"**Requisite Noteholders**" means in excess of 50% of the aggregate principal amount of Claims held by the Ad Hoc Noteholders.

"**Requisite Settlement Parties**" means ~~the Moreno Entities,~~ Shell and the Requisite Noteholders.

"**Restructuring Support Agreement**" means that certain restructuring support agreement, dated as of December 31, 2013, by and among**, among other parties,** the Debtors~~,~~ ~~the Moreno Entities, TPT~~, Shell and the Ad Hoc Noteholders, as amended by that certain Amendment No. 1 dated as of January 10, 2014, and terminated by consent of each of the parties thereto on February 6, 2014.

01:15124892.1

HN\\~~1114473.11~~1114473.17

"**Sale Order**" means, collectively, the Order, or Orders, approving the Asset Purchase Agreement and the sale of substantially all of the Assets Agreements.

"**Schedules**" means, collectively, the (a) schedules of assets, liabilities and executory contracts and (b) statements of financial affairs, as each may be amended and supplemented from time to time, filed by the Debtors pursuant to Bankruptcy Code Section 521.

"**Second Tier Claims**" means the Noteholder Claims and the Shell Other Claim, whether Allowed or Disputed.

"**Secured Claim**" means a Claim (a) that is secured by a valid, perfected and enforceable Lien that is not subject to an Avoidance Action, in or upon any right, title or interest of any of the Debtors in and to property of the Estates, to the extent of the value of the such holder's interest in such property as of the relevant determination date or (b) that is subject to an offset right pursuant to Bankruptcy Code Section 553, to the extent of the amount subject to a valid setoff as of the Effective Date; which Claim shall be in an amount, including postpetition interest and any reasonable fees, costs or charges to the extent permitted under Bankruptcy Code Section 506(b), that is agreed to in writing by the holder and the Debtors or the Liquidation Trustee or is determined by the Bankruptcy Court pursuant to Bankruptcy Code Section 506(a). "

"**Senior ~~Noteholders'~~ Noteholder Adequate Protection Claims**" means Claims of the Senior Secured Notes Indenture Trustee and/or the Senior Secured Noteholders secured by the Debtors pre- and postpetition assets for any and all diminution since the Petition Date in the value of the collateral securing the Senior Noteholder Claims pursuant to the terms of the DIP Order or Cash Collateral Order.

~~"Senior Noteholder Cash Distribution" means any and all Available Cash in excess of the amount required for (a) the payment of, or establishment of adequate reserves for, taking into account all future proceeds reasonably anticipated to be received from the sale of Assets, all First Tier Claims and (b) the Initial Litigation Trust Funding.~~

"**Senior Noteholder Claims**" means the Claims of the Senior Secured Notes Indenture Trustee and any Senior Secured Noteholder under the Senior Secured Notes Indenture, including (a) any Secured Claim, (b) the Senior ~~Noteholders'~~ Noteholder Adequate Protection Claims, and (c) any Deficiency Claim ~~of the Senior Secured Notes Indenture Trustee or any Senior Secured Noteholder~~.

"**Senior Noteholder Claim Allowed Amount**" means the aggregate amount of ~~all principal, interest or other amount owing as of the Effective Date on account of~~ the Senior Noteholder Claims outstanding as of the Petition Date less the amount credit bid by the Indenture Trustee to purchase any of the Debtors' assets pursuant to any Asset Purchase Agreement.

"**Senior Noteholder Distribution**" means an amount equal to the Available Cash remaining after the payment of, or establishment of adequate reserves for, all First Tier Claims, multiplied by (a) the quotient of the Senior Noteholder Claim Allowed Amount

*divided* **by the sum of the Allowed General Unsecured Claims and the Senior Noteholder Claim Allowed amount,** *plus* **(b) 0.1.**

"**Senior Secured Noteholder(s)**" means, in the singular, any Entity or Person and, in the plural, all Entities or Persons, that hold the Senior Secured Notes.

"**Senior Secured Notes Indenture**" means that certain agreement dated as of November 15, 2011 entered into between GFES, Hub City and the Senior Secured Note Indenture Trustee, as amended by that certain Supplemental Indenture dated as of October 23, 2012.

"**Senior Secured Notes Indenture Trustee**" means Wilmington Trust, National Association, in its capacity as trustee and collateral agent for the Senior Secured Notes, and/or any successor Indenture Trustee for the Senior Secured Notes.

"**Settlement and Release Agreement**" means that certain Settlement and Release Agreement, a copy of which is ~~included in the Plan Documents~~**attached hereto as Exhibit A**.

~~"**Shared Collateral**" means all of the Equipment and Vehicles on which Shell has a perfected lien, which constitutes 57% of the value of all of the Equipment and Vehicles.~~

"**Shell**" means SWEPI LP, successor in interest to Shell Western Exploration and Production, Inc., together with any of its subsidiaries or Affiliates.

**"Shell Adequate Protection Claim" means the Claim of Shell secured by the Debtors pre- and postpetition assets for diminution in the value of the collateral securing the Shell Claim pursuant to the terms of the Cash Collateral Order.**

"**Shell Agreement**" means that certain Contract for High Pressure Fracturing Services dated as of September 2, 2011 by and between Shell and Hub City Industries, LLC (predecessor-in-interest to GFES), as amended.

"**Shell Claim**" means the Claim of Shell for any and all obligations or liabilities under or related to the Shell Agreement or the Intercreditor Agreement.

"**Shell Other Claim**" means the amount of the Claim of Shell in excess of the Distributions received by Shell on account of the Shell Secured Claim, including any Deficiency Claim of Shell or any Claim under or related to the Intercreditor Agreement **and the Shell Adequate Protection Claim**.

"**Shell Secured Claim**" means the Shell Claim to the extent such Claim is secured by security interests in certain of the Debtors' motor vehicles as the result of notations on certificates of title of such motor vehicles.

"**Sixth Tier Claims/Interests**" means Subordinated Stock Claims and GFES Interests.

"**Statutory Fees**" means the fees due and payable pursuant to Section 1930 of Title 28 of the United States Code.

- 17 -

"**Subordinated Other Claim**" means (a) any Claim, other than a Subordinated Stock Claim, asserted against any of the Debtors that is subordinated pursuant to either Bankruptcy Code Section 510(b) or Bankruptcy Code Section 510(c); or (b) any Claim for any fine, penalty, or forfeiture, or multiple, exemplary, or punitive damages, to the extent that such fine, penalty, forfeiture, or damage is not compensation for actual pecuniary loss suffered by the holder of such Claim, including, without limitation, any such Claim based upon, arising from, or relating to any Cause of Action whatsoever (including, without limitation, violation of law, willful intellectual property infringement, fraud, personal injury, or wrongful death, whether secured or unsecured, liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising in law, equity or otherwise), and any such Claim asserted by a Governmental Unit in connection with a tax or other obligation owing to such unit.

"**Subordinated Stock Claim**" means any Claim against any of the Debtors that is subordinated pursuant to Bankruptcy Code Section 510(b) arising from the rescission of a purchase or sale of any Interest, any Claim for damages arising from the purchase or sale of any Interest, or any Claim for reimbursement, contribution, or indemnification on account of any such Claim.

"**Subsidiary Interests**" means, collectively, all of the issued and outstanding shares of stock or membership interests of Hub City and Proppant One.

"**Tax Code**" means the United States Internal Revenue Code of 1986, as amended, modified or supplemented from time to time, and the rules and regulations promulgated thereunder.

"**TGS**" **means Turbine Generation Services, LLC f/k/a Green Field Power Generation, L.L.C.**

"**Third Circuit**" means the jurisdictions within the appellate jurisdiction of the United States Court of Appeals for the Third Circuit.

"**Third Tier Claims**" mean General Unsecured Claims, whether Allowed or Disputed.

"**TPT**" means Turbine Powered Technology, LLC, a joint venture organized and operated under that certain operating agreement, dated September 22, 2011 (as modified by amendments dated October 28, 2011 and November 9, 2011), that is owned 50% by MTT Properties, LLC and 50% by GFES.

"**TPT Acquisition Entity**" **means that certain entity owned by the Senior Secured Noteholders, or by the Senior Secured Notes Indenture Trustee on behalf of the Senior Secured Noteholders, which owns the GFES TPT Interest.**

"**TPT Claims**" means all Claims of TPT against the Debtors.

"**TPT License**" means that certain Turbine Driven Equipment License Agreement dated September 22, 2011.

- 18 -

"**Unclaimed Property**" means any Cash or other distributable property unclaimed for a period of ninety (90) days after it has been delivered (or attempted to be delivered) in accordance with the Plan to the holder entitled thereto in respect of such holder's Allowed Claim. Unclaimed Property shall, without limitation, include:  (a) checks (and the funds represented thereby) mailed to a Distribution Address and returned as undeliverable without a proper forwarding address; (b) funds for uncashed checks; (c) checks (and the funds represented thereby) not mailed or delivered because no Distribution Address to mail or deliver such property was available, notwithstanding efforts by the Liquidation Trust ~~or Litigation Trust~~ to locate such address which were commercially reasonable under the circumstances; and (d) checks (and the funds represented thereby) not mailed or delivered because a holder of a Claim or Interest is requested to provide a taxpayer identification number or to otherwise satisfy any tax withholding requirements with respect to a Distribution and such holder fails to do so within ninety (90) days of the date of such request.

"**Unimpaired**" means, with respect to any Claim, that such Claim is not impaired within the meaning of Bankruptcy Code Section 1124.

 "**Unsecured Claim**" means any Claim, arising prior to the Petition Date, that is not: (a)  an Administrative Claim, (b) a Fee Claim, (c) a Priority Tax Claim, (d) ~~a Remaining~~**an Other** Secured Claim, (e) a Priority Non-Tax Claim, (f) ~~a~~**the** Shell Secured Claim, (g) a Senior Noteholder Claim, (h) the Shell Other Claim, (i) a Subordinated Other Claim, or (j) a Subordinated Stock Claim.

Section 1.02   **Rules of Interpretation**.  For purposes of the Plan:  (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural; (b) pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and the neuter genders; (c) any reference in the Plan to a contract, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (d) any reference in the Plan to an existing document or an exhibit filed or to be filed means such document or exhibit, as it may have been or may be amended, modified or supplemented; (e) unless otherwise specified, all references in the Plan to articles, sections, clauses and exhibits are references to articles, sections, clauses and exhibits of or to the Plan; (f) the words "herein" and "hereto," and other words of similar import, refer to this Plan in its entirety rather than to a particular portion of the Plan; (g) captions and headings to articles and sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (h) any reference to an Entity or Person as a holder of a Claim or Interest includes that Entity or Person's successors, assigns and Affiliates; (i) the rules of construction set forth in Bankruptcy Code Section 102 shall apply to the extent such rules are not inconsistent with any other provision in this Section; (j) any term used herein that is not defined herein shall have the meaning ascribed thereto in the Bankruptcy Code and/or the Bankruptcy Rules, if used therein; (k) in the event of any ambiguity or conflict between the Plan and the Disclosure Statement, the provisions of the Plan shall govern; **and** (l) any reference to the "Liquidation Trustee" shall be deemed to include a reference to the "Liquidation Trust" and any reference to the "Liquidation Trust" shall be deemed to include a reference to the "Liquidation Trustee" unless the context otherwise requires ~~and (m)~~

~~any reference to the "Litigation Trustee" shall be deemed to include a reference to the "Litigation Trust" and any reference to the "Litigation Trust" shall be deemed to include a reference to the "Litigation Trustee" unless the context otherwise requires~~.

Section 1.03    **Computation of Time**.   In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

Article II~~ARTICLE II~~

### SUBSTANTIVE CONSOLIDATION

Section 2.01    **Deemed Consolidation and Effect Thereof**.   On the Effective Date, the Estates shall be deemed consolidated for all purposes related to the Plan.   As a result of the deemed consolidation of the liabilities and properties of all the Debtors, except as otherwise provided in the Plan, (a) the Chapter 11 Cases of GFES, Hub City and Proppant One shall be deemed consolidated into the case of GFES as a single consolidated case; (b) the Estate of each of the Debtors shall be deemed to be one consolidated Estate; (c) all property of the Estate of each Debtor shall be deemed to be property of the consolidated Estates; (d) all Claims against each Estate shall be deemed to be Claims against the consolidated Estates; (e) all Claims based upon prepetition unsecured guarantees by one Debtor in favor of any other of the Debtors (other than guarantees existing under any assumed executory contracts or unexpired leases) shall be eliminated, and no Distributions under this Plan shall be made on account of Claims based upon such guarantees; (f) for purposes of determining the availability of the right of setoff under Bankruptcy Code Section 553, the Debtors shall be treated as one consolidated entity so that, subject to the other provisions of Bankruptcy Code Section 553, prepetition debts due to any of the Debtors may be set off against the prepetition debts of any other of the Debtors; (g) no Distributions under this Plan shall be made on account of any Subsidiary Interests; and (h) the GFES Interests shall be subject and subordinate to the Claims against the consolidated Estate.

Deemed consolidation shall not merge or otherwise affect the separate legal existence of each Debtor, other than with respect to Distribution rights under this Plan; deemed consolidation shall have no effect on valid, enforceable and unavoidable Liens, except for Liens that secure a Claim that is eliminated by virtue of deemed consolidation and Liens against collateral that are extinguished by virtue of deemed consolidation; and deemed consolidation shall not have the effect of creating a Claim in a Class different from the Class in which a Claim would have been placed in the absence of deemed consolidation.

Deemed consolidation shall not affect the obligation of each of the Debtors to pay Statutory Fees to the Office of the United States Trustee until such time as a particular Chapter 11 Case is closed, dismissed or converted.   Further, the deemed consolidation provided for herein shall not, other than for purposes related to the Plan and Distributions to be made hereunder, affect the legal and corporate structures of the Debtors or the rights and defenses of the Liquidation Trust pertaining to the Estate Causes of Action~~, or the rights and defenses of Litigation Trust with respect to Avoidance Actions~~.

Section 2.02    **Plan as Motion for Approval of Deemed Consolidation**.   The Plan constitutes a motion for deemed consolidation of the liabilities and properties of all the Debtors

- 20 -

for purposes of Distribution.  The Confirmation of the Plan shall constitute approval of the motion by the Bankruptcy Court, and the Confirmation Order shall contain findings supporting and conclusions providing for deemed consolidation on the terms set forth in Section 2.01 of the Plan.

**Article III**~~ARTICLE III~~

**CLASSIFICATION OF CLAIMS AND INTERESTS**

Section 3.01    **General Rules of Classification**.  A Claim or Interest is placed in a particular Class only to the extent that the Claim or Interest falls within the description of that Class and such Claim or Interest has not been paid, released, or otherwise settled prior to the Effective Date.  A Claim or Interest may be bifurcated and classified in other Classes to the extent that any portion of the Claim or Interest falls within the description of such other Classes.

Section 3.02    **Unclassified Claims**.  In accordance with Bankruptcy Code Section 1123(a)(1), Administrative Claims, Fee Claims, Priority Tax Claims and DIP Claims have not been classified.

Section 3.03    **Classified Claims and Interests**.  Subject to Section 2.01 of the Plan, the Claims and Interests against the Debtors have been classified as follows:

| **Class** | **Claim** | **Status** | **Voting Rights** |
|---|---|---|---|
| Class 1 | Other Secured Claims | Unimpaired | Not Entitled to Vote |
| Class 2 | Priority Non-Tax Claims | Unimpaired | Not Entitled to Vote |
| Class 3 | Shell Secured Claim | Impaired | Entitled to Vote |
| Class 4 | Senior Noteholder Claims | Impaired | Entitled to Vote |
| Class 5 | Shell Other Claim | Impaired | Entitled to Vote |
| Class 6 | General Unsecured Claims | Impaired | Entitled to Vote |
| Class 7 | Subordinated Other Claims | Impaired | Not Entitled to Vote |
| Class 8 | Subordinated Stock Claims | Impaired | Not Entitled to Vote |
| Class 9 | GFES Interests | Impaired | Not Entitled to Vote |
| Class 10 | Subsidiary Interests | Impaired | Not Entitled to Vote |

01:15124892.1

HN\~~1114473.11~~1114473.17

## Article IV~~ARTICLE IV~~
## TREATMENT OF UNCLASSIFIED CLAIMS

Section 4.01    **Administrative Claims**.

