## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------- x
| | |
|---|---|
| In re: | : Chapter 11 |
| | : |
| GREEN FIELD ENERGY SERVICES, INC., et al., | : Case No. 13-12783 (KG) |
| | : |
| | : Jointly Administered |
| Debtors.[1] | : |

---------------------------------------------------------- x    **Ref. Docket Nos. 482 & 613**

**ORDER AUTHORIZING (A) THE SALE OF CERTAIN ASSETS OF THE DEBTORS
FREE AND CLEAR OF ALL CLAIMS, LIENS, LIABILITIES, RIGHTS, INTERESTS
AND ENCUMBRANCES EXCEPT FOR PERMITTED ENCUMBRANCES
IN CERTAIN CIRCUMSTANCES; (B) THE DEBTORS TO ENTER INTO AND
PERFORM THEIR OBLIGATIONS UNDER THE GBCI
AGENCY AGREEMENT; AND (C) RELATED RELIEF**

Upon consideration of the motion (the "Motion") of the above-captioned debtors

and debtors-in-possession (collectively, the "Debtors"), pursuant to sections 105(a), 363, 365,

503 and 507 of Title 11 of the United States Code (the "Bankruptcy Code"), as supplemented by

Rules 2002, 6004, 6006 and 9014 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules"), for entry of orders approving, among other things, the sale of certain assets

of the Debtors (the "Sale"), related bidding procedures, and certain protections for bidders with

respect to such assets; and the Court having determined that the relief provided herein is in the

best interest of the Debtors, their estates, their creditors and other parties in interest; and due and

adequate notice of the Motion having been given under the circumstances; and upon the record

of the hearing on the Motion, and the full record of these cases; and after due deliberation

thereon; and good and sufficient cause appearing therefor, it is hereby FOUND that:

---

[1]　　The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax or organizational identification number, are: Green Field Energy Services, Inc. (2539); Hub City Tools, Inc. (2827); and Proppant One, Inc. (6035). The above-captioned Debtors' mailing address is 4023 Ambassador Caffery Parkway, Suite #200, Lafayette, LA 70503.

A.      To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.      Except as otherwise determined in any other order of this Court, this Court has jurisdiction over the Motion and the transactions contemplated therein pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference from the United States District Court for the District of Delaware dated as of February 29, 2012, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and the Court may enter a final order consistent with Article III of the United States Constitution. Venue in this district is proper under 28 U.S.C. §§ 1408 and 1409.

C.      Notice of the Motion and of the Sale Hearing was given in accordance with the directive of the Court and as otherwise required by applicable law, as evidenced by the affidavits of service on file with the Clerk of the Court.

D.      The notice provided of the Motion and of the Sale Hearing was adequate and sufficient under the circumstances, and any otherwise applicable notice requirement is hereby waived and dispensed with.

E.      A reasonable opportunity to object or be heard regarding the relief requested in the Motion and the transactions provided for therein has been afforded to all interested parties, including, without limitation, the following (a) the U.S. Trustee; (b) counsel for the Committee; (c) counsel to the Noteholders; (d) counsel to Wilmington Trust; (e) counsel to Shell; (f) counsel to the DIP Lenders; (g) all taxing authorities having jurisdiction over any of the Assets, including the Internal Revenue Service; (h) all parties that have requested or that are required to receive notice pursuant to Bankruptcy Rule 2002; (i) all persons known or reasonably believed to have

01:15149641.1

2

asserted an interest in any of the Assets; (j) the non-Debtor parties to the Contracts; (k) the

Attorneys General in the State(s) where the Assets are located; (l) all state and local

environmental agencies in any jurisdiction where the Seller owns or has owned or used real

property; and (m) all parties asserting title to, or a security interest in, any of the Assets. In

addition to the foregoing, (i) electronic notification of this Motion, the Bidding Procedures Order

and the Notice of Auction and Sale Hearing has been posted on: (a) the Court's website,

www.deb.uscourts.gov; and (b) the case website maintained by the Debtors' claims and noticing

agent, Prime Clerk. at http://cases.primeclerk.com/gfes, or can be requested by calling (855) 410-

7359 from within the United States or +1 (646) 795-6960 if calling from outside the United

States; and (ii)(a) the Debtors have served the Notice of Auction and Sale Hearing on all known

creditors of the Debtors; and (b) the Debtors have published the Notice of Auction and Sale

Hearing once in one national publication.

F.      Unless otherwise defined herein, capitalized terms used herein shall have the

meanings ascribed to them in the Motion, the Bidding Procedures or the Agency Agreement

between Gordon Brothers Commercial & Industrial LLC (the "Agent") and the Debtors (the

"Agency Agreement") a copy of which is attached hereto as Exhibit 1.

G.      As demonstrated by the testimony and other evidence proffered or adduced at the

Sale Hearing, and the representations of counsel made on the record at the Sale Hearing, the

Debtors have thoroughly marketed the Assets and have conducted the bidding solicitation fairly

and in accordance with the Bidding Procedures approved by this Court, with adequate

opportunity for parties that either expressed interest in acquiring or liquidating the Assets, or that

the Debtors believed may have an interest in acquiring or liquidating the Assets, to submit

competing bids. The Debtors and the Agent have negotiated and undertaken their respective

01:15149641.1

3

roles leading to the Sale and entry into the Agency Agreement in a diligent, noncollusive, fair, and good faith manner.

   H.  The Debtors, their management, and their respective directors, employees, agents and representatives, and the Agent, its members and their respective officers, directors, employees, agents and representatives, actively participated in the bidding process and acted in good faith. The Agency Agreement was negotiated and entered into in good faith, based upon arm's length bargaining, and without collusion or fraud. The Debtors were free to deal with any other party interested in buying or selling on behalf of the Debtors' estates some or all of the Assets. Neither the Debtors nor the Agent have engaged in any conduct that would cause or permit the Sale, the Agency Agreement, or any related action or the transactions contemplated thereby to be avoided under section 363(n) of the Bankruptcy Code, or that would prevent the application of section 363(m) of the Bankruptcy Code. The Agent has not violated section 363(n) of the Bankruptcy Code by any action or inaction. Specifically, the Agent has not acted in a collusive manner with any person and was not controlled by any agreement among bidders. The Agent's prospective performance and payment of amounts owing under the Agency Agreement are in good faith and for valid business purposes and uses.