(a)    **Administrative Claims Bar Date and 503(b)(9) Claims Bar Date**.  To be eligible to receive Distributions under the Plan on account of an Administrative Claim (other than a 503(b)(9) Claim) that is not otherwise Allowed by the Plan, a Request for Payment of Administrative Claim must have been or be filed with the Bankruptcy Court on or before the applicable Administrative Claims Bar Date.  To be eligible to receive Distributions under the Plan on account of a 503(b)(9) Claim that is not otherwise Allowed by the Plan, a Request for Payment of a 503(b)(9) Claim must have been filed with the Claims Agent on or before the 503(b)(9) Claims Bar Date.  Any Administrative Claim that is not asserted in accordance with this Section 4.01(a) shall be deemed disallowed under this Plan and shall be forever barred against any of the Estates, the Liquidation Trust, ~~the Litigation Trust~~ or any of their Assets or property, and the holder thereof shall be enjoined from commencing or continuing any action, employment of process or act to collect, offset, recoup or recover such Claim.

(b)    **Treatment**. Administrative Claims are First Tier Claims under the Plan.  Subject to the terms herein, and unless the holder of an Allowed Administrative Claim agrees to receive other less favorable treatment, each holder of an Allowed Administrative Claim shall be paid 100% of the unpaid amount of such Claim in Cash on the date that is the later of (i) the Initial Distribution Date for First Tier Claims or (ii) as soon as reasonably practicable after the date such Claim becomes an Allowed Claim; provided, however, that Allowed Administrative Claims of the United States Trustee for Statutory Fees shall be paid on the Effective Date and thereafter, as such fees may thereafter accrue and be due and payable, by the Liquidation Trustee pursuant to Section 7.03 of the Plan in accordance with the applicable schedule for payment of such fees.

Section 4.02    **Fee Claims**.

(a)    **Fee Claims Bar Date**.  All Final Fee Applications for payment of Fee Claims shall be filed with the Bankruptcy Court on or before the Fee Claims Bar Date.  Any Fee Claim that is not asserted in accordance with this Section 4.02(a) shall be deemed disallowed under this Plan and shall be forever barred against any of the Estates, the Liquidation Trust, ~~the Litigation Trust~~ or any of their Assets or property, and the holder thereof shall be enjoined from commencing or continuing any action, employment of process or act to collect, offset, recoup or recover such Claim.

(b)    **Procedure**.  All Final Fee Applications shall be subject to the following requirements and procedures:

(i)    All Final Fee Applications shall comply with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, applicable orders of the Bankruptcy Court and applicable Third Circuit law.

(ii)    All Final Fee Applications shall be served via first class mail upon the United States Trustee and the Liquidation Trustee. Notice of the Final Fee Applications,

including the amount of final allowance of fees and expenses sought, the objection deadline and the hearing date, shall be served in accordance with Local Rule 2002-1(b).

(iii)    The deadline to object to a Final Fee Application shall be not less than twenty-one (21) days (or the next Business Day if such day is not a Business Day) following service of the Final Fee Application.

(iv)    The hearing to consider all Final Fee Applications shall be set at a date and time that is at least sixty (60) days after the Effective Date and shall be set forth in the Confirmation Order.  Each Professional that files a Final Fee Application shall include such hearing date in their respective notice of hearing.

(v)    To object to a Professional's Final Fee Application, the objecting party must (x) file a written objection on or before the objection deadline and (y) serve the objection on the Professional who filed the Final Fee Application and each of the notice parties designated in Section 4.02(b)(ii) of the Plan, such that each party receives the objection on or before the established objection deadline.

(vi)    A Fee Claim asserted in a Final Fee Application shall be an Allowed Fee Claim to the extent provided in the order of the Bankruptcy Court entered pursuant to the Final Fee Application.

(c)    **Treatment**.  Fee Claims are First Tier Claims under the Plan. Subject to the terms herein, and unless the holder of an Allowed Fee Claim agrees to receive other less favorable treatment, each holder of an Allowed Fee Claim shall be paid 100% of the unpaid amount of such Claim in Cash no later than five (5) Business Days after the date that such Claim is Allowed by order of the Bankruptcy Court.  Immediately prior to the Effective Date, the Debtors shall pay all outstanding amounts on account of Fee Claims relating to prior periods and for the period ending on the Effective Date to the respective Professional holding such Fee Claim.  The Professionals shall estimate Fee Claims due for periods that have not been billed as of the Effective Date.  Within ten (10) days after entry of a Final Order with respect to its Final Fee Application, each Professional shall remit any overpayment to the Liquidation or the Liquidation Trustee shall pay any outstanding amounts owed to the Professional.

Section 4.03    **Priority Tax Claims**.

(a)    **Governmental Unit Bar Date**.  To be eligible to receive Distributions under the Plan on account of a Priority Tax Claim, a Proof of Claim must be filed with the Claims Agent so as to be received on or before the Governmental Unit Bar Date.  Any Priority Tax Claim that is not asserted in accordance with this Section 4.03(a) shall be deemed disallowed under this Plan and shall be forever barred against any of the Estates, the Liquidation Trust, ~~the Litigation Trust,~~ or any of their Assets or property and the holder thereof shall be enjoined from commencing or continuing any action, employment of process or act to collect, offset, recoup or recover such Claim.

(b)    **Treatment**. Priority Tax Claims are First Tier Claims under the Plan.  Subject to the terms herein, with respect to each Allowed Priority Tax Claim, at the sole option of the

Debtors, the holder of an Allowed Priority Tax Claim shall be entitled to receive on account of such Allowed Priority Tax Claim, in full satisfaction, settlement and release of and in exchange for such Allowed Priority Tax Claim, (x) payments in Cash on the last Business Day of every three (3) month period following the Effective Date, over a period not exceeding five (5) years after the Petition Date, of a total value, as of the Effective Date, equal to the Allowed amount of such Claim, or (y) such other treatment agreed to by the holder of such Allowed Priority Tax Claim and the Debtors.

Section 4.04   **DIP Claims**.  On the Effective Date, each holder of an Allowed DIP Claim, in full and complete settlement, release and discharge of such Claim, shall be paid in full in Cash all outstanding principal and accrued but unpaid interest, costs, fees and expenses owing as of the Effective Date, and any other amounts due and owing under the DIP Loan Documents.

## Article V~~ARTICLE V~~

## TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS

Section 5.01   **Class 1:  Other Secured Claims**.

(a)   **Classification**.  Other Secured Claims are First Tier Claims under the Plan.  Class 1 shall consist of all Other Secured Claims.  Class 1 consists of separate sub-Classes, one for each Other Secured Claim.  Each sub-Class is deemed to be a separate Class for all purposes under the Bankruptcy Code.  Class 1 is Unimpaired by the Plan and the holders of Other Secured Claims are deemed to accept the Plan and, therefore, are not entitled to vote on the Plan.

(b)   **Treatment**.  Subject to the terms herein and unless a holder of an Allowed Other Secured Claim agrees to receive other less favorable treatment, each holder of an Allowed Claim in this Class shall receive, in full satisfaction, settlement, release, and discharge of and in exchange for such Claim, (x) 100% of the unpaid amount of such Claim in Cash or (y) the collateral securing any such Allowed Other Secured Claim (to the extent such collateral does not constitute collateral securing the Senior Noteholder Claims or, if such collateral does secure the Senior Noteholder Claims, to the extent that the Lien securing such Allowed Other Secured Claim is senior to the Lien securing the Senior Noteholder Claims) on the date that is the later of (i) the Initial Distribution Date for First Tier Claims or (ii) as soon as is reasonably practicable after the date such Claim becomes an Allowed Claim; provided, however, that if the holder of an Allowed Other Secured Claim holds Cash with a right of setoff, such holder shall be entitled to effect the setoff and thereby satisfy the Claim in lieu of receiving payment.

(c)   **Certain Conditions to Receipt of Aforementioned Treatment**.  Except as otherwise specifically provided in the Plan or in any agreement, instrument or document created in connection with the Plan: (a) each holder of an Other Secured Claim, regardless of whether such Claim has been listed in the Schedules or asserted in a Proof of Claim: (1) to the extent Cash is distributed in accordance with 5.01(b) above, shall turn over and release to the Estates and the Liquidation Trust any and all property of the Estates that secures or purportedly secures such Claim and any such Lien arguably securing such Claim shall automatically, and without further action by the Estates or the Liquidation Trust, be deemed released; provided, however, that if such property is Cash, in lieu of payment, the holder shall be deemed to have setoff the

Cash to the extent of the Allowed amount of the Claim, and shall be obligated to turn over and release the balance of Cash and any other property that was held to secure the Claim; and (2) execute such documents and instruments as the Liquidation Trust require(s) to evidence such holder's release of such property or Lien, and if such holder violates the Confirmation Order and this Plan by refusing to execute appropriate documents or instruments, the Liquidation Trust may, in its discretion, file a copy of the Confirmation Order which shall serve to release any holder's rights in such property; and (b) on the Effective Date, all right, title and interest in such property shall revert, vest or revest in accordance with this Plan, free and clear of all Claims and Interests, including, without limitation, Liens, escrows, charges, pledges, or other encumbrances of any kind; provided, however, that the physical turnover of property described in (a)(1) above, is necessary and required only to the extent the holder is in possession or control of the property that secures or purportedly secures such Claim.

Without limiting the automatic release provisions of the immediately preceding paragraph: (a) no Distribution hereunder shall be made to or on behalf of any holder unless and until such holder executes and delivers to the Estates or the Liquidation Trust such release of Liens or otherwise turns over and releases any property in such holder's possession; (b) any holder that fails to execute and deliver such release of Liens within ninety (90) days after the Effective Date (or such other date as may be agreed by the Liquidation Trust and such holder) shall be subject to whatever sanction is deemed appropriate by the Bankruptcy Court; and (c) the Liquidation Trust, which shall be deemed to be appointed as attorney-in-fact for all such holders of Other Secured Claims for the purpose of releasing such Liens, shall be authorized to use, and all authorities shall be required to accept, the Confirmation Order and the notice of Effective Date as satisfaction of all Liens.

Section 5.02    **Class 2:  Priority Non-Tax Claims**.

(a)    **Classification**.  Class 2 consists of all Priority Non-Tax Claims.  Class 2 is Unimpaired by the Plan and the holders of Priority Non-Tax Claims are deemed to accept the Plan and, therefore, are not entitled to vote on the Plan.

(b)    **Treatment**.  Priority Non-Tax Claims are First Tier Claims under the Plan. Subject to the terms herein and unless the holder of an Allowed Priority Non-Tax Claim agrees to receive other less favorable treatment, each holder of an Allowed Priority Non-Tax Claim shall be paid 100% of the unpaid amount of such Claim in Cash on the date that is the later of (i) Initial Distribution Date for First Tier Claims or (ii) as soon as is reasonably practicable after the date such Claim becomes an Allowed Claim.

Section 5.03    **Class 3:  Shell Secured Claim**

(a)    **Classification**.  Class 3 shall consist of the Shell Secured Claim.  Class 3 is Impaired by the Plan and the holder of the Allowed Class 3 Claim is entitled to vote on the Plan.

(b)    **Treatment**.  The Shell Secured Claim is a First Tier Claim under the Plan. ~~Accordingly,~~ **In full satisfaction, settlement and release of the Shell Secured Claim, the holder of** the Shell Secured Claim will be entitled to be paid **$5,000,000** in Cash ~~under the Plan~~ on the Effective Date.

- 25 -

Section 5.04    **Class 4: Senior Noteholder Claims**.

(a)    **Classification**.  Class 4 shall consist of all Senior Noteholder Claims**. Class 4 consists of separate sub-Classes, one for the Secured Claim of the Senior Secured Noteholders, one for the Senior Noteholder Adequate Protection Claims and one for the Deficiency Claim of the Senior Secured Noteholders.  Each sub-Class is deemed to be a separate Class for all purposes under the Bankruptcy Code**.  Class 4 is Impaired by the Plan and the holders of Senior Noteholder Claims are entitled to vote on the Plan.

(b)    **Treatment**. Senior Noteholder Claims are Second Tier Claims under the Plan. Subject to the terms herein, in full satisfaction, settlement and release of and in exchange for all such Allowed Senior Noteholder Claims, commencing on the Initial Distribution Date for Second Tier Claims, ~~(a)~~ each holder of a Senior Noteholder Claim will be entitled to receive a Pro Rata portion of ~~(i) 70% of the Class A preferred equity of NewCo, (ii) 50% of the Class B preferred equity of NewCo, and (iii) 30% of the common equity of NewCo, (b) the GFES TPT Interest shall be transferred to NewCo on the Effective Date and (c)~~the Senior Noteholder Distribution until such time as the Senior Noteholder Claim Allowed Amount is paid in full; provided that the first $1,000,000 of the Senior Noteholder Distribution shall be made directly to the TPT Acquisition Entity and the remaining Senior Noteholder Distribution shall be made to each holder of a Senior Noteholder Claim through the Senior Secured Notes Indenture Trustee ~~shall receive, for the benefit of the Senior Secured Noteholders, distributions of the Senior Noteholder Cash Distribution from the Liquidation Trust until such time as (a) the aggregate value contributed to NewCo by the Debtors and the Liquidation Trustee *plus* (b) the aggregate value distributed to the Senior Secured Notes Indenture Trustee, is equal to the Senior Noteholder Claim Allowed Amount.~~.

Section 5.05    **Class 5:  Shell Other Claim**.

(a)    **Classification**.  Class 5 shall consist of the Shell Other Claim.  Class 5 is Impaired by the Plan and the holder of the Shell Other Claim is entitled to vote on the Plan.

(b)    **Treatment**.  The Shell Other Claim is a Second Tier Claim under the Plan.  The Shell Other Claim shall be an Allowed Claim.  Under the Plan, in full satisfaction, settlement and release of and in exchange for the Shell Other Claim, Shell shall receive the release set forth in Section 12.07 of the Plan.  ~~Solely to effectuate the foregoing and the provisions of this Plan, on the Effective Date the Shell Other Claim, and all rights relating thereto, shall be transferred to the Debtors.~~

Section 5.06    **Class 6:  General Unsecured Claims**.

- 26 -

(a)    **Classification**.  Class 6 shall consist of all General Unsecured Claims.  Class 6 is Impaired by the Plan and the holders of General Unsecured Claims are entitled to vote on the Plan.

(b)    **Treatment**.  General Unsecured Claims are Third Tier Claims under the Plan.  Subject to the terms herein, each holder of an Allowed General Unsecured Claim, in full satisfaction, settlement and release of and in exchange for all such Allowed Claims, unless such holder agrees to less favorable treatment, shall be entitled to receive, commencing on the Initial Distribution Date for Third Tier Claims, a Pro Rata share of the ~~interests in the Litigation Trust.~~**Available Cash remaining after the payment of, or establishment of adequate reserves for, all First Tier Claims and the Senior Noteholder Distribution, until such time as all Allowed General Unsecured Claims are paid in full.**

Section 5.07    **Class 7:  Subordinated Other Claims**.

(a)    **Classification**.  Class 7 shall consist of all Subordinated Other Claims.  Class 7 is Impaired by the Plan and the holders of Subordinated Other Claims are not entitled to vote on the Plan and are deemed to reject the Plan.

(b)    **Treatment**.  Subordinated Other Claims are Fourth Tier Claims under the Plan.  Subject to the provisions of Section 5.11 of the Plan, no holder of a Subordinated Other Claim shall receive or retain any property under the Plan**, or** the Liquidation ~~Trust Agreement or the Litigation~~ Trust Agreement on account of such holder's Claim.

Section 5.08    **Class 8:  Subordinated Stock Claims**.

(a)    **Classification**.  Class 8 shall consist of all Subordinated Stock Claims.  Class 8 is Impaired by the Plan and the holders of Subordinated Stock Claims are not entitled to vote on the Plan and are deemed to reject the Plan.

(b)    **Treatment**.  Subordinated Stock Claims are Sixth Tier Claims/Interests under the Plan.  Subject to the provisions of Section 5.11 of the Plan, no holder of a Subordinated Stock Claim shall receive or retain any property under the Plan**, or** the Liquidation ~~Trust Agreement or the Litigation~~ Trust Agreement on account of such holder's Claim.

Section 5.09    **Class 9:  GFES Interests**.

(a)    **Classification**.  Class 9 shall consist of all GFES Interests.  Class 9 is Impaired by the Plan and the holders of GFES Interests are not entitled to vote on the Plan and are deemed to reject the Plan.