   I.  The Agent is not an "insider" as that term is defined in section 101(31) of the Bankruptcy Code. No common identity of directors or controlling stockholders exists between the Agent and the Debtors.

   J.  The offer of the Agent, upon the terms and conditions set forth in the Agency Agreement, including the form and total consideration to be realized by the Debtors pursuant to the Agency Agreement, (i) is the highest and best offer received by the Debtors; (ii) is fair and reasonable; and (iii) is in the best interests of the Debtors' creditors and estates. There is no legal

or equitable reason to delay entry into the Agency Agreement, and the transactions contemplated therein, including, without limitation, the Sale.

K.    The Debtors' decisions to (i) enter into the Agency Agreement and (ii) perform thereunder are a reasonable exercise of the Debtors' sound business judgment consistent with their fiduciary duties and are in the best interests of the Debtors, their estates, their creditors and all other parties in interest.

L.    Conducting the Sale as set forth in the Agency Agreement will provide an efficient means for the Debtors to dispose of the Assets.

M.    The Debtors have represented to this Court that they are neither selling nor leasing personally identifiable information as such term is defined in section 101(41A) (or assets containing personally identifiable information) pursuant to the Motion.

N.    Time is of the essence in effectuating the Agency Agreement and proceeding with the Sale contemplated therein without interruption. Based on the record of the Hearing and the Motion, the Sale must be commenced as soon as practicable to maximize the value that the Agent may realize from the Sale and the value that the Debtors may realize from entering into the Agency Agreement. Accordingly, cause exists to modify the stay to the extent necessary, as contemplated by Bankruptcy Rule 6004(h), and permit the immediate effectiveness of this Order.

O.    A sale of the Assets other than one free and clear of liens, claims, encumbrances, defenses (including, without limitation, rights of setoff and recoupment) and interests, including, without limitation, security interests of whatever kind or nature, mortgages, conditional sales or title retention agreements, pledges, deeds of trust, hypothecations, liens, encumbrances, assignments, preferences, debts, easements, charges, suits, licenses, options, rights-of-recovery, judgments, orders and decrees of any court or foreign or domestic governmental entity, taxes

01:15149641.1

(including foreign, state and local taxes), licenses, covenants, restrictions, indentures, instruments, leases, options, off-sets, claims for reimbursement, contribution, indemnity or exoneration, successor, product, environmental, tax, labor, ERISA, CERCLA, alter ego and other liabilities, causes of action, contract rights and claims, to the fullest extent of the law, in each case, of any kind or nature (including, without limitation, all "claims" as defined in section 101(5) of the Bankruptcy Code), known or unknown, whether pre-petition or post-petition, secured or unsecured, choate or inchoate, filed or unfiled, scheduled or unscheduled, perfected or unperfected, liquidated or unliquidated, noticed or unnoticed, recorded or unrecorded, contingent or non-contingent, material or non-material, statutory or non-statutory, matured or unmatured, legal or equitable (collectively, "Encumbrances") and without the protections of this Order would hinder the Debtors' ability to obtain the consideration provided for in the Agency Agreement and, thus, would impact materially and adversely the value that the Debtors' estates would be able to obtain for the sale of such Assets. But for the protections afforded to the Agent under the Bankruptcy Code and this Order, the Agent would not have offered to pay the consideration contemplated in the Agency Agreement. In addition, each entity with an Encumbrance upon the Assets, (i) has consented to the Sale or is deemed to have consented to the Sale, (ii) could be compelled in a legal or equitable proceeding to accept money satisfaction of such interest, or (iii) otherwise falls within the provisions of section 363(f) of the Bankruptcy Code, and therefore, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied. Additionally, any valid and perfected liens against the Assets shall attach to the amounts to be paid to the Sellers under the Agency Agreement, to the same extent and priority as before such sale and subject to the liens of the Agent. Those holders of Encumbrances who did not object, or who withdrew their objections, to the Motion

are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code. Therefore, approval of the Agency Agreement and the consummation of the Sales free and clear of Encumbrances is appropriate pursuant to section 363(f) of the Bankruptcy Code and is in the best interests of the Debtor's estate, its creditors and other parties in interest.

P.      The consideration to be paid by the Agent under the Agency Agreement was negotiated at arm's length and constitutes reasonably equivalent value and fair and adequate consideration under the Bankruptcy Code, the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act and the laws of the United States, any state, territory, possession thereof, or the District of Columbia. The terms and conditions set forth in the Agency Agreement are fair and reasonable under these circumstances and were not entered into for the purpose of, nor do they have the effect of, hindering, delaying or defrauding the Debtors or their creditors under any applicable laws.

Q.      The security interests and liens provided for in the Agency Agreement and this Order to secure the Debtors' obligations under the Agency Agreement to the Agent are necessary to induce the Agent to agree to terms for the Agency Agreement that maximize value for the Debtors' estates. The absence of such protections would impact materially and adversely the value available to the Debtors in the liquidation of their stores in partnership with a liquidation agent. But for the protections afforded to the Agent under the Bankruptcy Code, this Order, and the Agency Agreement, the Agent would not have agreed to pay the Debtors the compensation provided for under the Agency Agreement. In addition, the pre-petition lenders that hold a security interest in the property to which the Agent's security interests attach, have consented to the security interests provided for in the Agency Agreement, subject to the satisfaction of the conditions set forth in the Agency Agreement.

R.      No sale, transfer, or other disposition of the Assets pursuant to the Agency Agreement or the Agent's entry into the Agency Agreement will subject the Agent to any liability for claims, obligations, encumbrances, or interests asserted against the Debtors by reason of such transfer under any laws, including, without limitation, any bulk-transfer laws or any theory of successor or transferee liability, antitrust, environmental, product line, de facto merger or substantial continuity or similar theories.  The Agent is not a successor to the Debtors or their estates.