(b)    **Treatment**.  GFES Interests are Sixth Tier Claims/Interests under the Plan.  All GFES Interests shall be cancelled as of the Effective Date.  Subject to the provisions of Section 5.11 of the Plan, no holder of a GFES Interest shall receive or retain any property under the Plan**,**

- 27 -

**or** the Liquidation ~~Trust Agreement or the Litigation~~ Trust Agreement on account of such holder's Interest.

Section 5.10    **Class 10:  Subsidiary Interests**.

(a)    **Classification**.  Class 10 shall consist of all Subsidiary Interests.  Class 10 is Impaired by the Plan and the holders of Interests in this Class are not entitled to vote on the Plan and are deemed to reject the Plan.

(b)    **Treatment**.  The holders of Subsidiary Interests shall not receive or retain any property under the Plan on account of such Interests.

Section 5.11    **Supplemental Treatment in Event of Surplus in Available Cash**.  The treatment provisions of the Plan assume sufficient Available Cash to permit payment in full of First Tier Claims and partial payment of Second Tier Claims and Third Tier Claims.  If, however, Available Cash exceeds expectations and a surplus of Available Cash remains in the Liquidation Trust Distribution Account after all First Tier Claims, Second Tier Claims and Third Tier Claims are paid in full or adequately reserved for, then such surplus Available Cash shall be distributed as follows:

(a)    **Fourth Tier Claims**.  Each holder of an Allowed Subordinated Other Claim, in full satisfaction, settlement and release of and in exchange for all such Allowed Claims, shall be entitled to receive, commencing on the Initial Distribution Date for Fourth Tier Claims, one or more Distributions of Available Cash in an amount equal to its Pro Rata share of such Available Cash remaining in the Liquidation Trust Distribution Account.

(b)    **Fifth Tier Claims**.  If all Fourth Tier Claims are paid in full or adequately reserved for and a surplus of Available Cash still remains in the Liquidation Trust Distribution Account, each eligible holder of an Allowed Priority Tax Claim, Allowed Priority Non-Tax Claim, Allowed General Unsecured Claim, and Allowed Subordinated Other Claim shall be entitled to receive Available Cash in an amount equal to its Pro Rata share of the Unsecured Interest Allocation on account of postpetition interest accrued through the Effective Date at the applicable Postpetition Interest Rate; provided, however, that holders of Subordinated Other Claims shall not be entitled to receive payments of postpetition interest unless and until all other holders of Allowed Fourth Tier Claims receive payment in full on account of all postpetition interest they are owed in accordance with this subsection.

(c)    **Sixth Tier Claims/Interests**.  If all Fourth and Fifth Tier Claims are paid in full or adequately reserved for and a surplus of Available Cash still remains in the Liquidation Trust Distribution Account, each holder of an Allowed Subordinated Stock Claim and each holder of an Allowed GFES Interest shall be entitled to receive one or more Distributions of Available Cash in an amount equal to its allocated share of such remaining Available Cash as such allocated share shall be determined by the Bankruptcy Court upon motion of the Liquidation Trustee.

Section 5.12    **Insurance**.  Notwithstanding anything to the contrary herein, if any Allowed Claim is covered by insurance, such Claim shall first be paid from such insurance with

the balance, if any, treated in accordance with the provisions of the Plan governing the Class applicable to such Claim.

Section 5.13 **Special Provision Governing Unimpaired Claims**. Except as otherwise provided herein, nothing under this Plan shall affect the Liquidation Trust's~~, the Litigation Trust's,~~ or the Debtors' rights and defenses in respect of any Claim or Interest that is Unimpaired under this Plan, including, without limitation, all rights in respect of (1) legal and equitable defenses to, (2) setoff or recoupment against or (3) counter-claims with respect to any such Unimpaired Claims and Interests.

Section 5.14 ~~Transfer of GFES TPT Interest and~~ TPT Settlement. On the Effective Date ~~(a) the GFES TPT Interest shall be transferred to NewCo free and clear of all Liens, Claims and Interests on account of the Senior Noteholder Claims and (b)~~ TPT shall receive the releases by the Debtors set forth in Section 12.06 of this Plan and the releases by Holders of Claims set forth in Section 12.07 of this Plan in exchange for (i) the release of all TPT Claims**, and** (ii) ~~the consent of TPT to the transfer of the GFES TPT Interest to NewCo and admission of NewCo as a member of TPT and (iii)~~ the consent of TPT to the assumption and assignment of the TPT License by the Debtors under the Sale Order.

## Article VI~~ARTICLE VI~~

## ACCEPTANCE OR REJECTION OF THE PLAN

Section 6.01 **Impaired Classes of Claims and Interests Entitled to Vote**. Holders of Claims in each Impaired Class of Claims that will receive or retain any property under the Plan are entitled to vote to accept or reject the Plan, unless any such Class has been deemed to reject the Plan. Classes 3, 4, 5 and 6 are Impaired as set forth in Sections 5.03, 5.04, 5.05 and 5.06 of the Plan, and have not been deemed to reject the Plan. Accordingly, the votes of holders of Claims in Classes 3, 4, 5 and 6 shall be solicited with respect to the Plan.

Section 6.02 **Acceptance by an Impaired Voting Class**. In accordance with Bankruptcy Code Section 1126(c), and except as provided in Bankruptcy Code Section 1126(e), an Impaired Class of Claims that votes on the Plan shall have accepted the Plan if the Plan is accepted by the holders of at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Allowed Claims of such Class that have timely and properly voted to accept or reject the Plan.

Section 6.03 **Deemed Acceptances by Classes**. Claims in Classes 1 and 2 are Unimpaired under the Plan. Under Bankruptcy Code Section 1126(f), holders of such Unimpaired Claims are conclusively presumed to have accepted the Plan and the votes of holders of such Unimpaired Claims shall not be solicited.

Section 6.04 **Deemed Rejections by Classes**. Claims in Classes 7 and 8 and Interests in Classes 9 and 10 are Impaired. The holders of such Claims and Interests are not expected to receive or retain any property under the Plan and are presumed to have rejected the Plan, and the votes of holders of such Impaired Claims and Interests shall not be solicited.

01:15124892.1

HN\~~1114473.11~~1114473.17

Section 6.05 **Confirmation Pursuant to Bankruptcy Code Section 1129(b)**. In view of the deemed rejection of the Plan by Classes 7, 8, 9 and 10, the Debtors request Confirmation of the Plan, as it may be modified from time to time, under Bankruptcy Code Section 1129(b). The Debtors reserve the right to alter, amend, or modify the Plan or any exhibit, in accordance with the provisions of the Plan, including, without limitation, Section 14.01, as necessary to satisfy the requirements of Bankruptcy Code Section 1129(b).

**Article VII~~ARTICLE VII~~**

**MEANS FOR IMPLEMENTATION**

Section 7.01 **Comprehensive Settlement of Claims and Controversies**.

The Plan~~,~~ **and** Plan Documents (including**, without limitation,** the Settlement and Release Agreement ~~and the NewCo Related Documents,~~ collectively~~,~~ reflect and incorporate a settlement and compromise of controversies ~~and, collectively, form the cornerstone of the Plan. Each of the Debtor Releasees and Creditor Releasees have, through contributions or concessions, made substantial contributions to the Estates in exchange for the benefits provided hereunder. The contribution of the MOR/TGS Interests to NewCo entitles the Moreno Entities and the Moreno Affiliated Entities to the releases and protections provided under the terms of this Plan, including Sections 12.06, 12.07, 12.08 and 12.09 of this Plan.~~

**.** Pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the classification, distributions and other benefits provided pursuant to the Plan~~,~~ **and** the Plan ~~Documents and the NewCo Related~~ Documents, the provisions of the Plan relating to and effectuating this settlement shall constitute a good faith compromise and settlement of all Claims and controversies resolved pursuant to the Plan~~,~~ **and** Plan Documents ~~and NewCo Related Documents,~~**.** The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the settlements and compromises contained in the Plan~~,~~ **and** Plan ~~Documents (including, without limitation, the Settlement and Release Agreement) and the NewCo~~ Documents, as well as a finding by the Bankruptcy Court that such settlements are in the best interests of the Debtors, their Estates and holders of Claims and Interests and are fair, equitable and reasonable.

~~Section 7.02 Creation of and Contributions to NewCo.~~

~~The contributions to NewCo of (a) the MOR/TGS Interests by the Moreno Entities and (b) the GFES TPT Interest by the Debtors are fundamental elements of the Plan and the settlement and compromise of controversies contained in the Plan, the Plan Documents and the NewCo Documents.~~

~~On or prior to the Effective Date, NewCo shall have been created and the MOR/TGS Interests shall have been contributed to NewCo. On the Effective Date, the GFES TPT Interest shall be transferred by the Debtors to NewCo free and clear of all Liens, Claims and Interests. On the Initial Distribution Date for Second Tier Claims,~~

01:15124892.1

HN\~~1114473.11~~1114473.17

~~which is anticipated to be the Effective Date, the holders of Allowed Senior Noteholder Claims shall receive equity in NewCo as set forth in Section 5.04(b) hereof.~~

**Section 7.02**   ~~Section 7.03~~  The Liquidation Trust.

(a)   **Appointment of the Liquidation Trustee**.  The Liquidation Trustee shall be the successor to all of the privileges of the Estates and the Debtors, including, but not limited to, the attorney/client privilege~~, except to the extent related to Avoidance Actions~~.

(b)   **Creation of Liquidation Trust**.  On the Effective Date, the Liquidation Trustee shall sign the Liquidation Trust Agreement and accept ~~the Initial Liquidation Trust Funding and~~ all Assets of the Estates ~~(other than Avoidance Actions)~~ on behalf of the beneficiaries thereof, and be authorized to obtain, liquidate, and collect all of the Assets of the Estates not in its possession and pursue all of the Estate Causes of Action.  The Liquidation Trust will be deemed created and effective without any further action by the Bankruptcy Court or any party. The Liquidation Trust shall be established for the primary purpose of liquidating its Assets and for making Distributions in accordance with the Plan and the Liquidation Trust Agreement, with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Liquidation Trust.

(c)   **Beneficiaries of Liquidation Trust**.  The Liquidation Trust Beneficiaries shall be beneficiaries of the Liquidation Trust.  The Liquidation Trust Beneficiaries shall be bound by the Liquidation Trust Agreement.  The interests of the Liquidation Trust Beneficiaries in the Liquidation Trust shall be uncertificated and shall be nontransferable except upon death of the interest holder or by operation of law.

(d)   **Vesting and Transfer of Assets to the Liquidation Trust**.  Pursuant to Bankruptcy Code Section 1141(b),  ~~the Initial Liquidation Trust Funding and the other applicable~~all Assets of the Estates ~~(other than Avoidance Actions)~~ shall vest in the Liquidation Trust; provided, however, that the Liquidation Trust, with the consent of the Liquidation Trustee, may abandon or otherwise not accept any Assets that the Liquidation Trust believes, in good faith, have no value to the Liquidation Trust.  Any Assets the Liquidation Trust so abandons or otherwise does not accept shall not vest in the Liquidation Trust.  As of the Effective Date, all Assets vested in the Liquidation Trust and all Assets dealt with in the Plan, shall be free and clear of all Liens, Claims and Interests except as otherwise specifically provided in the Plan or in the Confirmation Order.

(e)   **Certain Powers and Duties of Liquidation Trust and Liquidation Trustee**

(i)   General Powers of Liquidation Trustee. The Liquidation Trustee shall be the exclusive trustee of the Assets of the Liquidation Trust for purposes of 31 U.S.C. Section 3713(b) and 26 U.S.C. Section 6012(b)(3).  The powers, rights, and responsibilities of the Liquidation Trustee shall be specified in the Liquidation Trust Agreement and, under the supervision of the Liquidation Trust Oversight Committee, and, subject to Section 7.03(b) of the Plan, shall include the authority and responsibility to:  (a) receive, manage, invest, supervise, and protect trust Assets; (b) pay taxes or other obligations incurred by the Liquidation Trust; (c) retain and compensate, without further order of the Bankruptcy Court, the services of employees,

01:15124892.1

HN\~~1114473.11~~1114473.17

professionals and consultants to advise and assist in the administration, prosecution and distribution of trust Assets; (d) calculate and implement distributions of trust Assets; (e) prosecute, compromise, and settle, in accordance with the specific terms of the Liquidation Trust Agreement, Estate Causes of Action vested in the Liquidation Trust; (f) resolve issues involving Claims and Interests, other than General Unsecured Claims, pursuant to Article IX of this Plan; and (g) undertake all administrative functions of the Chapter 11 Cases, including the ultimate closing of the Chapter 11 Cases. The Liquidation Trust is the successor to the Debtors, the Estates, and the Debtors' rights to books and records.

(ii)    <u>Books and Records</u>. On the Effective Date, the Liquidation Trust shall:  (i) take possession of all books, records, and files of the Debtors and their Estates; and (ii) provide for the retention and storage of such books, records, and files until such time as the Liquidation Trust determines, in accordance with the Liquidation Trust Agreement, that retention of same is no longer necessary or required.

(iii)    <u>Investments of Cash</u>. The Liquidation Trust may invest Cash (including any earnings thereon or proceeds therefrom) as permitted by Bankruptcy Code Section 345 or in other prudent investments to the extent permitted to be made by a liquidating trust within the meaning of Treasury Regulation Section 301.7701-4(d), as reflected therein, or under applicable IRS guidelines, rulings, or other controlling authorities.

(iv)    <u>Costs and Expenses of Administration of Liquidation Trust</u>.  All Liquidation Trust Operating Expenses shall be the responsibility of and paid by the Liquidation Trust in accordance with the Liquidation Trust Agreement.

(v)    <u>Reporting</u>. In no event later than thirty (30) Business Days after the end of the first full month following the Effective Date and on a quarterly basis thereafter until all Cash in the Liquidation Trust Operational Reserve and any Disputed Claims Reserve has been released or paid out in accordance with the Plan, the Liquidation Trustee shall file with the Bankruptcy Court a report setting forth the amounts, recipients and dates of all Distributions made by the Liquidation Trustee under the Plan through each applicable reporting period.

(f)    **Federal Income Tax Treatment of the Liquidation Trust for the Liquidation Trust Assets; Tax Reporting and Tax Payment Obligations**.  For U.S. federal income tax purposes, it is intended that the Liquidation Trust (except with respect to the Disputed Claims Reserve) be classified as a liquidating trust under Treasury Regulation Section 301.7701-4. Accordingly, for U.S. federal income tax purposes, it is intended that the Liquidation Trust Beneficiaries be treated as if they had received a Distribution from the Estates of an undivided interest in each of the Liquidation Trust Assets (to the extent of the value of their respective share therein) and then contributed such interests to the Liquidation Trust.

(i)    <u>Liquidation Trust Assets Treated as Owned by Liquidation Trust Beneficiaries</u>.  For all U.S. federal income tax purposes, all parties shall treat the transfer of Assets (net of any applicable liabilities) to the Liquidation Trust for the benefit of the Liquidation Trust Beneficiaries as (a) a transfer by the Debtors of the Liquidation Trust Assets (net of any applicable liabilities) directly to the Liquidation Trust Beneficiaries (to the extent of the value of their respective share in the applicable Liquidation Trust Assets), followed by (b) the

- 32 -

transfer of the Liquidation Trust Assets (net of any applicable liabilities) by the Liquidation Trust Beneficiaries (to the extent of the value of their respective share in the Liquidation Trust Assets) to the Liquidation Trust in exchange for the beneficial interests in the Liquidation Trust. Accordingly, for U.S. federal income tax purposes, the Liquidating Trust (except with respect to the Disputed Claims Reserve associated therewith) shall be treated as a grantor trust, and the Liquidation Trust Beneficiaries shall be treated as the grantors of the Liquidation Trust and the owners of the Liquidation Trust Assets.