S.      Each of the Debtors (i) has full corporate or other power to execute, deliver and perform its obligations under the Agency Agreement and all other transactions contemplated thereby, and entry into the Agency Agreement has been duly and validly authorized by all necessary corporate or similar action, (ii) has all of the corporate or other power and authority necessary to consummate the transactions contemplated by the Agency Agreement, and (iii) has taken all actions necessary to authorize and approve the Agency Agreement and the transactions contemplated thereby.  No consents or approvals, other than those expressly provided for herein or in the Agency Agreement, are required for the Debtors to consummate such transactions.

T.      Entry into and assumption of the Agency Agreement and the transactions contemplated thereby neither impermissibly restructure the rights of the Debtors' creditors, nor impermissibly dictate the terms of a liquidating plan of reorganization for the Debtors.  Entry into the Agency Agreement does not constitute a *sub rosa* chapter 11 plan.

U.      The Agency Agreement is not an executory contract.

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.      The Motion is GRANTED as set forth herein.  All objections to the Motion to the extent not previously withdrawn or resolved or sustained as set forth herein are denied.

2.      The Debtor is hereby authorized, pursuant to sections 105(a) and 363(b)(1) of the Bankruptcy Code, to conduct the Sale of the Assets in accordance with the Agency Agreement. Subject to paragraph 19 below, no bulk sale, "going-out-of-business," or similar law shall prohibit the Debtors or the Agent from taking any action contemplated by the Agency Agreement.

3.      The Debtors are hereby authorized and empowered to enter into the Agency Agreement (and each of the transactions contemplated therein), and the Agency Agreement is hereby approved in its entirety and is incorporated herein by reference, and it is further ordered that all amounts payable to the Agent under the Agency Agreement shall be payable to the Agent without the need for any application of the Agent therefor or a further order of the Court. The failure to include specifically any particular provision of the Agency Agreement in this Order shall not diminish or impair the effectiveness of such provisions, it being the intent of the Court that the Agency Agreement and all of its provisions, payments and transactions, be authorized and approved in their entirety. Likewise, all of the provisions of this Order are nonseverable and mutually dependent.

4.      Subject to the provisions of this Order, the Debtors and the Agent are hereby authorized, pursuant to sections 105(a) and 363(b)(1) of the Bankruptcy Code, to conduct the Sale in accordance with the Agency Agreement.

5.      Pursuant to section 363(b) of the Bankruptcy Code, the Debtors, the Agent, and each of their respective officers, employees, and agents are hereby authorized and directed to execute such documents and to do such acts as are necessary or desirable to carry out the Sale and effectuate the Agency Agreement and each of the transactions contemplated therein, including but not limited to, reaching an agreement regarding the final reconciliation, which will

01:15149641.1

9

be binding on all parties without further order of the Court. The Agency Agreement is approved

pursuant to section 363 of the Bankruptcy Code. The Debtors are hereby authorized and

empowered to perform under the Agency Agreement.

6.    This Order shall be binding upon and shall govern the acts of all entities,

including, without limitation, all filing agents, filing officers, title agents, title companies,

recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies,

governmental departments, secretaries of state, federal, state and local officials, and all other

persons and entities who may be required by operation of law, the duties of their office, or

contract, to accept, file, register or otherwise record or release any documents or instruments, or

who may be required to report or insure any title or state of title in or to the Assets.

7.    This Order and the terms and provisions of the Agency Agreement shall be

binding on all of the Debtors' creditors who received notice, the Debtors, the Agent, and their

respective affiliates, successors and assigns, and any affected third parties including, but not

limited to, all persons asserting an interest in the Assets, notwithstanding any subsequent

appointment of any trustee, party, entity or other fiduciary under any section of the Bankruptcy

Code with respect to the forgoing parties, and as to such trustee, party, entity or other fiduciary,

such terms and provisions likewise shall be binding.

8.    The Agent shall be granted a limited license and right to use until the Sale

Termination Date the Debtors' trade names, logos and customer lists relating to and used in

connection with the operation of the Assets, solely for the purpose of advertising the Sale in

accordance with the terms of the Agency Agreement.

9.    Subject to applicable state and local public health and safety laws ("Safety

Laws"), and applicable tax, labor, employment, environmental, and consumer protection laws,

01:15149641.1

10

including consumer laws regulating deceptive practices and false advertising (collectively, "General Laws"), but excluding Liquidation Sale Laws (as defined herein), the Debtors and the Agent are hereby authorized to take such actions necessary and appropriate to implement the Agency Agreement and to conduct the Sale without the necessity of a further order of this Court as provided by the Agency Agreement.

10.    Except as otherwise provided in the Agency Agreement with respect to the Supplemental Assets and the Jereh Option Assets, pursuant to section 363(f) of the Bankruptcy Code, the Assets sold pursuant to the Agency Agreement shall be sold free and clear of any and all mortgages, security interests, conditional sales or title retention agreements, pledges, hypothecations, liens, judgments, encumbrances or claims of any kind or nature (including, without limitation, any and all "claims" as defined in section 101(5) of the Bankruptcy Code), including, without limitation, the liens and security interests of the Lender, whether arising by agreement, any statute or otherwise and whether arising before, on or after the date on which these chapter 11 cases were commenced (collectively, the "Liens"), with such Liens, if any, attaching only to the Guaranteed Amount and other amounts received by the Sellers from the Agent under the Agency Agreement with the same validity, force and effect as the same had with respect to the Assets at issue, subject to any and all defenses, claims and/or counterclaims or setoffs that may exist. For the sake of clarity, however, nothing in this paragraph is intended to diminish the Liens in favor of the Agent, as reflected in the Agency Agreement and this Order, that attach to, among other things, the Proceeds of the Sale.

11.    Except as expressly provided in the Agency Agreement, nothing in this Order or the Agency Agreement and none of the Agent's actions taken in respect of the Sale shall be deemed to constitute an assumption by Agent of any of the Debtors' obligations relating to any

of the Debtors' employees, nor shall Agent become liable under any collective bargaining or employment agreement or be deemed a joint or successor employer with respect to such employees.