(ii)    Tax Reporting.  The Liquidation Trust shall be responsible for filing all federal, state, local and foreign tax returns, including, but not limited to, any documentation related thereto for current or former employees, vendors or contractors of the Debtors, for the Debtors and the Liquidation Trust, including with respect to the Disputed Claims Reserve associated therewith.  The Liquidation Trust shall file all tax returns for the Liquidation Trust, except with respect to the Disputed Claims Reserve associated therewith, as a grantor trust pursuant to Treasury Regulation Section 1.671-4(a) and in accordance with this Section 7.03. Within a reasonable time following the end of the taxable year, the Liquidation Trustee shall send to each holder of a beneficial interest appearing on its record during such year, a separate statement setting forth such holder's share of items of income, gain, loss, deduction or credit and each such holder shall report such items on their federal income tax returns; provided, however, that no such statement need be sent to any beneficiaries that are not expected to receive any Distribution from the Liquidation Trust.  The Liquidation Trustee may provide each such holder of a beneficial interest with a copy of the Form 1041 for the Liquidation Trust (without attaching any other holder's Schedule K-1 or other applicable information form) along with such holder's Schedule K-1 or other applicable information form in order to satisfy the foregoing requirement. The Liquidation Trustee shall allocate the taxable income, gain, loss, deduction or credit of the Liquidation Trust with respect to each holder of a beneficial interest to the extent required by the Tax Code and applicable law.

As soon as possible after the Effective Date, the Liquidation Trust shall make a good faith valuation of Assets of the Liquidation Trust, and such valuation shall be used consistently by all parties for all federal income tax purposes.  The Liquidation Trust also shall file (or cause to be filed) any other statements, returns, or disclosures relating to the Liquidation Trust that are required by any Governmental Unit for taxing purposes.

The Liquidation Trust shall file all income tax returns with respect to any income attributable to the Disputed Claims Reserve and shall, subject to Section 7.03(f)(iii) of the Plan, pay the federal, state and local income taxes attributable to the Disputed Claims Reserve, based on the items of income, deduction, credit or loss allocable thereto.

The Liquidation Trust may request an expedited determination of the tax obligations of the Debtors or of the Liquidation Trust, including the Disputed Claims Reserve, under Bankruptcy Code Section 505(b) for all returns filed for, or on behalf of, the Debtors and the Liquidation Trust for all taxable periods through the dissolution of the Liquidation Trust.

The Liquidation Trust shall comply with all withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority, and all Distributions made by the Liquidation Trust shall be subject to any such withholding and reporting requirements.

- 33 -

(iii)     Payment of Taxes. The Liquidation Trust shall be responsible for payments of all Allowed tax obligations of the Debtors including Priority Tax Claims and Administrative Claims, in addition to any taxes imposed on the Liquidation Trust or the Liquidation Trust Assets, including the Disputed Claims Reserve associated therewith.  In the event, and to the extent, any Cash retained on account of Disputed Claims in the Disputed Claims Reserve associated with the Liquidation Trust is insufficient to pay the portion of any such taxes attributable to the taxable income arising from the Liquidation Trust Assets allocable to, or retained on account of, Disputed Claims, such taxes shall be (a) reimbursed from any subsequent Cash amounts retained on account of Disputed Claims, or (b) to the extent such Disputed Claims have subsequently been resolved, deducted from any amounts distributable by the Liquidation Trust as a result of the resolutions of such Disputed Claims.

(g)     **Term of Liquidation Trust**. The Liquidation Trustee shall be discharged and the Liquidation Trust shall be terminated, at such time as (i) all Disputed Claims have been resolved, (ii) all of the Assets of the Liquidation Trust have been liquidated, (iii) all duties and obligations of the Liquidation Trustee under the Liquidation Trust Agreement have been fulfilled, (iv) all Distributions required to be made by the Liquidation Trust under the Plan and the Liquidation Trust Agreement have been made, and (v) each of the Chapter 11 Cases of the Debtors has been closed; provided, however, that in no event shall the Liquidation Trust be dissolved later than five (5) years from the Effective Date unless the Bankruptcy Court, upon motion within the six-month period prior to the fifth anniversary (or the end of any extension period approved by the Bankruptcy Court), determines that a fixed period extension (not to exceed three (3) years, together with any prior extensions, without a favorable letter ruling from the IRS that any further extension would not adversely affect the status of the Liquidation Trust as a liquidating trust for federal income tax purposes) is necessary to facilitate or complete the recovery and liquidation of the Assets of the Liquidation Trust.

(h)     **The Liquidation Trust Oversight Committee**.

(i)     **Appointment of the Liquidation Trust Oversight Committee**.  On the Effective Date, the Liquidation Trust Oversight Committee shall be formed pursuant to the Liquidation Trust Agreement.  The Liquidation Trust Oversight Committee shall be comprised of no more than three (3) members, two of whom shall be selected by the Senior Secured Notes Indenture Trustee at the direction of the majority of the Senior Secured Noteholders and one of whom shall be selected by the Official Creditors' Committee, until such time, if any, as the Senior Noteholder Claim Allowed Amount is paid in full, at which time the member selected by the Official Creditors' Committee shall select two members to replace the two members selected by the Senior Secured Notes Indenture Trustee.

(ii)     **Authority of the Liquidation Trust Oversight Committee**.  The Liquidation Trust Oversight Committee shall have the rights and responsibilities provided for in the Liquidation Trust Agreement.  The Liquidation Trustee shall report all material matters (as described in the Liquidation Trust Agreement) to and seek approval for all material decisions (as described in the Liquidation Trust Agreement) from the Liquidation Trust Oversight Committee.

~~Section 7.04 The Litigation Trust.~~

(a) Appointment of the Litigation Trustee.  The Litigation Trustee shall be the successor to all of the privileges of the Estates and the Debtors, including, but not limited to, the attorney/client privilege, solely to the extent related to Avoidance Actions.

(b) Creation of Litigation Trust.  On the Effective Date, the Litigation Trustee shall sign the Litigation Trust Agreement and accept the Initial Litigation Trust Funding and the Avoidance Actions on behalf of the beneficiaries thereof, and be authorized to pursue, obtain, liquidate, collect and recover all Assets of the Estates solely relating to the Avoidance Actions.  The Litigation Trust will be deemed created and effective without any further action by the Bankruptcy Court or any party.  The Litigation Trust shall be established for the primary purpose of pursuing the Avoidance Actions and for making Distributions to Allowed General Unsecured Claims in accordance with the Plan and the Litigation Trust Agreement, with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Litigation Trust.

(c) Beneficiaries of Litigation Trust.  The Litigation Trust Beneficiaries shall be beneficiaries of the Litigation Trust.  The Litigation Trust Beneficiaries shall be bound by the Litigation Trust Agreement.  The interests of the Litigation Trust Beneficiaries in the Litigation Trust shall be uncertificated and shall be nontransferable except upon death of the interest holder or by operation of law.

(d) Vesting and Transfer of Assets to the Litigation Trust.  Pursuant to Bankruptcy Code Section 1141(b), the Initial Litigation Trust Funding and the Avoidance Actions shall vest in the Litigation Trust; provided, however, that the Litigation Trust, with the consent of the Litigation Trustee, may abandon or otherwise not accept any such Assets that the Litigation Trust believes, in good faith, have no value to the Litigation Trust.  Any Assets the Litigation Trust so abandons or otherwise does not accept shall not vest in the Litigation Trust.  As of the Effective Date, all Assets vested in the Litigation Trust and all Assets dealt with in the Plan, shall be free and clear of all Liens, Claims and Interests except as otherwise specifically provided in the Plan or in the Confirmation Order.

(e) Certain Powers and Duties of Litigation Trust and Litigation Trustee

(i) General Powers of Litigation Trustee. The Litigation Trustee shall be the exclusive trustee of the Assets of the Litigation Trust for purposes of 31 U.S.C. Section 3713(b) and 26 U.S.C. Section 6012(b)(3).  The powers, rights, and responsibilities of the Litigation Trustee shall be specified in the Litigation Trust Agreement and, under the supervision of the Litigation Trust Oversight Committee, and, subject to Section 7.04(b) of the Plan, shall include the authority and responsibility to:  (a) receive, manage, invest, supervise, and protect trust Assets; (b) pay taxes or other obligations incurred by the Litigation Trust; (c) retain and compensate, without further order of the Bankruptcy Court, the services of employees, professionals and consultants to advise and assist in the administration, prosecution and distribution of trust Assets; (d) calculate and implement distributions of trust Assets;
(e) prosecute, compromise, and settle, in accordance with the specific terms of the

Litigation Trust Agreement, the Avoidance Actions vested in the Litigation Trust; and (f) resolve issues involving General Unsecured Claims pursuant to Article IX of this Plan.

(ii) Investments of Cash. The Litigation Trust may invest Cash (including any earnings thereon or proceeds therefrom) as permitted by Bankruptcy Code Section 345 or in other prudent investments to the extent permitted to be made by a liquidating trust within the meaning of Treasury Regulation Section 301.7701-4(d), as reflected therein, or under applicable IRS guidelines, rulings, or other controlling authorities.

(iii) Costs and Expenses of Administration of Litigation Trust. All Litigation Trust Operating Expenses shall be the responsibility of and paid by the Litigation Trust in accordance with the Litigation Trust Agreement.

(iv) Reporting. In no event later than thirty (30) Business Days after the end of the first full month following the Effective Date and on a quarterly basis thereafter until all Cash in the Litigation Trust Operational Reserve and any Disputed Claims Reserve has been released or paid out in accordance with the Plan, the Litigation Trustee shall file with the Bankruptcy Court a report setting forth the amounts, recipients and dates of all Distributions made by the Litigation Trustee under the Plan through each applicable reporting period.

(f) Federal Income Tax Treatment of the Litigation Trust for the Litigation Trust Assets; Tax Reporting and Tax Payment Obligations. For U.S. federal income tax purposes, it is intended that the Litigation Trust (except with respect to the Disputed Claims Reserve) be classified as a liquidating trust under Treasury Regulation Section 301.7701-4. Accordingly, for U.S. federal income tax purposes, it is intended that the Litigation Trust Beneficiaries be treated as if they had received a Distribution from the Estates of an undivided interest in each of the Litigation Trust Assets of the (to the extent of the value of their respective share therein) and then contributed such interests to the Litigation Trust.

(i) Litigation Trust Assets Treated as Owned by Litigation Trust Beneficiaries. For all U.S. federal income tax purposes, all parties shall treat the transfer of Assets (net of applicable liabilities) to the Litigation Trust for the benefit of the Litigation Trust Beneficiaries as (a) a transfer by the Debtors of the Litigation Trust Assets directly to the Litigation Trust Beneficiaries (to the extent of the value of their respective share in the applicable Litigation Trust Assets), followed by (b) the transfer of the Litigation Trust Assets (net of any applicable liabilities) by the Litigation Trust Beneficiaries (to the extent of the value of their respective share in the applicable Litigation Trust Assets) to the Litigation Trust in exchange for the beneficial interests in the Litigation Trust. Accordingly, for U.S. federal income tax purposes, the Litigation Trust (except with respect to the Disputed Claims Reserve associated therewith) shall be treated as a grantor trust, and the Litigation Trust Beneficiaries shall be treated as the grantors and the owners of the Litigation Trust Assets.

(ii) Tax Reporting. The Liquidation Trust shall be responsible for filing all federal, state, local and foreign tax returns, including, but not limited to, any

01:15124892.1

HN\1114473.111114473.17

documentation related thereto for current or former employees, vendors or contractors of the Debtors, for the Debtors and the Liquidation Trust, including with respect to the Disputed Claims Reserve associated therewith. The Liquidation Trust shall file all tax returns for the Liquidation Trust, except with respect to the Disputed Claims Reserve associated therewith, as a grantor trust pursuant to Treasury Regulation Section 1.671-4(a) and in accordance with this Section 7.03. The Litigation Trust shall file tax returns for the Litigation Trust, except with respect to the Disputed Claims Reserve associated therewith, as a grantor trust pursuant to Treasury Regulation Section 1.671-4(a) and in accordance with this Section 7.04. Within a reasonable time following the end of the taxable year, the Litigation Trustee shall send to each holder of a beneficial interest appearing on its record during such year, a separate statement setting forth such holder's share of items of income, gain, loss, deduction or credit and each such holder shall report such items on their federal income tax returns; provided, however, that no such statement need be sent to any beneficiaries that are not expected to receive any Distribution from the Litigation Trust. The Litigation Trustee may provide each such holder of a beneficial interest with a copy of the Form 1041 for the Litigation Trust (without attaching any other holder's Schedule K-1 or other applicable information form) along with such holder's Schedule K-1 or other applicable information form in order to satisfy the foregoing requirement. The Litigation Trustee shall allocate the taxable income, gain, loss, deduction or credit of the Litigation Trust with respect to each holder of a beneficial interest to the extent required by the Tax Code and applicable law.

As soon as possible after the Effective Date, the Litigation Trust shall make a good faith valuation of Assets of the Litigation Trust, and such valuation shall be used consistently by all parties for all federal income tax purposes. The Litigation Trust also shall file (or cause to be filed) any other statements, returns, or disclosures relating to the Liquidation Trust that are required by any Governmental Unit for taxing purposes.

The Litigation Trust shall file all income tax returns with respect to any income attributable to the Disputed Claims Reserve and shall, subject to Section 7.04(f)(iii), pay the federal, state and local income taxes attributable to the Disputed Claims Reserve, based on the items of income, deduction, credit or loss allocable thereto.

The Litigation Trust shall comply with all withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority, and all Distributions made by the Litigation Trust shall be subject to any such withholding and reporting requirements.

(iii) Payment of Taxes. The Litigation Trust shall be responsible for payments of any taxes imposed on the Litigation Trust or the Litigation Trust Assets, including the Disputed Claims Reserve associated therewith. In the event, and to the extent, any Cash retained on account of Disputed Claims in the Disputed Claims Reserve associated with the Litigation Trust is insufficient to pay the portion of any such taxes attributable to the taxable income arising from the Litigation Trust Assets allocable to, or retained on account of, Disputed Claims, such taxes shall be (a) reimbursed from any subsequent Cash amounts retained on account of Disputed Claims, or (b) to the extent such Disputed Claims have subsequently been resolved, deducted from any amounts

- 37 -

distributable by the Liquidation Trust as a result of the resolutions of such Disputed Claims.

(g) Term of Litigation Trust. The Litigation Trustee shall be discharged and the Litigation Trust shall be terminated upon the earlier of (a) such time as (i) all Disputed General Unsecured Claims have been resolved, (ii) all of the Assets of the Litigation Trust have been liquidated, (iii) all duties and obligations of the Litigation Trustee under the Litigation Trust Agreement have been fulfilled, and (iv) all Distributions to holders of Allowed General Unsecured Claims required to be made by the Litigation Trust under the Plan and the Litigation Trust Agreement have been made or (b) such time as (i) all Allowed General Unsecured Claims have been paid in full and (ii) all amounts have been deposited into the Disputed Claims Reserve for any remaining Disputed General Unsecured Claims; provided, however, that in no event shall the Litigation Trust be dissolved later than five (5) years from the Effective Date unless the Bankruptcy Court, upon motion within the six-month period prior to the fifth anniversary (or the end of any extension period approved by the Bankruptcy Court), determines that a fixed period extension (not to exceed three (3) years, together with any prior extensions, without a favorable letter ruling from the IRS that any further extension would not adversely affect the status of the Litigation Trust as a liquidating trust for federal income tax purposes) is necessary to facilitate or complete the recovery and Litigation of the Assets of the Litigation Trust.  Upon the discharge of the Litigation Trustee and termination of the Litigation Trust, any remaining Assets of the Litigation Trust shall be distributed to the Liquidation Trust for Distribution under the Plan and Liquidation Trust Agreement.

(h) The Litigation Trust Oversight Committee.

(i) Appointment of the Litigation Trust Oversight Committee.  On the Effective Date, the Litigation Trust Oversight Committee shall be formed pursuant to the Litigation Trust Agreement.  The Litigation Trust Oversight Committee shall be comprised of no more than three (3) members, all of whom shall be selected by the Official Creditors' Committee.

(ii) Authority of the Litigation Trust Oversight Committee.  The Litigation Trust Oversight Committee shall have the rights and responsibilities provided for in the Litigation Trust Agreement.  The Litigation Trustee shall report all material matters (as described in the Litigation Trust Agreement) to and seek approval for all material decisions (as described in the Litigation Trust Agreement) from the Litigation Trust Oversight Committee.

**Section 7.03** Section 7.05 **Investigations Aiding Administration of the Estates**.

The Plan is predicated on the understanding, and constitutes an acknowledgment by all parties-in-interest, that the preservation for the Liquidation Trust and Litigation Trust of any and all rights to conduct investigations pursuant to Bankruptcy Rule 2004 is necessary and relevant to the Chapter 11 Cases.   Accordingly, any and all rights to conduct investigations pursuant to Bankruptcy Rule 2004 held by the Debtors prior to the Effective Date shall vest with the Liquidation Trust and Litigation Trust and shall continue until dissolution of the

Liquidation ~~Trust and/or Litigation~~ Trust, as if neither the Confirmation Date nor the Effective Date had occurred.