12.     Entry into the Agency Agreement was undertaken by the parties thereto in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and the Agent shall be protected by section 363(m) of the Bankruptcy Code in the event that this Order is reversed or modified on appeal. The reversal or modification on appeal of the approval provided herein of the Agency Agreement and to consummate the transactions contemplated thereby shall not affect the validity of such transactions, unless such approval is duly stayed pending such appeal. The Agent is entitled to all of the benefits and protections afforded by section 363(m) of the Bankruptcy Code. The transactions contemplated by the Agency Agreement are not subject to avoidance pursuant to section 363(n) of the Bankruptcy Code.

13.     The provisions of this Order shall be self-executing notwithstanding any restrictions in the Agency Agreement (other than the need for the Debtors' prior consent) on the Agent's ability to conduct the Sale in compliance with applicable laws. All newspapers and other advertising media in which the Sale may be advertised, and all Landlords are directed to accept this Order as binding authority so as to authorize the Debtors and the Agent to consummate the transactions contemplated by the Agency Agreement and to conduct the Sale, including, without limitation, conducting and advertising of the Sale in accordance with the Agency Agreement and this Order; and no further approval, license or permits of any governmental authority shall be required.

14.     If any person or entity that has filed financing statements, mortgages, construction or mechanic's liens, *lis pendens* or other documents or agreement evidencing Liens on or

interests in the Assets shall not have delivered to the Debtors, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, or releases of any Encumbrances which the person or entity has with respect to the Assets, each such person or entity is hereby directed to deliver all such statements, instruments and releases and the Debtors and the Agent are hereby granted power of attorney and authorized to execute and file such statements, instruments, releases and other documents on behalf of the person or entity asserting the same and the Agent is authorized to file a copy of this Order which, upon filing, shall be conclusive evidence of the release and termination of such interest. Each and every federal, state and local governmental unit is hereby directed to accept any and all documents and instruments necessary or appropriate to give effect to the Sale and related transactions.

15.    All entities that are presently in possession of some or all of the Assets or other property in which the Debtors hold an interest that are or may be subject to the Agency Agreement hereby are directed to surrender possession of such Assets or other property to the Agent.

16.    Any third party holding documents of title to any of the Assets shall (a) immediately relinquish such title documents to the Debtors, in no event later than three (3) Business Days after the Debtors' request such title, and shall otherwise cooperate with the Debtors to deliver such title documents to the Debtors free and clear of such third party's liens, charges, security interests and other encumbrances, or (b) in the event any such title documents have been lost or cannot be delivered to the Debtors within the timeframe set forth in the preceding clause (a), cooperate with the Debtors in good faith to (i) assist the Debtors in obtaining replacement title documents in an expeditious manner and (ii) take such other steps

01:15149641.1

such that the Debtors can transfer the titled assets, including, without limitation, providing a release of lien letter with detailed information about the vehicle and the title and stating that such party releases its liens, charges, security interests and other encumbrances and completing any necessary forms. In addition, any third party who holds title documents to any of the Assets shall promptly take such other steps reasonably requested by the Debtors to enable the Debtors to facilitate the timely sale of the titled Assets.  Any third party who holds title documents to any of the Assets or has a lien, charge, security interest or other encumbrance on any titled Asset hereby appoints the Agent as such party's true and lawful proxy and attorney in connection with the release of any such lien, charge, security interest  or other encumbrance and the sale or transfer of such Assets, with full power of substitution, to execute and deliver lien releases and other transfer documents (including, without limitation, title documents) in connection with the sale and/or transfer of any of the Assets on behalf of the Debtors pursuant to the Agency Agreement, provided, however, that notwithstanding the provision of such materials, including releases by third parties, no liens or encumbrances shall be released until the sale of such asset.  The proxies and powers granted by each third party pursuant to this paragraph are coupled with an interest.

17.     If any parties or persons, including but not limited to landlords, subtenants, utility companies, governmental agencies (except to the extent provided otherwise in this Order), sheriffs, marshals or other public officers, creditors and all those acting for or on their behalf, believe that cause exists to:  (a) prohibit the Agent from advertising the Sale, to the extent same is consistent with the Agency Agreement; (b) in any way interfere with or otherwise impede the conduct of the Sale or the use or maintenance of the Assets and other assets of the Debtors located at the Facilities; or (c) institute any action or proceeding in any court or other administrative body having as its objective the obtaining of an order or judgment against the

Debtors, the Agent or a third party which might in any way directly or indirectly obstruct or otherwise interfere with or adversely affect the conduct of the Sale and/or seek to recover damages for breach(es) of covenants or provisions in any lease or sublease based upon any relief authorized herein, this Court shall retain exclusive jurisdiction to resolve such dispute, and such parties or persons shall take no action against the Debtors, the Agent, any third party or the Sale until this Court has resolved such dispute. This Court shall hear the request of such persons or parties with respect to any such disputes on an expedited basis, as may be appropriate under the circumstances.

18.    Nothing in this Order or the Agency Agreement releases, nullifies, or enjoins the enforcement of any liability to a governmental unit under environmental laws or regulations (or any associated liabilities for penalties, damages, cost recovery, or injunctive relief) that any entity would be subject to as the owner, lessor, lessee, or operator of the property after the date of entry of this Order. Nothing contained in this Order or in the Agency Agreement shall in any way (i) diminish the obligation of any entity to comply with environmental laws, or (ii) diminish the obligations of the Debtors to comply with environmental laws consistent with their rights and obligations as debtors in possession under the Bankruptcy Code. Nothing herein shall be construed to be a determination that the Agent is an operator with respect to any environmental law or regulation. Moreover, the Sale shall not be exempt from, and the Agent shall be required to comply with, laws of general applicability, including, without limitation, public health and safety, criminal, tax, labor, employment, environmental, antitrust, fair competition, traffic and consumer protection laws, including consumer laws regulating deceptive practices and false advertising (collectively, "General Laws"). Nothing in this Order shall alter or affect the Debtors' and Agent's obligations to comply with all applicable federal safety laws and

regulations. Nothing in this Order shall be deemed to bar any Governmental Unit (as defined in

Bankruptcy Code section 101(27)) from enforcing General Laws in the applicable non-

bankruptcy forum, subject to the Debtors' or the Agent's right to assert in that forum or before

this Court that any such laws are not in fact General Laws or that such enforcement is

impermissible under the Bankruptcy Code, this Order, or otherwise, pursuant to Paragraph 17

hereunder. Notwithstanding any other provision in this Order, no party waives any rights to

argue any position with respect to whether the conduct was in compliance with this Order and/or

any applicable law, or that enforcement of such applicable law is preempted by the Bankruptcy

Code. Nothing in this Order shall be deemed to have made any rulings on any such issues.