**Section 7.04**   ~~Section 7.06~~ **Prosecution and Resolution of Causes of Action.**

   **(a)**   ~~Section 7.06~~ **The Liquidation Trust's Exclusive Authority to Pursue, Settle, or Abandon Estate Causes of Action.**

   ~~.~~ From and after the Effective Date, prosecution and settlement of all Estate Causes of Action shall be the sole responsibility of the Liquidation Trust pursuant to this Plan and the Confirmation Order.  From and after the Effective Date, the Liquidation Trust shall have exclusive rights, powers, and interests of the Estates to pursue, settle or abandon such Estate Causes of Action as the sole representative of the Estates pursuant to Bankruptcy Code Section 1123(b)(3).  All Estate Causes of Action are reserved and preserved to the extent set forth in this Plan and shall not be impacted or affected in any way by deemed consolidation of the Estates as provided in Article II.

   (b)   **Settlement of Estate Causes of Action**.  Settlement by the Liquidation Trust of any Estate Cause of Action shall require (i) approval only of the Liquidation Trustee, if the amount claimed by the Liquidation Trust against a defendant is less than **or equal to** two million ~~five hundred thousand~~ dollars (~~$2,500,000~~**2,000,000**); **and** (ii) approval only of the Liquidation Trustee and **a majority of** the Liquidation Trust Oversight Committee, if the amount claimed by the Liquidation Trust against a defendant is more than two million ~~five hundred thousand~~ dollars  (~~$2,500,000) but less than five million dollars ($5,000,000); and (iii)~~**2,000,000);** ***provided* that, as set forth in the Liquidation Trust Agreement, any settlement of any Estate Cause of Action that presents a conflict of interest between TPT and the Estates shall require unanimous** approval of the Liquidation ~~Trustee, the Liquidation~~ Trust Oversight Committee**, and or approval by** the Bankruptcy Court~~, if the amount claimed by the Liquidation Trust against a defendant is unliquidated or equals to or exceeds five million dollars ($5,000,000)~~ **after notice and a hearing**.

   ~~(c)   The Litigation Trust's Exclusive Authority to Pursue, Settle, or Abandon Avoidance Actions.   From and after the Effective Date, prosecution and settlement of all Avoidance Actions shall be the sole responsibility of the Litigation Trust pursuant to this Plan and the Confirmation Order.  From and after the Effective Date, the Litigation Trust shall have exclusive rights, powers, and interests of the Estates to pursue, settle or abandon such Avoidance Actions as the sole representative of the Estates pursuant to Bankruptcy Code Section 1123(b)(3).  All Avoidance Actions are reserved and preserved to the extent set forth in this Plan and shall not be impacted or affected in any way by deemed consolidation of the Estates as provided in Article II.~~

   ~~(d)  Settlement of Avoidance Actions.   Settlement by the Litigation Trust of any Avoidance Action shall require:  (i) approval only of the Litigation Trustee, if the amount claimed by the Litigation Trust against a defendant is less than two million five hundred thousand dollars ($2,500,000); (ii) approval only of the Litigation Trustee and the Litigation Trust Oversight Committee, if the amount claimed by the Litigation Trust against a defendant is more than two million five hundred thousand dollars ($2,500,000)~~

01:15124892.1

HN\~~1114473.11~~1114473.17

~~but less than five million dollars ($5,000,000); and (iii) approval of the Litigation Trustee, the Litigation Trust Oversight Committee, and the Bankruptcy Court, if the amount claimed by the Litigation Trust against a defendant is unliquidated or equals to or exceeds five million dollars ($5,000,000)~~

**Section 7.05** ~~Section 7.07~~ **Cancellation of Documents**.  On the Effective Date, except to the extent otherwise provided in the Plan, all notes, instruments, debentures, certificates and other documents evidencing Claims and Interests in a Debtor or the Debtors including, without limitation, the Senior Secured Notes and the GFES Interests, shall, with respect to the Debtors, be canceled and deemed rejected and terminated.

Notwithstanding the foregoing and anything else contained in the Plan, the Senior Secured Notes Indenture will continue in effect for purposes of permitting (i) Distributions to be made pursuant to the Senior Secured Notes Indenture in accordance with the Plan, Confirmation Order, and Liquidation Trust Agreement, and for the Senior Secured Notes Indenture Trustee to perform such necessary functions with respect thereto and (ii) the Senior Secured Notes Indenture Trustee to enforce its rights and those of the Senior Secured Noteholders under the Plan, Confirmation Order, and Liquidation Trust Agreement in the Chapter 11 Cases and any appeals.

Once the Senior Secured Notes Indenture Trustee has completed performance of all of its duties set forth in this Plan or in connection with any Distributions to be made under this Plan, if any, the Senior Secured Notes Indenture Trustee, and its successors and assigns, shall be relieved of all obligations under the Senior Secured Notes Indenture.

**Section 7.06** ~~Section 7.08~~ **Termination of Official Creditors' Committee**.  Except with respect to the filing or review of Final Fee Applications, the appointment of the Official Creditors' Committee shall terminate on the Effective Date, and the members of the Official Creditors' Committee (solely in their capacities as such) shall be released and discharged from all further rights and duties arising from or related to such roles in the Chapter 11 Cases.

**Section 7.07** ~~Section 7.09~~ **Filing of Monthly and Quarterly Reports and Payment of Statutory Fees**.  The filing of the final monthly report (for the month in which the Effective Date occurs) and all subsequent quarterly reports shall be the responsibility of the Liquidation Trustee.  All Statutory Fees with respect to the period prior to the Effective Date shall be paid by the Debtors in Cash on the Effective Date or other required payment date.  With respect to the period after the Effective Date, the Liquidation Trustee shall be obligated to pay quarterly Statutory Fees to the Office of the United States Trustee and such obligation shall continue until such time as a particular Chapter 11 Case is closed, dismissed or converted.

**Section 7.08** ~~Section 7.10~~ **Termination of Boards and Officers**.  Notwithstanding anything to the contrary in the Plan, on and after the Effective Date, the respective Boards of Directors of GFES, Hub City and Proppant One shall be terminated and all of the officers and directors of GFES, Hub City and Proppant One, to the extent they have not already done so, shall be deemed to have resigned from their respective positions with GFES, Hub City or Proppant One, as applicable.  Following the Confirmation Date and prior to the occurrence of the Effective Date, the then-current officers and directors of each of the Debtors shall continue in their

respective capacities and the Debtors shall execute such documents and take such other action as is necessary to effectuate the actions provided for in this Plan.

**Section 7.09** ~~Section 7.11~~ **Dissolution of Hub City and Proppant One**.  As soon as practicable after the Effective Date, Hub City and Proppant One will be dissolved for all purposes without the necessity for any other or further actions to be taken by or on behalf of the Debtors or payments to be made in connection therewith.  Pursuant to Bankruptcy Code Section 1142(b), the Liquidation Trustee shall be authorized to file and shall file with the official public office for keeping corporate records in Hub City's and Proppant One's state of incorporation a certificate of dissolution or equivalent document, and may take any other action before any state governmental body or court that the Liquidation Trustee deems to be necessary or appropriate to complete the dissolution and winding-up including, but not limited to, any actions contemplated in Sections 275-283 of the DGCL.  For purposes of the preceding sentence, this Plan shall constitute a plan of distribution as contemplated in the DGCL.  The certificate of dissolution or equivalent document may be executed by the Liquidation Trustee without need for any action or approval by the shareholders or Board of Directors of any Debtor.  From and after the Effective Date, Hub City and Proppant One (a) for all purposes shall be deemed to have withdrawn their business operations from any state in which they were previously conducting, or are registered or licensed to conduct, their business operations, and shall not be required to file any document, pay any sum or take any other action in order to effectuate such withdrawal, (b) shall be deemed to have cancelled pursuant to this Plan all Interests, and (c) shall not be liable in any manner to any taxing authority for franchise, business, license or similar taxes accruing on or after the Effective Date.  For the avoidance of doubt, the dissolution of Hub City and Proppant One shall not have any effect, in any manner, on the Estate Causes of Action that the Liquidation Trustee may assert in accordance with the Plan and the Liquidation Trust Agreement ~~or the Avoidance Actions that the Litigation Trustee may assert in accordance with the Plan and the Liquidation Trust Agreement~~.

**Section 7.10** ~~Section 7.12~~ **Closing of Certain of the Debtors' Chapter 11 Cases**. At the Confirmation Hearing, the Debtors shall seek entry of separate orders providing that the Chapter 11 Cases of Hub City and Proppant One shall be closed for all purposes as of the filing of the notice of Effective Date.  For the avoidance of doubt, the closing of such cases shall not have any effect, in any manner, on the Estate Causes of Action that the Liquidation Trustee may assert in accordance with the Plan and the Liquidation Trust Agreement ~~or the Avoidance Actions that the Litigation Trustee may assert in accordance with the Plan and Litigation Trust Agreement~~. The Main Case shall remain open and subject to the provisions of this Section 7.12. Notwithstanding anything to the contrary in the Bankruptcy Rules providing for earlier closure of the Main Case, when all Assets contributed to the Liquidation Trust in accordance with Section 7.03(d) ~~and to the Litigation Trust in accordance with Section 7.04(d) above~~ have been liquidated and converted into Cash (other than those Assets abandoned by the Liquidation Trust), and such Cash has been distributed in accordance with the Liquidation Trust Agreement and this Plan, the Liquidation Trustee shall seek authority from the Bankruptcy Court to close the Main Case in accordance with the Bankruptcy Code and the Bankruptcy Rules.

01:15124892.1

HN\~~1114473.11~~1114473.17

**Section 7.11** ~~Section 7.13~~ **Corporate Authorization**.  On the Effective Date, all matters provided for under this Plan that would otherwise require approval of the stockholders, directors, members or managers of one or more of the Debtors shall be deemed to have occurred and shall be in effect from and after the Effective Date pursuant to Section 303 of the DGCL or other applicable law of the states in which the Debtors are organized, without any requirement of further action by the stockholders, directors, members, or managers of the Debtors.  After the Effective Date, to the extent necessary, the Liquidation Trustee shall have all authority to address any and all matters that would have required the approval of, and to act on behalf of, the stockholders, directors, members or managers of one or more of the Debtors.

**Section 7.12** ~~Section 7.14~~**Effectuating Documents and Further Transactions**.  Prior to the Effective Date, the Debtors shall be authorized to execute, deliver, file, or record such documents, contracts, instruments, and other agreements and take such other actions as may be reasonably necessary to effectuate and further evidence the terms and conditions of the Plan. After the Effective Date, the Liquidation Trust shall be authorized to execute, deliver, file, or record such documents, contracts, instruments, and other agreements and take such other actions as may be reasonably necessary to effectuate and further evidence the terms and conditions of the Plan.

**Article VIII**~~ARTICLE VIII~~

**EXECUTORY CONTRACTS AND LEASES**

Section 8.01    **Rejection of Contracts and Leases**.  Subject to Sections 8.03 and 8.04 of the Plan, each executory contract or unexpired lease of the Debtors that has not expired by its own terms prior to the Effective Date, and that (a) has not been assumed and assigned, or rejected pursuant to such process or by order of the Bankruptcy Court during the Chapter 11 Cases prior to the Effective Date, (b) is not the subject of a motion to assume or a motion or permitted notice to assume and assign in each case filed as of the Effective Date, shall be deemed rejected pursuant to Bankruptcy Code Section 365 as of the Effective Date.  The Confirmation Order shall constitute a Final Order of the Bankruptcy Court approving the rejection of such executory contract or unexpired lease.  Any executory contract or unexpired lease that has been assumed by the Debtors but not assigned to any other party shall be transferred to the Liquidation Trust on the Effective Date unless expressly provided for otherwise in an order of the Bankruptcy Court, and the Liquidation Trust shall thereafter have all rights and obligations of the Debtors under such assumed contract or lease.

Section 8.02    **Bar Date For Rejection Damages**.  If the rejection of any executory contract or unexpired lease under the Plan gives rise to a Claim by the non-Debtor party or parties to such contract or lease, such Claim shall be forever barred and shall not be enforceable against the Estates, the Liquidation Trust, ~~the Litigation Trust,~~ their successors or properties, unless a Proof of Claim filed with the Claims Agent and served on the Liquidation ~~Trust and the Litigation~~ Trust within thirty (30) days after the date of notice of the entry of the order of the Bankruptcy Court rejecting the executory contract or unexpired lease, which may include, if applicable, the Confirmation Order.  Any such timely filed Claim shall be classified in Class 6.

01:15124892.1

HN\~~1114473.11~~1114473.17

Section 8.03  **Continuing Obligations of Certain Third Parties to the Debtors**. Continuing obligations of third parties to the Debtors under insurance policies, contracts, or leases that have otherwise ceased to be executory or have otherwise expired on or prior to the Effective Date, including, without limitation, continuing obligations to pay insured claims, to defend against and process claims, to refund premiums or overpayments, to provide indemnification, contribution or reimbursement, to grant rights of first refusal, to maintain confidentiality, or to honor releases, shall continue and shall be binding on such third parties notwithstanding any provision to the contrary in the Plan, unless otherwise specifically terminated by the Debtors or by order of Bankruptcy Court. The deemed rejection provided by Section 8.01 of the Plan shall not apply to any such continuing obligations.

Section 8.04  **Treatment of Certain Insurance Policies**.  Nothing in the Plan, including any releases, shall diminish or impair the enforceability of any policies of insurance that cover claims against the Debtors or any other Person, and all such policies shall vest in the Liquidation Trust as of and subject to the occurrence of the Effective Date.  For the avoidance of doubt, to the extent such policies of insurance are executory contracts subject to assumption pursuant to section 365 of the Bankruptcy Code, such policies of insurance shall not be deemed assumed by the Liquidation Trust, and (i) the self-insured portion of Claims arising under any insurance policies held by the Debtors prior to the Petition Date shall, as to the Debtors, be treated as Class 6 General Unsecured Claims and (ii) the Debtors shall not be obligated to pay any deductibles or self-insured retentions or take other actions with respect thereto.

## Article IX~~ARTICLE IX~~

## DISPUTED, CONTINGENT AND
## UNLIQUIDATED CLAIMS AND INTERESTS

Section 9.01  **Objections to Claims and Interests**.

(a)  The Claims/Interest Objection Deadline shall be the first Business Day that is one hundred twenty (120) days after the Effective Date unless such date is extended one or more times by the Bankruptcy Court upon motion of ~~(a)~~ the Liquidation Trustee with respect to all Claims and Interests ~~other than the Class 6 General Unsecured Claims and (b) the Litigation Trustee with respect to the Class 6 General Unsecured Claims~~; provided, however, that the last date for filing Avoidance Actions against a holder of a Claim or Interest shall be the date established by Bankruptcy Code Section 546(a) and the last day for asserting any other Estate Cause of Action shall be the last day of the applicable statute of limitations therefor provided under applicable non-bankruptcy law, as such period may have been extended by Bankruptcy Code Section 108 or any other section of the Bankruptcy Code or other applicable law; provided further, however, that no Entity or Person (including the Liquidation Trust, any holder of Claims, or any holder of Interests) may file an objection to any Claim deemed Allowed by the Plan, and any such objection shall be deemed null and void.

(b)  With the exception of objections filed by the Debtors or the Official Creditors' Committee before the Effective Date, ~~(a)~~ the Liquidation Trust shall have the exclusive responsibility for reviewing and objecting to the Allowance of any Claim or Interest filed in the Chapter 11 Cases ~~other than the Class 6 General Unsecured Claims and (b) the Litigation~~

- 43 -

~~Trust shall have the exclusive responsibility for reviewing and objecting to the Allowance of any Class 6 General Unsecured Claim.~~ In the event that any objection filed by the Debtors or the Official Creditors' Committee remains pending as of the Effective Date, the Liquidation Trustee ~~or Litigation Trustee, as applicable,~~ shall be deemed substituted for the Debtors or the Official Creditors' Committee, as applicable, as the objecting party.  All objections shall be litigated to a Final Order; provided, however, that ~~(a)~~ the Liquidation Trust may compromise and settle any objections to Claims or Interests ~~other than the Class 6 General Unsecured Claims and (b) the Litigation Trust may compromise and settle any objections to Class 6 General Unsecured Claims, in each case~~ subject to the provisions of this Article IX without further order of the Bankruptcy Court; provided further, however, that Distributions may be made to a holder of a Claim or Interest prior to the expiration of the Claims/Interests Objection Deadline if the Liquidation Trustee ~~or Litigation Trustee, as applicable,~~ reasonably believes that no basis exists for objection to such holder's Claim or Interest.  Notwithstanding the foregoing, nothing in this Plan shall be interpreted to operate as a waiver or release of (i) any right that any party-in-interest may have to object to (a) any Claim or Interest through the Effective Date or (b) any Fee Claim after the Effective Date; or (ii) any objection to Claims or Interests pending as of the Effective Date but before the Fee Claims Bar Date, regardless of whether such objection was brought by the Debtors or any other party-in-interest.