      19.     To the extent that the Sale is subject to any federal, state or local statute,

ordinance, or rule, or licensing requirement solely directed at regulating "going out of business,"

"store closing," similar inventory liquidation sales, or bulk sale laws, including laws restricting

safe, professional and non-deceptive, customary advertising such as signs, banners, posting of

signage, and use of sign-walkers solely in connection with the Sale and including ordinances

establishing license or permit requirements, waiting periods, time limits or bulk sale restrictions

that would otherwise apply solely to store closing or liquidation sales (each a "Liquidation Sale

Law" and together, the "Liquidation Sale Laws"), the following provisions shall apply:

      a.     Provided that the Sale is conducted in accordance with the terms of this

Order and the Agency Agreement, and in light of the provisions in the laws of many

Governmental Units that exempt court-ordered sales from their provisions, the Debtors and

Agent shall be presumed to be in compliance with any Liquidation Sale Laws and are authorized

to conduct the Sale in accordance with the terms of this Order without the necessity of further

showing compliance with any Liquidation Sale Laws.

01:15149641.1

16

b.      Within three (3) business days of entry of this Order, the Debtors shall serve copies of this Order and the Agency Agreement via e-mail, facsimile or overnight mail, on the following: (i) the Attorney General's office for each state where the Assets are located, (ii) the county consumer protection agency or similar agency for each county where the Assets are located, (iii) the division of consumer protection for each state where the Assets are located, and (iv) the chief legal counsel for the local jurisdiction where the Assets are located.

c.      To the extent there is a dispute arising from or relating to the Sale, this Order or the Agency Agreement, which dispute relates to any Liquidation Sale Laws (a "Reserved Dispute"), the Court shall retain exclusive jurisdiction to resolve the Reserved Dispute. Any time within fourteen (14) days following service of this Order, any Governmental Unit may assert that a Reserved Dispute exists by serving written notice of such Reserved Dispute to counsel for the Debtor and counsel for the Agent at the addresses set forth in the Agency Agreement so as to ensure delivery thereof within one (1) business day thereafter. If the Debtors, the Agent and the Governmental Unit are unable to resolve the Reserved Dispute within fifteen (15) days of service of the notice, the aggrieved party may file a motion with this Court requesting that this Court resolve the Reserved Dispute (a "Dispute Resolution Motion").

d.      In the event a Dispute Resolution Motion is filed, nothing in this Order shall preclude the Debtors, the Agent or other interested party from asserting (i) that the provisions of any Liquidation Sale Laws are preempted by the Bankruptcy Code or (ii) that neither the terms of this Order nor the conduct of the Debtors or the Agent pursuant to this Order, violates such Liquidation Sale Laws. Filing a Dispute Resolution Motion as set forth herein shall not be deemed to affect the finality of this Order or to limit or interfere with the Debtors' or the Agent's ability to conduct or to continue to conduct the Sale pursuant to this

Order and the Agency Agreement, absent further order of this Court. The Court grants authority for the Debtors and the Agent to conduct the Sale pursuant to the terms of this Order and the Agency Agreement and to take all actions reasonably related thereto or arising in connection therewith. The Governmental Unit shall be entitled to assert any jurisdictional, procedural, or substantive arguments it wishes with respect to the requirements of its Liquidation Sale Laws or the lack of any preemption of such Liquidation Sale Laws by the Bankruptcy Code. Nothing in this Order shall constitute a ruling with respect to any issues to be raised in any Dispute Resolution Motion.

          e.     If, at any time, a dispute arises between the Debtors and/or the Agent and a Governmental Unit as to whether a particular law is a Liquidation Sale Law, and subject to any provisions contained in this Order related to the Liquidation Sale Laws, then any party to that dispute may utilize the provisions of subparagraphs (b) and (c) hereunder by serving a notice to the other party and proceeding thereunder in accordance with those paragraphs. Any determination with respect to whether a particular law is a Liquidation Sale Laws shall be made *de novo*.

        20.     Except to the extent the rights of Governmental Units are expressly reserved elsewhere in this Order, the Debtors and the Agent are hereby authorized to take such actions as may be necessary and appropriate to implement the Agency Agreement and to conduct the Sale without necessity of further order of this Court as provided in the Agency Agreement.

        21.     This Court shall retain exclusive jurisdiction with regard to all issues or disputes in connection with the Order and the relief provided for herein, including, without limitation, to protect the Debtors and/or the Agent from interference with the Sale, and to resolve any disputes related to the Sale or arising under the Agency Agreement or the implementation thereof.

22.    The Agent shall not be liable for any claims against the Debtors other than as expressly provided for in the Agency Agreement.

23.    The Debtors, the Agent and each of their respective officers, employees and agents are hereby authorized to execute such documents and to do such acts as are necessary or desirable to carry out the Sale and effectuate the Agency Agreement and the related actions set forth therein.