(c)     Objections to Claims or Interests shall not be subject to any defense, including, without limitation, res judicata, estoppel or any other defense because of the Confirmation of the Plan.  Additionally, the rights of the Liquidation Trust ~~or Litigation Trust, as applicable,~~ to amend, modify or supplement any objection to a particular Claim or Interest to include relief pursuant to Bankruptcy Code Section 502(d) are hereby preserved.

Section 9.02   **Estimation of Claims or Interests**.   Through the Claims/Interests Objection Deadline, ~~(a)~~ the Liquidation Trust may request that the Bankruptcy Court enter an Estimation Order fixing the value of, pursuant to Bankruptcy Code Section 502(c), any contingent or unliquidated Claim or Interest or Equitable Right to Payment ~~other than a Class 6 General Unsecured Claim, and (b) the Litigation Trust may request that the Bankruptcy Court enter an Estimation Order fixing the value of, pursuant to Bankruptcy Code Section 502(c), any contingent or unliquidated Class 6 General Unsecured Claim or Equitable Right to Payment that constitutes a Class 6 General Unsecured Claim,~~ regardless ~~in the case of either clause (a) or (b)~~ of whether a Debtor has previously objected to such Claim, Interest or Equitable Right to Payment, provided that a Final Order or unstayed order has not previously been entered by the Bankruptcy Court with respect to such Claim, Interest or Equitable Right to Payment or any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any contingent or unliquidated Claim or Interest or Equitable Right to Payment at any time during litigation concerning any objection to any contingent or unliquidated Claim or Interest or Equitable Right to Payment, including during the pendency of any appeal relating to any such objection.  In the event that the Bankruptcy Court enters an Estimation Order estimating any contingent or unliquidated Claim or Interest or Equitable Right to Payment, the amount of such estimation will constitute either the Allowed amount of such Claim, Interest or Equitable Right to Payment or a maximum limitation on such Claim, Interest or Equitable Right to Payment, as determined by the Bankruptcy Court in the absence of a stay of such order pending appeal.  If a Claim has been estimated for an amount less than the Face Amount and the

01:15124892.1

HN\~~1114473.11~~1114473.17

Claim holder has obtained a stay pending appeal, the Liquidation Trust ~~or Litigation Trust, as applicable,~~ must reserve for the Face Amount of such Claim pending resolution of such appeal. If the estimated amount constitutes a maximum limitation on such Claim, Interest or Equitable Right to Payment, the Liquidation Trust ~~or Litigation Trust,~~ as applicable, may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim, Interest or Equitable Right to Payment. All of the aforementioned Claims, Interests and Equitable Right to Payment objection, estimation and resolution procedures are cumulative and are not necessarily exclusive of one another. Claims, Interests and Equitable Rights to Payment may be estimated and thereafter resolved by any mechanism permitted under the Bankruptcy Code or the Plan.

Section 9.03    **Amendments to Claims or Interests**.   After the Confirmation Date, a Claim or Interest may not be filed or amended without the authorization of the Bankruptcy Court and, even with such Bankruptcy Court authorization, may be amended by the holder of such Claim or Interest solely to decrease, but not to increase, the amount, number or priority of such Claim or Interest, unless otherwise provided by the Bankruptcy Court.

Section 9.04    **Authority To Settle Disputed Claims or Interests**.   From and after the Effective Date, ~~(a)~~ the Liquidation Trust shall be authorized with respect to those Claims or Interests~~, other than Class 6 General Unsecured Claims,~~ that are not Allowed pursuant to the terms herein or by Final Order, pursuant to Bankruptcy Rule 9019 and Bankruptcy Code Section 105(a), **without approval of the Bankruptcy Court, (a)** to compromise and settle Disputed Claims with ~~approval of only the Liquidation Trustee if the~~ Disputed amount ~~in excess of~~is less than or equal to two million ~~five hundred thousand~~ dollars ($~~2,500,000), upon Bankruptcy Court approval of such settlement~~2,000,000), and (b) ~~the Litigation Trust shall be authorized with respect to the Class 6 General Unsecured Claims that are not Allowed pursuant to the terms herein or by Final Order, pursuant to Bankruptcy Rule 9019 and Bankruptcy Code Section 105(a),~~ to compromise and settle Disputed Claims with ~~a~~approval only of the Liquidation Trust Oversight Committee if the Disputed amount ~~in excess of~~is more than two million ~~five hundred thousand~~ dollars ($~~2,500,000), upon Bankruptcy Court approval of such settlement.  Notwithstanding any prior order of~~2,000,000); *provided* that, as set forth in the Liquidation Trust Agreement, any settlement of any Disputed Claim that presents a conflict of interest between TPT and the Estates shall require unanimous approval of the Liquidation Trust Oversight Committee or approval by the Bankruptcy Court ~~or the provisions of Bankruptcy Rule 9019, (x) the Liquidation Trust may settle or compromise any Disputed Claim, other than a Class 6 General Unsecured Claim, with a Disputed amount of two million five hundred thousand dollars ($2,500,000) or less without approval of the Bankruptcy Court and (y) the Litigation Trust may settle or compromise any Disputed Class 6 General Unsecured Claim, with a Disputed amount of two million five hundred thousand dollars ($2,500,000) or less without approval of the Bankruptcy Court.~~after notice and a hearing.

Section 9.05    **No Recourse**.  Notwithstanding that the Allowed amount of any particular Disputed Claim or number of Disputed Interests is reconsidered under the applicable provisions of the Bankruptcy Code and Bankruptcy Rules or is Allowed in an amount or number for which there is insufficient value in the relevant fund or reserve to provide a recovery equal to that received by other holders of Allowed Claims or Interests in the relevant Class, with respect to

- 45 -

such Claim or Interest no holder shall have recourse to the Liquidation ~~Trust, the Litigation~~ Trust, the Estates, the Debtors, any member thereof, any of their professionals, the holder of any other Claim or Interest, or any of their respective property.  However, nothing in the Plan shall modify any right of a holder of a Claim or Interest under Bankruptcy Code Section 502(j).  Thus, the Bankruptcy Court's entry of an Estimation Order may limit the Distribution to be made on individual Disputed Claims or Interests, regardless of the amount or number finally Allowed on account of such Disputed Claims or Interests.

### Article X~~ARTICLE X~~

### PROVISIONS GOVERNING DISTRIBUTIONS

Section 10.01  **Delivery of Distributions Generally**.

Distributions to holders of Allowed Claims (other than holders of Allowed Senior Noteholder Claims) shall be made by the Disbursing Agents, assuming the availability of funds and the economic feasibility of Distributions, at such time as required by the Plan: (a) at the addresses set forth in the Proofs of Claim or Requests for Payment by such holders; (b) at the addresses set forth in any written notices of address change filed or delivered after the date on which any related Proof of Claim or Request for Payment was filed to (i) if such notice is filed or delivered on or prior to the Effective Date, the Debtors and the Claims Agent or (ii) if such notice is filed or delivered after the Effective Date, the Liquidation Trustee, ~~Litigation Trustee~~ and the Claims Agent; or (c) at the addresses reflected in the Schedules relating to the applicable Allowed Claim if no Proof of Claim has been filed and none of the Debtors or the Liquidation Trustee, ~~Litigation Trustee~~ and the Claims Agent have received a written notice of a change of address.

Section 10.02  **Distributions Through the Senior Secured Notes Indenture Trustee**.

Distributions for the benefit of the holders of Allowed Claims in Class 4 shall be made to the Senior Secured Notes Indenture Trustee in accordance with such instructions as the Senior Secured Notes Indenture Trustee shall provide to the Debtors or the Liquidation Trustee, as appropriate.  The Senior Secured Notes Indenture Trustee shall, in turn, promptly administer the Distributions to the beneficial holders of Allowed Claims in Class 4 in accordance with the Plan and the Senior Secured Notes Indenture.  The Liquidation Trustee shall pay in the ordinary course upon the presentation of invoices by the Senior Secured Notes Indenture Trustee the reasonable fees and expenses incurred by the Senior Secured Notes Indenture Trustee in making such Distributions.

Section 10.03  **Provisions Concerning Disputed Claims Reserve**.

(a)  **Establishment of Disputed Claims Reserve**.  On the Initial Distribution Date for any particular Class of Claims, and in connection with making all Distributions required to be made under the Plan, the Liquidation Trustee, ~~or the Litigation Trustee with respect to Distributions to Class 6 General Unsecured Claims,~~ shall establish a reserve fund or funds solely from Assets allocable to, or retained on account of, such Disputed Claims (each such reserve fund, collectively, the "Disputed Claims Reserve") for Cash Distributions pertaining to

01:15124892.1

- 46 -

each Disputed Claim in each relevant Class, as necessary pursuant to the Plan. All Cash distributed into the Disputed Claims Reserve shall be maintained in one or more interest-bearing accounts at a qualified institution, consistent with the Liquidation Trust Agreement ~~or Litigation Trust Agreement, as applicable~~.

(b)    **Amounts to Be Reserved**.    On the Initial Distribution Date and on any subsequent interim Distribution Date, the Liquidation Trustee with respect to any Distribution Date for any Claim or Interest ~~other than Class 6 General Unsecured Claims, or the Litigation Trustee with respect to any Distribution Date for Class 6 General Unsecured Claims,~~ shall reserve (i) with respect to each Disputed Claim that is liquidated, the Ratable proportion of all Cash allocated for Distribution on account of such Disputed Claim based upon the Face Amount of each such Disputed Claim, or such lesser amount as may be agreed to in writing by the holder of the Claim and the Liquidation Trustee or ~~Litigation Trustee, as applicable, or~~ as may be determined by the Bankruptcy Court, as applicable, or (ii) with respect to each Disputed Claim that is unliquidated (including any unliquidated fees, penalties, charges or other similar amounts), such amount as shall be sufficient, as either (a) determined by order of the Bankruptcy Court upon motion of the Liquidation Trustee ~~or Litigation Trustee, as applicable,~~ seeking a determination as to the appropriate amount to reserve, or (b) agreed to in writing by the holder of the Claim and the Liquidation Trustee ~~or Litigation Trustee, as applicable,~~ as the maximum amount that could be owed in the event the Claim were ultimately Allowed.  All Cash allocable to the Disputed Claims in the relevant Class hereunder shall be distributed by the Liquidation Trustee ~~or Litigation Trustee, as applicable,~~ to the relevant Disputed Claims Reserve on the Initial Distribution Date (or such other date on which Distributions for any particular Class of Claims are made pursuant to the Plan).

(c)    **Distributions**.    Unless otherwise required by the applicable treatment provisions of the Plan (including with respect to Administrative Claims, Fee Claims, Priority Tax Claims, Other Secured Claims, Priority Non-Tax Claims, and DIP Claims) payments on any Disputed Claim or, if applicable Disputed Interest, that becomes an Allowed Claim or Allowed Interest shall be distributed on the first Interim Distribution Date after the Claim or, if applicable Interest, is Allowed.  Distributions shall be made only to the extent of the aggregate Distributions that the holder of any such Allowed Claim or Allowed Interest would have received had such Claim or Interest been Allowed as of the Effective Date less any taxes paid with respect to amounts held in the Disputed Claims Reserve.

(d)    **Termination of Disputed Claims Reserve**.  Each Disputed Claims Reserve shall be closed and extinguished by the Liquidation Trustee ~~or Litigation Trustee, as applicable,~~ when all Distributions and other dispositions of Cash or other property required to be made therefrom under the Plan and the Liquidation Trust Agreement ~~or Litigation Trust Agreement, as applicable,~~ have been made.  Upon closure of a Disputed Claims Reserve, all Cash and other property held in that Disputed Claims Reserve shall revest in the Liquidation Trust ~~or Litigation Trust, as applicable,~~ and such Cash and property shall first be Ratably distributed to the other holders of Allowed Claims in the Class in respect of which such Disputed Claims Reserve was created, except as otherwise provided in Article V of the Plan, and once the Claims in such Class are paid in full, shall be distributed to holders of Allowed Claims in the order of the priority established by the Plan.

01:15124892.1

HN\~~1114473.11~~1114473.17

Section 10.04  **Transmittal of Distributions and Notices**.  Any property or notice that an Entity or Person is or becomes entitled to receive pursuant to the Plan may be delivered by regular mail, postage prepaid, in an envelope addressed to that Entity or Person's Distribution Address (or, in the case of the Senior Secured Notes to the Senior Secured Notes Indenture Trustee).  Property distributed in accordance with this Section 10.04 shall be deemed delivered to such Entity or Person regardless of whether such property is actually received by that Entity or Person.  A holder of a Claim or Interest may designate a different Distribution Address by notifying, after the Effective Date, the Liquidation Trustee, ~~the Litigation Trustee~~ and the Claims Agent of that address in writing.  Such notification shall be effective only upon receipt. The address of the Liquidation Trust shall be identified in the Liquidation Trust Agreement and may be changed by the Liquidation Trust upon filing a notice of such address change with the Bankruptcy Court, which notice shall be delivered to all parties entitled to notice under Bankruptcy Rule 2002.  ~~The address of the Litigation Trust shall be identified in the Litigation Trust Agreement and may be changed by the Litigation Trust upon filing a notice of such address change with the Bankruptcy Court, which notice shall be delivered to all parties entitled to notice under Bankruptcy Rule 2002.~~  Notwithstanding the foregoing, Distributions to the Senior Secured Notes Indenture Trustee shall be made in accordance with the provisions of Section 10.02 of the Plan.

Section 10.05  **Setoffs**.  The Liquidation Trust ~~or Litigation Trust, as applicable,~~ may, but shall not be required to, setoff against any Claim (for purposes of determining the Allowed amount of such Claim on which Distribution shall be made), any claims of any nature whatsoever that the Estates or the Liquidation Trust ~~or Litigation Trust~~ may have against the Claim holder, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Liquidation ~~Trust or Litigation~~ Trust of any such claim it may have against such Claim holder.  Holders of Allowed Claims retain whatever rights to setoff they are otherwise entitled to assert under Bankruptcy Code Section 553.

Section 10.06  **Withholding and Reporting Requirements**.  In connection with the Plan and all Distributions hereunder, the Liquidation ~~Trustee and Litigation~~ Trustee shall, to the extent applicable, comply with all tax withholding and reporting requirements imposed by any federal, state, provincial, local, or foreign taxing authority, and all Distributions hereunder shall be subject to any such withholding and reporting requirements.  The Liquidation Trustee ~~and Litigation Trustee~~ shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements.

Section 10.07  **Postpetition Interest on Claims**.  Unless otherwise specifically provided for in the Plan or the Confirmation Order, postpetition interest shall not accrue or be paid on Claims or, if applicable, Interests, and no holder of a Claim or Interest shall be entitled to interest accruing on or after the Petition Date on any Claim.  Interest shall not accrue or be paid upon any Claim or, if applicable, Interest in respect of the period from the Effective Date to the date a final Distribution is made thereon if and after such Claim becomes an Allowed Claim.  No holder of a Claim shall be entitled to receive interest earned on a Disputed Claims Reserve.

Section 10.08  **Undeliverable Distributions**. No Distributions shall be made with respect to Unclaimed Property.  Any Distribution that is determined to be Unclaimed Property shall be transferred to or retained in the Liquidation Trust Distribution Account for further disposition in

accordance with the Plan.  Nothing contained in the Plan shall require the Liquidation Trustee ~~or the Litigation Trustee~~ to attempt to locate any holder of an Allowed Claim.