24.    Upon the payment of the Initial Guaranty Payment, the Agent shall have, subject to the Agent's obligations to pay the Guaranteed Amount and share the Proceeds pursuant to the terms of the Agency Agreement, a valid duly perfected Lien and security interest in the Assets and any Proceeds to which Agent is entitled in accordance with the terms of the Agency Agreement without the need for any filing under the UCC or otherwise, which Lien shall be granted under section 364(c) of the Bankruptcy Code, and which Lien shall be free of any potential rights of the Debtors or any chapter 7 or chapter 11 trustee to surcharge against the Assets and the Proceeds pursuant to section 506(c) of the Bankruptcy Code; provided that, (i) the Agent's Lien shall be junior only to the Lien of the lenders under the Sellers' currently outstanding DIP Facility as in existence on the date hereof and shall not be junior or subordinate to or pari passu with the Liens or claims of any other Person, whether under section 364(d) of the Bankruptcy Code or otherwise, including without limitation any Lien that is avoided or preserved for the benefit of the Sellers' estates under section 551 of the Bankruptcy Code, (ii) the Agent's Lien, which shall be senior to all other persons other than the currently outstanding DIP Facility as in existence on the date hereof, cannot be primed without the prior written consent of the Agent, which may be granted or withheld in the sole discretion of the Agent, and (iii) upon the payment and satisfaction in full of the Debtors' currently outstanding DIP Facility and the

discharge of the Liens thereunder, the Agent shall have a first priority, valid duly perfected Lien and security interest in such Assets and any Proceeds which is senior to all persons, including all creditors of the Debtors. No Lien or claim having a priority superior to or *pari passu* with those granted to the Agent other than the Liens of the lenders under the currently outstanding DIP Facility as in existence on the date hereof shall be granted or allowed while any obligations to the Agent remain outstanding.

25.    The provisions of this Order and the Agency Agreement and any actions taken pursuant hereto or thereto shall survive entry of any order which may be entered confirming or consummating any plan of reorganization of the Debtors, or which may be entered converting the Debtors' cases from chapter 11 to chapter 7, and the terms and provisions of the Agency Agreement as well as the rights and interests granted pursuant to this Order and the Agency Agreement shall continue in this or any successor case and shall be binding upon Debtors, the Agent and their respective successors and permitted assigns, including any trustee or other fiduciary hereafter appointed as a legal representative of the Debtors under chapter 7 or 11 of the Bankruptcy Code. Any trustee appointed in these cases shall be and hereby is authorized and directed to comply with the terms of this Order and the Agency Agreement, and the Agent and the trustee shall be and hereby are authorized to perform under the Agency Agreement upon the appointment of a trustee without the need for further order of this Court.

26.    Pursuant to section 554(a) of the Bankruptcy Code, the Debtors and the Agent, as applicable, are permitted to abandon property of the Debtors' estates in accordance with the terms and provisions of the Agency Agreement, without incurring liability to any person or entity except as set forth in the Agency Agreement. The Agent shall file a notice on the docket of the abandonment of any property of the Debtors. In the event of any such abandonment, all

01:15149641.1

20

applicable landlords shall be authorized to dispose of such property without any liability to any individual or entity that may claim an interest in such abandoned property, and such abandonment shall be without prejudice to any landlord's right to assert any claim based on such abandonment and without prejudice to the Debtor or other party in interest to object thereto. In the event the Agent delivers a Sale Termination Notice to the Debtors, the Agent shall be deemed to have abandoned all rights to any Assets located at such Facility as of the date the Sale Termination Notice is delivered to the Sellers, and the Sellers shall have no obligation or liability under the Agency Agreement or otherwise to the Agent with respect to the Assets located at such Facility. For the avoidance of doubt, Agent shall be responsible for all costs, expenses and liabilities associated with any such abandoned Assets.

27.     The Assets shall be sold by the Agent and any buyer thereof shall acknowledge that the Assets are being purchased on an "AS IS, WHERE IS" and "WITH ALL FAULTS" basis, based solely on such buyer's own investigation of the Asset, without any representation or warranty other than those specifically made by the Agent in section 12.1(g) of the Agency Agreement.

28.     Pursuant to the terms of the Agency Agreement, all sales, excise, gross receipts and other taxes attributable to sales of Assets payable to any taxing authority having jurisdiction (collectively, "Sales Taxes") shall be added to the sales price of Assets and collected by the Agent, on behalf of the applicable Debtor, and deposited into a segregated account designated by the Agent solely for the deposit of such Sales Taxes (the "Sales Taxes Account"). The Debtors shall be responsible for the preparation of any reports or tax returns required to be filed with any governmental authority in connection with any Sales Tax. The Debtors shall sign such tax returns and promptly file the same with the appropriate governmental authority. The Agent shall

01:15149641.1

21

promptly remit all Sales Taxes collected in accordance with the Agency Agreement to the Debtors and the Debtors shall pay all such Sales Taxes to the appropriate governmental authority when due. The Debtors will be given access to the computation of gross receipts for verification of all such Sales Tax collections.

29.    This Order does not enjoin, suspend or restrain the assessment, levy or collection of any tax under state law, and does not constitute a declaratory judgment with respect to any party's liability for taxes under state law.

30.    The Agent shall have the right to use the Debtors' locations in Abbeville, Louisiana, Carencro, Louisiana and Monessen, Pennsylvania and all related services, furniture, fixtures, equipment, security equipment and other assets of the Debtors as designated hereunder for the purpose of conducting the Sale, free of any interference from the Debtors; provided, however, that Debtors shall have the right for one hundred eighty (180) days to continue to utilize the computer equipment and software, furniture, offices and related assets located at 4023 Ambassador Caffery Parkway, Suite 200, Lafayette, LA 70503, provided that Agent shall have the right to market, inspect and sell such Assets after ninety (90) days for delivery after the Sale Termination Date, and Debtors shall provide to the Agent access to such Assets for such purposes.

31.    This Order constitutes an authorization of conduct by the Debtors and nothing contained herein shall be deemed to constitute a ruling with regard to the sovereign immunity of any state, and the failure of any state to object to the entry of this Order shall not operate as a waiver with respect thereto.

32.    The Court shall retain jurisdiction with respect to any matters, claims, rights, or disputes arising from or related to the implementation of this Order.

01:15149641.1

33.     The transactions contemplated by the Agency Agreement are not subject to avoidance pursuant to section 363(n) of the Bankruptcy Code.