Section 10.09  **Allocation of Plan Distributions between Principal and Interest**.  To the extent that any Allowed Claim entitled to a Distribution under the Plan is comprised of indebtedness and accrued but unpaid interest thereon, such Distribution shall be allocated to the principal amount of the Claim first and then, to the extent the consideration exceeds the principal amount of the Claim, to the portion of such Claim representing accrued but unpaid interest.

Section 10.10  **Disputed Identity of Holder**.  If any dispute arises as to the identity of a holder of an Allowed Claim who is to receive any Distribution, the Liquidation Trust ~~or Litigation Trust, as applicable,~~ may, in lieu of making such Distribution to such Entity or Person, make such Distribution into an escrow account until the disposition thereof shall be determined by the Bankruptcy Court or by written agreement among the interested parties to such dispute; provided, however, that if the dispute remains unresolved by Final Order for an unreasonable period of time, the Liquidation Trust ~~or Litigation Trust, as applicable,~~ may request that the Bankruptcy Court order that the property that is the subject of the dispute shall irrevocably become Unclaimed Property.

Section 10.11  **Transfers of Claims and Interest/Distribution Record Date**.  As of the Effective Date, the various transfer registers for each of the Classes of Claims or Interests as maintained by the Debtors or their agents, shall be deemed closed, and there shall be no further changes in the holders of record of any of the Claims or Interests.  No party, including but not limited to the Liquidation Trust ~~and Litigation Trust~~, shall have any obligation to recognize any transfer of the Claims or Interests occurring after the Effective Date unless notice of the transfer of such Claim or Interest, in form and substance satisfactory to the Liquidation Trust ~~or Litigation Trust, as applicable,~~ shall have been received by the Liquidation Trust ~~or Litigation Trust, as appropriate,~~ prior to the Effective Date.  Subject to the immediately preceding sentence, only those holders of record stated on the transfer ledgers as of the close of business on the Effective Date, to the extent applicable, shall be entitled to be recognized for all purposes hereunder.

Section 10.12  **Method of Cash Distributions**.  Any Cash payment to be made by the Liquidation Trust ~~or the Liquidation Trust~~ pursuant to the Plan may be made, at the sole discretion of the Liquidation Trust ~~or Litigation Trust,~~ by draft, check, wire transfer, or as otherwise required or provided in any relevant agreement or applicable law.  Any payment or Distribution due on a day other than a Business Day shall be made, without interest, on the next Business Day.

Section 10.13  **De Minimis Distributions**.  No Cash payment in an amount less than fifty dollars ($50.00) shall be made by the Liquidation Trust ~~or the Litigation Trust~~ to any holder of a Claim or Interest.  Cash that otherwise would be payable  to holders of Claims or Interests~~, other than the Class 6 General Unsecured Claims,~~ under the Plan but for this Section 10.13 shall be available for use by the Liquidation Trustee to pay Liquidation Trust Operating Expenses and make Distributions.  ~~Cash that otherwise would be payable  to holders of Class 6 General Unsecured Claims under the Plan but for this Section 10.13 shall be available for~~

01:15124892.1

HN\\~~1114473.11~~1114473.17

~~use by the Litigation Trustee to pay Litigation Trust Operating Expenses and make Distributions.~~

Section 10.14  **Treatment of Unclaimed Property; Remaining Available Cash**. Unclaimed Property shall be considered Available Cash and may be used to pay Liquidation Trust Operating Expenses or to fund Distributions by the Liquidation Trustee under the Plan; provided, however, that the Liquidation Trust shall not be obligated to make Distributions to a Class of Claims or Interests if the amount of the Available Cash is de minimis and is not sufficient to warrant the incurrence of costs in making the Distribution.  In the event the Liquidation Trustee holds Available Cash after all Liquidation Trust Operating Expenses and Distributions are made~~, including Distributions to the holders of Class 6 General Unsecured Claims by the Litigation Trustee,~~ such remaining Available Cash shall be distributed to A Better Chicago, a charitable organization.  Neither Available Cash nor any Claim or any Unclaimed Property attributable to such Claim, shall escheat to any federal, state or local government or other entity.

Section 10.15  **No Distribution in Excess of Allowed Amount of Claim**. Notwithstanding anything to the contrary herein, no holder of an Allowed Claim shall receive in respect of such Claim any Distribution in excess of the Allowed amount of such Claim, plus postpetition interest thereon to the extent allowed by the Bankruptcy Code and this Plan.  Upon a holder of an Allowed Claim recovering the full amount of its Allowed Claim from another source, it thereafter shall no longer have any entitlement to receive Distributions under the Plan.

## Article XI~~ARTICLE XI~~

### CONDITIONS PRECEDENT

Section 11.01  **Conditions to Confirmation**.  The following are conditions precedent to the occurrence of the Confirmation Date, each of which must be satisfied or waived in accordance with Section 11.03 of the Plan:

(a)    the Confirmation Order shall be in form and substance reasonably acceptable to the Debtors and the Requisite Settlement Parties and shall, among other things:

(i)    provide that the Debtors are authorized and directed to take all actions necessary or appropriate to enter into, implement and consummate the agreements or documents created under or in connection with the Plan; and

(ii)    provide that, notwithstanding Bankruptcy Rule 3020(e), the Confirmation Order shall be immediately effective, subject to the terms and conditions of the Plan; and

(b)    the Confirmation Order shall have been entered by the Bankruptcy Court.

Section 11.02  **Conditions to the Effective Date**.  The Plan may not be consummated, and the Effective Date shall not occur, unless and until each of the conditions set forth below is satisfied or waived (if and to the extent permitted by Section 11.03 of the Plan):

(a)      the Confirmation Order shall not then be stayed, vacated, or reversed or shall not have been amended without the agreement of the Debtors and the Requisite Settlement Parties;

(b)      the Confirmation Order shall not then be subject to a pending appeal, and the time to appeal or seek review or rehearing or leave to appeal has expired and as to which no appeal or petition for review or rehearing was filed or, if filed, remains pending;

(c)      the Liquidation Trust shall have been established and ~~the Initial Liquidation Trust Funding and~~ all Assets of the Estates ~~(other than the Avoidance Actions)~~, including but not limited to, the Estate Causes of Action, shall have been transferred to and vested in the Liquidation Trust free and clear of all Claims and Interests, except as specifically provided in the Plan and the Liquidation Trust Agreement;

~~(d) the Litigation Trust shall have been established and the Initial Litigation Trust Funding and all Avoidance Actions shall have been transferred to and vested in the Litigation Trust free and clear of all Claims and Interests, except as specifically provided in the Plan and the Litigation Trust Agreement~~

**(d)**      ~~(e)~~ the Liquidation Trustee and the Liquidation Trust Oversight Committee shall have been appointed and assumed their rights and responsibilities under the Plan and the Liquidation Trust Agreement; **and**

~~(f) the Litigation Trustee and the Litigation Trust Oversight Committee shall have been appointed and assumed their rights and responsibilities under the Plan and the Litigation Trust Agreement;~~

**(e)**      ~~(g)~~ all Plan Documents and any other actions, documents, and agreements necessary to implement the provisions of the Plan to be effectuated on or prior to the Effective Date shall be reasonably satisfactory to the Debtors and the Requisite Settlement Parties, and such actions, documents, and agreements shall have been effected or executed and delivered. The Liquidation Trust Agreement ~~and the Litigation Trust Agreement~~ shall be completed and in final form and executed by the parties thereto and all conditions precedent contained in any of the foregoing shall have been satisfied or waived;

~~(h) the Moreno Entities shall have obtained all necessary consents to the free and clear transfer of the MOR/TGS Interests to NewCo and any other transactions contemplated herein, as applicable, from (i) the other equity holders of TGS and (ii) any and all other persons parties whose consent for any of the foregoing transactions is required;~~

~~(i) NewCo shall have been formed in accordance with the terms of this Plan and the NewCo Contribution shall have occurred; and~~

~~(j) Each of the NewCo Related Agreements shall have been executed by each party thereto.~~

01:15124892.1

HN\~~1114473.11~~1114473.17

Section 11.03 **Waiver of Certain Conditions**.  With the exception of the conditions contained in Sections 11.01(b) and 11.02(a) of the Plan, each of the conditions set forth in Section 11.01 and Section 11.02 of the Plan may be waived in whole or in part by the Debtors without any notice to parties in interest or the Bankruptcy Court and without a hearing, *provided*, *however*, that any such waiver shall not be effective without the consent of the Requisite Settlement Parties, which consent shall not be unreasonably withheld.

Section 11.04 **Effect of Nonoccurrence of the Conditions to the Effective Date**.  If each of the conditions to the occurrence of the Effective Date has not been satisfied or duly waived in accordance with the Plan on or before the first Business Day that is more than sixty (60) days after the Confirmation Date, or such later date as shall be agreed to by the Debtors and the Requisite Settlement Parties, the Debtors may schedule a status hearing with the Bankruptcy Court.  If the Confirmation Order is ultimately vacated, the Plan shall be null and void in all respects, and nothing contained in the Plan shall constitute an admission, a waiver, or release of any Claims against or Interests in any of the Estates.

## Article XIIARTICLE XII

## EFFECTS OF CONFIRMATION

Section 12.01 **Retention of Causes of Action/Reservation of Rights**.    Except as expressly provided for in the Plan or the Confirmation Order, nothing contained in the Plan or the Confirmation Order shall be deemed to (a) be res judicata or the basis for estoppel of, (b) create any other defense to the prosecution to judgment on the merits of, (c) be a waiver of or (d) be a relinquishment of any Causes of Action, including Avoidance Actions or Estate Causes of Action, that are left unaltered or Unimpaired by the Plan.  On and after the Effective Date, except for Causes of Action released by the Debtors under this Plan (i) the Liquidation Trust shall have, retain, reserve and be entitled to assert, prosecute, settle or abandon all Estate Causes of Action and (ii) the Litigation Trust shall have, retain, reserve and be entitled to assert, prosecute, settle or abandon all Avoidance Actions.

Section 12.02 **Third Party Causes of Action**.  **Other than as set forth in Section 12.08 below, nothing**Nothing in the Plan is intended to, nor shall be interpreted as, impairing, waiving or otherwise affecting in any way Causes of Action that do not belong to the Estates, including assessments of damages.  Moreover, it is intended that any and all such rights, Claims and defenses with respect to any Cause of Action that does not belong to the Estates are reserved expressly, and nothing herein shall constitute a waiver or release with respect to same **other than as set forth in Section 12.08 below**.

Section 12.03 **Compromise of Controversies**.  Pursuant to Bankruptcy Rule 9019, and in consideration for the classification, Distribution and other benefits provided under the Plan, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims and controversies resolved pursuant to the Plan, including, without limitation, all Claims arising prior to the Petition Date, whether known or unknown, foreseen or unforeseen, asserted or unasserted, by or against the Debtors, arising out of, relating to or in connection with the business or affairs of or transactions with the Debtors.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of each of the foregoing compromises or settlements,

01:15124892.1

HN\1114473.111114473.17

and all other compromises and settlements provided for in the Plan, and the Bankruptcy Court's findings shall constitute its determination that such compromises and settlements are in the best interests of the Debtors, the Estates, creditors and other parties-in-interest, and are fair, equitable and within the range of reasonableness.  The provisions of the Plan, including, without limitation, its injunction, exculpation, release and compromise provisions, are mutually dependent and non-severable.

Section 12.04  **Preservation of Insurance**.  Notwithstanding anything to the contrary under the Plan, the Plan shall not diminish or impair the enforceability of insurance policies that may cover Claims against the Debtors, the Estates, the Assets or any other Person or Entity.  In no event shall the Liquidation Trust ~~or Litigation Trust~~ have the right to cancel or limit the coverage available under any insurance policy in existence as of the Effective Date under which the Debtors' directors, officers, or employees are insured parties.

Section 12.05  **Term of Injunctions or Stays**.  Until the Effective Date, all injunctions or stays provided for in the Chapter 11 Cases under Bankruptcy Code Sections 105(a) or 362, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect.  After the Effective Date, all injunctions or stays provided for in the Chapter 11 Cases under Bankruptcy Code Sections 105(a) or 362, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect only to the extent provided in the Plan and in the Confirmation Order.

Section 12.06  **Exculpation**.  **Except as otherwise specifically provided in this Plan, none of the Debtors, the Liquidation Trustee, the ~~Litigation Trustee, the~~ Senior Secured Notes Indenture Trustee, the Senior Secured Noteholders in their capacity as such, Shell, ~~the Moreno Entities, the Moreno Affiliated Entities,~~ TPT, ~~NewCo, TGS,~~ the Official Creditors' Committee (solely with respect to its conduct as a committee and not with respect to the actions of its members as individual creditors), nor any of such parties' respective present members (with respect to members of the Official Creditors' Committee, solely with respect to each member's conduct in furtherance of its, his, or her duties as a member of the Official Creditors' Committee, and not with respect to the actions of such members as individual creditors), officers, directors, shareholders, employees, representatives, advisors, attorneys, financial advisors, investment bankers, agents or Affiliates, or any of such parties' successors and assigns, shall have or incur, and each such Person is hereby released from, any Claim, obligation, Cause of Action in any form whatsoever or liability to one another or to any holder of a Claim or an Interest, or any other party in interest, or any of their respective officers, directors, shareholders, members and/or enrollees, employees, representatives, advisors, attorneys, financial advisors, investment bankers, agents, related professionals or Affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the negotiation and execution of this Plan, the Disclosure Statement, the Asset Purchase ~~Agreement~~Agreements, the solicitation of votes for and the pursuit of Confirmation of this Plan, the consummation of this Plan, or the administration of this Plan, the Asset Purchase ~~Agreement~~Agreements, and the property to be distributed under this Plan, including all documents ancillary thereto, all decisions, actions, inactions and alleged negligence or misconduct relating thereto and all prepetition activities leading to**

the promulgation and Confirmation of this Plan except fraud, willful misconduct or gross negligence as determined by a Final Order. Nothing in this Section 12.06 shall be construed as a release of any entity's fraud, gross negligence or willful misconduct with respect to matters set forth in this Section 12.06.  Any of the foregoing parties in all respects shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities (if any) under this Plan.

Notwithstanding any other provision of this Plan, neither any holder of a Claim or Interest, nor other party in interest, nor any of their respective officers, directors, shareholders, members and/or enrollees, employees, representatives, advisors, attorneys, financial advisors, investment bankers, related professionals, agents or Affiliates, and no successors or assigns of the foregoing, shall have any right of action against any Debtor, the Liquidation Trustee, ~~the Litigation Trustee~~TPT, the Senior Secured Notes Indenture Trustee, the Senior Secured Noteholders in their capacity as such, Shell~~, the Moreno Entities, the Moreno Affiliated Entities~~, TPT, the Official Creditors' Committee (solely with respect to its conduct as a committee and not with respect to the actions of its members as individual creditors), or any of such parties' respective present members (with respect to members of the Official Creditors' Committee, solely with respect to each member's conduct in furtherance of its, his, or her duties as a member of the Official Creditors' Committee, and not with respect to the actions of such members as individual creditors), officers, directors, shareholders, employees, representatives, advisors, attorneys, financial advisors, investment bankers, related professionals, agents or Affiliates, or any of such parties' successors and assigns, for any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the negotiation and execution of this Plan, the Disclosure Statement, the Asset Purchase ~~Agreement~~Agreements, the solicitation of votes for and the pursuit of Confirmation of this Plan, the consummation of this Plan, or the administration of this Plan, the Asset Purchase ~~Agreement~~Agreements, and the property to be distributed under this Plan, including all documents ancillary thereto, all decisions, actions, inactions and alleged negligence or misconduct relating thereto and all activities leading to the promulgation and Confirmation of this Plan except fraud, willful misconduct or gross negligence as determined by a Final Order.

Section 12.07  **Releases by Debtors**. Except as expressly provided in this Plan, upon the Effective Date, each of the Debtors hereby (i) remises, acquits, waives, releases and forever discharges each of the Debtor Releasees from, and (ii) covenants and agrees never to institute or cause to be instituted any suit or other form of action or proceeding of any kind or nature whatsoever against any of the Debtor Releasees based upon, any claims, demands, indebtedness, agreements, promises, Causes of Action (including Avoidance Actions), obligations, damages or liabilities of any nature whatsoever (other than rights to enforce obligations of the Debtor Releasees under any Order of the Bankruptcy Court, the Plan and all contracts, instruments, releases and other agreements delivered in connection therewith), in law or in equity, whether or not known, suspected or claimed, that the Debtors or the Estates ever had, claimed to have, has, or may have or Claim to have against the Debtor Releasees, or any of them, by reason of any matter, cause, thing, act or omission of the Debtor Releasees, or any of them, in each case related to the Debtors, the Chapter 11 Cases, the Asset Purchase ~~Agreement~~Agreements or the negotiations relating thereto, or

01:15124892.1

HN\~~1114473.11~~1114473.17

the Plan or negotiations relating thereto, except fraud, willful misconduct or gross negligence as determined by a Final Order.