34.     Notwithstanding Bankruptcy Rules 6004, and 6006, this Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing. In the absence of any person or entity obtaining a stay pending appeal, the Debtors and the Agent are free to perform under the Agency Agreement at any time, subject to the terms of the Agency Agreement, and the Agent shall be afforded the protections of section 363(m) of the Bankruptcy Code as to all aspects of the transactions under and pursuant to the Agency Agreement if this Order or any authorization contained herein is reversed or modified on appeal.

35.     The Agent is a party in interest and shall have the ability to appear and be heard on all issues related to or otherwise connected to this Agency Agreement and the conduct of the Sale.

36.     The Debtors are authorized and directed to perform their obligations under the Agency Agreement.

37.     **Nations**.   The Agent, on behalf of the Debtors, is hereby authorized to sell pursuant to the terms of the Agency Agreement and this Order those certain sixty-three (63) 2013 Peterbilt Model 388 Tractors (collectively, the "Nations Assets") leased to the Debtors by Nations Fund I, Inc. ("Nations") under those certain Master Lease Agreements between Green Field Energy Services, Inc. and Nations. The sale of the Nations Assets by the Agent, on behalf of the Debtors, in accordance with this Order and the Agency Agreement shall constitute a sale and transfer of the Nations Assets to the third party purchaser free and clear of all Encumbrances. Nations shall  cooperate with the Debtors and the Agent (at the cost and expense of the Debtors) to transfer the Nations Assets and to take such other reasonable steps, including,

without limitation, transferring the titles to the Nations Assets to the Debtors and/or the Agent

promptly but in any event no later than two days after entry of this Order with such notations,

endorsements and lien releases as shall be necessary or reasonably required by the Debtors or the

Agent to enable the Agent to transfer the Nations Assets to a third party purchaser free and clear

of Encumbrances. The Agent, on behalf of the Debtors, shall remit the first $5,650,000.00 (the

"Nations Claim Amount") of the Proceeds of the Sale, directly to Nations in increments of no

less than $500,000 until such time as the Nations Claim Amount has been paid in full. To the

extent that the Nations Claim Amount is not paid in full from the Proceeds of the Sale at the time

the Agent is due to pay the Unpaid Balance to the Debtors in accordance with the terms of the

Agency Agreement, the Agent shall remit and pay directly to Nations the remaining unpaid

amount of the Nations Claim Amount on the date such Unpaid Balance is due in accordance with

the terms of the Agency Agreement. The foregoing notwithstanding, full payment of the

outstanding amount of the Nations Claim Amount shall be due by the Debtors to Nations no later

than April 30, 2014, to the extent not previously paid by the Agent to Nations in accordance with

the foregoing terms. Upon payment in full of the Nations Claim Amount to Nations, Nations

shall have no further claim against, and shall be entitled to no further recovery from, the Debtors

or the Debtors' estates, other than claims or amounts due to Nations for reimbursement of its

costs and expenses for assisting the Debtors in transferring title of the Nations assets to the

Debtors and/or the Agent as provided above. Upon payment in full of the Nations Claim

Amount, the Debtors' claims and noticing agent shall be authorized to mark any Proofs of Claim

as withdrawn on the official claims register in these Chapter 11 Cases and any scheduled amount

for Nations shall be deemed paid in full.

01:15149641.1

24

38.    Carl Marks.  The Completion Fee (as defined in that certain *Order Authorizing Debtors to Employ and Retain Carl Marks Advisory Group LLC as Investment Banker to Green Field Energy Services Inc.,* et. al., Nunc Pro Tunc *to Petition Date* [Docket No. 184] (the "Carl Marks Retention Order"), owed by the Debtors to Carl Marks pursuant to the Carl Marks Retention Order and the Investment Banking Agreement (as defined in the Carl Marks Retention Order), shall be set aside in a segregated account and paid by the Debtors to Carl Marks immediately upon the entry of an order approving a fee application for final allowance of compensation and reimbursement of expenses as set forth in the Carl Marks Retention Order.

39.    Payment of DIP Obligations.  A portion of the Initial Guaranty Payment in an amount equal to the outstanding obligations under the DIP Facility (the "DIP Obligations") which, for the avoidance of doubt, shall not include any "Make-Whole Fee" as none is due and owing on account of the Agency Agreement, shall be paid directly by the Agent to the Co-Administrative Agents (as defined in the DIP Facility) on the date on which the Agent is required to pay the Initial Guaranty Payment to the Sellers as set forth in Section 5.3 of the Agency Agreement by wire transfer for distribution to the DIP Lenders (as defined in the DIP Facility) as indefeasible payment on the DIP Obligations.  The remaining portion of the Initial Guaranty Payment shall be paid directly by the Agent to the Sellers as set forth in Section 5.3 of the Agency Agreement.

40.    Ford.  Ford Credit.  The Agent, on behalf of the Debtors, is hereby authorized to sell pursuant to the terms of the Agency Agreement, as amended on March 13, 2014 ( "Agency Agreement") and this Order that certain 2007 Ford with VIN 1FTWX32P27EA95224 ("2007 Ford") and those certain seventy-three (73) Ford vehicles, excluding the 2012 Ford Fusion referred to below (collectively, the "Ford Credit Assets"), which are listed on Exhibit A to that