~~Section 12.08 Releases by Holders of Claims.  As of the Effective Date, to the fullest extent permitted under applicable law, in consideration for the obligations under the Plan and the Cash, securities, contracts, instruments, releases and other agreements and documents to be delivered in connection with the Plan, including, but not limited to, the NewCo Contribution, each present and former holder of a Claim that has voted in favor of the Plan will be deemed to release forever, waive and discharge any and all Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action and liabilities (other than the rights to enforce the Debtors' obligations under any Final Order of the Bankruptcy Court, the Asset Purchase Agreement, the Plan and the securities, contracts, instruments, releases and other agreements and documents delivered thereunder), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that are based in whole or in part on any act, omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtors, the Chapter 11 Cases, the Asset Purchase Agreement, or the Plan against any Creditor Releasee, except fraud, willful misconduct or gross negligence as determined by a Final Order.~~

**Section 12.08** ~~Section 12.09~~ **Injunction.**   Confirmation of this Plan shall have the effect of, among other things, permanently enjoining all Entities or Persons that have held, hold or may hold or have asserted, assert or may assert Claims against or Interests in the Estates, or Claims released under this Plan, with respect to any such Claim or Interest, from and after the Effective Date, from taking any of the following actions (other than actions to enforce any rights or obligations under the Plan):  (i) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Estates, the Liquidation Trust, the ~~Litigation Trust, the Debtor Releasees or the Creditor~~**Debtor** Releasees or any of their property; (ii) enforcing, levying, attaching (including, without limitation, any pre-judgment attachment), collecting or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree or order against the Estates, the Liquidation Trust, the ~~Litigation Trust, the Debtor Releasees or the Creditor~~**Debtor** Releasees or any of their property; (iii) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Estates, the Liquidation Trust, the ~~Litigation Trust, the Debtor Releasees or the Creditor~~**Debtor** Releasees or any of their property; (iv) asserting any right of setoff, directly or indirectly, against any obligation due the Estates, the Liquidation Trust, the ~~Litigation Trust, the Debtor Releasees or the Creditor~~**Debtor** Releasees or any of their property, except with respect to any right of setoff asserted prior to the entry of the Confirmation Order, whether asserted in a Proof of Claim or otherwise, or as otherwise contemplated or Allowed by the Plan; (v) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan; and

01:15124892.1

HN\~~1114473.11~~1114473.17

(vi) prosecuting or otherwise asserting any Claim or Interest, including any right, claim or Cause of Action, including Avoidance Actions, released pursuant to the Plan.

**Article XIII**ARTICLE XIII

## RETENTION OF JURISDICTION

Section 13.01 **Retention of Exclusive Jurisdiction by the Bankruptcy Court**. Pursuant to Bankruptcy Code Sections 105(a) and 1142, and notwithstanding entry of the Confirmation Order and occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of or related to the Chapter 11 Cases and the Plan to the fullest extent permitted by law including, without limitation, jurisdiction to:

(a)     to the extent not otherwise determined by the Plan, to determine (i) the allowance, classification, or priority of Claims upon objection by any party-in-interest entitled to file an objection, or (ii) the validity, extent, priority and nonavoidability of consensual and nonconsensual Liens and other encumbrances against Assets, Estate Causes of Action, or property of the Estates, the Litigation Trust or the Liquidation Trust;

(b)     to issue injunctions or take such other actions or make such other orders as may be necessary or appropriate to restrain interference with the Plan or its execution or implementation by any Entity or Person, to construe and to take any other action to enforce and execute the Plan, the Confirmation Order, or any other order of the Bankruptcy Court, to issue such orders as may be necessary for the implementation, execution, performance and consummation of the Plan and all matters referred to herein, and to determine all matters that may be pending before the Bankruptcy Court in the Chapter 11 Cases on or before the Effective Date with respect to any Entity or Person;

(c)     to protect the Assets or property of the Estates, the Litigation Trust and/or the Liquidation Trust, including Estate Causes of Action and Avoidance Actions, from Claims against, or interference with, such Assets or property, including actions to quiet or otherwise clear title to such property or to resolve any dispute concerning Liens or other encumbrances on any Assets of the Estates;

(d)     to determine any and all applications for allowance of Fee Claims;

(e)     to determine any Priority Tax Claims, Priority Non-Tax Claims, Administrative Claims, DIP Claims or any Request for Payment of Claims, including both fees and expenses, entitled to priority under Bankruptcy Code Section 507(a);

(f)     to resolve any dispute arising under or related to the implementation, execution, consummation or interpretation of the Plan, the Plan Documents and/or the NewCo Related Agreements**Plan Documents**, and the making of Distributions hereunder;

(g)     to determine any and all motions related to the rejection, assumption or assignment of executory contracts or unexpired leases or determine any issues arising from the

01:15124892.1

- 56 -

deemed rejection of executory contracts and unexpired leases set forth in Article VIII of the Plan;

(h)    except as otherwise provided herein, to determine all applications, motions, adversary proceedings, contested matters, actions, and any other litigated matters instituted in and prior to the closing of the Chapter 11 Cases, including any remands;

(i)    to enter a Final Order closing the Chapter 11 Case of GFES and the other Debtors to the extent not closed on the Effective Date;

(j)    to modify the Plan under Bankruptcy Code Section 1127, remedy any defect, cure any omission, or reconcile any inconsistency in the Plan or the Confirmation Order so as to carry out its intent and purposes;

(k)    to issue such orders in aid of consummation of the Plan and the Confirmation Order notwithstanding any otherwise applicable non-bankruptcy law, with respect to any Entity or Person, to the full extent authorized by the Bankruptcy Code;

(l)    to determine any tax liability pursuant to Bankruptcy Code Section 505;

(m)    to enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated;

(n)    to resolve any disputes concerning whether an Entity or Person had sufficient notice of the Chapter 11 Cases, the applicable Bar Date, the hearing to consider approval of the Disclosure Statement or the Confirmation Hearing or for any other purpose;

(o)    to resolve any dispute or matter arising under or in connection with any order of the Bankruptcy Court entered in the Chapter 11 Cases;

(p)    to authorize, as may be necessary or appropriate, sales of Assets as necessary or desirable and resolve objections, if any, to such sales;

(q)    to resolve any disputes concerning any release, injunction, exculpation or other waiver or protection provided in the Plan;

(r)    to approve, if necessary, any Distributions, or objections thereto, under the Plan;

(s)    to approve, as may be necessary or appropriate, any Claims settlement entered into or offset exercised by the Liquidation Trust ~~or the Litigation Trust~~;

(t)    to resolve any dispute or matter arising under or in connection with the Liquidation Trust ~~or Litigation Trust~~;

(u)    to order the production of documents, disclosures, or information, or to appear for deposition demanded pursuant to Bankruptcy Rule 2004; and

(v)      to determine such other matters, and for such other purposes, as may be provided in the Confirmation Order or as may be authorized under provisions of the Bankruptcy Code.

Section 13.02  **Retention of Non-Exclusive Jurisdiction by the Bankruptcy Court**. Notwithstanding anything else in the Plan, the Bankruptcy Court shall retain non-exclusive jurisdiction over all Estate Causes of Action prosecuted by the Liquidation Trust **or Avoidance Actions prosecuted by the Litigation Trust**.

Section 13.03  **Failure of Bankruptcy Court to Exercise Jurisdiction**.   If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising in, arising under, or related to the Chapter 11 Cases, including the matters set forth in Section 13.01 of the Plan, the provisions of this Article XIII shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having jurisdiction with respect to such matter.

**Article XIV**~~ARTICLE XIV~~

**MISCELLANEOUS PROVISIONS**

Section 14.01  **Amendments**.

(a)      **Pre-Confirmation Amendments**.   The Debtors may, with the consent of the Requisite Settlement Parties, modify the Plan at any time prior to the entry of the Confirmation Order, provided that the Plan, as modified, and the Disclosure Statement pertaining thereto meet applicable Bankruptcy Code requirements.

(b)      **Postconfirmation/Preconsummation  Amendment  Not  Requiring Resolicitation**.   After the entry of the Confirmation Order and before substantial consummation of the Plan, the Debtors may, with the consent of the Requisite Settlement Parties, modify the Plan to remedy any defect or omission or to reconcile any inconsistencies in the Plan or in the Confirmation Order, as may be necessary to carry out the purposes and effects of the Plan, provided that:  (i) the Debtors obtain approval of the Bankruptcy Court for such modification, after notice and a hearing; and (ii) such modification shall not materially and adversely affect the interests, rights, treatment or Distributions of any Class of Claims or Interests under the Plan.

(c)      **Postconfirmation/Preconsummation  Amendment  Requiring  Resolicitation**. After the Confirmation Date and before substantial consummation of the Plan, the Debtors may, with the consent of the Requisite Settlement Parties, modify the Plan in a way that materially or adversely affects the interests, rights, treatment, or Distributions of a Class of Claims or Interests, provided that:  (i) the Plan, as modified, meets applicable Bankruptcy Code requirements; (ii) the Debtors obtain Bankruptcy Court approval for such modification, after notice and a hearing; (iii) the Plan as modified complies with the Bankruptcy Code and Bankruptcy Rules; and (iv) the Debtors comply with Bankruptcy Code Section 1125 with respect to the Plan as modified.

Section 14.02  **Severability**.   Except as set forth in Section 12.03, if, prior to the Confirmation Date, any term or provision of the Plan is determined by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court will have the power to alter and interpret

- 58 -

such term or provision and make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision will then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, and except as set forth in Section 12.03, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, Impaired or invalidated by such holding, alteration or interpretation.  The Confirmation Order will constitute a judicial determination and will provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

Section 14.03  **Successors and Assigns**.  The rights, benefits and obligations of any Entity or Person named or referred to in the Plan shall be binding on, and shall inure to the benefit of, the heirs, executors, administrators, successors and/or assigns of such Entity or Person.

Section 14.04  **Exemption from Certain Transfer Taxes**.  Pursuant to Bankruptcy Code Section 1146(a), the issuance, transfer or exchange of any security or the making or delivery of any instrument of transfer under this Plan may not be taxed under any law imposing a stamp tax, use tax, sales tax or similar tax.  Any sale of any Asset of the Debtors, the Liquidation Trust ~~or the Litigation Trust~~ occurring after or upon the Effective Date shall be deemed to be in furtherance of this Plan.

Section 14.05  **Governing Law**.  Except to the extent that the Bankruptcy Code or Bankruptcy Rules or other federal laws are applicable, and subject to the provisions of any contract, instrument, release, or other agreement or document entered into in connection with the Plan, the construction, implementation and enforcement of the Plan and all rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Delaware, without giving effect to conflicts of law principles which would apply the law of a jurisdiction other than the State of Delaware.

Section 14.06  **Confirmation Order and Plan Control**.  To the extent the Confirmation Order and/or this Plan is inconsistent with the Disclosure Statement, or any other agreement entered into by the Debtors and/or the Liquidation Trust, the Plan controls the Disclosure Statement and any such agreements, and the Confirmation Order controls the Plan, the Disclosure Statement and any such agreements.

Section 14.07  **Withdrawal of Plan**.  The Debtors reserve the right, in the exercise of their reasonable discretion, to revoke and withdraw or to modify the Plan at any time prior to the Confirmation Date or, if the Debtors are for any reason unable to consummate the Plan after the Confirmation Date, at any time up to the Effective Date; provided, however, that any such modification of the Plan shall require the consent of the Requisite Settlement Parties, not to be unreasonably withheld.  If the Debtors revoke or withdraw the Plan, (a) nothing contained in the Plan shall be deemed to constitute a waiver or release of any Claims by or against the Estates or to prejudice in any manner the rights of the Estates or any Entity or Person in any further proceeding involving the Debtors and (b) the result shall be the same as if the Confirmation Order were not entered, the Plan was not filed and the Effective Date did not occur.

Section 14.08  **Payment Dates**.  Whenever any payment to be made under the Plan is due on a day other than a Business Day, such payment will instead be made, without interest, on the next Business Day or as soon thereafter as practicable.

Section 14.09  **Notices**.  Any notice, request or demand given or made under this Plan or under the Bankruptcy Code or the Bankruptcy Rules shall be in writing and shall be sent via hand delivery, reputable overnight courier service, or facsimile and shall be deemed given when received (and in the case of notice by facsimile, when received and telephonically confirmed) at the following addresses or facsimile numbers, whether hand delivered, sent by overnight courier service or faxed:

| Debtors | Co-Counsel to the Debtors |
|---|---|
| Green Field Energy Services, Inc.<br>4023 Ambassador Caffery Parkway, Ste #200<br>Lafayette, LA 70503<br>Attn: Thomas Hill, Rick Fontova and Earl Blackwell<br>Telephone: (337) 706-1700<br>Facsimile: (337) 988-6944 | LATHAM & WATKINS LLP<br>Suite 5800<br>233 South Wacker Drive<br>Chicago, IL 60606<br>Attn: Josef S. Athanas and<br>Caroline A. Reckler<br>Telephone:  (312) 876-7700<br>Facsimile:  (312) 993-9767<br><br>-and-<br><br>YOUNG CONAWAY STARGATT &<br>TAYLOR, LLP<br>Rodney Square<br>1000 North King Street<br>Wilmington, Delaware 19801<br>Attn: Michael R. Nestor and<br>Kara Hammond Coyle<br>Telephone: (302) 571-6600<br>Facsimile: (302) 571-1253 |
| **United States Trustee** | **Counsel to the Official Creditors' Committee** |
| Office of the United States Trustee<br>for the District of Delaware<br>844 King Street<br>Suite 2207, Lockbox 35<br>Wilmington, DE 19801<br>Attn:  Tiiara Patton<br>Telephone:  302-573-6491<br>Facsimile:  302-573-6497 | BROWN RUDNICK LLP<br>Seven Times Square<br>New York, NY 10036<br>Attn:  Robert J. Stark<br>Telephone:  212-209-4800<br>Facsimile:  212-209-4801<br><br>-and- |

01:15124892.1

- 60 -

| | |
|---|---|
| | WOMBLE CARLYLE SANDRIDGE & RICE, LLP<br>222 Delaware Avenue, Suite 1601<br>Wilmington, DE 19801<br>Attn:  Steven K. Kortanek<br>Telephone:  302-252-4320<br>Facsimile:  302-252-4330 |
| **Liquidation Trustee** | **Litigation Trustee**<br>**[TO COME]** |
| **[TO COME]** | |

**Article XV~~ARTICLE XV~~**

**CONFIRMATION REQUEST**

The Debtors request Confirmation of the Plan under Bankruptcy Code Section 1129.

Dated: ~~February   ~~**March 6**, 2014

GREEN FIELD ENERGY SERVICES, INC.
HUB CITY TOOLS, INC.
PROPPANT ONE, INC.

By: _____

Name:  Thomas Hill
Title: Chief Restructuring Officer

**LATHAM & WATKINS LLP**
Josef S. Athanas
Caroline A. Reckler
Sarah E. Barr
Matthew L. Warren
Suite 5800
233 South Wacker Drive
Chicago, IL  60606
(312) 876-7700

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**
Michael R. Nestor
Kara Hammond Coyle
1000 North King Street
Wilmington, Delaware 19801
(302) 571-6600

Counsel for Debtors

01:15124892.1

HN\~~1114473.111~~114473.17

| Summary report:<br>Litéra® Change-Pro TDC 7.5.0.50 Document comparison done on 3/6/2014 6:01:34 PM | |
|---|---|
| **Style name:** L&W without Moves | |
| **Intelligent Table Comparison:** Active | |
| **Original DMS:**iw://US-DOCS/HN/1114473/11 | |
| **Modified DMS:** iw://US-DOCS/HN/1114473/17 | |
| **Changes:** | |
| **Add** | 305 |
| **Delete** | 521 |
| *Move From* | 0 |
| *Move To* | 0 |
| Table Insert | 0 |
| Table Delete | 0 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format Changes | 0 |
| **Total Changes:** | 826 |

01:15124892.1