01:15149641.1

certain objection and reservation of rights filed by Ford Motor Credit Company LLC ("Ford Credit") on February 14, 2014 (the "Ford Credit Objection") [Docket No. 520]. The sale of the Ford Credit Assets by the Agent in accordance with this Order and the Agency Agreement shall constitute a sale and transfer of the Ford Credit Assets to the third party purchaser free and clear of all Encumbrances. Ford Credit shall cooperate with the Debtors and the Agent (at the cost and expense of the Debtors) to take such reasonable steps, including, without limitation, delivering the titles to the Ford Credit Assets to the Agent at Gordon Brothers Group, 800 Boylston Street, 27th Floor, Boston, MA 02199, Attention: Jim Lightburn, promptly but in any event no later than two (2) business days after entry of this Order with such notations, endorsements and lien releases as shall be necessary or reasonably required by the Agent to enable the Agent to transfer the Ford Credit Assets to a third party purchaser free and clear of Encumbrances; provided, however, that Ford Credit shall deliver title of that certain 2007 Ford and that certain 2012 Ford with VIN 1FTFW1EF4CFC02045 to the Agent within two (2) business days of receipt by Ford Credit of the duplicate titles. The Agent shall remit the amount of $1,253,657.00 (the "Ford Credit Claim Amount") of the Proceeds of the Sale, after the Nations Claim Amount is paid in full, directly to Ford Credit in increments of no less than $100,000 until such time as the Ford Credit Claim Amount has been paid in full. To the extent that the Ford Credit Claim Amount is not paid in full from the Proceeds of the Sale or by the Debtors directly at the time the Agent is due to pay the Unpaid Balance in accordance with the terms of the Agency Agreement, the Agent shall remit and pay directly to Ford Credit the remaining unpaid amount of the Ford Credit Claim Amount on the date such Unpaid Balance is due in accordance with the terms of the Agency Agreement. The foregoing notwithstanding, full payment of the outstanding amount of the Ford Credit Claim Amount shall be paid to Ford

Credit no later than April 30, 2014, to the extent not previously paid by the Agent or Debtors to Ford Credit in accordance with the foregoing terms. Ford Credit shall have a fully secured lien in the Proceeds of the Sale realized after payment of the Initial Guaranty Payment to the Debtors and all payments to Nations contemplated hereunder, and in the Unpaid Balance of $15,000,000 to be paid by the Agent. Upon payment in full of the Ford Credit Claim Amount to Ford Credit, Ford Credit shall have no further claim against, and shall be entitled to no further recovery from, the Debtors or the Debtors' estates, other than reimbursement of its reasonable and documented costs and expenses for assisting the Debtors or the Agent and delivering titles of the Ford Credit assets to the Agent as provided above. Upon payment in full of the Ford Credit Claim Amount, the Debtors' claims and noticing agent shall be authorized to mark any Proofs of Claim as withdrawn on the official claims register in these Chapter 11 Cases and any scheduled amount for Ford Credit shall be deemed paid in full, and the lien provided herein shall terminate automatically without the need for the filing of any notice of termination or otherwise. In the event of conflict or inconsistency between the Agency Agreement and this paragraph of the Sale Order titled "Ford Credit", the terms in this Ford Credit paragraph will govern. In addition to the foregoing payment, Ford Credit has relief from the automatic stay pursuant to 11 U.S.C. 362 to sell and retain all proceeds of the 2012 Ford Fusion which the Debtors leased and which lease was rejected in an Order dated December 12, 2013.

41.    AECA/ITAR. Notwithstanding any provision to the contrary in the Sale Motion, implementing Sale documents or this Sale Order, the Debtors and GBCI agree that Sale Assets will be sold in compliance with the provisions of the Arms Export Control Act ("AECA") and the International Traffic in Arms Regulations ("ITAR") and the Debtors and GBCI shall comply with applicable federal non-bankruptcy law, including but not limited to AECA and ITAR.

01:15149641.1

42.    Taxing Authorities. From the proceeds of the sale of any of the Debtors' assets located in the state of Texas, or previously located and subject to taxation in Texas, on April 30, 2014, the amount of $1,500,000 shall be set aside by the Debtors in a segregated account as adequate protection for the asserted secured claims of Dallas County, Harris County, Irving ISD, Parker CAD, Harrison County and the Harrison Central Appraisal District (the "Objecting Texas Tax Authorities") prior to the distribution of any proceeds to any other creditor. The liens of the Objecting Texas Tax Authorities shall attach to these proceeds to the same extent and with the same priority as the liens they now hold against the property of the Debtors. These funds shall be on the order of adequate protection and shall constitute neither the allowance of the claims of the Objecting Texas Tax Authorities, an admission by the Debtors of the existence or validity of any lien of the Objecting Texas Tax Authorities, nor a cap on the amounts the Objecting Texas Tax Authorities may be entitled to receive. Furthermore, the claims and liens of the Objecting Texas Tax Authorities shall remain subject to any objections that the Debtors or any other party would otherwise be entitled to raise as to the priority, validity or extent of such liens. These funds may be distributed upon agreement between the Objecting Texas Tax Authorities and the Debtors, or by subsequent order of the Court, including estimation under Section 502(c) of the Bankruptcy Code, duly noticed to the Objecting Texas Tax Authorities.

43.    With respect to the claim of Parker CAD for unpaid 2012 ad valorem taxes (the "Parker CAD 2012 Claim"), if an agreement is not reached within 60 days from entry of this Order as to the allowance of the Parker CAD 2012 Claim, and the Parker CAD 2012 Claim is not otherwise withdrawn, the Debtors shall file an objection to the Parker CAD 2012 Claim which shall be set for hearing no later than 30 days after the filing of such objection. The amount of the

01:15149641.1

28

allowed Parker CAD 2012 Claim, if any, shall be paid within 15 days from the entry of the order on any objection to the Parker CAD 2012 Claim.

44.     Upon payment or other resolution of the Parker CAD 2012 Claim, or upon agreement by Parker CAD, the balance of the proceeds in the segregated account may be released to the Debtors (or their successor), except that $195,000 shall be held in the account as adequate protection for the administrative expense claims of the other Objecting Texas Tax Authorities.

45.     With respect to the administrative expense claims of the other Objecting Texas Tax Authorities for 2014 ad valorem taxes, those claims shall be paid pursuant to the confirmed plan of reorganization, or if no plan is confirmed by then, upon final determination of the assessed amount and receipt of the tax bill. The 2014 taxes shall be paid on or before December 1, 2014, unless the taxes are under protest pursuant to applicable non-bankruptcy law, or the Debtors (or their successor) have filed an objection to the claims as of that date.

Dated:  March 14, 2014

KEVIN GROSS
CHIEF UNITED STATES BANKRUPTCY JUDGE

01:15149641.1

29